## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DIANE POLAND,                     )
                                  )
           Plaintiff,             )
                                  )
    v.                            )    C.A. No. 04-217 (GMS)
                                  )
COMPUTER SCIENCES CORP.,          )
                                  )
           Defendant.             )
_____ )

## PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff, Diane Poland, by and through her undersigned counsel, hereby provides answers to the following Interrogatories to Defendant, Computer Sciences Corporation ("CSC") in accordance with the following Definitions and Instructions.

## INSTRUCTIONS

For the purpose of these Interrogatories, and with respect to each Interrogatory:

A.    These Interrogatories are continuing in nature, and you shall promptly supplement your answers if you, or anyone acting on your behalf, obtains further or different information after the initial answers are served. Such additional or supplemental answers shall be made no later than fifteen (15) days following the discovery of such information and, in any event, within a reasonable time prior to the commencement of trial.

B.    You are to furnish all information available to you, including information known to your attorneys, agents, investigators, employees, representatives, or other persons acting on your behalf.

C.    If you object to an Interrogatory, the objection is to be stated in full, along with a citation of any legal authority relied upon. If an objection is stated with respect to a portion of an Interrogatory, the remaining portion of the Interrogatory is to be answered notwithstanding the objection. If you object to the scope or time period of an Interrogatory, the objection is to be stated and the Interrogatory answered for the scope and time period which you believe is appropriate. If in answering these Interrogatories, you assert or believe there are any ambiguities or any vagueness in the construction or wording of either an Interrogatory, Instruction or Definition, set forth the matter, construction or wording you believe to be ambiguous or vague, and the interpretation or construction you used in responding to the Interrogatory.

D.    If any Interrogatory cannot be answered in full after exercising due diligence to secure the information, you are to so state and answer to the extent possible, specifying your inability to answer. If for any reason an answer is qualified, you shall set forth the details of such qualification.

E.    Should you withhold any information requested based on privilege, work product, or any other reason, you are to specify the general subject matter of the information and the basis for the contention that such information is privileged or otherwise withheld. If any form of privilege is claimed as grounds for not providing the information requested, and for all information otherwise withheld, you shall identify: 1) for oral communications, the name of any person making a communication, the names of all persons present when the communication was made, and where not apparent, the relationship of the persons present to the person making the communication; the date and place of any communication; and the subject matter of the communication; 2) all persons who have knowledge of the information withheld and 3) for documents, the type, general subject matter and date of the document, as well as, such other information as is sufficient to identify the document, including the author, addressee, custodian, any other recipients, and where not apparent, the relationship of the author, addressee, custodian and any other recipient to each other.

F.     If any document identified was, but no longer is, in your custody, possession or control, you are to state what disposition was made of it, identify its present custodian, and state who ordered or authorized such disposition.

G.     Any sentence or phrase formed in the disjunctive shall also be taken in the conjunctive, and vice versa.

H.     Any word formed in the singular shall also be taken in the plural, and vice versa.

I.     Any verb formed in the present tense shall also be taken in the past, imperfect, and future tenses, and vice versa.

J.     Any pronoun in the masculine gender shall also be taken in the feminine gender, and vice versa.

K.     In accordance with Rule 33 of the Federal Rules of Civil Procedure, the answers to these Interrogatories are to be made in writing under oath and are to be signed by the person making them.

L.     You are to answer these Interrogatories in conformity with the Discovery Guidelines of the United States District Court for the District of Delaware.

## DEFINITIONS

A.     As used herein, and unless otherwise indicated, the words "Plaintiff," "you" and "your" refer to Diane Poland, her agents, employees, servants, representatives, counsel, employees, investigators, or consultants.

B.     As used herein, and unless otherwise indicated, the words "Defendant" or "CSC" refers to Computer Sciences Corporation and its representatives, agents, servants, counsel, employees, investigators, or consultants.

C.     As used throughout these Interrogatories, the term "document," "tangible things," or any similar term is used in its broadest possible sense and is defined to reach all written or printed matter within the scope of Rule 34 of the Federal Rules of Civil Procedure and all

"writings and recordings" as defined in Rule 1001(1) of the Federal Rules of Evidence, and shall include, but not be limited to the following: any written, printed, typed, electronically created or stored or other graphic matter of any kind or nature, correspondence, letters, notes, notebooks, e-mails, ledgers, diaries, journals, photocopies, memoranda, computer disks or files in the possession, custody, or control of Plaintiff or known to Plaintiff, wherever located. The term "document," or any similar term, shall also mean all copies of documents, by whatever means made. The term "document," or any other similar term, shall also include any attachment thereto or enclosure therewith. A draft or non-identical copy shall be a separate document within the meaning of this term. As used herein, the term includes any documents now or formerly in, under or subject to your possession, custody or control, or the possession, custody or control of any person acting on your behalf, including your agents, representatives and attorneys.

