## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **DIANE POLAND,** | : | |
| | : | |
| **Plaintiff,** | : | **C.A. NO. 04-0217-GMS** |
| | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| **COMPUTER SCIENCES** | : | |
| **CORPORATION, a Delaware** | : | |
| **Corporation,** | : | |
| | : | |
| **Defendant.** | : | |

---

### PLAINTIFF'S ANSWERING BRIEF
### TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

MARGOLIS EDELSTEIN
Jeffrey K. Martin, Esquire (#2407)
Keri L. Morris, Esquire (#4656)
1509 Gilpin Avenue
Wilmington, Delaware 19806
302-777-4680
Attorneys for Plaintiffs

Dated: May 27, 2005

## TABLE OF CONTENTS

**Document**                                                                      **Page No.**

TABLE OF CASES ……………………………………………………...…  iv

NATURE AND STAGE OF PROCEEDINGS …………………………….…...  1

SUMMARY OF ARGUMENT ………………………………………………..…  2

STATEMENT OF MATERIAL FACTS …………………………………….…....  3

ARGUMENT …………………………………………………………….…....  11

I.      SUMMARY JUDGMENT STANDARD ………………………......…  11

II.     PLAINTIFF'S RACIAL DISCRIMINATION CLAIM MUST
        SURVIVE SUMMARY JUDGMENT …………………………….…...… 12

        A.    Plaintiff Established a Prima Facie Case of Racial
              Discrimination …………………………………………………… 12

              1.    Plaintiff is a Member of a Protected Class ……………..  13

              2.    Plaintiff Suffered Adverse Employment Actions ………  13

              3.    Plaintiff was Treated Less Favorably than Similarly-
                    Situated Caucasians …………………………………….  14

        B.    Plaintiff Has Cast Sufficient Doubt Upon Defendant's
              Reasons for Failure to Promote Her – To Evidence Pretext …….. 14

III.    PLAINTIFF'S RETALIATION CLAIM MUST SURVIVE
        SUMMARY JUDGMENT …………………………………………….  14

        A.    Plaintiff Has Established a Prima Facie Case of Retaliation …..  14

              1.    Plaintiff Engaged in Protected Activity …………………. 14

              2.    Plaintiff Was Subjected to Adverse Employment
                    Actions …………………………………………………  15

              3.    A Causal Connection Exists Between Plaintiff's
                    Protected Activities and the Adverse Employment
                    Action ………………………………………………….. 16

Document                                                                Page No.

      B    Defendant Has Not Provided a Legitimate, Non-Retaliatory
           Reason for its Treatment of Plaintiff After She Engaged in
           Protected Activity ................................................... 16

IV.   PLAINTIFF'S CLAIM FOR BREACH OF THE IMPLIED
     COVENANT OF GOOD FAITH AND FAIR DEALING MUST
     SURVIVE SUMMARY JUDGMENT ...................................... 17

V.    PLAINTIFF'S EQUAL PAY ACT CLAIM MUST SURVIVE
     SUMMARY JUDGMENT .................................................... 18

CONCLUSION ............................................................... 19

# TABLE OF CASES

<u>Case Name</u>                                                                                    <u>Page No.</u>

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ...........................  11

Bass v. Board of County Comm'rs 256 F.3d 1095 (11th Cir. 2001) ...................  17

Boykins v. Lucent Techs. Inc., 78 F. Supp. 402, 409 (E.D. Pa 2000) ................  13

Bradley v. United States, 299 F.3d 197, 206 (3d Cir., 2002) ..........................  13

Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 761 (1998) .........................  15

Conneen v. MBNA America Bank, N.A., 334 F. 3d 318, 334
(3rd Circuit 2003) .........................................................................  18

EEOC v. L.B. Foster Co., 123 F.3d 746 (3d Cir. 1997) ...............................  16

Farrell v. Planters Lifesavers Co., 206 F. 3d 271, 280-81 (3d Cir. 2000) ............  16

Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987) ..........................  12

Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1
(3d Cir. 1995) ............................................................................  11

Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999) ......................  13

Jones v. United States Postal Serv., 2004 U.S. Dist. LEXIS 14951
(D. Del., 2004) ...........................................................................  14

Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1999) ..............  14

Kidd v. MBNA America Bank, N.A., 224 F. Supp. 2d 807, 811
(D.Del. 2002) ........................................................................  13, 14

Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir. 1997) .........................  15

Lafate v. Chase Manhattan Bank (USA), 123 F. Supp. 2d 773, 778
(D. Del. 2000) ...........................................................................  15

L.B. Foster Co., 123 F.3d at 753-55) ..................................................  16

Lowman v. State of Delaware Department of Corrections, 2003 U.S. Dist.
LEXIS 2579 (D. Del. February 21, 2003) .............................................  15

**Case Name**                                                                 **Page No.**

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10,
89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) .............................................. 11, 12

Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995) .......................... 12

Pivirotto v. Innovative Sys. Inc., 191 F.3d 344, 352 (3d Cir. 1999) ................. 13

Revis v. Slocomb Indus., 814 F. Supp. 1209, 1215 (D. Del. 1993) ................. 12

Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997) ............... 15

Shaner v. Synthes, 204 F.3d 494, 503 (3d Cir. 2000) ................................. 15

Torre v. Casio, Inc., 42 F. 3d 825, 831 (3d Cir. 1994) ................................ 15


**Statutes & Regulations**

Title VII of the Civil Rights Act of 1964 ......................................    1, 12

Equal Pay Act, 29 U.S.C. §206(d) ....................................................    1, 18

42 U.S.C. §1981 ........................................................................    1, 12

42 U.S.C. § 2000e-2(a) ...............................................................12, 13

42 U.S.C. § 2000e-3(a) ...............................................................14, 15

42 U.S.C. §2000e-5(f)(1) ...........................................................    12


**Rules**

Fed. R. Civ. P. 56(c) ...................................................................    11

Fed. R. Civ. P. 56(e) ...................................................................    11

10 A. C. Wright, A. Miller & M. Kane, Federal Practice & Procedure
§2725, at 93-95 (1983) ...............................................................    11

## NATURE AND STAGE OF PROCEEDINGS

On April 8, 2004, Diane Poland (hereinafter "Plaintiff") filed a six count Complaint against Defendant Computer Sciences Corporation, a Delaware corporation (hereinafter "Defendant") alleging the following:

Count I:    Defendant discriminated against Plaintiff on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, as amended;

Count II:    Defendant discriminated against Plaintiff on the basis of her race in violation of 42 U.S.C. §1981;

Count III:    Defendant discriminated against Plaintiff based upon her gender in violation of Title VII;

Count IV:    Defendant retaliated against Plaintiff in violation of Title VII and §1981;

Count V:    Defendant violated the Equal Pay Act, 29 U.S.C. §206(d); and

Count VI:    Defendant breached an implied covenant of good faith and fair dealing.

On May 24, 2004, Defendant filed an Answer denying the substantive allegations of the Complaint.

After extensive discovery on May 6, 2005, Defendant filed a Motion for Summary Judgment. This is Plaintiff's Answering Brief in Opposition to Defendant's Motion.

## SUMMARY OF ARGUMENT

I.     SUMMARY JUDGMENT STANDARD

II.    PLAINTIFF'S RACIAL DISCRIMINATION CLAIM MUST SURVIVE
       SUMMARY JUDGMENT

       A.    Plaintiff Established a Prima Facie Case of Racial Discrimination

             1.    Plaintiff is a Member of a Protected Class

             2.    Plaintiff Suffered Adverse Employment Actions

             3.    Plaintiff Was Treated Less Favorably than Similarly Situated Caucasians

       B.    Plaintiff Has Cast Sufficient Doubt Upon Defendant's Reasons for Failure to
             Promote Her – To Evidence Pretext

