# TAB A

LEXSEE 2004 U.S. DIST. LEXIS 14951

DENISE M. JONES, Plaintiff, v. UNITED STATES POSTAL SERVICE, Defendant.

Civ. No. 02-1449-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 14951

July 21, 2004, Decided

**DISPOSITION:** [*1] Defendant's motion for summary judgment granted. Judgment entered in favor of Defendant and against Plaintiff.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendant United States Postal Service (USPS) pursuant to Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e* et seq., alleging discrimination on the basis of race and sex. The USPS moved for summary judgment.

**OVERVIEW:** The former employee had established a prima facie case of race and gender discrimination by showing that a Caucasian female employee, a similarly situated person who was not a member of a protected class, was treated more favorably when she was allowed to talk to a maintenance employee on occasion for 30 minutes at a time without being reprimanded. Moreover, a Caucasian male employee was not given his final evaluation at the end of his probationary period, but the former employee was given her final evaluation. However, the former employee's unsatisfactory evaluations, the numerous deficiencies in her performance, and the corroborative testimony of a second supervisor met the USPS's burden of showing a legitimate, nondiscriminatory reason for the termination. The former employee failed to show that the articulated reason for her termination was a pretext for discrimination, as she provided no evidence to show that her unsatisfactory evaluations, numerous performance deficiencies, and insubordination were not the reasons for her termination.

**OUTCOME:** The motion for summary judgment was granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] A court shall grant summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN2] The party moving for summary judgment bears the burden of proving that no genuine issue of material fact exists. Facts that could alter the outcome are material, and disputes are genuine if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct. If the moving party has demonstrated an absence of material fact, the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial. The court will view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the

Case 1:04-cv-00217-GMS  Document 54-2  Filed 05/27/2005  Page 3 of 6

Page 2
2004 U.S. Dist. LEXIS 14951, *

burden of proof, the moving party is entitled to judgment as a matter of law.

*Labor & Employment Law > Discrimination > Actionable Discrimination*
*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN3] With respect to summary judgment in employment discrimination cases, the court's role is to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff.

*Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis*
[HN4] Claims brought pursuant to Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e* et seq., are analyzed under a burden-shifting framework. Under this framework, a plaintiff must first establish a prima facie case of race or gender discrimination under Title VII. In order to state a case based on discrimination, the plaintiff must prove that: (1) she is a member of a protected class; (2) she suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly-situated person not of the protected class is treated differently. The United States Court of Appeals for the Third Circuit recognizes, however, that the elements of a prima facie case may vary depending on the facts and context of the particular situation. If the plaintiff makes a prima facie showing of discrimination, the burden shifts to defendant to establish a legitimate, nondiscriminatory reason for its actions. If the defendant carries this burden, the presumption of discrimination drops from the case, and the plaintiff must cast sufficient doubt upon the defendant's proffered reasons to permit a reasonable factfinder to conclude that the reasons are fabricated.

*Labor & Employment Law > Discrimination > Title VII*
[HN5] See *42 U.S.C.S. § 2000e-2*(a).

*Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis*
[HN6] Once a defendant has met its burden of articulated a legitimate, nondiscriminatory reason for an employment action, the plaintiff must point to weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons such that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the proffered non-discriminatory reason did not actually motivate the employer's action.

**COUNSEL:** Denise M. Jones, Plaintiff, Pro se, Newark, Delaware.

Colm F. Connolly, United States Attorney and Patricia C. Hannigan, Assistant United States Attorney, Wilmington, Delaware, Counsel for Defendant.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM OPINION**

Dated: July 21, 2004
Wilmington, Delaware

**ROBINSON, Chief Judge**

**I. INTRODUCTION**

On August 21, 2002, plaintiff Denise M. Jones filed a complaint under Title VII of the Civil Rights Act of 1964 as amended, *42 U.S.C. § 2000e*, naming her former employer, the United States Postal Service, as defendant. (D.I. 3) Plaintiff alleges discrimination on the basis of race and sex. (Id.) Equitable and other relief are also sought under *42 U.S.C. § 2000e-5(g)*. (Id.) The court has jurisdiction over plaintiff's claims pursuant to *28 U.S.C. § 1331*. On August 30, 2002, plaintiff's application to proceed in forma pauperis was granted. (D.I. 2) Currently before the court is defendant's motion for summary judgment. (D.I. 27) For the reasons [*2] that follow, defendant's motion shall be granted.

