# TAB 2



STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS
4425 NORTH MARKET STREET
WILMINGTON, DELAWARE 19802

TELEPHONE (302) 761-8200
FAX (302) 761-6601

May 31, 2002

Ms. Diane Poland
12 Berks Court
New Castle, DE  19720

RE:   Poland v. Computer Science Corporation
      Case No.: 0107216/17CA10300

Dear Ms. Poland:

Enclosed is this Agency's determination with respect to the above-captioned Charge of Discrimination. Based on the facts we were able to obtain in our investigation, we have found probable cause to believe that a violation of Title 19, Delaware Code, Chapter 7, Subchapter II, Section 711, as amended, has occurred.

The next step in this Agency's administrative efforts is to attempt conciliation in this matter. If conciliation fails for any reason, you may elect to have a public hearing before Delaware's Equal Employment Review Board or you may elect a letter of Right to Sue from the Equal Employment Opportunity Commission and then proceed to Federal District Court.

Please find enclosed a request for information which will be required in order to attempt to secure an appropriate remedy. Please complete the enclosed request and return it within fifteen (15) days. If you should have any further questions or concerns, please contact Cyrella Caldwell who will be handling the conciliation in this matter. Her telephone number is (302) 761-8202.

Thank you for your attention.

Sincerely,

*Susan A. Anders*
Susan S. Anders, Administrator
Office of Labor Law Enforcement

SSA/wh
Enclosure:   Copy of Investigative Memo
             Conciliation Questionnaire

B0056

Margolis Edelstein
Poland, Diane v. CSC
0001

INVESTIGATIVE MEMORANDUM

| | |
|---|---|
| CASE NUMBER(S): | 0107216/17CA10300 |
| CASE NAME: | Poland v. Computer Science Corporation |
| CASE ISSUE(S): | Race; Sex; Retaliation/ Wages; Terms and Conditions |
| DATE OF THE ALLEGED DISCRIMINATION: | September 09, 2000 through June 29, 2001 |
| DATE COMPLAINT FILED: | July 05, 2001 |
| INVESTIGATED BY: | Sandra Marquez |

COMPLAINT:

    Charging Party alleges that she was discriminated against based on her race (black) and sex (female) when she was subjected to disparate treatment with regard to terms and conditions of her employment, as compared to her similarly situated white co-workers. Charging Party also states that her wages were disproportionately low, as compared to similarly situated white co-workers and especially as compared to her male co-workers. Charging Party states that she had a new team manager, Dawn Dworsky (white), who had packed the team with her friends (all white). Charging Party states that she was increasingly, and systematically, excluded from important communications. Charging Party further states that she was subjected to offensive race based comments. Charging Party states that she voiced her complaint to Ms. Dworsky, and also told her that she believed Ms. Dworsky set the tone. Charging Party alleges that Ms. Dworsky retaliated against her by scrutinizing her work, and stepping up the isolation. Charging Party states that on June 15, 2001, she also complained to Maureen Summers (white), Employee Relations Specialist about the actions towards her by Ms. Dworsky. Charging Party further states that on June 29, 2001, Ms. Summers advised Charging Party that Human Resources would take no action to remedy her complaints.

    (Tab A)

**FINDINGS:**

1. Respondent's full and complete legal name is Computer Sciences Corporation. Respondent is a consultant and information technology firm. Respondent employs over 675 individuals in the state of Delaware and over 985 Nationwide. Charging Party began her employment with Respondent on November 10, 1997 and at all pertinent time has held the position of Member Technical Staff A.
   (Tab A)

2. Respondent denies that any discriminatory activity occurred. Respondent states that Charging Party's initial position was Help Desk Technician, Member Technical Staff B, at an annual salary of $41,000.00. Respondent states that in May 1998, Charging Party's

salary increased to $42,025.00. Respondent further states that on August 31, 1999, Charging Party was transferred and reassigned within the Chemical & Energy Group, Global Infrastructure Services as a Member Technical Staff B, Technician where she reported to Manager, Edwin Alston. Respondent further states that on May 31, 2000, based on a recommendation by Mr. Alston, Charging Party was promoted to Member Technical Staff A, Technician, which increased her salary to $46,997.00. Respondent states that in May 2001, Mr. Alston was replaced by Ms. Dawn Dworsky, as Charging Party's Manager. Respondent states that Charging Party addressed her disproportionately low salary as compared to her other white team members such as; Mr. Randall Miller (white) $61,534.93, Mr. Paul White (white) $68,921.01, Ms. Mary Doll-Johnson $64,518.90, with Ms. Dworsky. According to Respondent Ms. Dworsky gave Charging Party a 5% salary increase based on her performance, and to bring her salary closer to her peers. (Tab C)

