IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DIANE POLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 04-217 (GMS) |
| | ) |
| COMPUTER SCIENCES CORP., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY TO PLAINTIFF'S ANSWERING BRIEF
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Sarah E. DiLuzio (#4085)
POTTER ANDERSON & CORROON LLP
1313 North Market Street
6th Floor, P.O. Box 951
Wilmington, Delaware 19801
(302) 984-6000 (general)
(302) 984-6279 (direct)
(302) 658-1192 (fax)
sdiluzio@potteranderson.com


Of counsel:
Larry R. Seegull
Amy Beth Leasure
DLA PIPER RUDNICK GRAY CARY US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000 (general)
(410) 580-4253 (direct)
(410) 580-3253 (fax)
larry.seegull@dlapiper.com

Counsel for Defendant
*Computer Sciences Corporation*

Date: June 8, 2005

## TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION..........................................................................................................1

II. ARGUMENT................................................................................................................4

    A. Plaintiff's Race Discrimination Claim Fails...............................................................4

        1. Plaintiff Failed To Establish A *Prima Facie* Case...........................................4

        2. There Is No Evidence Of Pretext......................................................................5

        3. Plaintiff Failed To Establish A Claim For Race Discrimination In Compensation.............................................................7

        4. Plaintiff's Reliance On Two Alleged Stray Remarks Is Insufficient Evidence Of Race Discrimination................................................8

    B. Plaintiff's Retaliation Claim Fails..............................................................................9

        1. No Evidence Of Excessive Scrutiny Or Criticism Of Her Work.....................9

        2. No Evidence Of Isolation................................................................................10

        3. No Evidence Of Retaliation In Removal Of Work Projects..........................10

        4. Plaintiff Failed To Present Any Evidence To Establish That She Was Terminated In Retaliation For Her Protected Activities.......................12

    C. Plaintiff's Equal Pay Act Claim Fails.......................................................................13

    D. The Administrative Findings Of The EEOC And The DDOL Do Not Preclude Summary Judgment...............................................................................13

III. CONCLUSION............................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Baker v. Wilmington Trust Co.,*
    320 F. Supp.2d 196 (D. Del. 2004)..................................................................12

*Barber v. CSX Distribution Services,*
    68 F.3d 694 (3d Cir. 1995)................................................................................4

*Berry v. E.I. DuPont de Nemours & Co.,*
    625 F. Supp. 1364 (D. Del. 1985)......................................................................1

*Berry v. Jacobs IMC, LLC,*
    2004 WL 1179270 (3d Cir. May 27, 2004).................................................6, 7

*Boykins v. Lucent Techs. Inc.,*
    78 F. Supp.2d 402 (E.D. Pa. 2000)...................................................................4

*Cardenas v. Massey,*
    269 F.3d 251 (3d Cir. 2001)............................................................................11

*Carnegie Ctr. Assocs. v. Rhett,*
    19 F.3d 290 (3d Cir. 1997)................................................................................5

*Cooper v. Southern Co.,*
    390 F.3d 695 (11th Cir. 2004)...........................................................................7

*Edwards v. Pennsylvania Turnpike Comm'n,*
    2003 WL 22508498 (3d Cir. Nov. 5, 2003)......................................................6

*Ezold v. Wolf, Block, Schorr & Solis-Cohen,*
    983 F.2d 509 (3d Cir. 1992)......................................................................6, 8-9

*Faragher v. City of Boca Raton,*
    524 U.S. 775 (1998).........................................................................................11

*Fuentes v. Perskie,*
    32 F.3d 759 (3d Cir. 1994)................................................................................4

*Johnson v. Gober,*
    2003 WL 22967266 (3d Cir. Dec. 18, 2003)....................................................8

*Johnson v. E.I. DuPont de Nemours & Co.,*
    60 F.Supp.2d 289 (D. Del. 1999)....................................................................10

*Jones v. City of Wilmington,*
    2004 WL 1534778 (D. Del. June 14, 2004)...................................................11

*Kim v. Nash Finch Co.,*
    123 F.3d 1046 (8th Cir. 1997)..........................................................................12

