## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **DIANE POLAND,** | : | |
| | : | |
| **Plaintiff,** | : | **C.A. NO. 04-0217(GMS)** |
| | : | |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **COMPUTER SCIENCES** | : | |
| **CORPORATION, a Delaware** | : | |
| **Corporation,** | : | |
| | : | |
| **Defendant.** | : | |

---

## PLAINTIFF'S PROPOSED PRETRIAL ORDER

---

Jeffrey K. Martin, Esquire (#2407)
Keri L. Morris, Esquire (#4656)
MARGOLIS EDELSTEIN
1509 Gilpin Avenue
Wilmington, Delaware 19806
302-777-4680 phone
302-777-4682 fax
jmartin@margolisedelstein.com
kmorris@margolisedelstein.com
Attorneys for Plaintiff

DATED: September 19, 2005

This matter having come before the Court at a Pretrial Conference held pursuant to Fed. R. Civ. P. ("Rule") 16, and Jeffrey K. Martin, Esquire and Keri L. Morris, Esquire, Margolis Edelstein, 1509 Gilpin Avenue, Wilmington, DE 19806, (302) 777-4680, having appeared as counsel for plaintiff and Sarah E. DiLuzio, Esquire, Potter Anderson & Corroon, LLP, Hercules Plaza – 6th Floor, 1313 North Market Street, P.O. Box 951, Wilmington, Delaware 19899, (302) 984-6048, and Larry R. Seegull, Esquire, DLA Piper Rudnick Gray Cary US LLP, 6225 Smith Avenue, Baltimore, MD  21209, (410) 580-4253, having appeared as counsel for defendant, the following actions were taken:

**(1)    Nature of Action**

**(a)    Plaintiff's Statement:**

This is an action for race discrimination based on Plaintiff's failure to receive a promotion; retaliation based upon her termination from employment; an Equal Pay Act claim based on the fact that men were paid more than women in the group in which Plaintiff was working; and a purported breach of the covenant of good faith and fair dealing. The jurisdiction of the court is invoked under Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e)-(5)(f)(1), 29 U.S.C. § 206(d), as well as 42 U.S.C. § 1981. This action is also authorized pursuant to 42 U.S.C. § 12101 et seq. and 29 U.S.C. § 2601 et seq. The state law claim regarding the breach of the implied covenant of good faith and fair dealing is brought pursuant to the pendent jurisdiction of this Court. Jurisdiction is not disputed.

**(b)    Defendant's Statement:**

See Defendant's Proposed Pretrial Order.

**(2)**      The following stipulations or statements were submitted and are attached to and made a part of this Order.

    **(a)**      A comprehensive stipulation or statement of all uncontested facts, which will become a part of the evidentiary record in the case (and which, in a jury trial, may be read to the jury by the Court or any party).

    *See attached* - Schedule (2)(a) - Plaintiff & Defendant's Proposed Stipulation of All Uncontested Facts.

    **(b)**      An agreed statement or statements by each party of the contested issues of fact and law and a statement or statements of contested issues of fact or law not agreed to;

    *See attached* - Schedule (2)(b) - Plaintiff and Defendant's Statement of the Contested Issues of Fact and Law.

    **(c)**      Except for rebuttal exhibits, schedules in the form set out in the attached Schedule (c) of;

        **(1)**      all exhibits (all exhibits shall be marked for identification before trial), including documents, summaries, charts and other items expected to be offered in evidence; and

        *See attached* - Schedule (2)(c)(1).

        **(2)**      Any demonstrative evidence and experiments to be offered during trial;

**For Plaintiff:**

    None at this time.  Plaintiff reserves the right to use blow-ups for any demonstrative exhibit admitted into evidence by the Court.

**For Defendant:**

See Defendant's Proposed Pretrial Order.

**(d)**     A list or lists of names and addresses of the potential witnesses to be called by each party, with a statement of any objections to calling, or to the qualifications of, any witnesses identified on the list;

*See attached* - Schedule (2)(d) - Plaintiff and Defendant's Potential Witnesses.

**(e)**     Stipulations or statements setting forth the qualifications of each expert witnesses in such form that the statement can be read to the jury at the time the expert witness takes the stand;

None. No expert witnesses have been retained by either Plaintiff or Defendant.

