# EXHIBIT 1

*01135  0064C*
*CPO*

RECEIVED

JUL 14 2003

## TO THE INDUSTRIAL ACCIDENT BOARD OF THE STATE OF DELAWARE
### SITTING IN AND FOR NEW CASTLE COUNTY

DIANE POLAND Claimant        Claimant SS# 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

vs.                          DOB  8/24/64

COMPUTER SCIENCE CORP Employer   Ins. Carrier RSK Co.

                             CLAIM # 1M8049161W2

The undersigned petitioner respectfully represents:

That the above named claimant and the above named employer have failed an agreement in regard to compensation due said claimant as an employee of said employer.

The undersigned therefore prays that your Honorable Board shall, after due notice of the time and place of hearing served on all parties in interest, hear and determine the matter in accordance with the facts and the law and state its conclusions of fact and rulings of law.

My signature on this petition is authorization for any doctor or hospital or other health care provider to supply any an all medical records and reports to the bearer of the original or a copy of this petition regarding any medical condition provided all requests for this information are in writing.

Dated this ___10___ day of __JULY__ A.D. 2003

X _Diane Poland_
Name

12 BERKS COURT
Address
NEW CASTLE, DE 19720

Seix

INDUSTRIAL ACCIDENT BOARD
STATE OF DELAWARE

Statement of Facts Upon Failure to Reach an Agreement

1. Name of employee: Diane Poland

2. Residence of employee: 12 Berks Court, New Castle, DE 19720

3. Employee's Telephone Number: 325-2790

4. Date of Accident: 8/6/01

5. Place of Accident: Computer Science Corp.

6. By whom employed at the time of accident:  Computer Science Corp.

7. Occupation of employee at the time of the accident: Technical
   System Analyst

8. Nature of accident and how it happened: Racial discrimination

9. Describe the nature of injury: Emotional injury

10. Did employee received medical, surgical or hospital service: Yes

11. When was notice of injury given to or received by employer: 8/6/01

12. Give names and addresses of all employers for the past 5 years:
    Computer Science Corp.
    University of Pennsylvania

13. State weekly wage when injured: $1,329.00(bi-weekly - net) - Gross
    to be provided.

14. State names and addresses of all treating doctors for this claim:
    See Attached

15. State names and addresses of all other treating doctors for the
    last 10 years: See Attached

16. Give names and addresses and dates of treatment of all hospitals
    and institutes treating you for this injury: See Attached

17. To what extent did injury prevent employee from working and for how
    long: Mental stress, anxiety, and depression initially/totally/ partially
    disabled from 8/6/01 to 2/20/02 and than from 2/20/02 until I was
    terminated on 9/27/02 I was disabled.

18. State whether or not employee has fully recovered and if only
    partially to what extent: I am still on medication and see my doctor and
    therapist.  Continued care is undetermined.

19. If employee has resumed work state when and give name of present employer: N/A

20. State what trade or occupation and weekly wage: N/A

21. If employee has not resumed work state how long likely to be incapacitated from doing so: Employee still looking for work.

22. Give description and dates of all previous and subsequent injuries and identify all: N/A

23. State any other important facts bearing on the case above presented: N/A


Dated this _____ day of _____A.D. 2003


                                        _____
                                                    Name


xc:  Christine P. O'Connor, Esquire

14. Rodrigo Tanchanco, M.D.
    Total Care Physicians
    2600 Glasgow Avenue, #124
    Newark, DE 19702

    Dr. Donald Berman
    Licensed Counselor
    1500 Shallcross Avenue, Suite 2
    Wilmington, DE 19806

    Dr. Scott Houser
    Adult Psychiatrist
    5239 West Woodmill Drive, Suite 49
    Wilmington, DE 19808

    Dr. Cuba
    New Castle County Mental Health
    501 Ogletown Road
    Newark, DE 19711

    Catholic Charities, Inc.
    Counseling & Substance Abuse Services
    Fourth Street and Greenhill Avenue
    Wilmington, DE 19805

15. Inclusive of doctors in number 14:

    Dr. Levy
    Glasgow Medical Center

    Dr. White
    Christiana Medical

    Colleen Laskoski
    Catholic Charities

    Dr. DeMeo (OB/GYN)

    Dr. Becker (Otorhinolar)

    Dr. Glassman (Orthopaedic)

16. Suburban Psychiatric Associates
    New Castle County Mental Health

23. I was considered on unpaid leave when out sick anytime from
    8/6/01 to 2/20/02. Additionally, I was not paid from 2/20/02

until I was unjustly terminated before my eligible 12 months
unpaid leave.

20. State what trade or occupation and weekly wage:

21. If employee has not resumed work state how long likely to be incapacitated from doing so:

22. Give description and dates of all previous and subsequent injuries and identify all:

23. State any other important facts bearing on the case above presented:


Dated this ___/ �... ___ day of ___JLLY___ A.D. 2003

X _____
                Name

BEFORE THE INDUSTRIAL ACCIDENT BOARD

FOR THE STATE OF DELAWARE

DIANE POLAND,                        )
                                     )
                Claimant,            )
                                     )  CLAIM NO. 1M804961W2
        v.                           )
                                     )
COMPUTER SCIENCE CORP.,              )
                                     )
                Employer.            )

CERTIFICATE OF SERVICE

I, Jeanette C. Honis, a secretary for David J. Lyons, Esquire,

hereby certifies that two (2) copies of the attached Complaint was

served by mail and/or hand delivery on ___7/10/03___ to:

Christine P. O'Connor, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
1220 N. Market Street, 5th Floor
P.O. Box 130
Wilmington, DE 19899

                        _____
                        Jeanette C. Honis
                        Secretary to David J. Lyons
                        THE LYONS LAW FIRM
                        1526 Gilpin Avenue
                        P.O. Box 579
                        Wilmington, DE 19899

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


DIANE POLAND,                    )
                                 )
              Plaintiff,         )
                                 )    Civil Action
v.                               )    No. 04-217 (GMS)
                                 )
COMPUTER SCIENCES CORP.,         )
                                 )
              Defendant.         )


          Deposition of DIANE POLAND taken pursuant
to notice at the law offices of Potter, Anderson &
Corroon, 1313 North Market Street, The Hercules Plaza,
Sixth Floor, Wilmington, Delaware, beginning at 9:10 a.m.
on Wednesday, March 30, 2005, before Kathleen White
Palmer, Registered Merit Reporter and Notary Public.


APPEARANCES:


          JEFFREY K. MARTIN, ESQUIRE
          KERI L. WILLIAMS, ESQUIRE
          MARGOLIS EDELSTEIN
            1509 Gilpin Avenue
            Wilmington, Delaware   19806
            for the Plaintiff

          LARRY R. SEEGULL, ESQUIRE
          AMY BETH LEASURE, ESQUIRE
          DLA PIPER RUDNICK GRAY CARY LLP
            6225 Smith Avenue
            Baltimore, Maryland   21209-3600
            for the Defendant


-----------------------------------------------------------

                    WILCOX & FETZER
     1330 King Street - Wilmington, Delaware 19801
                    (302) 655-0477





**WILCOX & FETZER LTD.**
Registered Professional Reporters

Diane Poland                                    22

1      A.    Yes, I have.

2      Q.    How many times have you made a claim for

3   workers' compensation benefits?

4      A.    Just once.

5      Q.    That was for injuries you sustained while at

6   Computer Sciences Corporation?

7      A.    Yes.

8      Q.    Am I correct that those injuries were the

9   discrimination you claimed related to race and sex and

10  retaliation?

11     A.    Well, the claim I was out on anxiety and stress,

12  workers' comp. as a result of those things.

13     Q.    So the claim was that you were injured and your

14  injury was that it was stress related to race

15  discrimination and the sex discrimination that we

16  discussed earlier?

17     A.    Yes.

18     Q.    Was the stress due to anything other than those

19  things?

20     A.    No.

21     Q.    So the injury was only related to those

22  conditions at work?

23     A.    Yes.

24     Q.    Now, you received benefits as a result of that

1              MR. MARTIN:  Larry, it's been about an hour

2    and ten minutes.  Do you think we can take a short break?

3              MR. SEEGULL:  Sure.  Do you want to take a

4    short break now?

5              THE WITNESS:  Sure.

6              (A recess was taken at this time.)

7              MR. SEEGULL:  Let's have this marked as, I

8    guess, Exhibit 3.

9              (Defendant's Exhibit 3 was marked for

10   identification.)

11   BY MR. SEEGULL:

12       Q.   I know we were talking about Dazel, Miss Poland,

13   but I want to go back and talk about the workers'

14   compensation claim.  You said there had been a

15   settlement?

16       A.   Yes.

17       Q.   Are these the two documents that constitute the

18   settlement of your workers' compensation claim?

19       A.   Yes, they look like, yes.

20       Q.   What we are looking at is Defendant's Exhibit 3.

21   The first page shows you received a sum of $2,964.17 for

22   compensation due to your temporary partial disability?

23       A.   Yes.

24       Q.   That disability ran from August 6 of 2001 until

1    March 1st of 2002?

2        A.    Okay.

3        Q.    Is that right?

4        A.    Yes.

5        Q.    Then the second page of Defendant's Exhibit 3

6    reflects that you received the sum of $14,073 in

7    settlement of your claim for temporary total disability

8    which ran from March 2nd of 2002 through September 27th

9    of 2002; correct?

10       A.    Correct.

11       Q.    So in total you received about $17,000 in

12   settlement for a period of disability from August of 2001

13   through September of 2002?

14       A.    That's correct.

15       Q.    Those were the injuries we talked about earlier?

16       A.    Yes.

17       Q.    That's what you received the $17,000 for?

18       A.    Yes.

19       Q.    We were talking about UNIX, I believe, and

20   explain to me again --

21              MR. SEEGULL:    Can you read me the last

22   question I asked just before the break, please?

23              (The reporter read the following from the

24   record as requested:



# EXHIBIT 3

CASE FILE NO 1196509
CARRIER FILE NO 1M804961WZ

STATE OF DELAWARE

OFFICE OF WORKERS' COMPENSATION

RECEIPT FOR COMPENSATION PAID

DATE:  December 22, 2003

Received of  CNA  the sum of $14,073.00*, making in all the total sum of $14,073.00 in settlement

of compensation due for the  TEMPORARY TOTAL *  disability of  DIANE POLAND  which began on

3/02/02 , and terminated on 9/27/02 .

_____
Employee Signature

* 30 weeks of benefits at a
compensation rate of $469.10
** MENTAL STRESS

_____
Address:

Your signature on this receipt will terminate your rights to receive the workers' compensation benefits
specified above on the date indicated. This form is not a release of the employer's or of the insurance carrier's
workers' compensation liability. It is merely a receipt of compensation paid. The claimant has the right
within five years after the date of the last payment to petition the Office of Workers' Compensation for
additional benefits

CASE FILE NO. 1196509
CARRIER FILE NO. 1M804961WZ

## STATE OF DELAWARE

## OFFICE OF WORKERS' COMPENSATION

### RECEIPT FOR COMPENSATION PAID

DATE:  January 28, 2004

Received of  CNA  the sum of $2,964.17*, making in all the total sum of $2,964.17 in settlement of compensation due for the  TEMPORARY PARTIAL *  disability of  DIANE POLAND  which began on 8/06/01 , and terminated on  3/01/02 .

