# EXHIBIT 1

Case 1:04-cv-00217-GMS   Document 71-2   Filed 09/22/2005   Page 1 of 14

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DIANE POLAND,                )
                             )
         Plaintiff,          )
                             )   Civil Action
v.                           )   No. 04-217 (GMS)
                             )
COMPUTER SCIENCES CORP.,     )
                             )
         Defendant.          )


         Deposition of DIANE POLAND taken pursuant
to notice at the law offices of Potter, Anderson &
Corroon, 1313 North Market Street, The Hercules Plaza,
Sixth Floor, Wilmington, Delaware, beginning at 9:10 a.m.
on Wednesday, March 30, 2005, before Kathleen White
Palmer, Registered Merit Reporter and Notary Public.


APPEARANCES:

        JEFFREY K. MARTIN, ESQUIRE
        KERI L. WILLIAMS, ESQUIRE
        MARGOLIS EDELSTEIN
           1509 Gilpin Avenue
           Wilmington, Delaware  19806
           for the Plaintiff

        LARRY R. SEEGULL, ESQUIRE
        AMY BETH LEASURE, ESQUIRE
        DLA PIPER RUDNICK GRAY CARY LLP
           6225 Smith Avenue
           Baltimore, Maryland  21209-3600
           for the Defendant


------------------------------------------------
                    WILCOX & FETZER
     1330 King Street - Wilmington, Delaware 19801
                    (302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters    COPY

1  Q. Who is "they"?
2  A. MaryAnne, Randy, and Dawn.
3  Q. You don't know what they were talking about?
4  A. I don't recall, no.
5  Q. What happened?
6  A. And Randy did a gesture and Dawn made a joke and
7  that was it. And there was no discussion.
8  Q. The gesture that Randy did was what?
9  A. Just something like that (demonstrating). I
10 don't remember the whole gesture.
11 Q. He took his fingers to his nose?
12 A. Yes.
13 Q. And just put them at his nose?
14 A. Yes.
15 Q. Just laid them underneath his nose?
16 A. Yes.
17 Q. On his upper lip?
18 A. Somewhere around there.
19 Q. He didn't say anything?
20 A. He said something, but I couldn't hear him.
21 Dawn heard him.
22 Q. So you don't know what he said?
23 A. I don't know what he said.
24 Q. You're saying Dawn then made a joke?

1   A.   Yes.
2   Q.   What was the joke she made?
3   A.   I didn't hear it.
4   Q.   Did you hear anything she said?
5   A.   No.
6   Q.   Did this have any reference to you?
7   A.   I believe so, but I don't know.
8   Q.   Why do you believe it had a reference to you?
9   A.   Because it was just us present at the present
10  time and no one there told me what it was.
11  Q.   So nobody told you what they were laughing
12  about?
13  A.   That's correct.
14  Q.   You didn't hear it, so you didn't know what they
15  were laughing about?
16  A.   That's correct.
17  Q.   But you figured because they're all laughing, it
18  must be about me?
19  A.   At the time, yes.
20  Q.   Do you still believe that?
21  A.   Yes.
22  Q.   So he writes here:  "'Everyone laughed, I too,
23  because I didn't get it.  Later when I realized what she
24  meant, I was offended by the fact they were making a joke

```
 1  of my perfume and body odor.'"
 2              You never said anything like that to
 3  Dr. Rieger?
 4      A.   No, I did not.
 5      Q.   He made that up?
 6      A.   I don't know.  I guess he did.  I didn't write
 7  it.
 8      Q.   You're not denying you said that to him?
 9      A.   I'm not denying it, but I don't recall ever
10  saying anything like that to him.
11      Q.   But you might have, you might not have?
12      A.   Might have, might not have.  I don't think I
13  did.
14      Q.   Now, are you saying there was something racial
15  about this incident, or it was just personally offensive
16  because you weren't involved in the joke?
17      A.   It was something offensive there, but I don't
18  know the joke.  I don't know what it was.
19      Q.   So you don't know if it was racial or not?
20      A.   I don't know.
21      Q.   Let's go to the next incident, number 3.
22              "Miss Poland charged that in several
23  meetings with human resources, Dawn and her manager,
24  people could not understand her reaction:  'what was
```