D.     As used herein, the term "person" means individuals or entities of any type including, but not limited to, natural persons, governments (or any agencies thereof), quasi-public entities, corporations, partnerships, unincorporated associations, professional associations, groups, mutual or joint ventures, and any other forms of organizations or associations.

E.     "Date" shall mean the exact day, month, and year, if ascertainable, or if not, the best approximation thereof (including by relationship to other events).

F.     The phrase "describe in detail" calls for a complete description of all facts that are pertinent to the act, occurrence, or event in question including, where applicable, the date, time, place, circumstance, nature, substance, description, or explanation of the act, event, or occurrence, and the identity of all persons or entities involved in the act, event, or occurrence.

G.     "Relevant" shall mean all matters within the scope of discovery under the Federal Rules of Civil Procedure including all matters that, although inadmissible at the trial, are reasonably calculated to lead to the discovery of admissible evidence.

H.     The words "related," "relating," "pertain," "concern," and/or "concerning" when used in conjunction with any Interrogatory means recording, summarizing, embodying, constituting, reflecting, digesting, referring to, commenting upon, describing, reporting, listing, analyzing, studying, recording, concerning, pertaining to, relating to, supporting, detracting, discussing, or in any way, logically or factually connected with, the subject matter identified in the Interrogatory, and is defined so as to reach all matters within the scope of discovery under the Federal Rules of Civil Procedure, including all information which, though inadmissible at trial, is reasonably calculated to lead to the discovery of admissible evidence.

I.     The words "communication" or "communications" as used herein include, without limitation, any oral or electronic communication, whether transmitted in meetings, by telephone, telegraphs, telex, telecopy, facsimile, cable, tape recordings, or otherwise, and all written communications.

J.     As used herein, "correspondence" means any document that either constitutes a communication between two or more entities or persons, or that records, memorializes, reflects, or otherwise summarizes the substance of such communication – whether made directly to the author of the document or otherwise.

K.     As used herein, "identify," "identity," or "identification," (1) when used in reference to a natural person, means that person's full name, last known address, home and business telephone numbers, and present occupation or business affiliation; (2) when used in reference to a person other than a natural person, means that person's full name, a description of the person (that is, whether it is a corporation, partnership, etc.) and the person's last known address, telephone number, and principal place of business; (3) when used in reference to any person after the person has been properly identified previously means the person's name; and (4) when used in reference to a document, requires you to state the date, the author (or, if different, the signer or signers), the addressee, the identity of the present custodian of the

document, and the type of document (e.g., letter, memorandum, telegram or chart) or to attach an accurate copy of the document to your answer, appropriately labeled to correspond to the interrogatory.

L.    Unless otherwise indicated, these Interrogatories refer to the time, place and circumstances of the occurrences mentioned in the pleadings.

## INTERROGATORIES

1.    Please identify all persons who have personal knowledge of any matter concerning, relating or referring to the allegations in or the subject matter of your Complaint and/or any related administrative actions, including any charge of discrimination which you filed in connection with this case. State specifically the paragraph(s) of your Complaint for which each person has personal knowledge, and identify and describe specifically the nature and detail of such knowledge.

### ANSWER:

A. **Jesse Cason may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;**

B. **Selma York may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;**

C. Dr. Tanchanco may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

D. Dr. Berman may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

E. Dr. Houser may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

F. Tia Jackson-Alexander may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

G. Peter Lang may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

H.  Joseph Hinton may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

I.  Edwin Alston may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

J.  Tony Snow may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

K.  Jerry Flowers may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

L.  Beth Musmeci may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the

conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

M. Maryanne Doll-Johnson may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

N. Simmie Osburn may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

O. Leanne Thomas may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

P. Mike Suman may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

Q. Maureen Summers may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between

Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

R. Sonia Koplowicz may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant; and

S. Dawn Dworsky may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant.

2.    Please identify each and every person, not previously identified, who has knowledge of the alleged wrongs, injuries or damages allegedly suffered by you because of the alleged action of CSC. Your response should include, but not be limited to, a description of the source of such knowledge.