III.   PLAINTIFF'S RETALIATION CLAIM MUST SURVIVE SUMMARY JUDGMENT

       A.    Plaintiff Has Established a Prima Facie Case of Retaliation

             1.    Plaintiff Engaged in Protected Activity

             2.    Plaintiff Was Subjected to Adverse Employment Actions

             3.    A Causal Connection Exists Between Plaintiff's Protected Activities and
                   the Adverse Employment Action

       B.    Defendant Has Not Provided a Legitimate, Non-Retaliatory Reason for its
             Treatment of Plaintiff After She Engaged in Protected Activity

IV.    PLAINTIFF'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD
       FAITH AND FAIR DEALING MUST SURVIVE SUMMARY JUDGMENT

V.     PLAINTIFF'S EQUAL PAY ACT CLAIM MUST SURVIVE SUMMARY
       JUDGMENT

## STATEMENT OF MATERIAL FACTS

As alleged in Plaintiff's Complaint and clarified through her deposition testimony, Plaintiff's claims are limited to the following:

- A racial discrimination claim based upon Plaintiff's failure to receive a promotion based on the fact that co-worker Randall Miller was promoted and she was not;

- A racial discrimination claim based upon salary disparity as compared to Plaintiff's Caucasian co-workers;

- A retaliation claim based upon isolation Plaintiff suffered from members of the group she was working with, and her termination of employment;

- A retaliation claim based upon work criticism and unwarranted scrutinization of work;

- An Equal Pay Act claim based upon the fact that males were allegedly paid more than females in the group she was working in; and

- A claim for a purported breach of the implied covenant of good faith and fair dealing based upon the discrimination and retaliation that Plaintiff claims she suffered.

### Plaintiff's Employment with Defendant

Plaintiff was hired by Defendant as an at-will employee on November 5, 1997. (B0011-0012, B0013-0016). Plaintiff was initially hired as a help desk technician, Member Technical Staff B ("MTSB"). (B0014). She also served as a technical systems analyst. (B0008). As a help desk technician, Plaintiff answered calls from clients regarding printer problems, problems involving connection to the server, telecommunication problems and phone issues. (B0018). Furthermore, Plaintiff used UNIX while she was a help desk technician. (B0019-0020).

In or around May 2000, Plaintiff was promoted by Edwin Alston from a MTSB to a Member Technical Staff A ("MTSA") under the direction of Ms. Dawn Dworsky ("Dworsky"), a Caucasian. (B0017). When Plaintiff was transferred to Dworsky's team, Plaintiff was informed that her work responsibilities would continue as normal, and her performance expectations would remain the same as they were under her former hiring manager, Edwin Derek Alston. (B0034). Plaintiff had no problems with any of her supervisors prior to Dworsky. (B0022-23, B0027).

### Dawn Dworsky's Racial Bias

During the time when Plaintiff was employed by Defendant, Dworksy made a racially derogatory comment to a group in which Plaintiff was present. Dworsky asked "why do Black people dress up for church and why is the music so loud?" (B0043-0044). Plaintiff found this comment to be derogatory because it was a generalization of all Black people. (B0044). Although, Plaintiff did not inform Dworksy that she was offended by the comment, she [Plaintiff] did inform Human Resources. (B0045). A second incident that took place involved Dworsky and Randy Miller when they were making gestures of putting their hands to their noses, to infer there was a smell and laughing. Plaintiff asked what was funny and no one would tell her. Therefore, she believed since she was the only person who was "not involved" and that she was the only African-American present that the group was referring to her. (B0045-0055).

### Plaintiff's Relevant Computer Experience

Prior to joining the employ of Defendant, Plaintiff had previously used certain software applications which included ORACLE, GMC, Card One, and UNIX for the database. Although Plaintiff did not program these applications, she was familiar with each software package. (B0002-0003, B0009-0010). Plaintiff did not specifically list all of her previous computer

4

experience including her UNIX experience on her original employment application because she did not believe that she was proficient in each of these areas. (B0012).