**II. BACKGROUND**

Plaintiff is an African-American female, formerly employed at the United States Postal Service's Hockessin, Delaware Processing and Distribution Center as a part-time Flexible Mark-Up Clerk. (D.I. 27 at 1) Plaintiff alleges her termination was the result of race and sex discrimination, specifically pregnancy. (D.I. 3)

Plaintiff was hired on April 8, 2000, and was nearly six months pregnant at that time. (D.I. 27 at 1) Plaintiff's duties included operation of a computer keyboard to enter and extract data to various databases, and other duties in support of that assignment. (D.I.3 at 12) All of defendant's employees serve a ninety-day probationary period throughout which their performance is evaluated based on six categories: Work Quantity, Work Quality,

Dependability, Work Relations, Work Methods, and Personal Conduct. (Id. at 2)

A new supervisor was assigned to plaintiff's unit on April 12, 2000. (Id.) The supervisor evaluated plaintiff once in early May 2000, and again on June 29, 2000. (Id.) At the initial evaluation, the supervisor rated plaintiff as "unsatisfactory" in five of the six categories. [*3] (Id. at 3) The supervisor stated that the poor ratings were due to plaintiff's inability to meet the productivity goals set for clerks; plaintiff's habit of returning late from breaks; plaintiff's kicking of mail tubs; and plaintiff's complaints when she was asked to undertake certain tasks. (D.I. 27, ex. B 162-167) When the supervisor met with plaintiff to discuss the evaluation, plaintiff was told that she needed to "get her numbers up." (D.I. 27, ex. A at 37)

In the final evaluation on June 29, 2000, the supervisor again rated plaintiff as "unsatisfactory" in every category with the exception of "Work Relations" and "Work Methods." (D.I. 27, Ex. A at 39) The supervisor cited various performance deficiencies by plaintiff, including: returning late from breaks because she was talking to coworkers; talking to coworkers while she was supposed to be working at her terminal; going to the break room for fifteen minutes after clocking in rather than reporting to the work floor; bringing food and uncovered beverages to the work floor; kicking tubs used for gathering mail; using her cell phone on the work floor; and that she was insubordinate. (D.I. 27 at 6) In addition, the supervisor [*4] wrote on plaintiff's final evaluation "frequently must be told by supervisor to stop talking and resume work." (D.I. 3 at 16) Another supervisor states that he observed plaintiff "punching in" and going straight to the break room rather than the work floor several times. (D.I. 27, Ex. A at 24)

After the final evaluation, plaintiff was informed by her supervisor that she would not be retained by defendant. (D.I. 3 at 16) The reason stated for her termination in the written notice was that "her overall rating during the probationary period was unsatisfactory." (Id. at 17) Plaintiff's termination was effective on July 3, 2000. (D.I. 27, ex. A at 19-20)

Plaintiff admits that she brought an uncovered beverage to the work floor; improperly "pushed" mail tubs with her feet; clocked in and went directly to the break room; and did not immediately respond to her supervisor's request that she hang up her cell phone while on the work floor. n1 (Id.)

n1 Plaintiff characterizes these as mostly isolated incidents. (D.I. 27, Ex. A at 19)

[*5]
Plaintiff filed an administrative complaint of discrimination with the Equal Employment Opportunity Commission, claiming that her termination was the result of race and sex discrimination, specifically pregnancy. (Id.) In the complaint, plaintiff alleges she was treated differently than two Caucasian probationary employees, one male and one female, n2 who were both retained. (D.I. 3) With respect to the male employee, plaintiff claims that the supervisor called him "son," which plaintiff felt showed "favoritism." (Id.) Plaintiff also alleges that another female employee was often allowed to talk with a maintenance employee for thirty minutes at a time without reprimand. n3 (Id.) Also, plaintiff alleges the supervisor would compliment this other female employee when she met performance goals, but would not compliment plaintiff when she met the same goals. (Id.) The record shows that plaintiff met performance goals on at least two occasions. (D.I. 3 at 18) The record also indicates that the supervisor recommended that two other clerks, a Hispanic male and a Caucasian female, be separated at or around the same time as plaintiff. (D.I. 27, ex. G) This male was not recommended [*6] for retention due to his inability to meet keying goals. This female was not recommended for retention because she frequently returned late from lunch and breaks. (Id.)

n2 This female is identified as a Caucasian employee in Agency records; however, plaintiff testified that she believed her to be Hispanic. (D.I. 27, Ex. A at 22)

n3 The supervisor testified that this female employee continued to key information while talking to the coworker. (D.I. 3 at 23) The record indicates that this other female employee received unsatisfactory ratings from the supervisor in two categories at her first evaluation, but at the end of her probationary period, she received ratings of outstanding and satisfactory in those two categories. (D.I. 3 at 14)

Plaintiff alleges the supervisor demonstrated discriminatory animus when she failed to conduct a final evaluation of the male employee, but did conduct a final evaluation of plaintiff. (D.I. 3 at 23) However, the supervisor testified that she was unaware that the male employee [*7] was at the end of his probationary period when she began supervising the unit. (Id. at 24) Plaintiff further alleges the supervisor continually asked her when she was going on maternity leave and believes this demonstrated that her upcoming maternity leave negatively affected her performance evaluations. (D.I. 27, ex. A at 21) The complaint was investigated and an

Case 1:04-cv-00217-GMS   Document 54-2   Filed 05/27/2005   Page 5 of 6

Page 4
2004 U.S. Dist. LEXIS 14951, *

administrative hearing conducted on May 3, 2002. (Id.) Witnesses at the hearing included plaintiff and the supervisor. (D.I. 27, ex. B)