3. Respondent states that Charging Party was not eligible for promotion to Senior Member Technical Staff, as she had been a Member Technical Staff A for only one year and did not meet the minimum requirements for skill and expertise. Respondent states that Charging Party has some CBT courses and experience in UNIX, but not enough to be proficient and certified in the UNIX operating system. Respondent states that Charging Party's named comparator, Mary Ann Doll-Johnson (white), who was promoted to Senior Technical Member Staff, has 8 years of relevant experience with the UNIX operating system and 17 years of overall experience. (Tab C)

4. Charging Party provided documentation that shows she met the requirements and qualifications to be promoted to a Senior Member Technical Staff position. Respondent was also requested to provide documentation to show Charging Party's comparators qualifications for the S04 position. In some cases the information was not provided. Respondent provided documents, which show that Mr. Randall Miller had less computer skills as compared to Charging Party, and no UNIX certification was provided. However, he was promoted into the position, while Charging Party was not upgraded. Overall, the documents submitted during this investigation show that Charging Party was held to higher standard regarding requirements/qualifications for advancement. (Tab C)

5. Based on the interviews conducted with Charging party and other witnesses, and Charging Party's recent performance records, Charging Party was disparately treated with regards to promotion. This information confirms the documentation submitted of the team members' qualifications, which as stated above, shows that Charging Party was turned away based on standards that others were not shown to have met. (Tab C)

6. The evidence presented during this investigation in the form of emails and witness information provided by Charging Party also indicates that Charging Party was subjected to work place isolation. An interview conducted with Ms. Dawn Dworsky also

substantiated Charging Party's allegation of race (black) discrimination. Ms. Dworsky also admitted that much of the social culture of the workplace involved a hockey league that Charging party did not belong to. Yet Respondent blamed Charging Party for the isolation this imposed upon her. Ms. Dworsky also admitted making intrusive comments about blacks at church gatherings. Ms. Dworsky also states that she recommended a 5% increase for Charging Party, although the records indicate that the 5% was actually recommended by Human Resources, and overrode Ms. Dworsky's recommendation of only 3%. (Tab C)

7. Information submitted by the parties indicate that once Charging Party complained of her low wages and disparate treatment, Respondent retaliated by with holding assignments that could have enhanced her professional development. Respondent also denied a number of opportunities to transfer Charging Party to another team, despite assurances that it would do so. Charging Party provided emails of positions that were available, and to which she could have been transferred. (Tab D)

8. Records also show that white males' salaries are generally higher than females' salaries on Charging Party's team. The salaries were as follows: Paul White (white male) $68,921.01, Mary Doll-Johnson (white female) $64,518.90, Randall Miller (white male) $61,534.93, Mr. Di Stefano (white male) $56,505.07, Diane Poland (black female) $49,345.92.
(Tab C)

**CONCLUSION:**

Based on a preponderance of the evidence provided during the investigation, Charging Party was subjected to discrimination on the basis of race and sex with regard to wages and terms and conditions of work. Charging Party has also met her burden of proof by establishing by a preponderance of the evidence, that Respondent retaliated against her for complaining by withholding opportunities for professional development and transfer to another team.

Charging Party was able to provide weighted evidence to establish that Respondent discriminated against her because of her race and sex and that Respondent retaliated against Charging Party. Therefore, based on the above evidence, this agency finds reasonable cause to believe that Respondent discriminated against Charging Party and retaliated against Charging Party, that reasonable cause does exist to believe that Respondent engaged in an unlawful employment practice in Violation of Title 19 of the Delaware Code, Chapter 7, as amended.

5/31/02
DATE

_Sandra Margue_
LABOR LAW ENFORCEMENT OFFICER II

5/31/02
DATE

_Susan A. Andles_
ADMINISTRATOR
OFFICE OF LABOR LAW ENFORCEMENT

B0059

Margolis Edelstein
Poland, Diane v. CSC
0004