*Lewis v. State of Del. Dep't of Public Instruction,*
    948 F. Supp. 352 (D. Del. 1996)..............................................................7

*Ridgewood Bd. of Ed. v. N.E.,*
    172 F.3d 238 (3d Cir. 1999)...................................................................1

*Robinson v. City of Pittsburgh,*
    120 F.3d 1286 (3d Cir. 1997)................................................................10

*Sempier v. Johnson & Higgins,*
    45 F.3d 724 (3d Cir. 1995).....................................................................5

*Simpson v. Kay Jewelers, Division of Sterling,*
    142 F.3d 639 (3d Cir. 1998)...................................................................6

## I. INTRODUCTION

Plaintiff's Answering Brief In Response to Defendant's Motion for Summary Judgment ("Ans. Br.") is a classic example of a case in which a plaintiff relies upon nothing more than her own speculation and conclusory assertions in a futile attempt to forestall summary judgment. Third Circuit precedent makes clear, however, that mere conclusory allegations and unsupported arguments alone do not raise triable issues sufficient to preclude summary judgment. *See Ridgewood Bd. of Ed. v. N.E.*, 172 F.3d 238, 252 (3d Cir. 1999) ("[o]nce the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor....[s]peculation and conclusory allegations do not satisfy this duty."); *Berry v. E. I. DuPont de Nemours & Co.*, 625 F. Supp. 1364, 1377 (D. Del. 1985) (a "plaintiff's conclusory assertion that [s]he was treated differently by itself is insufficient to raise an inference of discrimination.").

By way of example, Plaintiff points to absolutely no record evidence to support the following claims she made in her Answering Brief:[1]

- No evidence to support her claim that Ms. Dworsky unfairly scrutinized and criticized her work and held her to a higher performance standard (Ans. Br. at 8);

- No evidence to support her claim that Ms. Dworsky isolated her from the rest of the Managed Print and Dazel ("MPD") group (Ans. Br. at 8);

- No evidence to support her claim that either Ms. Koplowicz or Ms. Summers, the individuals who made the decision to terminate Plaintiff, had any retaliatory motive toward Plaintiff (Ans. Br. at 14-17);

- No evidence to support her claim that she was qualified for the Senior Member Technical Staff ("SMTS") position based upon the relevant factors that Ms. Dworsky considered when she promoted Randall Miller. (Ans. Br. at 12-14.)

---

[1] It is interesting to note that Plaintiff took the depositions of three important witnesses in this case: Dawn Dworsky, Sonia Koplowicz, and Maureen Summers, and, yet, ***Plaintiff failed to cite to any testimony from these deponents in her Answering Brief***, even though CSC provided testimony from all of them.

Plaintiff's Answering Brief also is shocking for its overwhelming failure to respond to various critical pieces of evidence proffered by Computer Sciences Corporation ("CSC") that undermine her claims. For instance, Plaintiff offers no response to the following material facts set forth in CSC's Opening Brief ("Op. Br."):

- Contemporaneous with the 2001 evaluation, Ms. Dworsky provided Plaintiff with a salary increase above and beyond the Overall Merit Guidelines recommended by CSC (Op. Br. at 9; Pl. Dep. at A69)[2];

- After Plaintiff filed her charge of discrimination, Plaintiff isolated herself from the other members of the MPD group, and refused to speak to her team members (Op. Br. at 13-14; A224, 238-39);

- At the time Mr. Miller was promoted to SMTS in July 2002, Plaintiff had been out on a full-time medical leave of absence for five months, and it is CSC's standard practice and policy not to consider an employee for promotion while he or she remains out on medical leave (Op. Br. at 18, 22-23; A230, 236);

- Other employees who had not previously filed charges of discrimination were also terminated for failure to provide medical certifications related to their medical leaves of absence in accordance with CSC's Leave Policy. (Op. Br. at 31; A256.)