**(f)**     A list of all depositions, or portions thereof, to be read into evidence and statements of any objections thereto;

*See attached* - Schedule (2)(f) - Plaintiff and Defendant's Designation of Deposition Testimony to be Read into Evidence.

**(g)**     An itemized statement of special damages;

*See attached* - Schedule (2)(g) - Plaintiff and Defendant's Statement of Special Damages.

**(h)**     Waivers of any claims or defenses that have been abandoned by any party;

*See attached* - Schedule (2)(h) - Plaintiff and Defendant's Statement of Waivers of Any Claims or Defenses Abandoned by Any Party.

**(i)**     For a jury trial, each party shall provide the following:

   (i)     Trial briefs except as otherwise ordered by the Court;

   Plaintiff's Trial Brief - to be provided.

   Defendant's Trial Brief - see Defendant's Proposed Pretrial Order.

(ii)     Three sets of marked proposed jury instructions, verdict forms and special interrogatories, if any; and

*See attached* - Schedule (2)(I)(ii)(a) - Plaintiff's Proposed Jury Instructions.

Defendant's Proposed Jury Instructions - See Defendant's Proposed Pretrial Order.

*See attached* - Schedule (2)(I)(ii)(b) - Plaintiff's Proposed Special Verdict Form.

Defendant's Proposed Special Verdict Form - See Defendant's Proposed Pretrial Order.

Schedule(2)(I)(ii)(c) - Plaintiff's and Defendant's Special Interrogatories:

None at this time.

(iii)    a list of questions the party requests the court to ask prospective jurors in accordance with Fed. R. Civ. P. 47(a) and D. Del. LR 47.1 (a);

*See attached* - Schedule (2)(I)(iii) - Plaintiff's Proposed Voir Dire.

Defendant's Proposed Voir Dire - See Defendant's Proposed Pretrial Order.

**(j)**      For a non-jury trial, each party shall provide proposed *Findings of Fact and Conclusions of Law* in duplicate;

Not applicable.

**(k)**      A statement summarizing the history and status of settlement negotiations, indicating whether further negotiations are ongoing and likely to be productive;

*See attached* - Schedule (2)(k) - Plaintiff and Defendant's Statement of History and Status of Settlement Negotiations.

(l)     A statement that each party has completed discovery, including the depositions of expert witnesses (unless the Court has previously ordered otherwise). Absent good cause shown, no further discovery shall be permitted; and

*See attached* - Schedule (2)(l) - Plaintiff and Defendant's Statement that Each Party has Completed Discovery Including the Deposition of Expert Witnesses.

(m)     Motions *in Limine*: no party shall file more than ten (10) motions *in limine* without prior approval of the Court. In accordance with this Court's Scheduling Order, briefs (opening, answering and reply) on all such motions shall be filed on or before October 7, 2005. Opening and answering briefs shall not exceed five (5) pages and reply briefs shall not exceed three (3) pages. The parties should submit an original and two (2) copies.

Plaintiff and Defendant reserve the right to file Motions *in Limine*, which shall be filed on or before October 7, 2005, in accordance with the Scheduling Order.

(3)     Trial of this case is expected to take four (4) days beginning at 10:00 am on November 7, 2005.

(4)     Jury __x__          Non-jury _____

(5)     Plaintiff recommends that eight (8) jurors be selected at the commencement of the trial.

See Defendant's Proposed Pretrial Order for recommendation for total number of jurors.

(6)     This Order will control the course of the trial and may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice.

(7)     Possibility of settlement of this case was considered by the parties.

_____

United States District Judge

Respectfully submitted,

*Keri L. Morris*

Jeffrey K. Martin, Esquire (#2407)
Keri L. Morris, Esquire (#4656)
MARGOLIS EDELSTEIN
1509 Gilpin Avenue
Wilmington, Delaware 19806
302-777-4680 phone
302-777-4682 fax
jmartin@margolisedelstein.com
kmorris@margolisedelstein.com
Attorneys for Plaintiff

DATED: September 19, 2005

# SCHEDULE (2)(a)

# Uncontested Facts

## SCHEDULE (2)(a)

### Plaintiff's Proposed Stipulation of All Uncontested Facts

1.    Plaintiff is an African-American female.

2.    Plaintiff was extended an offer of employment on November 10, 1997 as a helpdesk technician, Member Technical Staff B and began employment on or about that date.