_____
Employee Signature

* 29 71 weeks of benefits at a
compensation rate of $99 77
** MENTAL STRESS

_____
Address:

Your signature on this receipt will terminate your rights to receive the workers' compensation benefits specified above on the date indicated. This form is not a release of the employer's or of the insurance carrier's workers' compensation liability. It is merely a receipt of compensation paid. The claimant has the right within five years after the date of the last payment to petition the Office of Workers' Compensation for additional benefits

# **EXHIBIT 4**

LEXSEE 2003 US DIST LEXIS 19325

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION and LISA STEPLER,
Plaintiffs, v. AVECIA INC., Defendant.**

**C.A. No. 03-320-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 19325*

**October 23, 2003, Decided**

**SUBSEQUENT HISTORY:** Reargument denied by *EEOC v. Avecia Inc., 2004 U.S. Dist. LEXIS 7995 (D. Del., Apr. 28, 2004)*
Summary judgment granted by, Sub nomine at *Stepler v. Avecia Inc., 2004 U.S. Dist. LEXIS 14955 (D. Del., July 19, 2004)*

**DISPOSITION:** [*1] Defendant's motion to dismiss plaintiff's state law tort claim for intentional infliction of emotional distress granted

**LexisNexis(R) Headnotes**

**COUNSEL:** Patricia C. Hannigan, Esquire, Wilmington, Delaware; Philip B. Bartoshesky, Esquire, Wilmington, Delaware. Counsel for Plaintiffs.

Jennifer C. Bebko Jauffret, Esquire, Wilmington, Delaware; Ginger D. Schroder, Esquire, Buffalo, New York. Counsel for Defendant.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

### MEMORANDUM OPINION

Wilmington, Delaware

**ROBINSON, Chief Judge**

### I. INTRODUCTION

On March 24, 2003, the Equal Opportunity Commission (the "EEOC") filed a complaint against Avecia, Inc. ("Avecia") on behalf of Lisa Stepler ("Stepler") alleging retaliation under Title VII of the Civil Rights Act

of 1964 (*42 U.S.C. § 2000(e), et seq.*) and Title I of the Civil Rights Act of 1999 (*42 U.S.C. § 1981A*). (D.I. 1) On July 3, 2003, Stepler filed a motion to intervene in this action. (D.I. 11) After the court granted Stepler's motion on July 8, 2003 (D.I. 11), Stepler filed a three count complaint in intervention against Avecia on July 17, 2003. (D.I. 15) Stepler alleged [*2] retaliation under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991; (2) wrongful termination pursuant to Delaware state law; and (3) intentional infliction of emotional distress pursuant to Delaware state law. The EEOC is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964. (D.I. 1 at P 3) Stepler is a resident of the State of Maryland. (D.I. 15 at P 4) Avecia is a Delaware company with business operations in the State of Delaware and the City of New Castle. (D.I. 1 at P 4) The court has jurisdiction over the EEOC's and Stepler's federal civil rights claims pursuant to *28 U.S.C. § § 1331 and 1334* and supplemental jurisdiction over all other claims pursuant to *28 U.S.C. § 1367(a)*. Avecia's motion to dismiss Stepler's intentional infliction of emotional distress claim is currently before the court. (D.I. 27) Because the *Delaware Workers' Compensation Act* (the "Act") bars Stepler's claim, the court grants Avecia's motion.

### II. BACKGROUND

Stepler began her employment at Avecia on or about November [*3] 1987. (D.I. 15 at P 6) Beginning in 1999, Stepler avers that she was subjected to a sexually hostile work environment by a male co-worker. (D.I. 15 at P 7) She complained to Avecia's management, including human resource personnel, in both April and August 2000 about the sexual harassment. (D.I. 15 at P 8)

After lodging her complaints, Stepler contends that Avecia began to treat her differently than its other employees. (D.I. 15 at P 10) For instance, Stepler maintains that Avecia scrutinized her vacation requests, work as-

2003 U.S. Dist. LEXIS 19325, *

signments, and progress more than other employees. She also alleges that Avecia required her to remain at her work station during work breaks, but permitted other employees to enjoy breaks in designated areas with other employees. Additionally, Stepler claims that Avecia forbid her from displaying personal items around her work area, but at the same time, did not institute such restrictions on other employees.

In February 2001, Stepler informed Avecia's management that she was being subjected to disparate treatment in retaliation for complaining about sexual harassment. (D.I. 15 at P 12) She complained directly to Avecia's human resource manager about this retaliation [*4] again in March 2001. Avecia terminated Stepler's employment on or about May 11, 2001. (D.I. 15 at P 15) After being terminated, Stepler filed a complaint against Avecia with the EEOC. The EEOC conducted an investigation, determined that Avecia violated Title VII, and attempted an unsuccessful conciliation between Stepler and Avecia. (D.I. 31 at 3) Consequently, the EEOC initiate suit against Avecia on behalf of Stepler.

In count III of her complaint in intervention, Stepler argues that Avecia intentionally inflicted emotional distress on her by its disparate treatment. In particular, Stepler charges that Avecia's criticism and scrutiny was intentional, malicious, and calculated to cause her to suffer extreme emotional distress. (D.I. 15 at P 32) Stepler further claims that she suffers severe and continuing mental and emotional distress from this treatment. (D.I. 15 at P 33) Avecia, in response, denies any inappropriate or illegal conduct. (D.I. 29)

**III. STANDARD OF REVIEW**

Under *Rule 12(b)(6) of the Federal Rules of Civil Procedure*, "[a] complaint should be dismissed only if, after accepting as true all of the facts alleged in the [*5] complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted [to the plaintiff] under any set of facts consistent with the allegations of the complaint." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998)*. The court, therefore, must accept as true all material allegations of the complaint, and it must construe the complaint in favor of the plaintiff. See *id.* Claims may be dismissed only if a plaintiff cannot demonstrate any set of facts that would entitle him to relief. See *Conley v. Gibson, 355 U.S. 41. 45-46. 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*

**IV. DISCUSSION**

Avecia raises two affirmative defenses in its motion to dismiss. First, Avecia argues that Stepler's intentional infliction of emotional distress intervention claim is

barred by the Delaware statute of limitations applicable to personal injury claims. Alternatively, Avecia charges that this claim is barred by the Act. The court will consider each of Avecia's affirmative defenses in turn below.

**A. Statute of Limitations**

The Delaware statute of limitations concerning personal injury provides [*6] that "no action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of [two] years from the date upon which it is claimed that such alleged injuries were sustained." *DEL. CODE ANN. tit 10, § 8119* (2003). "Personal injuries" include emotional injuries for statute of limitation purposes. See *Wright v. ICI Americas Inc., 813 F. Supp. 1083 (D. Del 1993)*. Accordingly, under Delaware law, a two-year limitations period applies to claims for emotional distress.

Avecia argues that Stepler's intervention claim for intentional infliction of emotion distress falls outside of the two-year statute of limitations period for a personal injury action. Avecia points out that Stepler was terminated on May 11, 2001, but did not move to intervene until July 3, 2003 or file her complaint until July 17, 2003. Given these dates, Avecia contends that more than two years have passed since Stepler's alleged injuries were sustained.

In rebuttal, Stepler maintains that her intervention complaint relates back to the EEOC's original complaint of March 2003 and that the EEOC could properly amend its complaint [*7] to assert an intentional infliction of emotion distress claim under *Rule 15(c) of the Federal Rules of Civil Procedure* because such amendment would be based upon the same conduct described in the EEOC's original complaint. Stepler, therefore, characterizes the issue as whether the claims of a complaint in intervention may relate back to the original complaint. Stepler advocates that her complaint in invention and the EEOC's original complaint are virtually identical with regard to the factual allegations. As well, she notes that Avecia answered both the EEOC's original complaint and her complaint in invention with the same defenses. Hence, Stepler argues that Avecia received notice of the conduct which forms the basis for her intentional infliction of emotional distress claim and, as a result, will not suffer undue prejudice if her intentional infliction of emotional distress intervention complaint proceeds.

In the alternative, Stepler argues that the statute of limitations was tolled from the time that she filed her complaint with the EEOC until the time that the EEOC filed its Title VII and § 1981 litigation against Avecia on her behalf. [*8] Stepler charges that over a year and one-half passed while the EEOC investigated her charges and attempted resolution outside the court system. Given this time period, Stepler asserts that her intentional inflic-

tion of emotional distress claim is within the two-year statute of limitations.

The court does not find that the two-year statute of limitations for personal injury actions bars Stepler's intentional infliction of emotional distress intervention claim as Avecia asserts. Delaware courts have found that the claims of an intervenor that relate back to the original filing defeat statute of limitation defenses. See In Re MAXXAM, Inc., 698 A.2d 949 (Del. Ch. 1996); see also Child, Inc v. Rodgers, 377 A.2d 374 (Del. Super. 1977), aff'd in part and rev'd in part sub nom, Pioneer Nat'l Title Ins. Co. v. Child, Inc., 401 A.2d 68 (Del. 1979). "As long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action against him, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense. [*9] " Child, 377 A.2d at 377 (quoting WRIGHT AND MILLER, 6 FEDERAL PRACTICE AND PROCEDURE § 1501 (1971)).

While it is clear that more than two years passed between Stepler's termination and the filing of her intervention complaint, the court agrees with Stepler that the conduct upon which she bases her intentional infliction of emotion distress intervention claim is the same conduct upon which the EEOC filed its Title VII and § 1981 action. As such, the court appreciates the relationship between Stepler's intentional infliction of emotional distress invention claim and the EEOC's original complaint. The court also notes that Avecia would not be prejudiced by Stepler's intentional infliction of emotion distress claim because it was provided notice of the alleged illegal conduct when the EEOC filed suit on behalf of Stepler. Accordingly, the court concludes that the "relation back" doctrine saves Stepler's intentional infliction of emotional distress intervention claim from being time-barred.

Considering Stepler's alternative argument that filing a complaint with the EEOC tolls the statute of limitations for an independent state law claim such as intentional infliction [*10] of emotional distress during the EEOC's administrative process, the court again agrees with Stepler. A litigant typically cannot file a claim for intentional infliction of emotional distress directly in federal court until a federal claim is brought because the federal court would lack subject matter jurisdiction. See Forbes v. Merrill Lynch Fenner & Smith, Inc., 957 F. Supp. 450, 456 (S.D.N.Y. 1997). If the statute of limitations did not toll during the EEOC's investigation, a litigant would be forced to file any state law claim in state court and then later bring a federal discrimination claim in federal court. See id. The litigant would be forced to argue two cases with an identical fact pattern under two separate sovereigns. See id. Such a situation would thwart judicial effi-

ciency and undermine the EEOC's opportunity to investigate allegations of employment discrimination and to facilitate dispute resolution prior to litigation. See id. For these reasons, the court concludes that the two-year statute of limitations does not bar Stepler's intentional infliction of emotional distress claim against Avecia.

## B. The Delaware Workers' Compensation Act [*11]

The Delaware General Assembly enacted its first Workers' Compensation Statute in 1917. 29 Del. Laws ch. 233 (1917). One of the General Assembly's purposes in enacting the statute was to provide more direct and economical compensation for injured employees and to create a pool of employers that would bear the burden of ameliorating the losses resulting from industrial accidents. See Koeppel v. E.I. DuPont De Nemours & Co., 37 Del. 369, 7 W.W. Harr. 369, 183 A. 516 (Del. Super. 1936), aff'd, 38 Del. 542, 8 W.W. Harr. 542, 194 A. 847 (Del. 1937). The Act was also designed to provide prompt financial and medical assistance to injured employees and their families because litigation often delayed such assistance. See Frank C. Sparks Co. v. Huber Baking Co., 48 Del. 9, 9 Terry 9, 96 A.2d 456 (Del. 1953). The Act specifically provides that "every employer and employee, adult and minor ... except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies. [*12] " DEL. CODE ANN. tit. 19, § 2304 (2003). This provision bars common law actions against an employer where: 1) plaintiff is an employee; 2) his condition is shown to be a "personal injury" within the meaning of the statute; and 3) the injury is shown to have arisen out of and in the course of employment. The only statutory exception to this provision arises when the personal injury is caused by the willful conduct of another employee for personal reasons not related to the scope of employment. 19 DEL. CODE ANN. tit. 15, § 2301(15)(b) (2003).