# EXHIBIT 2

Case 1:04-cv-00217-GMS   Document 71-2   Filed 09/22/2005   Page 6 of 14

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DIANE POLAND,                )
                             )
           Plaintiff,        )
                             )   Civil Action
v.                           )   No. 04-217 (GMS)
                             )
COMPUTER SCIENCES CORP.,     )
                             )
           Defendant.        )

      Deposition of DAWN M. DWORSKY taken pursuant to notice at the law offices of Margolis Edelstein, 1509 Gilpin Avenue, Wilmington, Delaware, beginning at 1:15 p.m. on Friday, May 6, 2005, before Kathleen White Palmer, Registered Merit Reporter and Notary Public.


APPEARANCES:


    JEFFREY K. MARTIN, ESQUIRE
    MARGOLIS EDELSTEIN
      1509 Gilpin Avenue
      Wilmington, Delaware  19806
      for the Plaintiff

    LARRY R. SEEGULL, ESQUIRE
    DLA PIPER RUDNICK GRAY CARY LLP
      6225 Smith Avenue
      Baltimore, Maryland  21209-3600
      for the Defendant

ALSO PRESENT:

    DIANE POLAND

---

WILCOX & FETZER
1330 King Street - Wilmington, Delaware 19801
(302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters
COPY

1    A.    None.

2    Q.    Did she answer your question?

3    A.    Yes.

4    Q.    How did she answer your question?

5    A.    That she didn't know the answer to my question
6  because it was different in different churches.

7    Q.    There was another allegation made about a smell
8  that you had detected. Do you recall that?

9    A.    One of the desktop engineers -- I sat on the row
10 of cubicles on the other side of the wall -- came to me
11 and told me they smelled something burning. As a
12 manager, it's my job to try and find out where the
13 burning was coming from. To do that, I needed to walk
14 the rows of the cubicles to try and see if we could
15 identify where the burning was coming from.

16   Q.    Did you?

17   A.    Yes.

18   Q.    Where did it come from?

19   A.    There was a cord in between the cubicle walls
20 that was burning.

21   Q.    Do you recall that you discussed that issue with
22 someone from HR on that particular day?

23   A.    No, I did not.

24   Q.    Did you later discuss this issue with someone



# EXHIBIT 3

Westlaw.

131 Fed.Appx. 867                                                                                         Page 1
131 Fed.Appx. 867
(Cite as: 131 Fed.Appx. 867)

This case was not selected for publication in the Federal Reporter.

NOT PRECEDENTIAL

Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP APP I 5.3.)

United States Court of Appeals,
Third Circuit.
Lisa K. FORNICOIA Appellee,
v.
HAEMONETICS CORPORATION Appellant.
No. 04-2873.

Argued May 4, 2005.
Decided May 20, 2005.

**Background:** Former employee brought action against former employer alleging sexual harassment, retaliation, and constructive discharge under Title VII. The United States District Court for the Western District of Pennsylvania, Gary L. Lancaster, J., entered judgment following jury verdict in favor of employee on sexual harassment claim and in favor of employer on retaliation and effective discharge claims. Employer appealed.

**Holdings:** The Court of Appeals, Van Antwerpen, Circuit Judge, held that:
(1) when no tangible employment action is taken against an employee who alleges sexual harassment by a supervisor, employer may raise affirmative defense to liability or damages;
(2) in order to impose liability on an employer for a co-worker's sexual harassment of an employee the employee must demonstrate that the employer knew or should have known of the harassment and failed to take prompt remedial action; and
(3) probative value of evidence that coworker made harassing remark to another coworker approximately two years after employee left employment was outweighed by danger of unfair prejudice.
Reversed and remanded.