**ANSWER:**

Other current and former employees of Defendant may have knowledge of the facts in this matter, and if any such individuals are identified, they will be provided as a supplement to these Answers to Interrogatories;

Plaintiff's family and personal friends and/or acquaintances may have knowledge of the facts in this matter, and if any such individuals are identified, they will be provided as a supplement to these Answers to Interrogatories;

Plaintiff's medical care providers, physicians, etc. also have knowledge pertaining to Plaintiff's conduct and the nature of the relationship and interaction between Plaintiff and Defendant, Plaintiff's job performance and job duties, Plaintiff's conduct, Plaintiff's compensation, the conduct of members of the Managed Print and Dazel Group, Plaintiff's leave of absence, potential transfer and/or opportunities for promotion that were available to Plaintiff, and Plaintiff's separation from employment. Plaintiff's medical care providers have all been provided to Defendant in previous correspondence to Defendant's attorney.

❖ **Dr. Tanchanco, Plaintiff's Primary Care Physician.** He may have documents and other information with regard to this litigation.

❖ **Dr. Berman, Psychiatric counselor,** has knowledge, facts and/or opinions with regard to this litigation. He may have documents and other information with regard to this litigation.

❖ **Dr. Houser, Psychiatrist,** has knowledge, facts and/or opinions with regard to this litigation. He may have documents and other information with regard to this litigation.

❖ **Dr. Cruz, NCC Psychiatric Counseling Center** has knowledge, facts and/or opinions with regard to this litigation. He may have documents and other information with regard to this litigation.

Furthermore, the specific facts known to each may vary depending upon, among other things, the extent to which each individual worked with Plaintiff, the extent to which Plaintiff may have interacted or communicated with each individual, the extent to which each individual had the opportunity to observe Plaintiff, and the supervisory relationship between each individual and Plaintiff, if any. In addition, any or all of the above-named individuals may have knowledge related to Plaintiff's specific allegations in this litigation or evidence in support of Plaintiff's claims.

3.    Please identify and describe in detail any suits, complaints, charges, and/or claims, including insurance claims and worker's compensation claims, to which you have been a party or witness, other than the instant case, and state the nature of the claims, the parties involved, the forum, and the outcome of the claim, including any settlements.

**ANSWER:**

**Plaintiff has been a party in three (3) motor vehicle accident lawsuits over the past 13 years.  In each case, the insurance company for the Defendant paid Plaintiff for all damages, medical expenses, pain and suffering.**

4.      Please identify and describe in detail each and every written, recorded or oral statement given in connection with the circumstances surrounding this lawsuit.  Your response should include, but not be limited to, the identity of the person(s) giving each such statement, the date of each such statement, and the person or persons having custody or possession of the original or a copy thereof.

**ANSWER:**

**Plaintiff has given written and oral statements to Ms. Sonia Koplowicz, Ms. Maureen Summers, Ms. Dawn Dworsky, Mr. Mike Suman, Ms. Dorothy Eltzroth, the Delaware Department of Labor investigating officers, and her attorney, Jeffrey K Martin. The original statements are in the possession of the above-named individuals.**

**June 12, 2001, Plaintiff gave an oral statement to Ms. Dawn Dworsky wherein Plaintiff stated she did not agree with the appraisal rating she received from Ms. Dawn Dworsky and she also stated to Ms. Dworsky that she was biased in her management of the department.**

**June 13, 2001, Plaintiff sent an e-mail written re-cap of the appraisal meeting to Ms. Dworsky.**

**June 14, 2001, Plaintiff received an e-mail from Ms. Dworsky with regard to a Dazel account Plaintiff was assigned to as Lead System Engineer, for the United States Post Office.  The e-mail was in retaliation for Plaintiff's contacting the HR Department.  Ms. Dworsky asked why that particular account install had not been completed.  The account had not yet been officially passed through CSC business protocol for Plaintiff to even begin Dazel installation.**

**June 14, 2001, Plaintiff left a voicemail message for Ms. Sonia Koplowicz, Human Resources Manager, explaining that Plaintiff needed to meet with her as soon as possible to discuss a discrimination problem she was having with her [Plaintiff's] manager.**

June 14, 2001, Plaintiff was called by Ms. Sonia Koplowicz at approximately 10:45 a.m. to schedule a meeting for 1:30 p.m. that afternoon.