After Plaintiff began working for Defendant, she continued to build her technical skills by attending a Dazel Certification Course. (B0004-0005, B0026). Dazel is a software program that is an output server that generally manages output from any location, from almost any format. (B0006). Plaintiff had specific experience with using Dazel in that she engineered the Dazel program for specific client needs. (B0007). She also attended a Microsoft Certification Course and a Microsoft Engineering Certification Course. Further, she completed several computer based training courses on-line through her employment with Defendant. (B0004-0005, B0026). Plaintiff continued to build her skills regarding UNIX and Dazel when she was in the Managed Print Group. She also programmed and analyzed problems with the computer languages of Shell and UNIX and used PERL along with Dazel. (B0025, B0028-0029). Finally, she was also pursuing further UNIX training on her own time. (B0020-0021).

### Plaintiff's Similarly-Situated Caucasian Co-Workers

Randall Miller became a member of the MPD team approximately 7 months before Plaintiff's 2001 appraisal. Randall Miller had no experience with Dazel because he was still in training to become certified; he had just recently become a member of the MPD team; and was still in 'job training'. Dworsky informed Plaintiff that she would not receive a promotion because she did not have the skill-set. However, Plaintiff's skill level in Unix, Perl, Dazel, etc. was greater than Randall's skills at that time. (B0057-0061).

In addition, Plaintiff salary was $49,345.92 and her similarly-situated Caucasian co-workers, who were performing substantially the same duties and responsibilities as Plaintiff were making significantly more money than Plaintiff. Specifically, Randall Miller was making

$61,534.93 and MaryAnne Doll-Johnson who was an SMTS was making $64,5178.90. (B0057-0061).

### Performance Evaluations

Plaintiff acknowledges that it was more difficult to have objective performance measures after she was promoted to the Managed Print Group. (B0024).

During the performance evaluation meeting, Dworsky indicated that Plaintiff was doing a "good job," that she should continue on the path that she was on, that she was focused, that she was a good worker, and that Plaintiff had a good work ethic. At the conclusion of this conversation, Dworsky advised Plaintiff that she was only receiving a "3" rating on her review. It was at this point that Plaintiff advised Dworsky that she disagreed with her 2001 performance evaluation rating. (B0035-0036). As a result of her performance evaluation, Plaintiff made several complaints to Defendant's Human Resources Office that she felt that she was being subjected to disparate treatment based upon her race.

### Failure to Promote

During Plaintiff's performance evaluation meeting for her 2001 performance evaluation, Dworksy advised Plaintiff that she was not going to be promoted because there were guidelines and that she could only promote a certain number of people. (B0036). However, Dworsky informed Plaintiff that she would not receive a promotion because she did not have the skill-set. (B0058).

### Salary Disparity

Dworsky advised Plaintiff that she would receive a salary adjustment because her salary was unfairly and unjustly disproportionate to other members of the team. (B0037-0038).

## Retaliation

Shortly after Plaintiff made the internal complaints of discrimination, Plaintiff met with Ms. Maureen Summers and Dworsky to discuss her work assignments. Plaintiff was informed that she was being removed as lead Dazel engineer from all of her engineering projects, including the Dazel SAP ("DSAP"), the DuPont Dow Elastomers ("DDE"), the United States Postal Services ("USPS"), Aspen and the "Minerva" assignments. Instead, Plaintiff was forced to write a technical manual, to which she objected. Subsequently, Plaintiff was told that all company projects had been completed, and that this assignment was the only one available to her. (B0039). Even though Dworksy advised Plaintiff that the engineering projects were complete, Plaintiff was still receiving emails about the projects that indicated that they were not complete. (B0040).

Dworsky treated Plaintiff differently than her similarly-situated co-workers, who were Caucasian, whereby Dworksy failed to recognize Plaintiff as a member of her group. (B0030). When Plaintiff would request meetings with Dworsky, she failed to respond until Plaintiff made several repeated requests. (B0033). Plaintiff was not aware of anyone else in her group that was having the same problems that she was experiencing with Dworsky. Plaintiff was the only African-American in the Managed Print Group. (B0031-0032).