The administrative judge issued a decision on May 21, 2002, finding no discrimination by defendant in its decision to terminate plaintiff. (D.I. 27, ex. F) The administrative judge found the following: (1) that plaintiff was not satisfying the normal prerequisites of the clerk position; (2) that plaintiff presented no evidence to refute the testimony of the supervisor with regard to her explanations for the deficiencies in her administration of the probationary evaluation process; and (3) that plaintiff did not show that she was treated differently than any similarly situated non-pregnant employee. (D.I. 3 at 17-25) Defendant issued a Final Agency Decision on May 28, 2002, implementing [*8] the decision of the administrative judge. (D.I. 27, ex. C) Plaintiff filed the instant complaint on August 21, 2002. (D.I. 3)

### III. STANDARD OF REVIEW

[HN1] A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. [HN2] The moving party bears the burden of proving that no genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*. "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)* (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward [*9] with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita, 475 U.S. at 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348* (quoting *Fed. R. Civ. P. 56(e)*). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995)*. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. [HN3] With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences [*10] to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Revis v. Slocomb Indus., 814 F. Supp. 1209, 1215 (D. Del. 1993)* (quoting *Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987))*.

### IV. DISCUSSION

Plaintiff alleges that she was subject to discrimination based on race and sex when defendant terminated her employment in violation of Title VII of the Civil Rights Act of 1964. n4 [HN4] Claims brought pursuant to Title VII are analyzed under a burden-shifting framework. Under this framework, plaintiff must first establish a prima facie case of race or gender discrimination under Title VII. In order to state a case based on discrimination, plaintiff must prove that: (1) she is a member of a protected class; (2) she suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly-situated person not of the protected class is treated differently. [*11] See *Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 409 (E.D.Pa. 2000)* (citing *Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999))*. The Third Circuit recognizes, however, that the elements of a prima facie case may vary depending on the facts and context of the particular situation. See *Pivirotto v. Innovative Sys. Inc., 191 F.3d 344, 352 (3d Cir. 1999)*. If plaintiff makes a prima facie showing of discrimination, the burden shifts to defendant to establish a legitimate, nondiscriminatory reason for its actions. See *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*. If defendant carries this burden, the presumption of discrimination drops from the case, and plaintiff must "cast sufficient doubt" upon defendant's proffered reasons to permit a reasonable factfinder to conclude that the reasons are fabricated. See *Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir. 1996)* (en banc).

---

n4 The anti-discrimination provision of Title VII provides:

Case 1:04-cv-00217-GMS    Document 54-2    Filed 05/27/2005    Page 6 of 6

Page 5
2004 U.S. Dist. LEXIS 14951, *

[HN5] It shall be an unlawful employment practice for an employer-- (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

[*12]

Defendant contends plaintiff has failed to establish a prima facie case of race or gender discrimination. Plaintiff is a member of a protected class and has demonstrated an "adverse employment action" in that she was terminated. Plaintiff has alleged facts sufficient to meet her burden of a prima facie case in that the Caucasian female employee, a similarly situated person who is not a member of a protected class, was treated more favorably than plaintiff when she was allowed to talk to a maintenance employee on occasion for thirty minutes at a time without being reprimanded. In addition, the Caucasian male employee, also a similarly situated person who is not a member of a protected class, was not given his final evaluation. For these reasons, the court finds plaintiff has met the burden of proving a prima facie case.

However, the court also finds that plaintiff's unsatisfactory evaluations, the numerous deficiencies in her performance, and the corroborative testimony of a second supervisor, meet defendant's burden for showing a legitimate, nondiscriminatory reason for the action. Therefore, the burden shifts back to plaintiff to show that the reason articulated was not [*13] the actual reason, but rather a pretext for discrimination. See *St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993).* [HN6] Plaintiff must point to "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them 'unworthy of credence'" and hence infer that the proffered non-discriminatory reason "did not actually motivate" the employer's action. *Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).*

The court finds that plaintiff has failed to meet this burden. Plaintiff has provided no evidence that would allow a factfinder to reasonably disbelieve that her unsatisfactory evaluations, numerous performance deficiencies, and insubordination were the reasons for plaintiff's termination. Nor has plaintiff provided any evidence that would allow a factfinder to believe that an invidious discriminatory reason was more likely than not a motivating cause of defendant's action. See *Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998).* In addition, the record indicates that the supervisor recommended that two [*14] other clerks, a Hispanic male and a Caucasian female, be terminated at or around the same time as plaintiff. These clerks were terminated for failing to meet keying goals and returning late from breaks, reasons which are identical to the performance deficiencies cited in plaintiff's evaluations. Finally, plaintiff has not shown that defendant has previously discriminated against her or against other persons within plaintiff's or other protected classes. *Fuentes, 32 F.3d at 765.* Therefore, defendant is entitled to summary judgment.

## V. CONCLUSION

For the reasons stated, the court shall grant defendant's motion for summary judgment. An appropriate order shall issue.

### ORDER

At Wilmington, this 21st day of July, 2004, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that:

1. Defendant's motion for summary judgment (D.I. 27) is granted.

2. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff.

Sue L. Robinson

United States District Judge