Moreover, in her Answering Brief, Plaintiff, at times, wholly ignores her own deposition testimony. For example, Plaintiff makes the following contentions in her Answering Brief, which are belied by her own deposition testimony:

- Plaintiff contends that an alleged incident in which Ms. Dworsky and Mr. Miller purportedly "ma[de] gestures of putting their hands to their noses, to infer there was a smell and laughing" established evidence of Ms. Dworksy's alleged racial bias (Ans. Br. at 4.) At deposition, however, Plaintiff testified that she did not know what the joke was, and did not know whether this purported joke had any racial basis or was even related to her (Pl. Dep. at C8-9);

- Despite contending in her Brief that her "skill level in Unix, Perl, Dazel, etc. was greater than Randall [Miller's]" (Ans. Br. at 5), Plaintiff admitted at deposition that she did not know anything about Mr. Miller's technical knowledge or whether he had more experience than her (Pl. Dep. at A81, A90);

- Plaintiff contends that she "did not demand a salary of $63,000 which was a 36% increase of her current salary." (Ans. Br. at 8) However, Plaintiff actually testified at

---

[2] The Appendices to Defendant's Opening and Reply Briefs are referred to as A_____ and C_____, respectively.

2

deposition that she could not recall whether or not she demanded a 36% increase, and, she specifically testified that she did not deny making such a request. (Pl. Dep. at A235, 237.)[3]

Another example of the weakness of Plaintiff's Answering Brief, is her claim that a co-worker "informed her that Dworky did not like the fact that Plaintiff was applying for another position and this co-worker warned Plaintiff to 'watch out.'" (Ans. Br. at 8.) Importantly, Plaintiff failed to cite to any evidence for this so-called "fact," nor could she, because this "fact" was not raised at any point during her 350-plus pages of deposition testimony. Further, in the very next sentence, Plaintiff admitted that she personally spoke with Ms. Dworsky, who informed her that "she would not 'hold [her] back' if she wanted the position." (Ans. Br. at 8-9.)

Comparing Plaintiff's Complaint to her allegations regarding her transfer requests in her Answering Brief, it is clear that Plaintiff merely lifted allegations from her Complaint wholesale and pasted them into her Brief, without bothering to support such alleged "facts" with any record evidence. *Compare* Complaint ¶¶ 17-21 *with* Ans. Br. at 8-9. Obviously, taking allegations from a Complaint and labeling it "evidence" is disingenuous at best, and is insufficient to deny summary judgment.

Plaintiff simply has not presented the Court with any facts (or law) sufficient to overcome summary judgment. As this Reply demonstrates, there is no genuine material factual dispute upon which to proceed to trial, and, therefore, summary judgment for CSC is appropriate.

---

[3] Plaintiff's focus on whether or not she requested a 36% salary increase is irrelevant. The important fact is that Plaintiff was offered an 8% salary increase for a transfer, which she rejected because it was "too low" in Plaintiff's estimation. (Pl. Dep. at A87.)

## II. ARGUMENT

### A. PLAINTIFF'S RACE DISCRIMINATION CLAIM FAILS.

#### 1. Plaintiff Failed To Establish A *Prima Facie* Case.

In her Answering Brief, Plaintiff misstates the relevant factors to consider in determining whether a plaintiff has established a *prima facie* case based upon a failure to promote. To establish her *prima facie* case for discriminatory failure to promote, Plaintiff must establish, among other factors, ***that she was qualified for the promotion***. See *Barber v. CSX Distribution Services*, 68 F.3d 694, 698 (3d Cir. 1995); *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Importantly, ***Plaintiff wholly failed to address whether she was, in fact, qualified for the SMTS position***. (Ans. Br. at 12-14.)[4] Ms. Dworsky relied upon a number of factors in determining that Randall Miller was qualified for the SMTS position in July 2002, none of which, Ms. Dworsky believed, Plaintiff had:

- Overall performance and length of time spent in MTSA position;
- Skill in advanced troubleshooting;
- Ability to work independently on important technical projects without direct supervision;
- Strong decision-making capabilities;
- Ability to provide technical direction and guidance to others;
- Ability to deal with issues related to outages on the network;
- Ability to independently manage a "category one" problem;
- Technical skills with the UNIX operating system.