3.    Dawn Dworksy is Caucasian.

4.    Plaintiff completed certain technology courses, including one or more UNIX courses.

5.    Plaintiff received a performance appraisal.

6.    Randall Miller & Maryanne Doll-Johnson were promoted and they are both Caucasian.

7.    Maureen Summers is Caucasian, works in the Human Resources Department.

8.    Plaintiff complained of possible retaliation to Dawn Dworsky.

9.    Plaintiff filed a Charge of Discrimination dated July 5, 2001 alleging race and sex discrimination and retaliation.

10.    Plaintiff and one or more individuals in the Human Resources discussed possibility of transferring Plaintiff to another position.

11.    Plaintiff requested FMLA leave and Defendant assisted her in obtaining leave.

12.    Plaintiff went on medical leave from CSC.

## **Defendant's Proposed Stipulation of All Uncontested Facts**

See Defendant's Proposed Pretrial Order.

# SCHEDULE (2)(b)

# Contested Facts

## SCHEDULE (2)(b)

### Plaintiff's Statement of the Contested Issues of Fact and Law

**Plaintiff's Statement of Contested Facts**

Plaintiff reserves the right to modify the following submission, based upon the Court's ruling on the pending summary judgment motion and/or in the interests of justice.

1. When Plaintiff was transferred to Dawn Dworsky's team, Plaintiff was informed that her work responsibilities would continue as normal, and her performance expectations would remain the same as they were under her former hiring manager, Edwin Derek Alston. Plaintiff had no problems with any of her supervisors prior to Dworsky.

2. During the time when Plaintiff was employed by Defendant, Dworksy made a racially derogatory comment to a group in which Plaintiff was present. Dworsky asked "why do Black people dress up for church and why is the music so loud?" Plaintiff found this comment to be derogatory because it was a generalization of all Black people. Although, Plaintiff did not inform Dworksy that she was offended by the comment, Plaintiff did inform Human Resources.

3. A second incident that took place involved Dworsky and Randy Miller when they were making gestures of putting their hands to their noses, to infer there was a smell and laughing. Plaintiff asked what was funny and no one would tell her. Therefore, she believed since she was the only person who was "not involved" and that she was the only African-American present that the group was referring to her.

4. Prior to joining the employ of Defendant, Plaintiff had previously used certain software applications which included ORACLE, GMC, Card One, and UNIX for the database. Although Plaintiff did not program these applications, she was familiar with each software package.

5. Plaintiff did not specifically list all of her previous computer experience including her UNIX experience on her original employment application because she did not believe that she was proficient in each of these areas.

6. After Plaintiff began working for Defendant, she continued to build her technical skills by attending a Dazel Certification Course.

7. Plaintiff also attended a Microsoft Certification Course and a Microsoft Engineering Certification Course.

8. Plaintiff completed several computer based training courses on-line through her employment with Defendant. Plaintiff continued to build her skills regarding UNIX and Dazel when she was in the Managed Print Group. She also programmed and analyzed problems with the computer languages of Shell and UNIX and used PERL along with Dazel. Finally, she was also pursuing further UNIX training on her own time.

9. Randall Miller became a member of the MPD team approximately 7 months before Plaintiff's 2001 appraisal. Randall Miller had no experience with Dazel because he was still in training to become certified; he had just recently become a member of the MPD team; and was still in 'job training'. Dworsky informed Plaintiff that she would not receive a promotion because she did not have the skill-set. However, Plaintiff's skill level in Unix, Perl, Dazel, etc. was greater than Randall's skills at that time.

10. During the performance evaluation meeting, Dworsky indicated that Plaintiff was doing a "good job," that she should continue on the path that she was on, that she was focused, that she was a good worker, and that Plaintiff had a good work ethic. At the conclusion of this conversation, Dworsky advised Plaintiff that she was only receiving a "3" rating on her review. It was at this point that Plaintiff advised Dworsky that she disagreed with her 2001 performance evaluation rating.