With this legal framework in place, the key to whether the Act precludes an action "lies in the nature of the [personal] injury for which plaintiff makes [a] claim, not [in] the nature of the defendant's act which plaintiff alleges to have been responsible for that injury." Battista v. Chrysler Corp., 454 A.2d 286, 288-89 (Del. Super. 1982) (citations omitted). Accordingly, the Delaware Supreme Court observed that "mental injury is included among the personal injuries compensable under the Act." Konstantopoulos v. Westvaco Corp., 690 A.2d 936, 939 (Del. 1996). [*13] The Delaware Supreme Court further ruled that intentional infliction of emotional distress caused by sexual harassment arising from and in the

2003 U.S. Dist. LEXIS 19325, *

course of employment is barred by the Act. See *id. at 938*. This court also held that intentional infliction of emotional distress stemming from on-the-job discrimination is barred by the Act. See *Brodsky v. Hercules, Inc., 966 F. Supp. 1337, 1353 (D. Del. 1997)*.

Avecia argues that Stepler's intentional infliction of emotional distress claim is barred by the exclusivity provision of the Act because her alleged injury resulted from conditions related to or involving her employment, not conditions intentionally designed to injure her. Avecia points out that Stepler alleges that she suffered emotional distress because her work was criticized, her vacation requests were scrutinized, and she was forced to take work breaks at her work station. Avecia notes that this conduct all occurred in the context of her employment duties. Moreover, Avecia points out that Stepler fails to show that Avecia deliberately acted to harm her. Rather, Avecia maintains that Stepler offers conclusory allegations which merely track the [*14] elements of an intentional infliction of emotional distress claim.

Stepler counters Avecia's argument by stressing that Avecia retaliated against her personally for complaining about being sexually harassed and, in doing so, intentionally sought to emotionally harm her. As such, Stepler asserts that Avecia's conduct is excepted from the Act's exclusivity provision.

Accepting as true the allegations in Stepler's complaint regarding Avecia's conduct following her sexual harassment complaints, the court finds that Avecia did not deliberately set out to personally harm Stepler. For this reason, the court concludes that Stepler may not avail the single statutory exception to the Act. Instead, the court finds that: (1) Stepler was employed by Avecia; (2) her intentional infliction of emotional distress claim fits within the meaning of the statute as recognized by the case precedent; and (3) her alleged emotional distress arose in the course of her employment. Therefore, the court finds that Stepler's intentional infliction of emotion distress claim is barred by the exclusivity provision of the Act and, as a consequence, grants Avecia's motion to dismiss this claim.

## V. CONCLUSION [*15]

For the reasons stated above, the court grants Avecia's motion to dismiss Stepler's state law tort claim for intentional infliction of emotional distress. An order will issue.

### ORDER

At Wilmington this 23rd day of October, 2003, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that Avecia's motion to dismiss **(D.I. 27) is granted.**

Sue L. Robinson

United States District Judge

# EXHIBIT 5

1998 Del. Super. LEXIS 47

Briggs v. DuPont

C.A. No. 97A-01-008

SUPERIOR COURT OF DELAWARE, SUSSEX

1998 Del. Super. LEXIS 47

October 6, 1997, Submitted
January 20, 1998, Decided

**SUBSEQUENT HISTORY:** [*1] Released for Publication by the Court March 12, 1998.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Claimant employee appealed the decision of the Delaware Industrial Accident Board (board) that granted a set-off to the employer in the employee's worker's compensation claim and awarded only one attorney's fee. The employer cross-appealed the board's award of temporary partial disability benefits.

**OVERVIEW:** The employee was injured at work. The employee and the employer appealed from the board's decision. The court affirmed and remanded. The court held that an offset to an award was proper because the employee did not experience a wage loss as a result of her receipt of employer-supplied disability benefits. Because the employee was paid her net salary under an employer-paid long-term disability plan while she could not work, an offset was correct to avoid a windfall to the employee. The board, in its discretion, could treat contested issues of disability as one for attorney's fee purposes. However, there was no indication in the board's determination that it considered the required factors for an attorney's fee award. The court remanded for specific findings. The board did not abuse its discretion in declining to award an attorney's fee for an uncontested issue. The court found that the board used its expertise and experience in carrying out the statutory directive of Del. Code Ann. tit. 19, § 2325 in the case of a displaced worker when it imputed the employee's earning capacity, because she could not go back to her former job.

**OUTCOME:** The court affirmed the board's set-off and temporary partial disability benefits award and remanded the attorney's fee award for the board to supply specific reasons for the award.

**CORE TERMS:** claimant, set-off, worker's compensation, disability, offset, partial disability, temporary, pain, long-term, loss of earning, awarding, disability benefits, double recovery, correctly, disc, light duty, prescribed, substantial evidence, physical therapy, return to work, manual labor, carrier, experienced, vocational, contested, surgery, lumbar, heavy, wage loss, relieve

**LexisNexis(TM) Headnotes**

*Workers' Compensation & SSDI > Administrative Proceedings > Judicial Review*

*Administrative Law > Judicial Review > Standards of Review > Substantial Evidence*

[HN1]The function of the reviewing court is to determine whether substantial evidence supports the agency's decision. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The appellate court does not weigh the evidence, determine questions of credibility, or make its own factual findings. It merely determines if the evidence is legally adequate to support the agency's factual findings. Del. Code Ann. tit. 29, § 10142(d).

*Workers' Compensation & SSDI > Administrative Proceedings > Awards*

[HN2]Del. Code Ann. tit. 19, § 2363(e) provides, in part, that any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workers' compensation insurance carrier for any amounts paid or payable under the Workers' Compensation Act to date of recovery, and the balance shall forthwith be paid to the employee or the employee's dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits

*Workers' Compensation & SSDI > Administrative Proceedings > Awards*

[HN3]Del. Code Ann. tit. 19, § 2355 provides that except for attachments pursuant to child support orders entered under Del. Code Ann. tit. 13, ch. 4, 5 or 6, claims or payment for compensation due or to become due under this chapter shall not be assignable and all

Page 1

compensation and claims therefor shall be exempt from all claims or creditors.

### Workers' Compensation & SSDI > Administrative Proceedings > Awards

[HN4]Del. Code Ann. tit. 19, § 2305 states that no agreement, rule, regulation, or other device shall in any manner operate to relieve any employer or employee in whole or in part from any liability created by this chapter.

### Workers' Compensation & SSDI > Administrative Proceedings > Awards

[HN5]Del. Code Ann. tit. 19, § 2377(a) provides, in part, that subject to the approval of the Industrial Accident Board, any employer may enter into or continue any agreement with employees to provide a system of compensation, benefit or insurance in lieu of the compensation and insurance provided by this chapter.

### Workers' Compensation & SSDI > Administrative Proceedings > Awards

[HN6]An offset is proper when an employee has not experienced a wage loss resulting from receipt of employer-supplied benefits; to prevent such an offset would allow employee to enjoy a windfall, at the employer's expense, from a double recovery for the same loss.

### Workers' Compensation & SSDI > Administrative Proceedings > Awards

[HN7]An employee cannot secure double recovery for a single loss where both sources of recovery emanate from the employer.

### Workers' Compensation & SSDI > Administrative Proceedings > Costs & Attorney Fees

[HN8]Del. Code Ann. tit. 19, § 2127 provides, in part, that a reasonable attorney's fee in an amount not to exceed 30 percent of the award or $ 2,250, whichever is smaller, shall be allowed by the Industrial Accident Board to any employee awarded compensation under this chapter and Chapter 23 of this title and taxed as costs against a party.

### Workers' Compensation & SSDI > Administrative Proceedings > Costs & Attorney Fees

[HN9]The Industrial Accident Board (board) has discretion to determine the number of issues that it will treat separately for attorney fee purposes. Any fee awarded, however, must be traceable to an issue contested before the board. The board also must consider various factors when determining attorney's fee awards.

### Workers' Compensation & SSDI > Administrative Proceedings > Costs & Attorney Fees

[HN10]The Industrial Accident Board (board) may award separate attorney's fees when it makes multiple awards to a claimant on various contested issues. It is worth emphasizing that these issues must be contested; the board cannot award fees for issues that are not contested.

### Workers' Compensation & SSDI > Administrative Proceedings > Evidence

[HN11]The rules of the Industrial Accident Board (board) provide that any evidence will be considered by the board that, in its opinion, possesses any probative value commonly accepted by reasonably prudent men in the conduct of their affairs. Industrial Accident Board Workers' Compensation Rule 14. There is nothing in this rule to indicate that the board must limit evidence to the issues and/or the purposes for which counsel introduces it.

**COUNSEL:** John J. Schmittinger, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware.

David G. Culley, Esquire, Tybout, Redfearn & Pell, Wilmington, Delaware.

**JUDGES:** WILLIAM SWAIN LEE RESIDENT JUDGE.

**OPINIONBY:** WILLIAM SWAIN LEE

**OPINION:** Nina Briggs ("Claimant") appeals and DuPont ("Employer") cross-appeals the August 9, 1996 decision by the Industrial Accident Board ("Board") awarding to Claimant temporary total disability benefits; partial disability benefits; medical expenses; reasonable medical witness fees; attorney's fees; and granting to Employer a set-off for long-term disability payments previously paid to Claimant. Claimant appeals the Board's grant of a set-off to Employer and its award of only one attorney's fee to Claimant. Employer cross-appeals the Board's award of temporary partial disability benefits to Claimant. This is the Court's decision on Claimant's appeal and Employer's cross-appeal.

FACTS

Claimant filed a Petition to Determine Compensation Due on April 15, 1996, for an injury she allegedly suffered on May 30, 1994, while moving large cans at work. A hearing took place on August 9, 1996 on this petition. The Board [*2] heard testimony from Claimant; Alan J. Fink, M.D. (by deposition dated July 22, 1996); Bikash Bose, M.D. (by telephone deposition dated July 29, 1996); and R.A. Escaro, M.D. (by

deposition dated August 7, 1996). A summary of the testimony appears below

Claimant testified that she is a thirty-eight (38) year-old high-school graduate who attended Delaware Technical and Community College for one year but did not graduate. Prior to her twelve-year tenure with Employer, Claimant testified that she worked in various capacities at Tastee-Freeze, Pappy's, Lake Shore Deli, Woolworth's, and a truck stop.

Claimant characterized her work for Employer during those twelve years as "heavy manual labor," which meant she either lifted, pulled or moved various containers weighing up to 2,000 pounds several times a day during her shift. She also walked several miles a day, stood for most of the work day, and had to bend, stoop, push or reach overhead several times during the day.

On May 30, 1994, Claimant worked in Employer's CMG department, where she pulled tall frames holding yarn containers weighing several thousand pounds. As she was pulling these frames, she began to experience back pain. Claimant [*3] testified that she first saw Dr. Drury in May of 1994. Dr. Drury prescribed Depamedrol, physical therapy, and three weeks of light duty work. Employer accommodated this request. Claimant testified that Dr. Drury's prescription helped her, but it did not make her feel completely better. Claimant then began to work in the staple finishing area filling in for those workers that either were absent or on vacation. This position still required her to perform heavy manual labor. She continued to have back trouble, though she continued to work. Her foreman granted her requests for light duty work.