West Headnotes

[1] Civil Rights 1189
78k1189 Most Cited Cases
When no tangible employment action is taken against an employee who alleges sexual harassment by a supervisor in a Title VII action against employer, employer may raise affirmative defense to liability or damages; the defense comprises two necessary elements, that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[2] Civil Rights 1189
78k1189 Most Cited Cases
Under Title VII, in order to impose liability on an employer for a co-worker's sexual harassment of an employee, where the harassing co-worker is not in a supervisory position over employee, the employee must demonstrate that the employer knew or should have known of the harassment and failed to take prompt remedial action. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[3] Evidence 129(5)
157k129(5) Most Cited Cases
Probative value of evidence that coworker made harassing remark to another coworker approximately two years after employee left employment was outweighed by danger of unfair prejudice in employee's Title VII action against employer alleging sexual harassment by same coworker; evidence shed no light on whether employee was objectively reasonable in finding coworker's behavior offensive given length of time between complaints and dissimilarity between complained of acts. Fed.Rules Evid.Rule 403, 28 U.S.C.A.

*868 Appeal from a Judgment for the Plaintiff in the United States District Court for the Western District of Pennsylvania. (No. 99-cv-01177). District Judge: Honorable Gary L. Lancaster.

Richard J. Antonelli (Argued), Rebecca J. Dick-Hurwitz, Spilman Thomas & Battle, PLLC, Pittsburgh, PA, for Appellant.

Michael E. Hoover (Argued), Charles E. Boyle, Diefenderfer Hoover Boyle & Wood, Pittsburgh, PA,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

131 Fed.Appx. 867  
131 Fed.Appx. 867  
(Cite as: 131 Fed.Appx. 867)

Page 2

for Appellee.

Before McKEE, VAN ANTWERPEN and WEIS, Circuit Judges.

OPINION

VAN ANTWERPEN, Circuit Judge.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Because we write only for the parties, we recount only the facts relevant to our decision. Appellee Lisa Fornicoia began her employment with Appellant Haemonetics *869 Corporation on November 2, 1992, as a Clinical Specialist. In 1993 she was transferred to the company's Life Support Division where her title was changed to Manager, Clinical Services. In this new position, she reported directly to John Teutsch. Teutsch reported to Gary Stacey who had overall responsibility for the Life Support Division.

Fornicoia alleged that between May 1994 and February 1997, Teutsch engaged in behavior that she found sexually harassing and dangerous. This included inappropriate touching; diverting conversations to personal, intimate or sexual topics; sending her and her daughter gifts; appearing before her partially clothed; and implying that he wanted to hurt her, her family or himself. In October 1994, Fornicoia approached Stacey, and later Alicia Lopez, Haemonetic's General Counsel and Human Resources Director, and shared her concerns about Teutsch's behavior.

Lopez determined that Teutsch had not sexually harassed Fornicoia, but still referred Teutsch to a forensic psychologist for evaluation. Based on his report and other information they had gathered, Lopez and Stacey changed the reporting relationship so that Fornicoia no longer reported to Teutsch. They also directed that Teutsch channel all correspondence to Fornicoia through Stacey's office and instructed the two not to take business trips together.

Fornicoia alleged that Teutsch continued to harass her and that she made a complaint in May 1995. Stacey and Lopez did not recall this complaint, but agreed that Fornicoia did complain again on January 14, 1997. Based on this complaint, Lopez again determined that Teutsch's behavior did not constitute sexual harassment but agreed that Fornicoia and Teutsch could not work together. Stacey sent a letter to Teutsch dated January 28, 1997 re-emphasizing that he was to have no contact with Fornicoia.

About a month later, Stacey advised Fornicoia that Haemonetics was reorganizing and that she was being laterally moved to the position of Clinical Specialist. In her new position, she would have the same pay and would not be required to relocate, but would have to report to the training organization in Tucson, Arizona. Fornicoia shortly thereafter gave notice of her resignation on March 22, 1997.

Fornicoia filed suit against Haemonetics in the United States District Court for the Western District of Pennsylvania. In her suit, she asserted claims of sexual harassment, retaliation and constructive discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. A jury trial commenced on September 15, 2003, and concluded on September 22. The jury found in favor of Fornicoia on her sexual harassment claim and in favor of the Haemonetics on her retaliation and effective discharge claims.