June 14, 2001, Ms. Maureen Summers called Plaintiff at approximately 11:30 a.m. and said that Sonia Koplowicz would not be able to meet with them and that she would meet with Plaintiff in Sonia's absence. However, Maureen Summers then stated that she had a dental appointment at 1:30 p.m., but would be able to meet with Plaintiff the next morning after her meeting with Dawn Dworsky.

June 15, 2001, Ms. Maureen Summers called Plaintiff and left a voicemail message that she would have to reschedule their meeting from that morning to 2:30 p.m. that afternoon because of a root canal procedure.

June 15, 2001, Plaintiff, at approximately 12 noon, went to the Delaware Department of Labor in Wilmington, Delaware, and spoke with an intake officer with regard to discrimination in her workplace. Plaintiff completed a written questionnaire and was advised to continue to work with the CSC Human Resources Department and be very clear about her concerns.

June 18, 2001, Plaintiff went to the Human Resources Department to speak with Jesse Cason, a friend, and saw Sonia Koplowicz speaking with Dawn Dworsky, and upon her arrival, Koplowicz and Dworsky went into a meeting room.

June 19, 2001, Plaintiff called Mr. Gus Siekierka, VP/Human Resources and left a message with his secretary or administrator who answered the phone. Mr. Siekierka returned Plaintiff's call and advised her to try to transfer to anther department, but offered no immediate advice or solution to the problem.

June 21, 2001, Plaintiff again contacted Mr. Gus Siekierka, to ask for advice to resolve her problem.   Again Mr. Siekierka advised Plaintiff to request an immediate transfer.

June 22, 2001, Ms. Dworsky called Plaintiff into a meeting and said she was working with the Human Resources Department, Sonia and Maureen to resolve Plaintiff's issues and help to alleviate the stress she was feeling.

June 25, 2001, Plaintiff sent an e-mail to Ms. Maureen Summers requesting an update on the meeting she held with Ms. Dworsky.

June 26, 2001, Plaintiff received an e-mail from Ms. Maureen Summers stating she had met with Dawn Dworsky; however, no plan of action or resolution of the problem was presented to Plaintiff in the e-mail.

June 28, 2001, Plaintiff received a request for a meeting via e-mail from Dawn Dworsky. The meeting was to take place on June 29, 2001 at 2 p.m.

June 29, 2001, Plaintiff met with Ms. Maureen Summers and Dawn Dworsky from 2 p.m. to 4 p.m. In that meeting, they discussed all of Plaintiff's issues to no avail. Summers and Dworsky shared with Plaintiff the ratings and expectations for field engineering, Dazel, and also the salary levels/quartile levels for a systems analyst, all of which Plaintiff had never seen or discussed with them before that meeting. Plaintiff informed them that she did not agree with being held to standards at that time that were not discussed with her when Dworsky first became Plaintiff's manager. Plaintiff requested copies of those documents and was only given a copy of the job expectations. They would not give her a copy of the salary level/quartile levels. Plaintiff also requested a copy of the PSPP requirements that she was told she did not meet and therefore could not be promoted. Summers said she would see what official documents were available to Plaintiff.

July 5, 2001, Plaintiff met with Ms. Julie Cutler, DDOL Intake Officer, who prepared an official Charge of Discrimination and told Plaintiff that a copy would be mailed to CSC in one week.

July 10, 2001, Plaintiff attempted to schedule a meeting with Dawn Dworsky and Maureen Summers. Dawn replied that she could not meet with Plaintiff until July 11, 2001 at 2 p.m.

July 11, 2001, Plaintiff met with Dawn Dworsky and Maureen Summers to discuss documents that Dworsky and Summers showed to her; these documents included the Ratings and Expectations for Field Engineering, Dazel, PSPP Requirements, and Salary Levels. They also discussed Plaintiff's Performance Appraisal, salary level, and merit increase during that meeting.

July 12, 2001, Sonia Koplowicz called Plaintiff at approximately 3:35 p.m. and asked if she could meet with Plaintiff the following day.