On or about June 15, 2001, Plaintiff met with Ms. Maureen Summers, a Caucasian, Employee Relations Specialist in Defendant's Human Resources Department, and advised her that she believed she was being subjected to disparate treatment with regard to the terms and conditions of her employment compared to her similarly-situated Caucasian co-workers, and that her wages were disproportionately lower than similarly-situated Caucasian male co-workers. Plaintiff also stated to Summers that she was the only African-American in the department and

was being excluded from important communications, as well as subjected to offensive racially-based comments.

In several meetings with Ms. Summers and Sonia Koplowicz that took place over the next few weeks, Plaintiff also stated that she felt retaliated against for voicing her complaints to Dworsky, who subsequently began to scrutinize Plaintiff's work, isolate her from the rest of the group and held Plaintiff to higher standards regarding Plaintiff's performance and the requirements and/or qualifications for advancement.

### Transfer Requests

Plaintiff applied for a supervisory position in Defendant's chemical group in or around March 2001. Plaintiff was granted an interview for the position on or about March 14, 2001. Plaintiff inquired with the hiring manager, Ms. Beth Musmeci, as to why the salary increase offer was only 6%, and was informed that the offer was comprised of a current supervisory increase of 3% and a promotion increase of 3%. Plaintiff contacted Dworsky to inquire why the supervisory increase was so low, but Dworsky refused to increase Plaintiff's salary by more than 3%. Plaintiff requested a more reasonable increase for the position offered to her and was offered an additional 2% increase, for a total offering of 8%, by the hiring manager. Dworsky, however, refused to increase the offer above what had already been offered to Plaintiff. Plaintiff did not demand a salary of $63,000 which was a 36% increase of her current salary. (B0042). Plaintiff had no other option but to decline the position due to Defendant's unwillingness to increase Plaintiff's salary to a level that was comparable to the previous supervisor's salary that was paid to Ms. Beth Musmeci. After Plaintiff declined the position, a co-worker informed her that Dworsky did not like the fact that Plaintiff was applying for another position and this co-worker warned Plaintiff to "watch out". Plaintiff informed this co-worker that she had discussed the

opportunity with Dworsky and that Dworsky told Plaintiff she would not "hold [her] back" if she wanted the position.

### Charge of Discrimination

With no other administrative remedy available to her, Plaintiff filed a Charge of Discrimination against Defendant with the Delaware Department of Labor on or about July 5, 2001 alleging race, sex and retaliation. (B0041).

The Delaware Department of Labor investigated Plaintiff's Charge of Discrimination alleging race, sex and retaliation and found in favor of Plaintiff, citing reasonable cause that violations of Title VII and 19 Del. C. § 711 had occurred. The Delaware Department of Labor issued its Investigative Memorandum on or about May 31, 2002. The Delaware Department of Labor then attempted informal methods of conciliation.[1] Plaintiff did not accept Defendant's offer to settle this matter at the administrative process stage. This occurred sometime between June 2002 and November 2002. (B0062-0067).

The United States Equal Employment Opportunity Commission also investigated Plaintiff's complaint of racial, sex, and retaliation discrimination and found in favor of Plaintiff, citing violations of Title VII. The United States Equal Employment Opportunity Commission issued its Determination on or about July 8, 2003.

### Termination

Plaintiff was terminated on or about September 27, 2002 for alleged failure to provide medical certification. Although Plaintiff acknowledges that her failure to provide medical certification in a timely manner could result in a voluntary resignation, Plaintiff could not force her doctor to provide the certification at a certain time. As Defendant contends in its Opening

---

[1] The Delaware Discrimination in Employment Act required the Department of Labor to attempt conciliation after a reasonable cause finding was issued. 19 Del. C. §712(c).

Brief, Plaintiff consistently failed to provide medical certification in a timely manner. However, it was not until September when Defendant finally decided that it was going to accept Plaintiff's voluntary resignation, even though it failed to follow its own policies on several prior occasions.