(A229-31.) With the limited exception of her UNIX skills, Plaintiff makes absolutely no attempt to establish that she was qualified for the SMTS position based upon any of the relevant criteria considered by Ms. Dworsky. (Ans. Br. 12-14.)

---

[4] In discussing the elements of her *prima facie* case for failure to promote, Plaintiff relies upon a case from the Eastern District of Pennsylvania in which the court considered a claim of discriminatory suspension, not a failure to promote. See Ans. Br. at 13 (citing *Boykins v. Lucent Techs. Inc.*, 78 F. Supp.2d 402, 409 (E.D. Pa. 2000)).

4

Further, although Plaintiff contends that her Unix skill level was superior to Mr. Miller's, Plaintiff conceded at deposition that she did not know anything about Mr. Miller's technical experience, how long Mr. Miller had been an MTSA before he was promoted to SMTS, nor whether or not Mr. Miller deserved to be promoted.[5] (Pl. Dep. at A81, A90-92.) As the relevant case law makes clear, Plaintiff's own subjective opinion that she was qualified for a promotion is irrelevant. *See Carnegie Ctr. Assocs. v. Rhett*, 19 F.3d 290, 298 (3d Cir. 1997) (upholding lower court's determination that plaintiff could not establish a *prima facie* case because she could not show that she was qualified for the property manager position, because she offered nothing other than her own opinion that she was qualified); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) ("We determine a plaintiff's qualifications for purposes of proving a *prima facie* case by an objective standard."). Accordingly, Plaintiff failed to establish that she was qualified for the SMTS position, as necessary to establish her *prima facie* case.[6]

2. **There Is No Evidence Of Pretext.**

Rather shockingly, in her Answering Brief, Plaintiff devotes merely one single sentence of argument — conclusory in nature and without any legal or evidentiary support — on the issue of pretext. (Ans. Br. at 14). A fundamental proposition of employment discrimination law holds

---

[5] It is unclear to which period of time Plaintiff refers when she states that her skills were better than Mr. Miller's "at that time." (Ans. Br. at 5.) Such contention is made in the context of her discussion of her 2001 performance appraisal, and, thus, Plaintiff appears to be referring to the 2001 promotion decision. (Ans. Br. at 5.) In 2001, however, the only person Ms. Dworsky promoted to SMTS was MaryAnne Doll-Johnson. (A228.) Plaintiff admitted that she did not believe that the promotion of Ms. Doll-Johnson instead of her was in any way discriminatory. (Pl. Dep. at A3-4.) Further, at the time that Mr. Miller was promoted in July 2002, Plaintiff was on a medical leave of absence, and, accordingly, was not even considered eligible for promotion, in accordance with CSC's standard practice and policy. (A230, 236.)

[6] As support for the alleged "fact" that she had superior skill level in Unix than Mr. Miller, Plaintiff relied solely upon the determinations of the Equal Employment Opportunity Commission ("EEOC") and the Delaware Department of Labor ("DDOL"). (Ans. Br. at 5.). As discussed in Defendant's Opening Brief, both the EEOC and the DDOL made glaring errors in fact-finding with respect to Mr. Miller's years of relevant computer skills in comparison to Plaintiff's, since the undisputed evidence proves that, at the time that Mr. Miller was promoted to the SMTS position, he had 10 years of UNIX experience and Plaintiff had about two years of UNIX programming experience. (A222-24, 229-31; Pl. Dep. at A21-23, 41-42.)

that a plaintiff's mere speculation that race was the reason for a purported adverse employment action simply is insufficient as a matter of law to defeat summary judgment. *See Berry v. Jacobs IMC, LLC*, 2004 WL 1179270, at *409 (3d Cir. May 27, 2004) (plaintiff did "not offer[] any evidence beyond his own conclusory allegation that [defendant] discriminated against him based on race....[t]hus, there was insufficient evidence to support the claim of pretext.") (attached at A139-43); *Edwards v. Pennsylvania Turnpike Comm'n*, 2003 WL 22508498, at *2 (3d Cir. Nov. 5, 2003) (summary judgment properly granted because plaintiff did "not present[] any evidence from which a reasonable fact finder could find she was more qualified than the applicants who were recommended for the position.") (attached at A144-47.)