11. As a result of her performance evaluation, Plaintiff made several complaints to Defendant's Human Resources Office that she felt that she was being subjected to disparate treatment based upon her race.

12. During Plaintiff's performance evaluation meeting for her 2001 performance evaluation, Dworksy advised Plaintiff that she was not going to be promoted because there were guidelines and that she could only promote a certain number of people. However, Dworsky previously informed Plaintiff that she would not receive a promotion because she did not have the skill-set.

13. Dworsky advised Plaintiff that she would receive a salary adjustment because her salary was unfairly and unjustly disproportionate to other members of the team.

14. Shortly after Plaintiff made the internal complaints of discrimination, Plaintiff met with Ms. Maureen Summers and Dworsky to discuss her work assignments. Plaintiff was informed that she was being removed as lead Dazel engineer from all of her engineering projects, including the Dazel SAP ("DSAP"), the DuPont Dow Elastomers ("DDE"), the United States Postal Services ("USPS"), Aspen and the "Minerva" assignments. Instead, Plaintiff was forced to write a technical manual, to which she objected.

15. Subsequently, Plaintiff was told that all company projects had been completed, and that this assignment was the only one available to her. Even though Dworksy

advised Plaintiff that the engineering projects were complete, Plaintiff was still receiving emails about the projects that indicated that they were not complete.

16. Dworsky treated Plaintiff differently than her similarly-situated co-workers, who were Caucasian, whereby Dworksy failed to recognize Plaintiff as a member of her group. When Plaintiff would request meetings with Dworsky, she failed to respond until Plaintiff made several repeated requests. Plaintiff was not aware of anyone else in her group that was having the same problems that she was experiencing with Dworsky. Plaintiff was the only African-American in the Managed Print Group.

17. On or about June 15, 2001, Plaintiff met with Ms. Maureen Summers, a Caucasian, Employee Relations Specialist in Defendant's Human Resources Department, and advised her that she believed she was being subjected to disparate treatment with regard to the terms and conditions of her employment compared to her similarly-situated Caucasian co-workers, and that her wages were disproportionately lower than similarly-situated Caucasian male co-workers. Plaintiff also stated to Summers that she was the only African-American in the department and was being excluded from important communications, as well as subjected to offensive racially-based comments.

18. In several meetings with Ms. Summers and Sonia Koplowicz that took place over the next few weeks, Plaintiff also stated that she felt retaliated against for voicing her complaints to Dworsky, who subsequently began to scrutinize Plaintiff's work, isolate her from the rest of the group and held Plaintiff to higher standards regarding Plaintiff's performance and the requirements and/or qualifications for advancement.

19. Plaintiff applied for a supervisory position in Defendant's chemical group in or around March 2001. Plaintiff was granted an interview for the position on or about March 14, 2001. Plaintiff inquired with the hiring manager, Ms. Beth Musmeci, as to why the salary increase offer was only 6%, and was informed that the offer was comprised of a current supervisory increase of 3% and a promotion increase of 3%.

20. Plaintiff contacted Dworsky to inquire why the supervisory increase was so low, but Dworsky refused to increase Plaintiff's salary by more than 3%. Plaintiff requested a more reasonable increase for the position offered to her and was offered an additional 2% increase, for a total offering of 8%, by the hiring manager. Dworsky, however, refused to increase the offer above what had already been offered to Plaintiff.

21. Plaintiff never demanded a salary of $63,000 which was a 36% increase of her current salary. Plaintiff had no other option but to decline the position due to Defendant's unwillingness to increase Plaintiff's salary to a level that was comparable to the previous supervisor's salary that was paid to Ms. Beth

Musmeci. After Plaintiff declined the position, a co-worker informed her that Dworsky did not like the fact that Plaintiff was applying for another position and this co-worker warned Plaintiff to "watch out". Plaintiff informed this co-worker that she had discussed the opportunity with Dworsky and that Dworsky told Plaintiff she would not "hold [her] back" if she wanted the position.