On July 26, 1995, Claimant felt something "snap" in her back. She could not stand upright, and her groin area and right leg felt numb. She visited Dr. Escaro, who took her out of work and eventually referred her to Dr Drury. Dr. Drury gave her injections and a five-day Depro pack, which Claimant testified is a time-release steroid. She stated that this was the same treatment Dr. Drury had prescribed in 1994, but that it did not help her in 1995. He also performed diagnostic tests which Claimant testified revealed a herniated disk, after which Dr. Drury referred her to his partner, Dr Quinn, for [*4] a surgical consult.

From July 26, 1995 to February 15, 1996, representing a period of time during which Claimant was out of work, she received long-term disability payments equal to her net wages from a disability insurance plan paid for by Employer. Claimant testified that these equated to no loss of income to her. Claimant stated that she did return to work for Employer in a light-duty capacity for three weeks in September, 1995. During

that time, she worked in the safety office performing secretarial duties for four hours a day. She received full compensation for her work, which consisted of salary and disability payments. It was difficult for her to sit for four hours a day. Consequently, she visited Dr. Jenson, Employer's on-site doctor, who told her to stay home until she could get "squared away."

On October 13, 1995, Claimant then saw Dr. Bose who placed her on a no-work status. On January 24, 1996, he performed disk fusion surgery and inserted metal rods and screws into her back. As of the time of the hearing, Dr. Bose was seeing Claimant every eight weeks, and he has told her that the healing process would take six months to one year. Claimant testified that at the end of [*5] six months, x-rays revealed that she was not complete healed. In addition, Dr. Bose has not released Claimant from the no-work order. Beginning June 3, Claimant reported that Dr. Bose prescribed six weeks of physical therapy, but she was only able to complete four weeks of the prescription, because she had no funds with which to pay for it.

On March 29, 1996, Claimant received a letter from Employer terminating her employment. Prior to her receipt of this letter, however, Claimant testified that Employer notified her that it had accepted causality for her back injury and that it would pay her medical bills.

On the date of the Board hearing, Claimant testified that she felt better, although she feels pain in her back every day. She stated that she wears out easily and that she walks with a limp as the day progresses. She can drive short distances for a short time. She is not presently taking any medications. Her doctor has told her that she will never be able to return to the type of heavy manual labor that she used to perform for Employer, but Claimant testified that she believes she would be able to perform the duties required of positions she had prior to her employment with Employer. [*6]

Alan J. Fink, M.D. testified on behalf of Employer. He examined Claimant on May 29, 1996. He also reviewed various medical records, including those of Drs. Drury, Quinn and Bose. At the time of Dr. Fink's examination, Claimant experienced low back pain but no pain in her legs. She also did not have any bowel or bladder dysfunction.

Dr. Fink performed an orthopedic and neurological examination. The orthopedic examination revealed unremarkable or normal straight-leg raising and a full range of extension of the low back. There was minimal limitation of forward flexion of twenty degrees and a limitation of right lateral flexion and rotation by ten degrees. Dr. Fink characterized these findings as mild. The neurological examination revealed normal results.

Based upon his review of various records and his own examination, Dr. Fink opined that he could not relate Claimant's low back and leg pain to the May 30, 1994 industrial accident. That portion of his testimony is irrelevant, however, because the parties did not contest causality.

Dr. Fink also opined that Claimant could return to work in a full-time sedentary position beginning May 29, 1996. If her symptoms did not increase, Claimant [*7] could then graduate to a light duty position with certain lifting restrictions. The mild limitations that he found during his examination of Claimant would not change his opinion on this issue.

Bikash Bose, M.D. testified on Claimant's behalf. He first saw her on October 13, 1995. Claimant informed him that she had hurt her back at work in May 1994. She previously pulled a muscle in her back in 1986, which resolved itself after taking medication. Dr. Bose testified that the 1986 incident was not similar to the 1994 incident.

During the October visit, Claimant complained of severe lower back pain which radiated down her right leg. She also experienced numbness in her right leg, a clicking noise in her neck, restriction in her neck movements, pain in her neck radiating down to her right arm, and numbness in her elbow radiating down to two fingers. Dr. Bose's physical examination revealed tenderness in Claimant's neck and lower back, decreased ability to turn her head from side to side, weakness in the gluteal and hamstring muscles in the lower extremity located on the right side, and a decreased pin pick sensation of the right L5-S1 nerve root. His physical examination led him to conclude [*8] that these symptoms suggested a nerve root irritation in the spine.

Dr. Bose also reviewed various medical records. The EMG showed bilateral radiculopathy, and the discogram tested positive for L5-S1 discal response. He prescribed an MRI to be done with gadolinium, which later revealed the disc herniation condition. The cervical spine MRI, myelogram, and post-myelogram CAT scan showed a herniated disc at the L5-S1 level. Dr. Bose concludes that the herniated disc condition is causally related to the May 30, 1994 industrial accident. Dr. Bose testified that this conclusion is supported further by his review of Dr. Drury's report. As stated previously, causality is not an issue in this case and, therefore, this portion of Dr. Bose's testimony is irrelevant.

When Dr. Bose first examined Claimant on October 13, 1995, he felt that she was totally disabled and unable to work. This disability continued, in his opinion, for six months after he performed surgery on January 24, 1996. After the January 24 surgery, Dr. Bose wrote to Dr. Jensen, DuPont's plant doctor, to inform him that Claimant could return to work six months after surgery but that she should not return to her previous position [*9] that included heavy manual labor. For patients with similar conditions to Claimant's, Dr. Bose restricts them to lifting 50 pounds. Claimant could not remain within this restriction if she returned to her previous job.

On July 1, 1996, Dr. Bose prepared a report for Claimant's counsel regarding her present condition. Recent x-rays showed that the surgery was healing well and that the metal instruments placed in her back were lined up properly. Dr. Bose prescribed six weeks of physical therapy. He also opined that Claimant could return to work in a light duty, sedentary capacity after she had completed the six weeks of physical therapy. Up until that time, in his opinion, Claimant was totally disabled.

R.A. Escaro, M.D., also testified on Claimant's behalf. He first saw Claimant for back problems on July 26, 1995. Claimant informed him that she injured her back in May 1994 and had been under Dr. Drury's care for same. His physical examination revealed tenderness to touch in the lumbar area and stretch leg raising five degrees and thirty degrees. He prescribed muscle relaxants, pain medication, physical therapy and ordered an x-ray of the lumbar area. He also took her out of work [*10] at this time.

On August 1, 1995, Dr. Escaro saw Claimant again. At that time, she was still experiencing pain in her lower back. X-rays that he previously ordered revealed no compression fracture and well-maintained disc space. He diagnosed lumbar strain. He continued to keep Claimant out of work.

During her September 19, 1995 visit to Dr. Escaro, Claimant continued to voice similar complaints. He reviewed an MRI performed on August 9, 1995 that revealed a disc herniation at L5-S1 level. His diagnosed lumbar disc herniated, nucleus pulposus or lumbar disc. At this time, he referred Claimant to Dr. Bose.

Based upon the foregoing testimony, the Board made the following findings of fact and conclusions of law. First, it dispensed with the causation issue since Employer conceded such. Second, the Board awarded temporary total disability to Claimant from July 26, 1995 until September 1995, when she returned to work part-time for three weeks in a light-duty capacity. For those three weeks, the Board found that Claimant was entitled to temporary partial benefits. At the conclusion of those three weeks, the Board found Claimant temporarily totally disabled again until May 29, 1996,

on which [*11] date the Board concluded her disability ended. For this conclusion, the Board relied upon Dr. Fink's testimony regarding an unremarkable orthopedic examination and mild limitation in her range of back motion which would not, in Dr. Fink's estimation, prevent her from returning to work in a light duty capacity.

Third, the Board rejected Claimant's displaced worker argument, considering her age, previous employment, education, communication skills, demonstrated intelligence, and appearance. It also found that Claimant had not met her burden of showing that she made reasonable efforts to obtain employment which were unsuccessful because of her injury.

Fourth, the Board found that Claimant suffered a loss of earning capacity. The Board's decision provided that as the claimant is no longer capable of working in her previous position, the Board finds that she most likely has suffered a loss of earning capacity. There is little evidence in the record, however, to support a finding for temporary partial disability benefits. The employer has not provided the Board with any vocational information and the claimant has not sought alternative employment since her termination in March [*12] of 1996. Consequently, based upon the claimant's prior employment history, and the Board's experience, the Board will infer that the claimant is capable of earning $ 6.00 per hour for a forty hour work week. The Board imputes this earning capacity to the claimant for present purposes. Once the claimant obtains her degree from Del Tech, the claimant's earning capacity may well change, and the parties may either reach an agreement or petition the Board to change this order. Based upon the imputed earnings of $ 240.00 per week, and a pre-injury weekly wage of $ 519.23, the Board finds that the claimant has suffered a loss of earning capacity of $ 279.23 per week. Her partial rate beginning May 29, 1996 and ongoing shall be $ 186.15 per week.

Fifth, the Board granted Employer's request for a set-off for Claimant's workmen's compensation awards as discussed above against the long-term disability payments that Claimant received from July 1995 to February 1996 while totally disabled. Sixth, the Board required Employer to pay Claimant's medical expenses and medical witness fees. Finally, it awarded to Claimant's counsel one fee for temporary total and partial disability benefits.

Both [*13] parties appealed this decision on several grounds. Claimant first argues that no statute directs the Board to grant a set-off against long-term disability payments paid to her under the worker's compensation statute. Claimant contends that 19 Del. C. § 2355 prevents the Board's apparent assignment of payments due to her under the worker's

compensation statute. Moreover, Claimant argues that 19 Del. C. § 2305 protects her against the set-off awarded by the Board. In addition, Claimant insists that Employer has not proposed, and the Board did not approve, an alternative compensation plan pursuant to 19 Del. C. § 2377.

Second, Claimant contends that the Board erred in several respects in its attorney's fee award. She claims that the Board made no findings of fact to support this award. In addition, Claimant states that the Board's multiple awards to her in this case warrants the same number of attorney's fee awards, especially with respect to the separate issue of medical expenses. Claimant states that the legislature enacted 19 Del. C. § 2127 with an eye towards relieving a successful claimant's burden of attorneys' fees. Without an attorneys' fee award on the medical expenses issue, Claimant contends, [*14] she faces the prospect of paying fees for both the attorney and the medical expenses, which visits upon Claimant a burden not intended by the legislature.

Employer, on the other hand, argues that the Board properly awarded a set-off, because Employer funded the disability program through which Claimant received payments for her disability. To disallow this set-off would result in Claimant benefitting from a double recovery. As for the attorney's fee issue, Employer contends that the Board correctly determined the number of issues for which it must award an attorneys' fee and, since the medical expenses issue remained uncontested by either party, the Board properly refrained from awarding an attorney's fee.

Employer also argued that substantial evidence does not support the Board's award to Claimant of temporary partial disability benefits. It first takes issue with the Board's finding of loss of earning capacity, stating that it had no vocational expert testimony on which to base its decision regarding present earning power. Instead, it erroneously relied upon Claimant's testimony regarding her employment background and the Board's own experience. Finally, Employer argues that the [*15] Board's reference to "little evidence" concedes that no substantial evidence existed to support its decision.

Claimant counters this argument by stating that substantial evidence supports the Board's decision. Specifically, Claimant states that the evidence upon which the Board relies does not have to be elicited solely on direct. Furthermore, Claimant contends that the Board properly relied on its experience to calculate the loss of earning capacity.