### II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. We exercise *de novo* review over the legal accuracy of the District Court's jury instructions, Citizens Fin. Group, Inc. v. Citizens Nat. Bank, 383 F.3d 110, 133 (3d Cir.2004), and review the District Court's rulings regarding the admission of evidence for abuse of discretion, Glass v. Phila. Elec. Co., 34 F.3d 188, 191 (3d Cir.1994).

### III. ANALYSIS

Haemonetics raises two issues on appeal. First, Haemonetics claims that the District Court misstated the standard for *870 employer liability when an employee is sexually harassed by a supervisor. According to Haemonetics, the District Court failed to inform the jury that Haemonetics was entitled to assert affirmative defenses if Fornicoia did not suffer a tangible job detriment. Haemonetics also claims that the District Court misstated the standard for co-worker liability by improperly placing the burden of proof on the defense. Finally, Haemonetics insists that it is entitled to a new trial because the District Court improperly allowed testimony that was irrelevant, and if not irrelevant, more prejudicial than probative.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

131 Fed.Appx. 867       Page 3
131 Fed.Appx. 867
(Cite as: 131 Fed.Appx. 867)

We agree that the District Court's jury instructions were erroneous, and therefore we will reverse the order of the District Court and remand for a new trial.

### A. The Jury Instructions

When examining an allegedly erroneous jury instruction, we must "determine whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury." *Ayoub v. Spencer,* 550 F.2d 164, 167 (3d Cir.1977). When jury instructions "fail to advise, or misadvise, a jury of concepts it needs to know to properly discharge its duties" we must remand the case for a new trial. *Dressler v. Busch Entm't Corp.,* 143 F.3d 778, 783 (3d Cir.1998).

Haemonetics argues that the District Court erroneously charged the jury on Fornicoia's sexual harassment claim. Because the parties disputed whether Teutsch was Fornicoia's supervisor when the alleged harassment took place, the District Court charged the jury with two sets of instructions depending on their factual findings. We address each in turn.

#### 1. Supervisor Liability

[1] Haemonetics argues that the District Court incorrectly explained the legal standard for imposing liability on Fornicoia if the jury found that Teutsch was Fornicoia's supervisor. The District Court stated:

> If you find from the evidence that Mr. Teutsch was plaintiff's supervisor during the relevant period, then the defendant is liable for his conduct. And it is liable for his conduct whether senior management officials, in this case, Lisa Lopez or Gary Stacey, were aware of his [conduct or] not. This is called strict liability. That is, if plaintiff establishes that Mr. Teutsch was her supervisor, then defendant is liable for his conduct, regardless of whether they were aware of his conduct or not, or even if they were aware of it and took reasonable steps to stop it.
>
> Joint App. vol. III at 762a.

The District Court's instruction directly contradicts the Supreme Court's opinion in *Faragher v. City of Boca Raton,* 524 U.S. 775, 792, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), which reaffirmed that "Title VII does not make employers 'always automatically liable for sexual harassment by their supervisors,' *ibid,* contrary to the view of the Court of Appeals, which had held that 'an employer is strictly liable for a hostile environment created by a supervisor's sexual advances, even though the employer neither knew nor reasonably could have known of the alleged misconduct,' *id* at 69-70, 106 S.Ct., at 2406-2407." (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 69-70, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). The correct standard was set out by the Court as follows:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability *871 or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.... No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment. See *Burlington,* 524 U.S. at 762-763, 118 S.Ct., at 2269.

*Faragher,* 524 U.S. at 807-08.

The jury was not asked consider whether Fornicoia suffered a tangible employment action, nor was it given instructions on Haemonetics' right to assert an affirmative defense had Fornicoia not suffered a tangible employment action. Given that the jury found that Fornicoia did not suffer retaliation or constructive discharge, it may also have found that Fornicoia did not suffer a tangible employment action. If this was the case, the jury was obligated to consider Haemonetics' affirmative defenses.