July 13, 2001, Plaintiff met with Sonia Koplowicz from approximately 9 a.m. to 11:40 a.m. Koplowicz informed Plaintiff that she [Koplowicz] had received the Charge of Discrimination that Plaintiff filed, and that it was her job to investigate and respond to the Charge. Koplowicz questioned Plaintiff on specific claims that were made in Plainitff's Affidavit and informed Plaintiff of the GIS & Chemical Group Quartile and PSPP levels. Koplowicz showed Plaintiff that she [Plaintiff] was at the lower percentile level of the GIS & Chemical Group Quartile system as compared to her peers. Koplowicz agreed that Plaintiff was in a lower percentile as compared to her peers and said a salary adjustment would be made. Koplowicz showed Plaintiff a figure of $55,000(285). Plaintiff asked for the information in writing but Koplowicz said she could not give the information to Plaintiff in writing because of CSC Policy.

August 16, 2001, Plaintiff contacted the DDOL/EEOC regarding retaliation, and was advised to file a claim of retaliation.

August 21, 2001 Sonia Koplowicz informed Plaintiff that the Human Resources Department had officially responded to her Charge of Discrimination with the DDOL/EEOC.

August 23, 2001, Plaintiff received an e-mail from Sonia Koplowicz referencing positions available. Plaintiff sent her resume to Mr. Ed Stewart, CEG and Ms. Leanne Thomas, GIS.

August 24, 2001, Plaintiff met with Dawn Dworsky and Maureen Summers to discuss her previously-scheduled vacation leave and DDE project work. Dworsky and Summers said Plaintiff would have to take her vacation leave without pay because Plaintiff did not have the leave available. Plaintiff advised them that her leave was used as a result of medical leave caused by the hostile work environment she was subjected to as a result of her opposition to the discriminatory practices at CSC. Plaintiff asked to speak with Ms. Dorothy Elzroth, HR Director for Chemical Group. Summers' reply was "good luck – she is very busy." Plaintiff stated to Summers that if it was a priority for them to tell her to take unpaid leave, then it should also be a priority to resolve Plaintiff's inquiry.

August 24, 2001, Plaintiff called the DDOL/EEOC and spoke with Ms. Nicole Jackson, EEOC Claims Investigator. Plaintiff informed the investigator of the continued discrimination and retaliation that she was experiencing at CSC. Nicole Jackson advised Plaintiff that the investigation would take 6-9 months and that Plaintiff should continue to send any relevant documentation to her attention.

August 30, 2001, Plaintiff contacted Monita Chapman at 703.318.2511 with regard to filing a worker's compensation claim.

September 27, 2001, Plaintiff met with Mike Suman and Dawn Dworsky. Suman stated that everything before 1:12 p.m. that day was history, and that whatever work Dworsky said was available, was it. Dworsky stated that only the Dazel Manual was available for Plaintiff to work on. Suman also stated that Plaintiff would be expected to stay on this project and would not be moved to others as they became available.

Additional information is available in Plaintiff's supplemental document production: e-mails, meeting notes, and history logs sent to EEOC.


5.     If you contend that any admissions against interest have been made by CSC or

any of CSC's officers, agents, employees, representatives or former agents, officers, employees

or representatives in connection with the circumstances surrounding this lawsuit, please identify

and describe specifically each alleged admission against interest.  Your response should include, but not be limited to, identifying the source and substance of each such alleged admission against interest, the date, time, and place each such alleged admission against interest was made, and identifying any person who made or witnesses each such alleged admission against interest.

**ANSWER:**

**On June 12, 2001, Dawn Dworsky stated to Plaintiff during her appraisal meeting that Plaintiff was "grossly and unjustly underpaid in comparison to [her] peers"; "unfortunately, you are a victim of an unjust salary problem within the organization"; "you are not being promoted because the department directive only allowed for 1 promotion based on seniority"; and "the department was also given a directive to categorize a specified number of people per category ratings."  Plaintiff has provided a copy of her written summary of this meeting in an e-mail dated June 13, 2001 – Meeting Recap.**

**Sonia Koplowicz also stated that Plaintiff was in the lower percentile salary range as compared to her peers and that a salary adjustment would be made.  Plaintiff has provided a copy of her written summary of this meeting in an e-mail dated July 13, 2001 – Meeting w/Sonia Koplowicz Recap**

6.    State and itemize the precise amount of damages claimed to have been suffered by you and which you are seeking from CSC, describe in detail the factual basis and method of computation used to determine that amount, identify all individuals whom you contend will support your claim for such damages, and identify all documents that support, were relied on or otherwise relate to such computation.