**ARGUMENT**

## I.    SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that Summary Judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." A fact is material if it might affect the outcome under the governing substantive law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citing 10 A. C. Wright, A. Miller & M. Kane, Federal Practice & Procedure §2725, at 93-95 (1983)). In addition, a dispute over a material fact must be "genuine", i.e., the evidence must be such "that a reasonable jury could return a verdict in favor of the non-moving party." Id.

When a Motion for Summary Judgment is made, and supported as provided in Rule 56 of the Federal Rules of Civil Procedure, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995). If the moving party has

11

demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all facts and inferences to be drawn there from in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." Revis v. Slocomb Indus., 814 F. Supp. 1209, 1215 (D. Del. 1993) (quoting Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987)).

## II.    PLAINTIFF'S RACIAL DISCRIMINATION CLAIM MUST SURVIVE SUMMARY JUDGMENT

In her Complaint, Plaintiff alleges that Defendant discriminated against her on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)(1) and 42 U.S.C. §1981.

Plaintiff alleges the discrimination occurred when Defendant promoted Randall Miller, a Caucasian male, and as a result of the salary disparity between Plaintiff and her similarly-situated Caucasian co-workers.

### A.    Plaintiff Established a Prima Facie Case of Racial Discrimination

Title VII provides that:

> It shall be unlawful employment practice for an employer -- (1) to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national

> origin; or (2) to limit, segregate, or classify his employees or
> applicants for employment in any way which would deprive or
> tend to deprive any individual of employment opportunities or
> otherwise adversely affect his status as an employee, because of
> such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

In order to establish a *prima facie* case based on discrimination, plaintiff must prove that: (1) she is a member of a protected class; (2) she suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly-situated person not of the protected class is treated differently. See Boykins v. Lucent Techs. Inc., 78 F. Supp. 402, 409 (E.D. Pa 2000) (citing Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999)). However, the Third Circuit recognizes that the elements of a discrimination case may vary depending on the facts and context of the particular situation. Pivirotto v. Innovative Sys. Inc., 191 F.3d 344, 352 (3d Cir. 1999).

### 1.    Plaintiff is a Member of a Protected Class

African    Americans    are    a    protected    class    under    Title    VII. Bradley v. United States, 299 F.3d 197, 206 (3d Cir., 2002). Plaintiff is an African-American female. (B0001).

### 2.    Plaintiff Suffered Adverse Employment Actions

The standard to determine whether an adverse employment action occurred for discrimination claims brought pursuant to Title VII is identical to the standard utilized in retaliatory claims brought pursuant to Title VII. See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 411 (3d Cir. 1999). Denial of a promotion constitutes an adverse employment action. See Kidd v. MBNA America Bank, N.A., 224 F. Supp. 2d 807, 811 (D.Del. 2002).

Plaintiff was denied a promotion to the SMTS position, in favor of a less qualified Caucasian man. In addition to the denial of her promotion, Plaintiff suffered the additional adverse employment action of a salary disparity between herself and her similarly-situated Caucasian co-workers.

### 3.    Plaintiff was Treated Less Favorably than Similarly-Situated Caucasians

The final element that must be established in a discrimination case is that similarly-situated persons not in a protected class were treated more favorably. <u>Kidd</u>, 224 F.Supp. 2d at 812. Caucasians are not a protected class. <u>Jones v. United States Postal Serv.</u>, 2004 U.S. Dist. LEXIS 14951 (D. Del., 2004).

Here, Randall Miller, a Caucasian, who had no experience with Dazel; no experience on the MPD team; and was in still in 'job training' was promoted over Plaintiff. Further, Dworksy admitted to Plaintiff that her salary was disproportionate to her similarly-situated co-workers and that if she were to be promoted, the disparity would only increase.

### B.    Plaintiff Has Cast Sufficient Doubt Upon Defendant's Reasons for Failure to Promote Her – To Evidence Pretext

Based upon the discrepancies in the record, Plaintiff has cast sufficient doubt upon Defendant's reasons for its failure to promote her and regarding her salary disparity to create a genuine issue of material fact which precludes the granting of summary judgment in Defendant's favor.