Again, as discussed above, Plaintiff does not even attempt to establish that she was qualified for the SMTS position based upon the factors Ms. Dworsky considered when she made the decision to promote Mr. Miller, nor did she attempt to prove that Defendant, in actuality, did not rely upon the stated factors. As stated by the Third Circuit:

> In determining whether similarly situated nonmembers of a protected class were treated more favorably than a member of the protected class, <u>the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action.</u> The employee's positive performance in another category is not relevant, *id.*, and <u>neither is the employee's judgment as to the importance of the stated criterion.</u> Furthermore, the court does not subjectively weigh factors it considers important. <u>Rather, the plaintiff must point to evidence from which a factfinder could reasonably infer that the plaintiff satisfied the criterion identified by the employer or that the employer did not actually rely upon the stated criterion.</u>

*Simpson v. Kay Jewelers, Division of Sterling*, 142 F.3d 639, 647 (3d Cir. 1998) (emphasis added) (citations omitted); *see also Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 528 (3d Cir. 1992) ("'more than a denial of promotion as a result over a dispute of qualifications' must be shown to prove pretext[.]") (citation omitted). Plaintiff offers nothing to show she was qualified for the promotion.

Indeed, ***Plaintiff admitted that an employer has the right to evaluate between two candidates to determine which, in the employer's business judgment, is the most qualified***

*candidate, and that experience, education and seniority are valid considerations in the employer's decision-making process.* (Pl. Dep. at A73.) Accordingly, Plaintiff essentially conceded at deposition that the decision to select Mr. Miller for promotion based upon his qualifications is a legitimate business decision. *C.f. Berry v. Jacobs IMC, LLC*, 2004 WL 1179270, at *409 (3d Cir. May 27, 2004) (A139-43); *Lewis v. State of Del. Dep't of Public Instruction*, 948 F. Supp. 352, 362 (D. Del. 1996).

Moreover, Plaintiff did not even address Defendant's evidence that Ms. Dworsky did not consider Plaintiff for promotion at the time Mr. Miller was promoted in July 2002 because Plaintiff had been out on full-time medical leave since February 2002, and it was inconsistent with standard CSC practice and policy to promote an employee out on extended medical leave, not knowing if she was going to return to work. (Op. Br. at 18, 22-23; A230, 236.)

### 3. Plaintiff Failed To Establish A Claim For Race Discrimination In Compensation.

Plaintiff contends in her Answering Brief that her claim for race discrimination also is based upon a purported salary disparity.[7] (Ans. Br. at 3.) Plaintiff points to no evidence as support for this claim, relying solely on her conclusory assertions. (Ans. Br. at 13-14.)

Importantly, however, the Caucasian individuals in the MPD group who received a higher salary than Plaintiff both had much greater seniority than Plaintiff. (Op. Br. at 32-33). In fact, both Ms. Doll-Johnson and Mr. Miller had been employed by CSC and its predecessor, DuPont, for 18 years, much longer than Plaintiff, who had only been employed by CSC for five years. (A231, 236-37.) Seniority, clearly, constitutes a legitimate non-discriminatory explanation for a difference in pay. *See Cooper v. Southern Co.*, 390 F.3d 695, 743 (11th Cir. 2004) ("Seniority may constitute a legitimate, non-discriminatory justification for differences in

---

[7] At deposition Plaintiff claimed that the salary disparity claim was based only upon sex, not race discrimination. (A5-9.)

compensation....[b]ecause [plaintiff] failed to identify any comparators with similar levels of seniority, she has failed to establish a prima facie case of discrimination in compensation."). Further undermining Plaintiff's claim is the fact that Plaintiff received a higher salary than Audrey Daigger, a Caucasian member of the MPD group. (A231, 236-37.)

Plaintiff proffers absolutely no evidence of pretext to rebut Defendant's legitimate, nondiscriminatory reasons for paying Mr. Miller and Ms. Doll-Johnson higher salaries.