22. Plaintiff was terminated on or about September 27, 2002 for alleged failure to provide medical certification. Although Plaintiff acknowledges that her failure to provide medical certification in a timely manner could result in a voluntary resignation, Plaintiff could not force her doctor to provide the certification at a certain time. As Defendant contends in its Opening Brief, Plaintiff consistently failed to provide medical certification in a timely manner. However, it was not until September when Defendant finally decided that it was going to accept Plaintiff's voluntary resignation, even though it failed to follow its own policies on several prior occasions.

## Defendant's Objections to Plaintiff's Proposed Contested Issues of Fact

None at this time.

## Plaintiff's Proposed Stipulation of All Contested Issues of Law

1.  Has Plaintiff proven by a preponderance of the evidence a *prima facie* case for race discrimination?

2.  Whether Defendant and/or the agents of Defendant intentionally discriminated against Plaintiff on the basis of race?

3.  Has Plaintiff proven by a preponderance of the evidence a *prima facie* case for retaliation?

4.  Whether Defendant and/or the agents of Defendant intentionally retaliated against Plaintiff for engaging in protected activity?

5.  Has Plaintiff met her burden of proving by a preponderance of evidence that Computer Sciences Corporation terminated Plaintiff because she filed a charge of discrimination?

6.  Whether Plaintiff was paid less than her male counterparts for performing substantially similar work?

7.  Has Plaintiff met her burden of proving by a preponderance of the evidence that Computer Sciences Corporation harbored ill will towards Plaintiff, that Computer Sciences Corporation intended to cause harm to Plaintiff, that Computer Sciences Corporation committed acts of deceit, fraud or

misrepresentation towards Plaintiff, and that all such acts resulted in her discharge from employment or her lack of promotion?

8.    Whether Defendant breached the covenant of good faith and fair dealing when it discriminated against Plaintiff and retaliated against her?

9.    Does a preponderance of the evidence demonstrate that Plaintiff was harmed by the breach of the implied covenant of good faith and fair dealing?

10.    Whether Plaintiff suffered punitive damages as a result of Defendant's discrimination and retaliation?

### Defendant's Statement of the Contested Issues of Fact and Law

See Defendant's Proposed Pretrial Order.

# SCHEDULE (2)(c)(1)

# Exhibits

## SCHEDULE (2)(c)(1)

## EXHIBITS

1.    The following were offered by Plaintiff, received in evidence and marked

as indicated:

P1    A copy of October 29, 1997 offers of regular full time employment from Computer Science Corporation.

P2    A copy of April 24, 1998 Performance Appraisal document manager Dawn M. Hauck.

P3    A copy of August 31, 1999 transfer and reassignment to CEG Infrastructure Services.

P4    A copy of April 1, 1999 Performance Appraisal manager Edwin D Alston.

P5    A copy of May 13, 2000 salary review document.

P6    A copy of April 1, 2000 Peformance Apprailsal manager Dawn M. Dworsky.

P7    A copy of Plaintiff's June 29, 2000 Certified Dazel Professional certificate.

P8    A copy of Plaintiff's Computer Base Training record from Nov. 1999 to April 2001.

P9    A copy of July 3, 2001 lotus notes meeting request from Dawn Dworsky to Maureen Summers and Plaintiff to discuss Expectations for a S03, Review Performance Appraisal.

P10   A copy of July 6, 2001 lotus note email - follow up meeting notes to a meeting held July 3 at 2pm in Human Resources conference room with Dawn Dworksy and Maureen Summers.

P11   A copy of July 10, 2001 lotus note invite from Maureen Summers to discuss Plaintiff's comments. Also received on this date was a decline of the invite from Dawn Dworsky.

P12   A copy of July 26, 2001 lotus note emails to Sonia Koplowicz with regard to requisition number for a job Plaintiff applied for within CSC.

P13    A coy of January 17, 2002 lotus note email to Maureen Summers with regard to continued discriminatory treatment and retaliation.

P14    A copy of a June 13, 2001 email to Dawn Dworsky with regard to Plaintiff's appraisal meeting held on June 12, 2001.

P15    A copy of a July 3, 2001, Lotus Note meeting invite from Dawn Dworksy describing job expectations for Plaintiff's June 2001 appraisal meeting. Goals she and Maureen Summers, HR Representative said Plaintiff was subject to after the year had passed.