DISCUSSION

The Supreme Court and this Court repeatedly have emphasized the limited appellate review of the factual findings of an administrative agency. [HN1]The function of the reviewing Court is to determine whether substantial evidence supports the agency's decision. Johnson v. Chrysler Corp., Del. Supr., 59 Del. 48, 213 A.2d 64, 66-67 (1965); General Motors v. Freeman, Del. Supr., 53 Del. 74, 164 A.2d 686, 688 (1960). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Oceanport Ind. v. Wilmington Stevedores, Del. Supr., 636 A.2d 892, 899 (1994); Battista v. Chrysler Corp., Del. Super., 517 A.2d 295, 297 (1986), app. dism., Del. Supr., 515 A.2d 397 (1986). The appellate [*16] court does not weigh the evidence, determine questions of credibility, or make its own factual findings. Johnson v. Chrysler Corporation, 213 A.2d at 66. It merely determines if the evidence is legally adequate to support the agency's factual findings. 29 Del. C. § 10142(d)

I. Did the Board Err by Granting Employer's Worker's Compensation Insurance Carrier's Request for a Set-Off for Long-Term Disability Payments Previously Paid to Claimant?

Claimant sets forth various arguments in support of its position that the Board erred in awarding this set-off. Claimant first contends that the Delaware Supreme Court has previously confirmed that employees can receive private disability benefits and worker's compensation benefits at the same time and that there was no express or implied statutory right to a set-off for receipt of these types of benefits. State v. Calhoun, Del. Supr., 634 A.2d 335 (1993). According to Claimant, the Supreme Court recognized that the General Assembly enacted 19 Del. C. § 2363(e) n1 which provides a right for set-off for a worker's compensation carrier for third-party tort recoveries, not for receipt of both private disability [*17] benefits and worker's compensation benefits. Granting such a set-off, in Claimant's estimation, violates the law and requires this Court to reverse the Board's decision.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n1 [HN2]19 Del.C. § 2363(e) provides, in pertinent part, that

"any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workers' compensation insurance carrier for any amounts paid or payable under the Workers' Compensation Act to date of recovery, and the balance shall forthwith be paid to the employee or

the employee's dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits . . . "

- - - - - - - - - - - - - End Footnotes- - - - - - - - -
- - - - - -

Claimant next argues that various sections of the Delaware Code prohibit such a set-off. For example, Claimant states that 19 Del.C. § 2355 n2 prevents both the Claimant and the Board from assigning her interest in worker's compensation [*18] benefits. In addition, Claimant asserts that, pursuant to 19 Del.C. § 2305, n3 the absence of an express set-off provision protects Claimant. Finally, Claimant contends that while the Code does provide for alternative worker's compensation systems, the Board must approve any such proposed system. 19 Del.C. § 2377. n4 Claimant states that Employer has not proposed such a system to be approved by the Board. For the foregoing reasons, Claimant asks that this Court find as a matter of law that the Board had no authority to grant the set-off. In the alternative, Claimant requests that this Court reverse the Board's grant of a set-off and remand the matter for further proceedings.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n2 [HN3]That section provides that "except for attachments pursuant to child support orders entered under Chapters 4, 5 or 6 of Title 13, claims or payment for compensation due or to become due under this chapter shall not be assignable and all compensation and claims therefor shall be exempt from all claims or creditors." 19 Del.C. § 2355.

n3 [HN4]19 Del.C. § 2305 states that "no agreement, rule, regulation or other device shall in any manner operate to relieve any employer or employee in whole or in part from any liability created by this chapter . . . ."

[*19]

n4 [HN5]That section provides, in pertinent part, that "subject to the approval of the Board, any employer may enter into or continue any agreement with employees to provide a system of compensation, benefit or insurance in lieu of the compensation and insurance provided by this chapter." 19 Del.C. § 2377(a).

- - - - - - - - - - - - End Footnotes- - - - - - -
- - - - - -

Employer, on the other hand, contends that this Court should rely upon a recent Delaware Superior Court decision which upheld a similar set-off. Hall v. Chrysler Corp., Del. Super., C.A. No. 96A-03-003, Gebelein, J. (Sept. 20, 1996), aff'd, Del. Supr., 1997 Del. LEXIS 60, No. 418, 1996, Walsh, J. (Feb. 19, 1997) Employer contends that the distinctions made in that case between its facts and Calhoun, supra, are relevant to the case at bar. Specifically, Employer suggests that Calhoun correctly realized that employees should not receive double recovery from an employer who pays for both the private disability benefits and the worker's compensation benefits that employee receives. Employer also argues that Hall acknowledged that 19 Del.C. § 2377 provided for substitute compensation [*20] systems and that to award worker's compensation benefits in addition to those received from the long-term disability payments already made to Claimant here would result in a double recovery not foreseen by the legislature. Based on the foregoing, Employer asks this Court to affirm the Board's grant of a set-off.

Claimant counters that Hall, supra, is factually different from the case at bar and, thus, Employer's reliance on it is misplaced. In particular, Claimant states that Hall acknowledged that the agreement entered into between employer and employee specifically provided for an offset to or substitute for worker's compensation benefits paid by employer while its carrier investigated employee's worker's compensation claim. Claimant argues that there is no evidence to suggest that the policy providing disability payments in this case expressly provides such a set-off or that such payments were made as a substitute for worker's compensation benefits. Even if there were an agreement between Claimant and Employer in this case, Claimant continues, there is no indication that it met the rigors of 19 Del. C. § 2377 or that it met the approval of the Board. Claimant also [*21] advances an argument based on consideration; however, because the record contains absolutely no facts concerning the conditions under which Claimant obtained the disability benefits, the Court will not address this issue.

The Supreme Court and this Court have addressed the issue of set-off in various contexts, including offsets between worker's compensation benefits and unemployment compensation benefits, Brooks v. Chrysler Corp., Del. Super., 405 A.2d 141 (1979); Neuberger v. City of Wilmington, Del. Super., 453 A.2d 804 (1982); offsets between worker's compensation and benefits provided for by federal legislation, Washington v. Christiana Serv. Co., 1990 Del. Super. LEXIS 409, Del. Super., C.A. No. 90A-AP-9, Barron, J. (Oct. 12, 1990); offsets between worker's compensation and employee's uninsured motorist policy, Adams v. Delmarva Power & Light Co., Del. Supr., 575 A.2d 1103 (1990); and offsets between worker's compensation and a state pension plan contributed to by employee, State v. Calhoun, Del. Super., 634 A.2d 335 (1993).

The cases most relevant to the case sub judice, however, are those in which an employee received an award from the Board but has previously obtained some type [*22] of payment or benefits from a private insurance or benefits program paid for by employer. Guy J. Johnson Transp. Co. v. Dunkle, Del. Supr., 541 A.2d 551 (1988) (offset between worker's compensation and medical expenses paid by employer-provided medical insurance); Hall v. Chrysler Corp., Del. Super., C.A. No. 96A-03-003, Gebelein, J. (Sept. 20, 1996), aff'd, Del. Supr., 692 A.2d 412 (Feb. 19, 1997) (offset between worker's compensation and sums received by employee prior to resolution of worker's compensation claim through negotiated insurance plan paid for by employer); and Bowen v. Rothwell's Garage, Inc., 1986 Del. Super. LEXIS 1280, Del. Super., C.A. No. 85A-AP-1, Chandler, J. (Aug. 6, 1986) (Mem. Op.) (offset between worker's compensation and an employer's automobile insurance policy). Together, these cases stand for the proposition that [HN6]an offset is proper when an employee has not experienced a wage loss resulting from receipt of employer-supplied benefits; to prevent such an offset would allow employee to enjoy a windfall, at the employer's expense, from a double recovery for the same loss.

In this case, no wage loss has occurred. Claimant herself testified that she received long-term disability [*23] payments equal to her net wages from July 26, 1995 to February 15, 1996 from a disability insurance plan paid for by Employer. She also received disability payments, coupled with regular salary, for the three weeks in September that she worked part-time. These payments resulted in no loss of income to her. In addition, it matters not that the legislature did not expressly provide for the set-off granted by the Board here. Since Claimant did not experience an initial wage loss due to the disability plan paid for by Employer, there is no compensable loss under the Act. Guy J. Johnson Transp. Co. v. Dunkle, Del. Supr., 541 A.2d 551, 553 n.1 (disapproving Superior Court's holding in Neuberger v. City of Wilmington, Del. Super., 453 A.2d 804 (1982) that workers' compensation benefits cannot be reduced in the absence of a legislative directive).

Furthermore, contrary to Claimant's argument that Calhoun, supra, controls, this Court is persuaded by the reasoning set forth in Hall, supra, that Calhoun is clearly distinguishable since "the claimant did not make any contribution to [the benefits plan] and [such plan] was funded entirely by employer." Id., slip op. at 6. Claimant [*24] conceded that Employer paid for the insurance plan that provided the disability benefits; she made no contribution whatsoever. The Hall Court also pointed out, which is also important to this case, that the Supreme Court stated that [HN7]"an employee cannot secure double recovery for a single loss where both sources of recovery emanate from the employer." State v. Calhoun, supra, at 338. The Board correctly avoided that result here by providing Employer with a set-off.

Claimant also argues that Hall, supra, applies only if the long-term disability benefits intentionally replaced or substituted for workers' compensation. However, the Court does not follow Hall alone; instead, it adopts the principle set forth in case law that an offset is proper when an employee has not experienced a wage loss resulting from the receipt of employer-supplied benefits. Guy J. Johnson Transp. Co. v. Dunkle, Del. Supr., 541 A.2d 551 (1988); Hall v. Chrysler Corp., Del. Super., C.A. No. 96A-03-003, Gebelein, J. (Sept. 20, 1996), aff'd, Del. Supr., 692 A.2d 412 (Feb. 19, 1997); Bowen v. Rothwell's Garage, Inc., 1986 Del. Super. LEXIS 1280, Del. Super., C.A. No. 85A-AP-1, Chandler, J (Aug. 6, 1986).

Finally, [*25] Claimant argues that 19 Del.C. § 2355 prohibits the Board's assignment of her interest in worker's compensation benefits, represented by the set-off, and, therefore, Claimant insists that this Court must reverse that award. This argument leaves this Court unpersuaded. As the Court reasoned in Hall, supra, this section of the Code prevents assignment of Claimant's interests to independent creditors with claims against Claimant unrelated to the provision of substitute compensation. The Court found that

the offset of sums paid by [Employer's worker's compensation carrier] does not detract from the total amount of benefits received by the claimant. As such, the claimant is not assigning her compensation; she still received the full amount awarded by the Board. The only difference was that, under [Employer's] plan, she received some of her benefits early . . . . The prohibition of the offset of those benefits would clearly lead to double recovery.

Hall, supra, slip op. at 7. The same is true in this case. For the seven months spanning July 1995 to February 1996 and the three weeks in September 1995, Claimant received long-term disability payments, or a combination [*26] of these payments and salary, from Employer's disability plan which, as she testified, did

not result in a loss of income to her. She received these payments in advance of the Board's awards specified in its August, 1996 decision. To reverse the Board's decision to offset payments made by Employer's worker compensation carrier would result in the double recovery the Hall court sought to avoid. This Court too will avoid that result and, thus, will uphold the Board's decision to grant an offset to Employer's worker's compensation carrier.

II. Did the Board Commit Error by Awarding Only One Attorney's Fee to Claimant's Counsel?

Claimant attacks the Board's award of only one attorneys' fee on several fronts. First, she contends that the Board failed to articulate any reasons for its award, which makes its decision deficient for appellate review purposes. Second, she argues that she should receive separate attorney's fees for each of the awards (temporary total disability; temporary partial disability; and medical expenses) that the Board granted to her. This would require the Board to grant an additional attorneys' fee based on the award of the payment of medical expenses. [*27] Third, Claimant argues that since 19 Del.C. § 2127 n5 seeks to relieve employees of the burden of paying legal fees, the Board erroneously failed to award payment of legal fees based upon the award of medical expenses to relieve Claimant of the burden of having to pay reasonable attorney's fees from funds received from that award, which leaves her less money to pay the medical care provider for whom those funds were earmarked. For the above reasons, Claimant requests that this Court reverse and remand the Board's decision.