#### 2. Co-Worker Liability

[2] The District Court also misstated the standard for co-worker liability by improperly placing the burden of proof on the defendant. The District Court explained the standard for co-worker liability as follows:

> On the other hand, if you find from the evidence that Mr. Teutsch was not plaintiff's supervisor, but merely a co-worker, then defendant is entitled to assert certain defenses. Defendant neither knew or nor, with reasonable diligence, should have known of his conduct; or, two, once defendant learns of the conduct, they took appropriate remedial action to stop it; and plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer and to

avoid harm, otherwise.
I am going to go over each of these defenses in more detail. Be mindful that the defendant has the burden of proving these defenses by a preponderance of the evidence.
Joint App. vol. III at 763a.

The District Court mischaracterized the standard of liability as an affirmative defense. In order to impose liability on an employer for one co-worker's sexual harassment of another (where the harassing employer is not in a supervisory position over the victim), the plaintiff must demonstrate that " 'the defendant knew or should have known of the harassment and failed to take prompt remedial action." ' *Kunin v. Sears Roebuck and Co.*, 175 F.3d 289, 293-94 (3d Cir.1999) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir.1990)). This is not an affirmative defense, but rather the burden of the plaintiff. *See Kunin*, 175 F.3d at 294. If the jury found that Teutsch was not Fornicoia's supervisor, but merely her co-worker when he harassed her, Fornicoia had the burden of demonstrating that Haemonetics knew or should have known of the harassing conduct and failed to act.

It appears that the District Court intertwined the standards of liability for supervisor and co-worker sexual harassment and thereby failed to properly instruct the jury on the issue. Because the jury instructions did not fairly and adequately advise the jury on the standards of liability, we must remand for a new trial consistent with this opinion.

### B. The Admission of Evidence

[3] We are troubled by the admission of what appears to be hearsay evidence *872 that Teutsch allegedly made a harassing remark to another employee approximately two years after Fornicoia left Haemonetics. We also question the relevance of the testimony, *see* Fed.R.Evid. 402, [FN1] and further note that, even if relevant, it is difficult to see how its probative value outweighs its prejudicial effect and tendency to confuse the issues, *see* Fed.R.Evid. 403 [FN2] Therefore, we briefly address this matter so as to offer guidance to the District Court in conducting the new trial.

   FN1. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed.R.Evid. 402.

   FN2. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

The District Court allowed Fornicoia to present evidence that, in 1999, an employee named Lisa Lovis complained about Teutsch's behavior. Lopez testified that Lovis complained that she was offended when Teutsch "either said something or made some explicit gesture about her in the company of others." (Appellant App. at 486a.) This complaint apparently led Haemonetics to review Teutsch's performance and professionalism, and eventually resulted in his termination.

The District Court allowed the testimony for the purpose of establishing that the workplace was hostile. Following the testimony, the trial judge explained to the jury that the testimony was allowed, "for a limited purpose only, in order for the plaintiff to establish her claim, she must establish that the behavior she complains of would be offensive to an objectively reasonable person." (Appellant App. at 489a-90a.)

This Court has upheld the admission of evidence of other acts of sexual harassment where the evidence may be "probative as to whether the harassment was sexually discriminatory" and "may help the jury interpret otherwise ambiguous acts." *Hurley v. Atlantic City Police Dept.*, 174 F.3d 95, 111 (3d Cir.1999). However, even relevant evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. "[Evidence] is unfairly prejudicial if it 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish,' or otherwise 'may cause a jury to base its decision on something other than the established propositions in the case.' " *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir.1980) (quoting 1 J. Weinstein & M. Berger, Weinstein's Evidence P 403(03), at 403-15 to 403-17 (1978))

Fornicoia introduced evidence that another employee complained about a single offensive comment in front of co-workers or customers nearly two years after Fornicoia left Haemonetics. This evidence sheds no light on whether Fornicoia was objectively

131 Fed.Appx. 867 Page 5
131 Fed.Appx. 867
**(Cite as: 131 Fed.Appx. 867)**

reasonable in finding Teutsch's inappropriate touching, continual advances, or erratic behavior offensive. Given the length of time between the complaints, the dissimilarity between the complained of acts, and the likelihood that this additional evidence will at least minimally prejudice the jury, we believe this evidence should have been excluded.

### IV. CONCLUSION

For the reasons set forth above, we reverse the Order of the District Court *873 and remand for a new trial consistent with this opinion.

131 Fed.Appx. 867

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works