**ANSWER:**

**Objection.  Plaintiff is unable to determine an exact amount of damages at this time. When Plaintiff is in a better position to determine and/or approximate total damages for this matter, the information will be provided as a supplement to these Answers to Interrogatories.**

7.    Identify each person by whom you formerly or currently have been employed or performed service for since 1990 until the present, and describe your employment by each identified person, including, but not limited to, the position(s) held, the dates each position was held, the duties and responsibilities of the position(s) held, and the compensation (including salary, commissions, bonuses and fringe benefits) received by you, including the date and amount of any raises, and the reason your employment with each person ended.

**ANSWER:**

**Plaintiff has provided a current resume with the requested employment history contained therein.**

**September 2003 to Present: Ceridian employs Plaintiff; she holds the position of Human Resource Implementation Consultant/Application Specialist; her job duties are to perform moderate to advanced microproducts implementation for new business and migrations. The account complexity is based on the level of service points documented by the Business Analyst in the Business Requirements Document; her salary is $48,000/year.**

**July 1999 to September 2002, Computer Science Corporation employed Plaintiff; she held the position of Systems Analyst/Engineer; her job duties were to install, configure and administer high availability Dazel Output Servers running on Unix AIX 4.3, globally; Monitor, administer and resolve output management servers; resolve SAP R/3 interface spools request; Develop implement and engineer solutions to improve functionality for managed print Dazel operations team using UNIX, Perl 5, Dazel Output Server 3.1 and 3.2, and other available technologies; her salary was $49,000/ year.**

**November 1999 to July 1999, Computer Sciences Corporation employed Plaintiff; she held the position of System Analyst; her job duties were to support Managed Print printers and Dazel SAP/R3 print queues; ensure customer satisfaction as it relates to print, fax, and email print queues; close/resolve Problem, Question and Request tickets assigned to the Managed Print Team within Service Level Agreements; Lead and/or participate on collaborative Work Teams; her salary was $46,000/ year.**

November 1997 to November 1999, Computer Sciences Corporation employed Plaintiff; she held the position of Technical Systems Analyst; her job duties were to answer, troubleshoot, resolve, and log technical support inquiries daily, ensuring customer satisfaction within in-service level agreements; maintain an 85% level of accuracy, troubleshooting and prescreening technical problems with supported products; escalate support problems where the nature of the problem may exceed service level commitments; her salary was $43,000/ year.

June 1994 to November 1997, University of Pennsylvania PENN Card Center employed Plaintiff; her position was Customer Service Representative; her job duties were to coordinate and manage special program events, manage and program 1Card access database; secure computer maintenance bids and awards; supervise service staff and affiliates; develop, post and hire support staff seasonally; her salary was $37,000/ year.

September 1993 to June 1994, University of Pennsylvania Public Safety Division employed Plaintiff; her position was Civil Communication Officer; her duties were to operate and maintain CLEAN System, dispatch UPPD Officers, write criminal reports, and manage community service calls; her salary was $23,000 year.

June 1993 to September 1993, U.S. Federal & State Government Office of Financial Operations employed Plaintiff; her position was Fiscal Technician; her duties were to provide administrative and system support to the Regional Administrator, the Director of Discretionary Grant Programs and staff.

June 1990 to June 1993 U.S. Federal & State Government Office of Financial Operations employed Plaintiff; her position was Grant Processing Assistant; her duties were to provide administrative and clerical support to the Director of Fiscal Operations, Supervisory Financial Management and staff.

8.    Describe in detail all income or other earnings, including, but not limited to, all salaries, bonuses, fringe benefits, or unemployment benefits which you have been offered, promised or received since 1995 to present, and state the precise amount, nature and source of all such income or earnings.

**ANSWER:**

September 2003 to Current, Ceridian employs Plaintiff; her salary is $48,000/year. Bonuses received total $465.00.

July 1999 to September 2002, Computer Science Corporation employed Plaintiff; her salary including bonuses was $49,000/ year.

November 1999 to July 1999, Computer Sciences Corporation employed Plaintiff; her salary including bonuses was $46,000/ year.

November 1997 to November 1999, Computer Sciences Corporation employed Plaintiff; she held the position of Technical Systems Analyst; her salary including bonuses was $43,000/ year.

June 1994 to November 1997, University of Pennsylvania PENN Card Center employed Plaintiff; her salary was $37,000/ year.

Unemployment Claim for September 2002 to September 2003 was $11,220.

9.    Please state the name and address of each non-expert witness whom you may call to testify at trial and describe in detail the subject matter on which the witness is expected to testify.