## III.   PLAINTIFF'S RETALIATION CLAIM MUST SURVIVE SUMMARY JUDGMENT

### A.    Plaintiff Has Established a Prima Facie Case of Retaliation

A plaintiff claiming retaliation under Title VII must establish that: (1) she engaged in a protected activity; (2) the defendant took an adverse employment action against her; and (3) a causal link exists between the protected activity and the adverse employment action. <u>See</u> <u>Kachmar v. Sungard Data Sys., Inc.</u>, 109 F.3d 173, 177 (3d Cir. 1999).

### 1.    Plaintiff Engaged In Protected Activity

According to Title VII, a "protected activity" is any instance when an employee has:

14

> opposed any practice made an unlawful employment practice by
> this subchapter, or ... has made a charge, testified, or participated
> in any matter in an investigation, proceeding, or hearing under this
> subchapter.

42 U.S.C. § 2000e-3(a). Here, Plaintiff complained to Defendant's internal Human Resources Department and also filed a Charge of Employment Discrimination with the Delaware Department of Labor.

### 2.    Plaintiff Was Subjected to Adverse Employment Actions

Under Title VII, an adverse employment action is an action that alters the employee's compensation, terms, conditions or privileges of employment, deprives him of employment opportunities or adversely affects his status as an employee. See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997). "Job termination, however, is not a requirement for a finding of adverse employment action - much less severe action can suffice." Lafate v. Chase Manhattan Bank (USA), 123 F. Supp. 2d 773, 778 (D. Del. 2000); Torre v. Casio, Inc., 42 F. 3d 825, 831 (3d Cir. 1994) (finding that a job transfer without loss of pay or benefits, may constitute an adverse job action). The United States Supreme Court has defined an adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 761 (1998).

When determining whether an adverse employment action has occurred, courts should not analyze the employer's acts in isolation, but instead should analyze all of the employer's acts collectively. See Shaner v. Synthes, 204 F.3d 494, 503 (3d Cir. 2000); see also Lafate, 123 F. Supp. 2d at 778; and Lowman v. State of Delaware Department of Corrections, 2003 U.S. Dist. LEXIS 2579 (D. Del. February 21, 2003) (holding that the multiple acts collectively can constitute an adverse employment action). Courts have established, as a matter of law, that conduct, including a reduction of duties, disciplinary actions, negative personnel reports and requiring an employee to undergo remedial training constitute an adverse employment action. See Id. (citing Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir. 1997).

15

Here, Plaintiff was subject to adverse employment actions when she had work taken away from her as detailed in the statement of material facts, even though she was advised that she was performing well, when her work was criticized and scrutinized by her superior, and when she was terminated.

        **3.    A Causal Connection Exists Between Plaintiff's Protected Activities and the Adverse Employment Action**

Determining whether there is a causal link between the protected act and the adverse employment action is highly fact sensitive and timing is not the only factor to be considered. "Although timing and ongoing antagonism have often been the basis for the causal link, our case law clearly allowed a plaintiff to substantiate a causal connection for purposes of the *prima facie* case through other types of circumstantial evidence that support the inference." Farrell v. Planters Lifesavers Co., 206 F. 3d 271, 280-81 (3d Cir. 2000). In EEOC v. L.B. Foster Co., 123 F.3d 746 (3d Cir. 1997), cert. denied, 522 U.S. 1147 (1998), the court found that plaintiff established a *prima facie* case of retaliation "based on temporal proximity of events plus inconsistencies in the defendant's testimony, certain conduct towards others, and refusals to provide a reference for the plaintiff." Farrell, F.3d at 281 (citing L.B. Foster Co., 123 F.3d at 753-55).