### 4. Plaintiff's Reliance On Two Alleged Stray Remarks Is Insufficient Evidence Of Race Discrimination.

Plaintiff's reliance upon Ms. Dworsky's isolated question regarding why African-American people "dress up for church and why is the music so loud?" (Ans. Br. at 4) as evidence of a purported racial bias is demonstrative of Plaintiff's desperation to find some sort of a discriminatory motive to support her claims. The comment itself is innocuous on its face, and is by no means derogatory.[8] Ms. Dworsky merely was attempting to engage in a dialogue about cultural practices. Plaintiff seems to suggest that every comment made in the workplace with some sort of racial element is *ipso facto* discriminatory. That assumption is unfair and unrealistic. The comment is not a slur or an epithet and does not constitute evidence of racism.

Further, Ms. Dworksy's remark about African-American churches is wholly unrelated to the promotion decision, as it had absolutely nothing to do with Plaintiff's skills, performance or any promotion. *See Johnson v. Gober*, 2003 WL 22967266, at *459-60 (3d Cir. Dec. 18, 2003) (inappropriate remark made by a decisionmaker which had no relation to plaintiff's non-selection for a position was not sufficient evidence to establish that employer's proffered reason for failing to promote plaintiff was a mere pretext for discrimination) (attached at A148-53.); *Ezold*, 983

---

[8] The very fact that Ms. Dworsky went to an African-American church, with her African-American babysitter seemingly belies any contention that Ms. Dworky is racist. (A232.)

8

F.2d at 545 ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight.").[9]

Plaintiff also attempts to attribute racial bias to Ms. Dworsky through a wholly innocuous incident in which, according to Plaintiff, Ms. Dworsky and Mr. Miller made gestures of putting their hands to their noses to infer that they smelled something and then laughed. (Ans. Br. at 4.) At deposition, however, Plaintiff admitted she knew little about this incident:

- She could not hear what was said;
- She did not know whether the laughing was about her; and
- She did not know whether the laughing had any racial component.

(Pl. Dep. at C7-9.) The fact that Plaintiff attempts to rely upon this incident as evidence of purported racial bias on the part of Ms. Dworsky is utterly preposterous given that (1) she did not hear what was said, (2) she never learned what was said, (3) she does not know whether it was about her, and (4) she has no idea whether it was even racial in nature.[10]

**B.    PLAINTIFF'S RETALIATION CLAIM FAILS.**

    **1.    No Evidence Of Excessive Scrutiny Of Criticism Of Her Work.**

Plaintiff proffers absolutely no record evidence to support her contention that Ms. Dworsky unfairly scrutinized and criticized her work or held her to higher standards for

---

[9] Notably, Ms. Dworsky was not involved in the decision regarding Plaintiff's termination from employment, and, thus, the comment provides Plaintiff no support for her retaliation claim, either.

[10] Ms. Dworsky testified to what actually occurred:
> Q. There was another allegation made about a smell that you had detected. Do you recall that?
> A. One of the desktop engineers—I sat on the row of cubicles on the other side of the wall—came to me and told me they smelled something burning. As a manager, it's my job to try and find out where the burning was coming from. To do that, I needed to walk the rows of the cubicles to try and see if we could identify where the burning was coming from.
> Q. Did you?
> A. Yes.
> Q. Where did it come from?
> A. There was a cord in between the cubicle walls that was burning.

(C12-13.)

9

performance and requirements for advancement, and, accordingly, she fails to establish a claim for retaliation on this basis. (Ans. Br. at 8.) *See Johnson v. E.I. DuPont de Nemours & Co.*, 60 F. Supp.2d 289, 297 (D. Del. 1999) ("Plaintiff's conclusory allegations do not constitute sufficient evidence to defeat a motion for summary judgment."), *aff'd* 208 F.3d 206 (3d Cir. 2000). Further, such contention regarding unfair scrutiny and criticism does not rise to the level of an adverse employment action. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1301 (3d Cir. 1997) ("[plaintiff's] allegations that she was subjected to 'unsubstantiated oral reprimands' and 'unnecessary derogatory comments' following her complaint do not rise to the level of the 'adverse employment action' required for a retaliation claim.").