P16    Lotus note dated Jan. 9, 2002 to Dawn Dworsky, completion of Dazel Manual. A manual Dawn had a non-Dazel user (George Perkucin) review and critique.

P17    Lotus note dated Jan. 11, 2002 to Dawn Dworsky, a draft project plan for Dazel Training.  Two days after receiving the plan Dawn replies that she believed the training to be complete.

P18    Lotus note dated Nov. 15, 2001 to Jan. 24, 2002 to Leanne K Thomas, with regard to several positions Plaintiff applied for – all of which Leanne Thomas did not assist as recommended by Mike Suman.

P19    Lotus note dated Feb. 4, 2002 to Feb. 7, 2002, with regard to a CSC job posting with Julie M Rahaim. Julie later said position would not be filled.

P20    Lotus note dated Jan. 29, 2002 to Dorothy Eltzroth, Director Human Resource Employee Services with regard to continued discrimination and retaliation.

P21    June 14, 2001 lotus note from Dawn Dworsky with regard to USPS Project being completed by Plaintiff.

P22    December 10, 2001 lotus note from Dawn Dworsky changing the scope of Plaintiff's work with regard to the Dazel Manual she had written.

P23    August 22, 2001 lotus note from Dawn Dworsky with regard to workload transition.

P24    December 10-19, 2001 lotus note from Dawn Dworsky attacking Plaintiff's work on the Dazel Manual.

P25    December 6, 2001 lotus note from George Perkucin, someone Dawn assigned to critique the Dazel Manual Plaintiff had written.

P26     Jan. 29, 2002 lotus note to Dawn Dworsky responding to her attack on Plaintiff's Dazel Training Project plan.

P27     Jan. 11, 2002 lotus note to Dawn Dworsky attached draft Dazel Project Plan, of which she never replied with approval or edits. She replied several days later stating the training should be complete.

P28     Feb. 19, 2002 lotus note to Dawn Dworsky response to the HR and GIS Management/Dazel Training Project.

P29     Lotus note dated Jan. 14-19, 2002 to Richard Lebovitz and John D. Butch, Division Managers for DCES and TMG requesting to work from home as a result of a hostile work environment.

P30     Lotus noted dated Feb. 27-28, 2002 to Robin Hayes, Claims Representative with Risk Co. #1M80499961 with regard to Plaintiff's doctor's recommendation to leave the toxic work environment.

P31     Job Posting dated Nov. 28, 2001; Plaintiff applied for the position, open through Jan. 15, 2002 and author of dbase entry is Leanne K. Thomas. Received error trying to submit application.

P32     Lotus note dated July 23, 2001 from Dawn Dworsky stating that Plaintiff did not have experience with server installation despite the fact that she had numerous installs in a test and live environment prior to this date.

P33     Lotus note dated July 24-26, 2001 from Sonia Koplowicz stating that she could not find the requisition number or dbase posting for a position Plaintiff applied for. Additionally, she talks about Plaintiff's salary increase/adjustment.

P34     Lotus note dated August 17-21, 2001 from Dawn Dworsky with regard to Plaintiff's return to work from LOA.

P35     Lotus notes dated August 23, 2001 to Sonia Koplowicz with regard to transfer and/or new postings.

P36     Lotus note dated Sept. 11, 2001 from Dawn Dworsky to Simmie Osborn with regard to Plaintiff's return to work on a restricted 30 hour week.

P37     Lotus note dated Sept. 21, 2001 to Maureen Summers and Dawn Dworsky with regard to Plaintiff's opposition to the assignment of writing a Dazel Manual.

P38    Lotus note dated Sept. 26, 2001 from Maureen Summers stating that a meeting with Mike Suman and Dawn Dworsky would resolve Plaintiff's work-related issues.

P39    Lotus note June 14, 2001 from Dawn Dworsky attacking Plaintiff about a project end – when the project for engineering install had not yet began.

P40    Lotus note June 15, 2001 to Dawn Dworsky follow up meeting notes where Dawn discusses how she compared Plaintiff's salary (SALMAN) to those of her peers and stated that Plaintiff's salary is inequitable.