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n5 [HN8]19 Del.C. § 2127 provides, in pertinent part, that
(a) [a] reasonable attorney's fee in an amount not to exceed 30% of the award or $ 2,250, whichever is smaller, shall be allowed by the Board to any employee awarded compensation under this chapter and Chapter 23 of this title and taxed as costs against a party.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

Conversely, Employer argues that while the Board may award attorney's fees for the various issues before it, the Board in this case correctly awarded only [*28] one attorney's fee, since the issue of medical expenses was an uncontested one. The only contested issue before the Board, Employer contends, was that of disability benefits, for which the Board correctly awarded to Claimant an attorney's fee. Since Claimant

has failed to show that the Board abused its discretion in awarding only one fee, Employer asks this Court to affirm the Board's decision.

The Supreme Court has held that [HN9]the Board has discretion to determine the number of issues that it will treat separately for attorney fee purposes. Simmons v. Delaware State Hospital, Del. Supr., 660 A.2d 384, 391 n.5 (1995). Any fee awarded, however, must be traceable to an issue contested before the Board. Keeler v. Steel Suppliers, Inc., Del. Super., 605 A.2d 13, 1992 Del. Super. LEXIS 125, *5 (1992) (Mem. Op.); First State Motors, Inc. v. Wearn, 1989 Del. Super. LEXIS 410, *11, Del. Super., C.A. No. 88A-DE-1, Graves, J. (Sept. 29, 1989) (Mem. Op.). The Board also must consider various factors when determining attorney's fee awards. General Motors Corp. v. Cox, Del. Supr., 304 A.2d 55, 57 (1973); City of Wilmington v. Clark, 1991 Del. Super. LEXIS 118, *21, Del. Super., C.A. No. 90A-FE-2, Barron, J. (March 20, 1991) (Mem. [*29] Op.).

In the case at hand, the Board found that "a reasonable attorney's fee to be in the amount of 30% of the award for temporary total and partial disability benefits, or $ 2,250.00, whichever is smaller. The Board awards one fee in this amount." The Board, in its discretion, properly treated the contested issues of disability as one for attorney's fee purposes. However, this Court will remand this finding for several reasons. First, there is no indication in the Board's determination that it considered the factors enunciated in Cox, supra. This Court will not speculate as to which factors, if any, the Board considered in making its determination. Keith v. Dover City Cab Co., Del. Super., 427 A.2d 896, 900 (1981). Second, the language used by the Board in its finding merely mirrors that contained in 19 Del.C. § 2127, which this Court has held to be an insufficient basis to determine if substantial evidence supports the Board's decision. Keith, supra. For these reasons, this finding is remanded to the Board with instructions to "specifically enunciate the reasons for each of the amounts it awards." City of Wilmington v. Clark, 1991 Del. Super. LEXIS 118, *26.

As to the medical [*30] expenses issue, [HN10]the Board may award separate attorney's fees when it makes multiple awards to a claimant on various contested issues. It is worth emphasizing that these issues must be contested; the Board cannot award fees for issues that are not contested. Olfers v. Nanticoke Homes, Inc., 1996 Del. Super. LEXIS 256, *12, Del. Super., C.A. No. 95A-11-005, Lee, J. (May 28, 1996) (Mem. Op.); First State Motors, Inc. v. Wearn, 1989 Del. Super. LEXIS 410, *11 n6 In this case, the issue of compensability of medical expenses had been resolved prior to the hearing. As a result, the parties

did not introduce any evidence and did not take any medical testimony on this uncontested issue. Hence, the Board did not abuse its discretion in declining to award an attorney's fee for this uncontested issue. Cf. General Motors Corp. v. Burgess, Del. Supr., 545 A.2d 1186, 1194 (1988) (Board did not abuse its discretion in awarding attorney's fee for contested issue of payment of medical expenses).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 The holdings in these cases appear to rub against Claimant's argument that the legislature, in enacting 19 Del.C. § 2127, intended to relieve Claimant's burden of paying for attorney's fees. If that is in fact true, it is for the General Assembly, and not this Court, to legislate an outcome that reflects Claimant's concerns.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*31]

III. Does Substantial Evidence Support the Board's Decision to Grant Claimant Partial Disability Benefits?

Employer contends that there was no substantial evidence to support the Board's finding that Claimant was entitled to temporary partial disability benefits. It is, as Employer concedes, entirely within the Board's purview to calculate such benefits and use its experience to do so. However, Employer argues that the Board also must have evidence to aid its determination. This, Employer asserts, the Board did not have. Employer maintains the following. The Board did not have any vocational expert testimony before it. Moreover, the Board erroneously relied upon Claimant's testimony Employer elicited on cross-examination regarding prior employment to award partial disability benefits, when Employer elicited that testimony solely to rebut Claimant's contention that she was a displaced worker. Furthermore, Employer states that no evidence exists upon which the Board could have relied regarding the wages that Claimant earned during that prior employment. Finally, Employer points to the Board's concession that little evidence existed to support its finding for temporary [*32] partial disability benefits to bolster its argument that there is no substantial evidence to support the Board's finding.

Claimant counters each of Employer's arguments. First, she asserts that there is no rule that requires all evidence upon which the Board can rely must be elicited on direct. Second, Claimant argues that the Board correctly relied upon its knowledge and

expertise when it imputed a loss of earning capacity, despite the lack of any evidence of salary Claimant earned in her prior positions of employment. Finally, Claimant insists that it does not matter that a vocational expert did not testify. Cases decided by this Court where vocational experts did testify still left the Board with no evidence of the claimants' past income history. In those situations, as in the present one, Claimant contends that the Board appropriately relied upon its experience to impute earning capacity.

This Court has recently addressed this issue. In Guy v. State, 1996 Del. Super. LEXIS 50, Del. Super., C.A. No. 95A-08-012, Barron, J. (March 6, 1996) (Mem. Op.), appeal dismissed, 1996 Del. LEXIS 195, Del. Supr., No. 175, 1996, Walsh, J. (May 20, 1996), the Court found, among other things, that the Board correctly used its experience [*33] to calculate the remedy of partial disability benefits only, which calculation was uniquely within the function of the Board. 1996 Del. Super. LEXIS 50, *5. Furthermore, substantial evidence supported its conclusions that the claimant no longer experienced total disability, but suffered a loss of earning capacity. Id. The Court concluded that the calculation of such benefits was uniquely within the function of the Board. See also Spring Construction Co. v. Mendez, 1992 Del. Super. LEXIS 412, *6 n.3, Del. Super., C.A. No. 91A-08-003, Gebelein, J. (Sept. 15, 1992) (Mem. Op.) ("while it may not always be appropriate for the Board to determine compensation without a separate hearing, where, as here, the Board had before it testimony regarding the nature and extent of the impairment, it may apply its expertise to assign a level of compensation to that information").

The conclusions drawn by the Board in this case are quite similar to those drawn in Guy, supra. First, the Board first found that Claimant was not prima facie a displaced worker. After it made that determination, it concluded nevertheless that since she could not return to her previous position with Employer, Claimant suffered a loss of earning capacity. [*34] Her inability to return to that position can be inferred from both Dr. Fink's and Dr. Bose's testimony that she could return to work in sedentary and then light duty positions. Keith v. Dover City Cab Co., Del. Super., 427 A.2d 896, 899 (1981) (courts may infer underlying findings from Board's conclusions). This testimony necessarily precludes Claimant's return to any heavy manual labor position. After it drew that conclusion, it was then that the Board used its experience to impute Claimant's earning capacity. Pursuant to the reasoning in Guy, supra, it was proper for the Board to do so. For this Court to ignore the Board's specialized knowledge and experience in this regard would be to waste that most valuable resource. Spring Construction Co. v. Mendez, 1992 Del. Super. LEXIS 412, *6.

Employer argues that the Board should have limited its consideration of the evidence regarding prior employment to displaced worker purposes, yet it cites no authority supporting this proposition. Nevertheless, [HN11]the Board's rules provide that any evidence "will be considered by the Board which, in its opinion, possesses any probative value commonly accepted by reasonably prudent men in the conduct of their [*35] affairs." Industrial Accident Board Workers' Compensation Rule 14. There is nothing in this rule to indicate that the Board must limit evidence to the issues and/or the purposes for which counsel introduces it.

Employer also argues that there is no evidence in the record indicating the wages earned by Claimant in these previous positions. This argument has no merit, however, since 19 Del.C. § 2325 requires the Board to consider Claimant's earning power prior to her injury and thereafter. The Board neither contemplated, nor did it need to, the wages earned by Claimant in positions occupied by her prior to the start of her 12-year service with Employer.

Based on the foregoing, this Court AFFIRMS the Board's decision awarding to Employer a set-off and awarding to Claimant temporary partial disability benefits and REMANDS its decision regarding attorney's fees for a determination consistent with this opinion.

IT IS SO ORDERED.

William Swain Lee

# EXHIBIT 6

2000 Del. Super. LEXIS 491

STATE OF DELAWARE, Employer Below-Appellant, v. DOMINIQUE BROWN, Claimant Below-Appellee.

C.A. No. 00A-01-002 HDR

SUPERIOR COURT OF DELAWARE, KENT

2000 Del. Super. LEXIS 491

July 26, 2000, Submitted
August 7, 2000, Decided

**SUBSEQUENT HISTORY: [*1]**

Released for Publication by the Court March 8, 2001.

**DISPOSITION-1:** REVERSED and REMANDED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant State, as an employer, challenged the propriety of certain worker's compensation benefits that the Delaware Industrial Accident Board awarded to appellee, a former state employee.

**OVERVIEW:** The Industrial Accident Board awarded appellee total disability worker's compensation benefits for a period of time. Prior to the award, appellant had paid appellee his full wages for a portion of the period of disability. Appellant challenged the benefits award as an unjustifiable double recovery, and sought a set-off. The court agreed and reversed the award. Appellant did not waive the defense of a set-off, because appellant questioned appellee regarding this issue at the hearing, appellee testified that he received his full salary for the period in question, and appellee did not experience any loss of wages. The court determined that the board not only had the authority to grant a set-off in the instant case, it had the duty to do so. A set-off in favor of appellant was proper, as the receipt of employer-supplied benefits prevented appellee from suffering a wage loss. Otherwise, appellee would enjoy a windfall at appellant's expense.

**OUTCOME:** The court reversed and remanded the disability benefits award. Appellant was entitled to set off full wages of appellee paid while he was disabled against the worker's compensation award that included the period for which such wages were paid. Receipt of full wages prevented a wage loss. An offset would prevent a windfall.

**CORE TERMS:** set-off, worker's compensation, claimant, wage, total disability, double recovery, duty, double, prophet, Worker's Compensation Act, disability retirement, employer-provided, guard, wage loss, work-related, disability, hear, disability benefits, hazardous, disability pension, benefits provided, insurance carrier, present appeal, amounts paid, work-connected, reargument, qualify, independent consideration, underinsured motorist, medical insurance

**LexisNexis(TM) Headnotes**

*Workers' Compensation & SSDI > Administrative Proceedings > Judicial Review*

[HN1]In appeals from the Delaware Industrial Accident Board, the Superior Court must limit its scope of review to correcting errors of law and determining whether substantial evidence exists in the record to support the board's findings of fact and conclusions of law. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a scintilla of evidence, but less than a preponderance. On appeal, the court may neither reweigh the evidence, determine questions of credibility, nor make its own factual findings. The court must give deference to the experience and specialized competence of the board, and must take into account the purposes of the Worker's Compensation Act.