**ANSWER:**

**Please refer to Answer to Interrogatory #1, above.**

10.    Identify any expert who has been consulted, retained or employed by you in anticipation of this litigation or preparation for trial, but who is not expected to be called at trial and describe in detail the subject matter on which each expert was consulted, retained or employed, the substance of any facts and opinions rendered by each expert, whether preliminary or final, and a summary of the grounds for each opinion, and identify all documents and other information which have been provided to, relied on, created by, reviewed by or received from each such person.

**ANSWER:**

      **No expert witnesses have been retained at this time.  Should any expert witnesses be obtained in the future, the information will be provided as a supplement to these Answers to Interrogatories.**

      11.    Identify and state the qualifications and area of expertise of each person you intend to call as an expert witness for any matter in this action.  Also state the subject matter on which each expert is expected to testify, the substance of the facts and opinions to which he or she is expected to testify and a summary of the grounds for each opinion, and identify all documents and other information which have been provided to, relied on, created by, reviewed by or received from each such person.

**ANSWER:**

      **No expert witnesses have been retained at this time.  Should any expert witnesses be obtained in the future, the information will be provided as a supplement to these Answers to Interrogatories.**

      12.    If you have been examined by, treated by, diagnosed by or have otherwise consulted with any physician, psychologist, psychiatrist, hospital, nurse, therapist, counselor (religious or otherwise), or other health care provider (collectively "health care provider") for a reason relating in any way to your claims or alleged damages in this litigation, then identify each such health care provider.  For each such health care provider, provide the dates of each consultation, a description of any complaint, examination results, disability slips, diagnosis,

treatment, prescription, medication and prognosis for each such consultation, and the identity of each report, note or other document generated as a result of such consultation.

## ANSWER:

**Plaintiff has provided a list of all medical care providers along with a signed authorization for release of medical records to Defendant. All of Plaintiff's medical records should now be available to Defendant.**

- **Dr. Tanchanco from June 2001 to approximately September 2003. He is Plaintiff's primary care physician and has treated her for stress, anxiety and depression.**

- **Dr. Berman from June 2001 to approximately September 2002. He is a Psychiatric Counselor and he treated Plaintiff for stress, anxiety and depression.**

- **Dr. Houser, Psychiatrist from August 2001 to approximately August 2002. He treated Plainitff for stress, anxiety and depression.**

- **Colleen Laskoski, Psychiatric Counselor Catholic Social Services from approximately August 2001 to December 2001.**

- **Dr. Cruz, NCC Psychiatric Counseling Center from approximately December 2001 to August 2003.**

13.     If you have been examined by, treated by, diagnosed by or have otherwise consulted with any physician, psychologist, psychiatrist, hospital, nurse, therapist, counselor (religious or otherwise), or other health care provider (collectively "health care provider") for any reason not related in any way to your claims or alleged damages in this litigation from 1990 to the present, then identify each such health care provider. For each such health care provider, provide the dates of each consultation, a description of any complaint, examination results, disability slips, diagnosis, treatment, prescription, medication and prognosis for each such consultation, and the identity of each report, note or other document generated as a result of such consultation.

**ANSWER:**

Plaintiff has provided a list of all medical care providers along with a signed authorization for release of medical records to Defendant. All of Plaintiff's medical records should now be available to Defendant.

- **Dr. Levin, Vanguard Health Systems Philadelphia, PA from 1990 to 1997. He was Plaintiff's primary care physician. He treated her for yearly physical exams, back pain, and submitted referrals for GYN care.**

- **Dr. Tanchanco, Total Care Physicians from 1997 to present. He is Plaintiff's primary care physician. Plaintiff has been treated for stress, anxiety and depression, sinus infections and back pain.**

- **Dr. White, OB/GYN, Christiana Care Delaware from 1998 to present. He treats Plaintiff for yearly pelvic exams and urine infection.**

- **Dr. Glassman and Dr. Beneck, Delaware Back Pain & Sports Rehab Center from 1993 to 1999. They treated Plaintiff for back and leg pain associated with motor vehicle accidents.**

- **Dr. Gelman, Orthopedic Surgery & Fracture Care from approximately September to October 1998. He treated Plaintiff for arthroscopic knee surgery and follow up care.**

- **Dr. Becker and Dr. Chalian, University of Pennsylvania from approximately February to April 2001. They treated Plaintiff for a salvia stone.**

- **Dr. Robinson, Otolaryngology-Neurotology Newark, Delaware. He treated Plaintiff for a salvia stone.**

- **Dr. Demeo, OB/GYN Newark, Delaware from approximately June 1999. He treated Plaintiff for a fallopian tube surgery.**

14.    Identify each document not previously produced by you which relates in any way to the allegations contained in your Complaint and/or to the relief sought, and any documents referred to in your answers to these Interrogatories or relied upon to prepare your answers.