Here, Plaintiff was advised that she was performing well, but almost immediately after she began to complain about her treatment by Dworsky, she had work taken away from her, the work she was handling was criticized and scrutinized more so than her similarly-situated Caucasian co-workers

       **B.    Defendant Has Not Provided a Legitimate, Non-Retaliatory Reason for its Treatment of Plaintiff After She Engaged in Protected Activity**

Defendant contends that Plaintiff cannot show that the reason for her termination from employment, i.e. her failure to timely submit the requisite medical certifications during her medical leave of absence pursuant to Defendant's well publicized leave of absence policy was a

pretext for retaliation. Plaintiff admits she was well aware of her obligations to provide the medical certification every thirty days during her medical leave of absence. Plaintiff also concedes that she knew her failure to comply with this obligation would give Defendant the right to terminate her employment. However, as cited in Defendant's Opening Brief in support of its Motion for Summary Judgment, it acknowledges that Plaintiff failed to provide timely medical certifications several times during her leave of absence and Defendant deviated from its own written policy. Defendant could have terminated Plaintiff the first time she failed to provide timely certification. See Bass v. Board of County Comm'rs 256 F.3d 1095 (11th Cir. 2001). (The employer's deviation from its standard written procedures was circumstantial evidence of discrimination, which presented an issue for trial). It was not until September 2002 when Defendant finally decided that it was going to terminate Plaintiff's relationship. The decision to terminate Plaintiff came shortly after the Delaware Department of Labor issued its reasonable cause finding to believe a violation of the State discrimination law took place and after Plaintiff refused to accept Defendant's settlement offer. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's claim of retaliation should be denied.

Even assuming that the Court accepts Defendant's argument that its reason for terminating Plaintiff was a legitimate, non-retaliatory reason, Plaintiff has established a genuine issue of material fact regarding the fact that Defendant took work away from her and overly criticized and scrutinized her work shortly after she engaged in protected activity.

## IV.    PLAINTIFF'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING MUST SURVIVE SUMMARY JUDGMENT

Plaintiff's Complaint alleges a breach of the implied covenant of good faith and fair dealing under Delaware law. One category in which the implied covenant is implicated is when

17

the termination violates public policy.  See <u>Conneen v. MBNA America Bank, N.A.</u>, 334 F. 3d 318, 334 (3rd Circuit 2003) applying Delaware law.

Defendant contends that at Plaintiff's deposition, she was unable to identify how Defendant purportedly breached the implied covenant.  However, Plaintiff's Complaint alleges that Defendant breached the implied covenant of good faith and fair dealing based upon the same facts as her claims of unlawful discrimination and retaliation.  For all the reasons detailed above, Plaintiff has satisfied her burden under Title VII to support an inference of unlawful employment discrimination to withstand the granting of summary judgment in favor of Defendant.  Therefore, Plaintiff's claim for the breach of implied covenant of good faith and fair dealing must survive summary judgment.

## V.    PLAINTIFF'S EQUAL PAY ACT CLAIM MUST SURVIVE SUMMARY JUDGMENT

The Equal Pay Act prohibits employers from discriminating between employees in their wages "on the basis of sex" for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to "(i) a seniority system; (ii) a merit system; (iii) a system that measures earnings by quantity or quality of production; or (iv) a differential based on any other factor than sex."  29 U.S.C. §206(d)(1).  The Equal Pay Act only prohibits discriminatory salary disparity on the basis of sex.  <u>Id.</u>  Although Plaintiff acknowledges that MaryAnne Doll-Johnson was the highest paid member of the Dazel group, Doll-Johnson's position was that of SMTS.  At the time prior to Mr. Miller's promotion to an SMTS, both Plaintiff and Miller were both SMTB's and were working under similar working conditions.  Therefore, Plaintiff's Equal Pay Act claim must survive summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Honorable Court to
deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

MARGOLIS EDELSTEIN

*Keri L. Morris*

Jeffrey K. Martin, Esquire (DE #2407)
Keri L. Morris, Esquire (DE #4656)
1509 Gilpin Avenue
Wilmington, DE  19806
(302) 777-4680
Attorneys for Plaintiffs

Dated: May 27, 2005