2. **No Evidence Of Isolation.**

Likewise, Plaintiff presents no evidence to support her contention that she suffered isolation from other members of the MPD group. (Ans. Br. at 8.) Plaintiff failed to even address the evidence that it was ***Plaintiff*** who isolated herself, stopped talking to members of the MPD group, and ignored social invitations from the group. (A224, 232, 238-39, 241.) Finally, Plaintiff's argument that she suffered retaliation in the form of isolation overlooks the fact that isolation simply does not rise to the level of an adverse employment action under the applicable case law. *See, e.g. Robinson*, 120 F.3d at 1300 ("isolation and lack of respect from fellow managers and co-workers did not amount to adverse employment action.").

3. **No Evidence Of Retaliation In Removal Of Work Projects.**

Plaintiff also contends that Ms. Dworsky retaliated against her for engaging in protected activity by taking certain work projects away from her, and assigning her to write a technical manual. (Ans. Br. at 16.)[11] Plaintiff, however, admitted the importance of the project she was

---

[11] In her Answering Brief, Plaintiff claimed several projects were supposedly taken away from her, but provided no record support for this claim. (Ans. Br. at 7.) Again, Plaintiff appears to have lifted

*(footnote continued to next page)*

10

assigned, that she was not offended by the assignment, and that she did not suffer any change in salary or benefits due to this change:

> Q. [The new work that was assigned to her] was a real project; correct?
> A. Yes.
> Q. It was important work?
> A. Yes.
> ....
> Q. You weren't offended that you were asked to work on this important manual, were you?
> A. I wasn't offended, no.
> ....
> Q. Even though you worked on this manual, your benefits didn't change?
> A. No.
> Q. Your salary didn't change?
> A. No.

(Pl. Dep. at C2, C4-6.)

The mere fact that Ms. Dworsky decided to assign Plaintiff to a particular project, without any material change in the terms and conditions of her employment, does not rise to the level of an adverse employment action. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("conduct must be extreme to amount to a change in the terms and conditions of employment."); *Cardenas v. Massey*, 269 F.3d 251, 267 n.10 (3d Cir. 2001) (defining a "tangible employment action" as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."); *Jones v. City of Wilmington*, 2004 WL 1534778 (D. Del. June 14, 2004) (temporary assignment to the "camera room", which entailed monitoring a camera and

---

*(footnote continued from previous page)*
allegations directly from her Complaint and pasted them into her Brief, without bothering to support such contentions with any evidence. *Compare* Complaint ¶ 41 *with* Ans. Br. at 7.

11

keeping a log of certain activity observed on the camera did not constitute an adverse employment action) (attached as C15-20.)[12]

### 4. Plaintiff Failed To Present Any Evidence To Establish That She Was Terminated In Retaliation For Her Protected Activities.

Significantly, in her Answering Brief, Plaintiff admitted that *"she was well aware of her obligations to provide the medical certification every thirty days during her medical leave of absence....[and] Plaintiff also concedes that she knew her failure to comply with this obligation would give Defendant the right to terminate her employment [and that] Defendant could have terminated Plaintiff the first time she failed to provide timely certification."* (Ans. Br. at 17, emphasis added.) Despite this admission, Plaintiff rather arrogantly and unapologetically concludes that she was terminated for retaliatory reasons, not her own failures. (Ans. Br. at 7-8, 14-17.) Again, Plaintiff's subjective belief that she was subject to retaliation simply is insufficient. *Baker v. Wilmington Trust Co.*, 320 F. Supp.2d 196, 202 (D. Del. 2004) (plaintiff's conclusory allegations were insufficient to support a claim for retaliation). Further, Plaintiff completely fails to address the fact that CSC has terminated other similarly-situated employees, who had not previously filed charges of discrimination, based on their failures to provide requisite medical certifications related to their medical leaves of absence in accordance with CSC's Leave Policy. (Op. Br. at 31; A256.) Clearly, this undermines any claim of retaliatory motive.