P41    Lotus note dated March 14, 2001 from Beth Musumeci hiring manager, noting a title change from MTSA to Supervisor. Salary range S3 from 37,800 to 88,200.  Plaintiff researched the current manager's salary and responsibilities and found that her offer was based on a 3% increase from Dawn Dworsky and a 5% offer from the hiring manager.

P42    A copy of a list prepared by Plaintiff of African-American employees who have been terminated.

2.    The following exhibits were offered by Plaintiff and marked for identification. Defendant objected to their receipt in evidenced on the grounds stated:

None at this time.

3.    The following exhibits were offered by Defendant, received in evidence and marked as indicated:

See Defendant's Proposed Pretrial Order.

4.    The following exhibits were offered by Defendant and marked for identification.  Plaintiff objected to their receipt in evidence on the grounds stated:

Plaintiff objects to Defendant's proposed Exhibits 1-57 on the grounds of hearsay. Defendant also objects to Exhibit 51, 52, 53, 54 on the grounds of relevance.    Plaintiff also reserves the right to enter any exhibits on Defendant's list not objected to, or

admitted by the Court over Defendant's objection.  Additional exhibits not listed above may be offered for rebuttal purposes with the approval of the Court.

# SCHEDULE (2)(d)

# Witnesses

**SCHEDULE (d)**

**Plaintiff's Potential Witnesses**

1.    Mr. Jesse Cason
      106 McMullen Circle
      Bear, DE 19701-3058
      (302) 838-1359

2.    Mr. Joseph Hinton
      1819 W Grange Avenue
      Philadelphia, PA 19141-1224
      (215) 549-3064

3.    Ms. Selma York
      (Cell) (302) 438-1679
      (Work) (302) 391-6735

4.    Edwin Derek Alston, Manager
      Computer Sciences Corporation
      500 Creekview Drive
      Newark, DE  19711
      (302) 391-8504

5.    Mr. Darrin Alexander
      (302) 391-6096

6.    Paul White, Coworker
      Computer Sciences Corporation
      500 Creekview Drive
      Newark, DE  19711

7.    Mr. Jerry Flowers
      HR Manager for CSC
      Retired about 1.5 years ago

8.    Mr. Herbert Broadwater
      CSC Employee Services
      (302) 391-6205

9.    Ms. Tia Jackson
      Project Manager for CSC
      (302) 391-7933

10.    Mr. Gus Siekerka
       EEOC Coordinator for CSC
       (703) 641-3280 or (703) 627-6522

11.    Mr. Fred E. Vollrath
       VP Human Resources
       (310) 615-1785

12.    Mr. Bernie Breen
       VP Chemical Group
       (703) 205-6300 or (703) 622-2422

13.    Mr. Stan Baines
       Colleague
       (610) 647-4912

14.    Diane Poland, Plaintiff
       12 Berks Court
       New Castle, DE 19720
       (302) 325-2055

       Plaintiff reserves the right to call any witnesses on Defendant's list.  Additional

witnesses not listed above may be offered for rebuttal purposes with the Court's

permission.

## Defendant's Potential Witnesses

       See Defendant's Proposed Pretrial Order.

# SCHEDULE (2)(f)

# Deposition Testimony

## SCHEDULE (2)(f)

### Plaintiff's Designation of Deposition Testimony to be Read into Evidence

Plaintiff may use portions of the depositions of the following individuals for impeachment purposes:

- Dawn Dworsky;

- Sonja Koplowicz; and

- Maureen Summers.

### Defendant's Designation of Deposition Testimony to be Read into Evidence

See Defendant's Proposed Pretrial Order.

# SCHEDULE (2)(g)

# Special Damages

## SCHEDULE (2)(g)

### Plaintiff's Statement of Special Damages

To be provided.

### Defendant's Statement of Special Damages

Not applicable.

# SCHEDULE (2)(h)

# Waiver

## SCHEDULE (2)(h)

### Plaintiff's Statement of Waivers of Any Claims or Defenses Abandoned by Any Party

Plaintiff has not waived any claim.

### Defendant's Statement of Waivers of Any Claims or Defenses Abandoned by Any Party

See Defendant's Proposed Pretrial Order.