*Workers' Compensation & SSDI > Compensability > Course of Employment*

[HN2]In Delaware, when determining if a legitimate claim for worker's compensation exists, the relevant inquiry is whether there was a work-connected injury. Once the existence of a work-related injury has been established, the next step is to ascertain the type of benefits due the employee. Benefits for physical injury are of two kinds: wage-loss payments based on the concept of disability; and payment of hospital and medical expenses occasioned by any work-connected injury, regardless of wage loss or disability.

*Workers' Compensation & SSDI > Benefit Determinations*

*Workers' Compensation & SSDI > Coverage > Employment Relationships > Governmental Employees*

[HN3]When a work-related injury results in total disability, the employer must pay during the continuance of the total disability compensation equal to 66 2/3 percent of the injured employee's wages. Del. Code Ann. tit. 19, § 2324. In addition, pursuant to Del. Code Ann. tit. 29, § 5933, state employees who qualify for worker's compensation benefits are also entitled to salary supplementation for up to 12 months. Del. Code Ann. tit. 29, § 5933 effectively enables state employees to receive full wages for up to 12 months of the period in which they are collecting worker's compensation benefits.

*Workers' Compensation & SSDI > Coverage > Employment Relationships > Governmental Employees*

[HN4]See Del. Code Ann. tit. 29, § 5933.

*Workers' Compensation & SSDI > Administrative Proceedings > Awards*

[HN5]Del. Code Ann. tit. 19, § 2301A(i) gives the Industrial Accident Board jurisdiction over all disputes regarding the compensation owed to employees injured in industrial accidents. Pursuant to Del. Code Ann. tit. 19, § 2345, if the employer and employee fail to reach an agreement concerning the amount and method of compensation, the board has the duty to hear and determine the matter. Based on these statutes, together with the long line of precedent sustaining the board's power to order credits and reimbursement as a means of avoiding double recovery, the board has the authority to grant a set-off.

*Workers' Compensation & SSDI > Administrative Proceedings > Claims*

[HN6]See Del. Code Ann. tit. 19, § 2301A(i).

*Workers' Compensation & SSDI > Administrative Proceedings > Claims*

[HN7]See Del. Code Ann. tit. 19, § 2345.

*Workers' Compensation & SSDI > Third Party Actions > Third Party Liability*

[HN8]Delaware's Worker's Compensation Act precludes an employee compensated for wage losses through worker's compensation from receiving compensation for the same losses from a third-party tortfeasor. Instead, the employee must first use any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery to reimburse the employer or its workers' compensation insurance carrier for any amounts paid or payable under the Worker's Compensation Act to date of recovery. The balance is then paid to the employee or his or her dependents or personal representative and is treated as an advance

payment by the employer on account of any future payment of compensation benefits. However, an exception exists in which the set-off provisions of Del. Code Ann. tit. 19, § 2363(e) do not apply: Set-offs are prohibited if the second type of benefits arises from a source which exists by reason of the employee's payment of a separate consideration.

*Workers' Compensation & SSDI > Administrative Proceedings > Awards*

[HN9]Under Delaware worker's compensation law, an employee cannot secure double recovery for a single loss where both sources of recovery emanate from the employer.

*Workers' Compensation & SSDI > Administrative Proceedings > Awards*

[HN10]Under Delaware worker's compensation law, a set-off is proper when the receipt of employer-supplied benefits has prevented the employee from suffering a wage loss. Refusing to permit a set-off under these circumstances would allow the employee to enjoy a windfall, at the employer's expense, from a double recovery for the same loss.

**COUNSEL:** Danielle K. Yearick, Esq., of Tybout, Redfearn & Pell, Wilmington, Delaware, for Employer Below-Appellant.

John J. Schmittinger, Esq., and Walt F. Schmittinger, Esq., of Schmittinger & Rodriguez, P.A., Dover, Delaware, for Claimant Below-Appellee

**JUDGES:** RIDGLEY, President Judge.

**OPINIONBY:** RIDGLEY

**OPINION:** RIDGELY, President Judge

**I. BACKGROUND**

In the present appeal, the State challenges the propriety of certain worker's compensation benefits that the Industrial Accident Board (the "Board") awarded to Dominique Brown, a former State employee. The Board awarded Brown total disability benefits from January 7, 1998, until September 7, 1998. n1 Before the Board granted this award, the State had previously paid Brown his full wages pursuant to 29 Del. C. § 5933(a) for the period between January 7, 1998 and March 10, 1998. According to the State, the Board's award of total disability benefits provided Brown with an unjustifiable double recovery. The State argues that it is entitled to a set-off for the full wages it paid Brown from January 7, 1998, to March 10, 1998. I [*2] agree and reverse the Board's award of total disability benefits.

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n1 *Brown v State*, I.A.B. No. 1123717 at 17 (Oct. 1, 1998)

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

Brown worked as a corrections officer for the Department of Corrections of the State of Delaware from 1989 until 1997. In August of 1997, Brown purportedly witnessed an unprovoked, brutal attack on two inmates by a fellow guard. One of the inmates was beaten so badly that he became incontinent. After this event, Brown became extremely distraught and reported his observations to the Department of Internal Affairs ("DIA"). When Brown's co-workers learned that he had reported the incident, they began to ostracize and intensely criticize him. A hearing officer advised him to "watch his back," and some of the other guards intimated that they would not give him any assistance if he needed it. During a confrontation, Brown reached out and placed his hand on another guard's chest. This guard later filed a criminal complaint of offensive touching against Brown.

Brown sought professional [*3] counseling to help him deal with the psychological effect that these incidents had on him. He also turned to religion for solace. Particularly, he became interested in biblical passages concerning prophets. In an attempt to make sense of what had happened to him, Brown began to think of himself as a prophet. Although Brown did not really believe he was a prophet, he tried to explain his decision to report the incident to DIA in terms that referred to scripture and presented him as a prophet. Brown wrote a letter to the Department of Corrections to explain why he had reported the incident. The letter quoted scripture and was signed by Brown as a prophet. Because of the content of this letter, the State referred Brown to a psychologist.

The State later placed Brown on leave because of the offensive touching charge. When this leave ended, as a result of his counselors' recommendations and his employer's concerns, the State temporarily suspended him with full pay from January, 1998, until March, 1998. Then, on March 10, 1998, the State terminated Brown's employment.

On April 29, 1998, Brown filed with the Board a Petition to Determine Compensation Due, seeking total disability benefits. [*4] Before the Board heard this petition, Brown tried unsuccessfully to find other employment. The State again paid Brown his full wages from May 7, 1998 to August 31, 1998, in the form of disability pension payments pursuant to 29 *Del. C.* § 5524. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n2 These disability pension payments are not at issue in the present appeal.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

The Board held a hearing on Brown's petition on September 17, 1998. The Board heard testimony from Brown and from experts for both sides. The State's expert testified that Brown's psychiatric problems resulted from a pre-existing mental disorder unrelated to his work. Brown's expert countered this testimony by pointing out that Brown had functioned at his job without incident for eight years, and that his symptoms occurred as a result of a tragic occurrence at work. Brown himself admitted in his testimony that he had received his full salary from January 7, 1998 through March 10, 1998.

In an opinion dated October 1, 1998, the Board determined that Brown was [*5] totally disabled from January 7, 1998 until September 7, 1998 n3 Accordingly, the Board ordered the State to pay Brown total disability benefits for that time period. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n3 *Brown v State*, I.A.B. No. 1123717 at 17 (Oct. 1, 1998).

n4 *Id*

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

On October 7, 1998, the State moved for re-argument, asserting that it was entitled to a set-off for duplicative payments. Brown opposed this motion, because he claimed that the State had not raised this issue at the hearing. Brown also maintained that the Board lacked the authority to award a set-off. The Board ordered additional briefing, and specifically requested the parties to address the impact of 29 *Del. C.* § 5933 on the issue of a set-off.

On October 7, 1999, the Board denied the State's motion for reargument. n5 The Board reasoned that the State was not entitled to a set-off because the relevant statute, 29 Del. C. § 5933, does not provide for it, and because the Board lacks the authority [*6] to grant a set-off. n6 The State then filed this timely appeal.

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n5 *Brown v. State,* I.A.B. No. 1123717
(Oct. 7, 1999)(ORDER).

n6 *Id.* at 6.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

## II. STANDARD OF REVIEW

[HN1]In appeals from the Industrial Accident Board,
the Superior Court must limit its scope of review to
correcting errors of law and determining whether
substantial evidence exists in the record to support the
Board's findings of fact and conclusions of law. n7
"Substantial evidence means such relevant evidence as
a reasonable mind might accept as adequate to support
a conclusion." n8 It is more than a scintilla of
evidence, but less than a preponderance. n9 On appeal,
this Court may neither reweigh the evidence,
determine questions of credibility, nor make its own
factual findings. n10 The Court must give deference to
"the experience and specialized competence of the
Board" and must take into account the purposes of the
Worker's Compensation Act. n11

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n7 *Histed v. E.I. DuPont de Nemours &
Co.,* Del. Supr., 621 A.2d 340, 342 (1993);
*Johnson v. Chrysler Corp.,* Del. Supr., 59
Del. 48, 213 A.2d 64, 66 (1965).

[*7]

n8 *Olney v. Cooch,* Del. Supr., 425 A.2d
610, 614 (1981).

n9 *Id.*

n10 *ILC of Dover, Inc. v. Kelley,* 1999 Del.
Super. LEXIS 573, Del. Super., C.A. No.
99A-02-002(WLW), 1999 WL 1427805 at
*1, Witham, J. (Nov. 22, 1999).

n11 *Histed,* 621 A.2d at 342.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

## III. DISCUSSION

The State raises five issues on appeal. First, the State
argues that, although it raised the issue of double
payments in its motion for reargument, the Board
failed to address this issue. Second, the State claims
that the Board erroneously interpreted 29 *Del. C.* §

5933 to allow a double recovery. Third, the State
asserts that the Board does, in fact, have the authority
to provide a set-off. Fourth, the State alleges that,
where the claimant has not suffered a wage loss, the
Board may not award additional benefits. And finally,
the State contends that it properly presented to the
Board the issue of double payment, notwithstanding
the Board's findings to the contrary.

Brown responds by arguing that the State never argued
the issue of double payment as a [*8] defense, either
during or prior to the original hearing, as evidenced by
the contents of the petition, the pre-trial memorandum,
and the State's opening and closing arguments.
Therefore, according to Brown, the State waived this
defense. Further, Brown argues that he was not
awarded a double payment at all, but rather, a payment
of the statutory benefits to which a worker's
compensation claimant is entitled.