**ANSWER:**

**All documents have been provided to Defendant or will be provided to Defendant with Plaintiff's Supplemental Response to Defendant's First Request for Production of Documents.**

15.    If you intend to rely on statistics in the prosecution of this case, please describe with particularity all statistics and statistical data on which you intend to rely, and identify the sources of all statistical data.

**ANSWER:**

**Plaintiff does not intend to rely on statistics in the prosecution of this case at this time; any change in this position will be provided as a supplement to these Answers to Interrogatories.**

16.    Please identify and describe specifically each and every communication, whether written, recorded or oral, you have had with any local, state or federal agency with respect to any charges or allegations you have alleged against CSC.  Your response should include, but not be limited to, identifying for each such communication, the date and place of the communication, the parties to the communication, all witnesses to the communication, and the substance of the communication, in as verbatim a form as possible.

**ANSWER:**

**A copy of Plaintiff's entire EEOC/DDOL file has been provided to Defendant in Plaintiff's Response to Defendant's First Request for Production of Documents.**

17.    Please identify and describe specifically the attempts you have made to mitigate the damages you claim you have suffered in this lawsuit.  Your response should include, but not be limited to, a detailed description of how you made each attempt, all efforts by you to obtain employment subsequent to your employment by CSC, the identity of any employer, employment agency or other person that you contacted or that contacted your regarding potential employment, the nature and the date of each such contact, the nature of the employment sought in each such contact, the substance of all communications regarding potential employment, the results of each such contact, and the identification of each specific fact, person with knowledge, witness, document, reproduction, recordation and oral communication that supports your answer to this Interrogatory.

**ANSWER:**

**Plaintiff was not able to seek employment during the first few months of her unemployment, due to the fact that she was under doctors' care, treating with Dr. Houser and Dr. Berman for anxiety and depression.**

**However, once able to seek employment, Plaintiff applied to following companies:**

- ❖ **NCC Government; applied in-person**
- ❖ **TAD Employment Services; applied in-person**
- ❖ **Ranstad; applied via email**
- ❖ **RHI, applied via email**
- ❖ **SAP, applied via email**
- ❖ **American Board of Internal Medicine; applied via email**
- ❖ **Crozer-Chester Medical Center; applied in-person**
- ❖ **National Conference for Community and Justice; applied via email**
- ❖ **Wilmington Trust; applied via email**

**Plaintiff maintained the above list of positions applied for, but she does not have actual hard copies of any of the applications submitted.**

**Plaintiff has also attempted to mitigate the damages through the Delaware Department of Labor, in her efforts to resolve this matter through failed mediation and via**

her attorney at the Defendant's request. Plaintiff is still open to negotiating a settlement of this matter with Defendant.

18.    Identify and describe specifically all persons who assisted you in the preparation of the answers to these Interrogatories.

**ANSWER:**

No one assisted Plaintiff with the preparation of these Answers to Interrogatories other than her attorney's office.

19.    Identify each person by whom you formerly or currently have been employed or performed services for, other than CSC, during your employment with CSC or during your absence from CSC, and describe your employment by each identified person, including, but not limited to, the position(s) held, the dates each position was held, the duties and responsibilities of the position(s) held, and the compensation (including salary, commissions, bonuses and fringe benefits) received by you, including the date and amount of any raises, and the reason your employment with each person ended.

**ANSWER:**

Plaintiff has provided a copy of her current resume for reference. Plaintiff has always sought and accepted advancement opportunities. Plaintiff has never been laid-off from employment. Plaintiff has never been fired from employment until she encountered her situation at CSC. Additionally, Plaintiff had never been unemployed until her situation at CSC. Consequently, Plaintiff never had the need to apply for unemployment benefits until she experienced her situation at CSC.

MARGOLIS EDELSTEIN

Jeffrey K. Martin, Esquire (#2407)
Timothy J. Wilson, Esquire (#4323)
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680
(302) 777-4682 facsimile
jmartin@margolisedelstein.com
Attorneys for Plaintiff Diane Poland

Dated: March 24, 2005