Amazingly, Plaintiff's only purported "proof" that CSC's reason for terminating Plaintiff was a pretext for retaliation lies in the fact that Defendant did not terminate Plaintiff on the first occasion that she failed to comply with the Leave Policy. (Ans. Br. at 17.) Plaintiff apparently

---

[12] Plaintiff cites to *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997) for the proposition that a reduction of duties, disciplinary actions, negative personnel reports and requiring an employee to undergo remedial training constitute adverse employment actions. Importantly, however, Plaintiff does not even allege that she was ever disciplined, given a negative personnel report, or required to undergo remedial training. Accordingly, it is unclear why Plaintiff attempts to rely on *Kim*.

12

perceives a retaliatory motive in the fact that CSC gave Plaintiff several additional chances to comply with its Leave Policy before it terminated her. This argument is completely irrational; it suggests that there would be less evidence of retaliation had CSC terminated Plaintiff upon her first violation of the policy, at a point in time closer to the date she engaged in her protected activity.[13] Such unsupported argument is not believable, and is certainly not the law. A company does not waive its right to enforce its policies simply because it acts with flexibility with an employee on the first instances of policy violation. Indeed, the Leave Policy itself specifically states that the company "may" treat the violation as a resignation, and the company, therefore, has the right to evaluate each individual situation and determine if termination is warranted. Simply put, the fact that Defendant decided to "cut her a break" for her failure to submit timely medical documentation on several occasions did not constitute a wavier of its right to terminate Plaintiff's employment in accordance with its Leave Policy upon a subsequent violation, particularly when Plaintiff had been warned numerous times in writing that CSC reserved the right to do so. (A202, 211, 214-16, 235-36, 253-56; Pl. Dep. at A108-09, 119-32.)

C. **PLAINTIFF'S EQUAL PAY ACT CLAIM FAILS.**

In her Answering Brief, Plaintiff wholly failed to respond to Defendant's evidence as to the non-discriminatory reason that Mr. Miller received a higher salary than Plaintiff — his experience and longevity with the Company, based on his CSC service date. (Op. Br. at 33.) Accordingly, CSC is entitled to summary judgment on Plaintiff's EPA claim.

D. **THE ADMINISTRATIVE FINDINGS OF THE EEOC AND THE DDOL DO NOT PRECLUDE SUMMARY JUDGMENT.**

As CSC predicted, Plaintiff relied upon the findings of the EEOC and the DDOL in her attempt to oppose Defendant's Motion for Summary Judgment. (Ans. Br. at 9.) Significantly,

---

[13] Query, if CSC, indeed, had a retaliatory animus, how could it be certain that Plaintiff would continue to fail to timely submit her medical documentation so that it would have a further opportunity in the future to terminate her employment for violating its Leave Policy?

however, Plaintiff provided absolutely no legal authority to contradict the numerous cases Defendant relied upon in its Opening Brief for the proposition that administrative determinations do not create a material dispute of fact, and she also failed to deny that the administrative determinations were based upon incorrect and incomplete factual findings and set forth inconsistent conclusions. (Op. Br. 35-38.) Accordingly, for all the reasons set forth in Defendant's Opening Brief, the determinations of the EEOC and the DDOL do not create a genuine issue of material fact, and, therefore, do not defeat summary judgment.

### III. CONCLUSION

WHEREFORE, for the foregoing reasons and those set forth in their Opening Brief, CSC respectfully requests that summary judgment be granted in its favor as a matter of law on all counts.

By: /s/ Sarah E. DiLuzio
Sarah E. DiLuzio (#4085)
POTTER ANDERSON & CORROON LLP
1313 North Market Street
6th Floor, P.O. Box 951
Wilmington, Delaware 19801
(302) 984-6000 (general)
(302) 658-1192 (fax)
sdiluzio@potteranderson.com

Of counsel:
Larry R. Seegull
Amy Beth Leasure
DLA PIPER RUDNICK GRAY CARY US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000 (general)
(410) 580-4253 (direct)
(410) 580-3253 (fax)
larry.seegull@dlapiper.com

Counsel for Defendant
*Computer Sciences Corporation*

Dated: June 8, 2005