Worker's Compensation law has a two-fold purpose: 1)
it provides compensation for work-related injuries, and
2) it relieves employers and their employees of the
expenses associated with civil litigation. n12
[HN2]When determining if a legitimate claim for
compensation exists, the relevant inquiry is whether
there was a work-connected injury. n13 Once the
existence of a work-related injury has been established,
the next step is to ascertain the type of benefits due the
employee. "Benefits for physical injury . . . are of two
kinds: wage-loss payments based on the concept of
disability; and payment of hospital and medical
expenses occasioned by any work-connected injury,
regardless of wage loss or disability." n14 [HN3]When
a work-related injury results in total disability, the
employer must [*9] pay during the continuance of the
total disability compensation equal to 66 2/3 % of the
injured employee's wages. n15 In addition, pursuant to
29 *Del. C.* § 5933, State employees who qualify for
worker's compensation benefits are also entitled to
salary supplementation for up to twelve months. n16
29 *Del. C.* § 5933 effectively enables State employees
to receive full wages for up to twelve months of the
period in which they are collecting worker's
compensation benefits. n17

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n12 *Lord v. Souder,* Del. Supr., 748 A.2d
393, 2000 WL 351391 at *8 (2000); *Guy J.
Johnson Transportation Co. v. Dunkle,*
Del. Supr., 541 A.2d 551, 552 (1988).

n13 1 Larson's Workmen's Compensation
Law § 1.03 (1999).

n14 4 Larson's Workmen's Compensation
Law § 57.10 (1999).

n15 *19 Del. C. § 2324*

n16 [HN4] *29 Del. C. § 5933* provides, in pertinent part:

> (a) ... Whenever an officer or employee of the State, including those exempt from the classified service, qualifies for workmen's compensation benefits, such officer or employee, for a period not to exceed 3 months from the date such compensation begins, shall not be charged sick leave and shall receive from the State the difference, if any, between the total of: (1) The amount of such compensation, (2) any disability benefits received under the Federal Social Security Act, and (3) any other employer supported disability program, and the amount of wages to which the officer or employee is entitled on the date such compensation begins, provided the injury or disease for which such compensation is paid is not the direct result of such officer or employee's misconduct and occurs during a period of employment for which the employee is entitled to receive wages . . . .
>
> (c) Notwithstanding subsection (a) of this section, the 3-month limitation shall not apply to any employee injured while performing a hazardous duty assignment and whose injury or injuries arose out of and in the course of performing hazardous duty; provided, however, such employee shall be entitled to the benefits of this section for not more than 12 months Hazardous duty assignments shall include, but not be limited to:
>
> (1) Employees otherwise qualified who are employed by the Department of Corrections . . . .

[*10]

n17 *See id*; *see also 19 Del. C. § 5933.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The issues raised by the State, while divided into five separate components, can essentially be reduced to three. These three issues are: 1) whether the State waived the defense of a set-off for double payment; 2) whether the relevant statutory provisions give the Board the authority to grant a set-off; and 3) whether the State is entitled to a set-off for the full wages it paid Brown from January 7, 1998, to March 10, 1998. I find that the State did not waive the defense of a set-off, because the State questioned Brown regarding this issue at the hearing, and Brown testified that he received his full salary from January 7, 1998 through March 10, 1998.

[HN5] *19 Del. C. § 2301A(i)* gives the Board jurisdiction over all disputes regarding the compensation owed to employees injured in industrial accidents n18 Pursuant to *19 Del. C. § 2345*, if the employer and employee fail to reach an agreement concerning the amount and method of compensation, the Board has [*11] the duty to hear and determine the matter. n19 These statutes, together with the long line of precedent sustaining the Board's power to order credits and reimbursement as a means of avoiding double recovery, n20 lead me to conclude that the Board has the authority to grant a set-off.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -

n18 [HN6] *19 Del. C. § 2301A(i)* provides: (i) The Board shall have jurisdiction over cases arising under Part II of this title and shall hear disputes as to compensation to be paid under Part II of this title. The Board may promulgate its own rules of procedure for carrying out its duties consistent with Part II of this title and the provisions of the Administrative Procedures Act. Such rules shall be for the purpose of securing the just, speedy and inexpensive determination of every petition pursuant to Part II of this title The rules shall not abridge, enlarge or modify any substantive right of any party and they shall preserve the rights of parties as declared by Part II of this title.

n19 *Bowen v. Rothwell's Garage, Inc.*, 1986 Del. Super. LEXIS 1280, Del. Super., C.A. No. 85 A-AP1, 1986 WL 9020 at *1,

Chandler, J. (Aug. 6, 1986) (Mem. Op.).
[HN7] 19 Del. C. § 2345 provides:

> If the employer and employee,
> or the employee's dependents
> in the case of the employee's
> death, fail to reach agreement
> in regard to compensation
> under this chapter, or if after
> they reach such an agreement
> the Board shall refuse to
> approve the same, either party
> may notify the Department of
> the facts and the Department
> shall thereupon notice the time
> and place of hearing which
> shall be served on all parties in
> interest personally or by
> certified mail. The Board or a
> hearing officer with consent of
> the parties shall hear and
> determine the matter in
> accordance with the facts and
> the law and state its
> conclusions of fact and rulings
> of law.

[*12]

n20 Dunkle, 541 A.2d 551; Hall v.
Chrysler Corp., Del. Super., C.A. No.
96A-03-003, Gebelein, J. (Sept. 20, 1996)
(Mem. Op.), aff'd, Del. Supr., 692 A.2d
412 (Feb. 19, 1997); Bowen, 1986 Del.
Super. LEXIS 1280, C.A. No. 85 A-AP-1,
1986 WL 9020; Briggs v. DuPont, 1998
Del. Super. LEXIS 47, Del. Super., C.A.
No. 97 A-01-008, 1998 WL 110037, Lee,
J. (Jan. 20, 1998).

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

Both the Supreme Court and the Superior Court have
previously addressed the issue of set-offs in a variety
of contexts. n21 Additionally, the legislature has
expressly addressed the concept of set-offs in
[HN8]the Worker's Compensation Act. Specifically,
the Act precludes an employee compensated for wage
losses through worker's compensation from receiving
compensation for the same losses from a third-party
tortfeasor. n22 Instead, the employee must first use
"any recovery against the third party for damages
resulting from personal injuries or death only, after
deducting expenses of recovery" to "reimburse the
employer or its workers' compensation insurance
carrier for any amounts paid or payable under the

Worker's Compensation [*13] Act to date of recovery
. . . ." n23 The balance is then paid to the employee or
his or her dependents or personal representative and is
"treated as an advance payment by the employer on
account of any future payment of compensation
benefits . . . ." However, an exception exists in which
the set-off provisions of 19 Del. C. § 2363(e) do not
apply: Set-offs are prohibited if the second type of
benefits "arises from a source which exists by reason
of the employee's payment of a separate
consideration." n24

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n21 See Brooks v. Chrysler Corp., Del.
Super., 405 A.2d 141 (1979) (discussing
set-offs between worker's compensation
benefits and unemployment compensation
benefits); see also Washington v.
Christiana Service Co., 1990 Del. Super.
LEXIS 409, Del. Super., C.A. No. 90A-
AP-9, Barron, J. (Oct. 12, 1990) (Mem.
Op.), appeal dismissed, Christiana Service
Co. v. Washington, Del. Supr., 590 A.2d
502 (1991) (discussing set-offs between
worker's compensation benefits and
benefits provided for by federal
legislation).

n22 19 Del. C. § 2363(e)

[*14]

n23 Id.

n24 State v. Calhoun, Del. Supr., 634 A.2d
335, 337 (1993).

- - - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

In State v. Calhoun, the claimant was an injured State
employee who sought to recover both worker's
compensation benefits and retirement disability
benefits. n25 The State claimed that it was entitled to
offset the claimant's disability retirement benefits
against his worker's compensation benefits. n26 The
Delaware Supreme Court held that the claimant had a
right to receive both types of benefits, and that a set-off
was not available. n27 The Court reasoned that the
State Employees' Pension Plan n28 and the Worker's
Compensation Act n29 were to be liberally construed,
and that neither Act expressly required disability
retirement benefits to be offset against worker's
compensation benefits. n30 Furthermore, the Court
pointed out that the claimant's right to collect disability
retirement benefits was contractual in nature and was
based on his participation in and contributions to the

State Employees' Pension Plan. n31 According to the Court, the claimant had a vested right to these retirement [*15] disability benefits, and granting a set-off would work a forfeiture of these benefits by implication. n32 Finally, the Court added that, even with the receipt of both worker's compensation benefits and disability retirement benefits, the claimant would still not receive the full amount of wages earned prior to his accident. n33 Similarly, *Adams v. Delmarva Power & Light Co.* held that an insurance carrier was not entitled to credit the proceeds from the claimant's underinsured motorist policy against the claimants' worker's compensation benefits, because the claimant had paid independent consideration for additional coverage as protection against injury by an underinsured motorist. n34 *Calhoun* and *Adams* are distinguishable from the present case, because, unlike the claimants in *Calhoun* and *Adams,* Brown did not contribute to or pay independent consideration for the wages he received from the State.

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n25 *Calhoun,* 634 A.2d at 336-37.

n26 *Calhoun,* 634 A.2d at 336.

n27 *Calhoun,* 634 A.2d at 338.

n28 29 *Del. C.* Ch. 55.

n29 19 *Del. C.* Ch. 23.

[*16]

n30 *Calhoun,* 634 A.2d at 337.

n31 *Id.* at 338.

n32 *Id.*

n33 *Id.*

n34 Del. Supr., 575 A.2d 1103, 1104, 1106 (1990).

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

In *Guy J. Johnson Transportation Co. v. Dunkle,* a case more analogous to the present action, the employer argued that he had a right to credit against an award of medical expenses the payments previously made to the claimant through employer-provided medical insurance. n35 The Delaware Supreme Court agreed that the employer was entitled to such a credit. n36 The Court declared that, although the Worker's Compensation Act "contemplates full compensation, it is not intended to permit more than one recovery for a single loss." n37 The Court refused to accept the contention that there could be no set-off in the absence

of express legislative authority permitting subrogation. n38 Instead, the Court held that no statutory authority was necessary to deny recovery for losses never incurred or expenses never sustained, because "to hold otherwise would permit a double recovery or a windfall to the employee." [*17] n39 *Dunkle* "stands for the proposition that [HN9]an employee cannot secure double recovery for a single loss where both sources of recovery emanate from the employer." n40

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n35 541 A.2d at 552.

n36 *Id.*

n37 *Dunkle,* 541 A.2d at 553.

n38 *Id.*

n39 *Id.*

n40 Calhoun, 634 A.2d at 338.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

The cases most factually similar to the present one, and therefore controlling, are those in which an employee received an award from the Board, but had previously obtained employer-provided benefits for the same injury. *See Dunkle,* 541 A.2d 551 (allowing a set-off between medical expenses and employer-provided medical insurance); *see also Hall,* Del. Super., C.A. No. 96A-03-003 (permitting a set-off between total disability benefits and amounts paid to the claimant through an employer-provided sickness and accident insurance plan); *and Bowen,* 1986 Del. Super. LEXIS 1280, C.A. No. 85 A-AP-1, 1986 WL 9020 (granting a set-off between worker's compensation [*18] benefits and sums paid to the employee under the employer's motor vehicle insurance policy). These cases demonstrate that [HN10]a set-off is proper when the receipt of employer-supplied benefits has prevented the employee from suffering a wage loss. n41 Refusing to permit a set-off under these circumstances "would allow [the] employee to enjoy a windfall, at the employer's expense, from a double recovery for the same loss." n42

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n41 *Briggs,* 1998 Del. Super. LEXIS 47, C.A. No. 97 A-01-008, 1998 WL 110037 at *8.

n42 *Id.*

2000 Del. Super LEXIS 491

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

## IV. CONCLUSION

In the present case, Brown has not experienced any loss of wages. He provided undisputed testimony at the Board hearing that the State paid him full wages from January 7, 1998, until March 10, 1998. Consequently, I hold that he is not entitled to a double recovery for the same injury. The Board not only had the authority to grant a set-off in the instant case, it had the duty to do so. The Board's award of total disability benefits is, therefore, *REVERSED* and the matter [*19] is *REMANDED* for further proceedings and determinations consistent with this opinion.

**IT IS SO ORDERED**

RIDGELY

President Judge