# **EXHIBIT 1**

2003 U.S. Dist. LEXIS 15646

JOHN M. OFSHARICK, Plaintiff, v. GMAC COMMERCIAL MORTGAGE CORPORATION, Defendant.

CIVIL ACTION No. 01-CV-3427

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2003 U.S. Dist. LEXIS 15646

July 17, 2003, Decided

**DISPOSITION-1:** [*1] Defendant's motion in limine granted in part and denied in part.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendant former employer for sex and age discrimination. The employer brought a motion in limine to exclude certain evidence.

**OVERVIEW:** The employee worked for a division of the employer and was discharged after the division was sold. Prior to his discharge, the employee, who was 54 years old, applied for a position with the employer as a training and development manager. He was not interviewed for the position, which was given to a 39-year-old woman. The employer sought to exclude statistical evidence of the sex and/or ages of employees in its human resources department, but the court found that the evidence was relevant to the employee's claim that the employer favored hiring younger females for human resources positions. Testimony from an expert on human resources practices was inadmissible under Fed. R. Evid. 702 because the expert's opinion concerning whether the employer followed prudent human resources practices in failing to interview the employee would not assist the jury. An Equal Employment Opportunity Commission (EEOC) letter of determination finding that the employer discriminated against the employee was excluded under Fed. R. Evid. 403; the letter primarily concerned undisputed facts, and its conclusion was based on an incomplete and cursory investigation.

**OUTCOME:** The employer's motion in limine was denied with respect to the statistical evidence the employee sought to introduce; the motion was otherwise granted.

**CORE TERMS:** probative value, expert testimony, training, sex, interview, admissibility, prejudicial, relevance, probative, juror, human resources, trier of fact, undue delay, reliability, introducing, assessing, cumulative evidence, evidence relating, discriminated, assess, unfair, evidence pertaining, expert opinion, trustworthiness, untrustworthy, unnecessarily, presentation, composition, interviewed, withdrawal

**LexisNexis(TM) Headnotes**

*Evidence > Relevance > Relevant Evidence*

[HN1]Apart from a few exceptions, Fed. R. Evid. 402 provides that all relevant evidence is admissible. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case. Because the rule makes evidence relevant if it has any tendency to prove a consequential fact, it follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant.

*Evidence > Relevance > Relevant Evidence*

[HN2]The definition of relevance under Fed. R. Evid. 401 was not intended to raise a high standard.

*Evidence > Relevance > Confusion, Prejudice & Waste of Time*

[HN3]Fed. R. Evid. 403 requires a fact-intensive balancing test to assess the probative value of specific evidence sought to be introduced.

*Evidence > Witnesses > Expert Testimony*

[HN4]See Fed. R. Evid. 702.

*Evidence > Witnesses > Expert Testimony*

[HN5]In Daubert, the United States Supreme Court clarified Fed. R. Evid. 702 and held that a court acts as a gatekeeper in assessing whether expert testimony will assist the trier of fact, and must make an initial determination that the expert testimony offered is fundamentally relevant and reliable. Reliability focuses on trustworthiness: the proffered evidence must be based on valid techniques. By contrast, relevance requires a valid connection between the proffered evidence and a fact in issue. To assess the reliability

and relevance of expert testimony, Daubert sets forth a non-exhaustive list of factors including whether (1) a theory or technique is scientific knowledge that will assist the trier of fact; (2) the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation; and (4) the general acceptance of the theory or technique. The Supreme Court has extended the Daubert analysis, which involved experts testifying to practices in the context of science and technology, to non-scientific fields. In the non-scientific context, the factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.

*Evidence > Witnesses > Expert Testimony*

[HN6]The threshold requirement under Fed. R. Evid. 702 is that the expert opinion must "assist the trier of fact" in understanding the evidence or facts in issue.

*Evidence > Witnesses > Expert Testimony*

[HN7]The relevant reliability concerns may focus upon personal knowledge or experience of an expert.

*Evidence > Relevance > Confusion, Prejudice & Waste of Time*

[HN8]While other United States circuit courts of appeal view Equal Employment Opportunity Commission (EEOC) letters of determination as per se more probative than prejudicial under Fed. R. Evid. 403, the United States Court of Appeals for the Third Circuit has adopted the position that the trial court must weigh whether the EEOC letter is more probative than prejudicial under Rule 403 when considering its admissibility.

*Evidence > Relevance > Confusion, Prejudice & Waste of Time*

[HN9]Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403. The purpose of weighing the evidence under Rule 403 is to ensure that juries are not presented with evidence that is far less probative than it is prejudicial. In interpreting Rule 403, the United States Court of Appeals for the Third Circuit has recognized that evidence should be excluded under Rule 403 only sparingly since the evidence excluded is concededly probative. The balance under the rule should be struck in favor of admissibility. Finally, in determining the probative value of evidence under Rule 403, a court must

consider not only the extent to which it tends to demonstrate the proposition which it has been admitted to prove, but also the extent to which that proposition was directly at issue in the case.

*Evidence > Relevance > Confusion, Prejudice & Waste of Time*

[HN10]In the context of the admissibility of Equal Employment Opportunity Commission letters of determination, relevance alone does not ensure their admissibility, and evidence may be excluded if its probative value is not worth the problems that its admission may cause. Factors that could substantially outweigh the relevance of the evidence include unfair prejudice, misleading the jury, undue delay and presentation of cumulative evidence. Fed. R. Evid. 403.

*Evidence > Relevance > Confusion, Prejudice & Waste of Time*

[HN11]Since trustworthiness can become an issue at trial itself, it can bear upon the time-related factors in Fed. R. Evid. 403.

*Evidence > Hearsay Rule & Exceptions > Public Records & Vital Statistics*

[HN12]Fed. R. Evid. 803(8)(c) establishes that a public report that is untrustworthy is inadmissible hearsay.

**COUNSEL:** For JOHN M. OFSHARICK, Plaintiff: DONALD P. RUSSO, LEAD ATTORNEY, DONALD P. RUSSO, ESQUIRE, VANESSA M. NENNI, LEAD ATTORNEY, BETHLEHEM, PA.

For GMAC COMMERCIAL MORTGAGE CORP., Defendant: KEVIN A. ORMEROD, LEAD ATTORNEY, MORGAN LEWIS & BOCKIUS, MICHAEL L. BANKS, LEAD ATTORNEY, MORGAN LEWIS & BOCKIUS LLP, PHILADELPHIA, PA.

**JUDGES:** JAMES McGIRR KELLY, J.

**OPINIONBY:** JAMES McGIRR KELLY

**OPINION: MEMORANDUM AND ORDER**

**J. M. KELLY, J.**

Presently before the Court is a Motion in Limine filed by Defendant GMAC Commercial Mortgage Corporation ("GMAC") to exclude certain evidence and expert witnesses proffered by Plaintiff John M. Ofsharick ("Ofsharick") in connection with his reverse sex and age discrimination claim filed in this Court. Ofsharick, formerly employed as the Director of

2003 U.S. Dist. LEXIS 15646

Training for GMAC's Residents Advantage/Tenant Services Division ("Tenant Services"), was discharged after GMAC sold the Tenant Services Division to an independent company. Ofsharick contends that, [*2] shortly after his separation from GMAC, he applied for a position with GMAC's Training and Development Division, but, in violation of federal and state law, was provided neither an opportunity to interview nor hired because of his sex and age.

In the instant motion, GMAC requests that this Court preclude Ofsharick from offering: (1) evidence or argument concerning the sex and/or age of employees working in GMAC's Human Resources Department; (2) testimony from former GMAC employee William R. Mawhinney, Jr. ("Mawhinney"); (3) expert testimony from Dr. Karen Cherwony ("Dr. Cherwony"); (4) expert testimony from Dr. Ward Brian Zimmerman ("Dr. Zimmerman"); and (5) the EEOC Letter of Determination finding that GMAC committed violations of federal anti-discrimination laws. For the following reasons, GMAC's Motion in Limine is **GRANTED IN PART and DENIED IN PART.**

## I. BACKGROUND

Since this Court has already detailed the full factual background of the instant case in our October 30, 2002 Memorandum and Order dismissing GMAC's summary judgment motion, we provide only a brief recitation of the facts pertinent to GMAC's Motion in Limine.

On April 1, 1997, Ofsharick was hired by [*3] GMAC as the Director of Training for its Tenant Services Division, a GMAC marketing company that provided services and products to apartment residents, and earned an annual salary of approximately $ 120,000.00. In or around the summer of 1999, GMAC sold the Tenant Services Division to U.S. Online Holdings, Inc. ("U.S. Holdings"), a corporate entity separate from GMAC. On July 6, 1999, as a result of the sale to U.S. Holdings, Ofsharick, who was 54 years old at the time, and other Tenant Services' employees were discharged from employment with GMAC. Ofsharick does not dispute the circumstances involving his termination from GMAC.

Prior to the sale of Tenant Services, GMAC conducted several meetings with affected employees to inform them of the status of the impending sale and to explain its impact upon their employment with Tenant Services. According to Ofsharick, during a meeting in May 1999, Linda Pickles ("Pickles"), a GMAC Human Resources Officer, and David Creamer, GMAC's Chief Executive Officer, informed these employees that GMAC would make every effort to place any

employees discharged as a result of the sale to U.S. Holdings in other positions within GMAC.

Prior to his discharge [*4] from Tenant Services, Ofsharick attempted to secure employment in other GMAC businesses. Upon learning of an opportunity within GMAC's Training and Development Department, in June 1999, Ofsharick met with Pickles to discuss the possibility of working as a training specialist. The salary for this position amounted to approximately $ 40,000 annually. Although Ofsharick ultimately told Pickles that he was not interested in the position and unwilling to accept such a pay decrease, Ofsharick informed Pickles that he was willing to take some salary cut in order to continue working for GMAC.

On September 7, 1999, nearly two months after Ofsharick left GMAC's employ, GMAC terminated Mawhinney, its Vice President of Training and Development. After his discharge, GMAC decided that it would replace Mawhinney's position with the lower level position of Training and Development Manager. Accordingly, on September 12, 1999, GMAC posted an advertisement in an area newspaper, The Philadelphia Inquirer, for the Training and Development Manager position. Upon learning of this position and believing he was qualified, n1 Ofsharick sent an e-mail message expressing his interest in applying for the [*5] position to GMAC's staffing coordinator, Lisa D'Angolell, and copied the message to Pickles. GMAC did not respond to Ofsharick's e-mail message nor did Ofsharick receive an interview for the position. On October 18, 1999, GMAC offered the Training and Development Manager position to Sandra Morris, a 39-year old woman, who accepted the job at a starting salary of $ 60,000. Ofsharick was a 54-year old man at the time.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Ofsharick holds a bachelor's degree in Spanish from Temple University and earned a master's degree in adult education from the University of Georgia. (Ofsharick Dep. at 8-9.)

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

## II. DISCUSSION

GMAC argues that evidence pertaining to the statistical makeup of GMAC's Human Resources Department, the testimony of former employee Mawhinney, and the EEOC Letter of Determination are, inter alia, irrelevant, overly prejudicial and should

not be admitted under Federal Rules of Evidence 402 and 403. Further, GMAC contends that testimony and reports generated from proffered experts Dr. Cherwony [*6] and Dr. Zimmerman must be precluded because their expert opinions will not "assist the trier of fact to understand the evidence or to determine a fact in issue" as required under Federal Rule of Evidence 702. We discuss each of GMAC's objections in turn.

## A. Statistical Information

GMAC contends that Ofsharick should be precluded from introducing statistical evidence of the sex and/or age composition of GMAC employees working in its Human Resources Department because these statistics are not probative of unlawful discrimination. Ofsharick counters that he does not intend to introduce a statistical analysis of GMAC's workforce, but merely seeks to provide evidence demonstrating that, at the time Ofsharick sought the Training and Development Manager position, and other times relevant to this litigation, this department was mostly, or, at times, entirely populated by females in their twenties and thirties. Ofsharick contends that this evidence is relevant because it supports his allegation that Pickles, in seeking to maintain a workforce comprised only of young women, intentionally discriminated against him by failing to interview him for this position. We agree with Ofsharick [*7] and find that this evidence is relevant under Federal Rule of Evidence 401 as it has a tendency to make an inference of discrimination more or less probable in support of his discrimination claim.

[HN1]Apart from a few exceptions, Federal Rule of Evidence 402 provides that "all relevant evidence is admissible." Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The United States Court of Appeals for the Third Circuit advises: As noted in the Advisory Committee's Note to Rule 401, "relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." Because the rule makes evidence relevant "if it has any tendency to prove a consequential fact, it follows that evidence is irrelevant only when it has no tendency to prove the fact." 22 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5166, at 74 n.47 (1978) (emphasis added). Thus the rule, while giving [*8] judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant. Id. § 5166, at 74.

Blancha v. Raymark Industries, 972 F.2d 507, 514 (3d Cir. 1992). As the Third Circuit commented, [HN2]the definition of relevance under Rule 401 was not intended to "raise a high standard." Hurley v. Atlantic City Police Dep't., 174 F.3d 95, 109-10 (3d Cir. 1999). Thus, under the minimum standard of relevancy, we find that evidence relating to the sex and age make-up of the Human Resources Department under Pickles management at periods of time pertinent to this litigation, is relevant to Ofsharick's contention that Pickles favored hiring younger females for Human Resources positions and did not offer Ofsharick an interview on the basis of his sex and age.

Although GMAC argues that the sex and age composition of the Human Resources Department is irrelevant because Ofsharick fails to identify the sex and age characteristics of its applicants, we find that GMAC will have ample opportunity at trial to rebut Ofsharick's inference of discrimination by introducing evidence to explain how the Human Resources Department [*9] came to be comprised of women in their twenties or thirties and few men at periods of time relevant to Ofsharick's claim. Since we find that evidence relating to the sex and age composition of GMAC's Human Resources Department at times pertinent to Ofsharick's claim is probative pursuant to Rule 402, we deny GMAC's motion to exclude this evidence.

## B. Mawhinney's Testimony

GMAC next objects to admission of testimony from or evidence pertaining to Mawhinney, a former GMAC employee, on grounds of relevance under Rule 402 and on the basis that his testimony will cause unfair prejudice to GMAC under Rule 403. In a letter dated July 5, 2003, Ofsharick's counsel advised the Court that he is withdrawing Mawhinney as a potential witness in this case. We accept Ofsharick's withdrawal and, therefore, grant GMAC's motion in limine to preclude testimony and evidence relating to the circumstances of Mawhinney's termination from GMAC. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - - - -

n2 GMAC also requests that this Court exclude evidence relating to other unidentified charges of discrimination filed against GMAC and not just Mawhinney's claims. [HN3]Since Rule 403 requires a fact-intensive balancing test to assess the probative value of specific evidence sought to be introduced, we cannot grant GMAC's request to exclude all evidence pertaining

2003 U.S. Dist. LEXIS 15646

to other speculative charges of discrimination filed against GMAC and, therefore, limit our Memorandum and Order to exclude only that evidence relating to charges of discrimination filed by Mawhinney.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*10]

## C. Dr. Cherwony's Testimony

GMAC next objects to the admissibility of the report and testimony from Dr. Cherwony, a human resources expert offered by Ofsharick to assess whether GMAC followed prudent human resources practices when it did not interview Ofsharick for the Training and Development Manager position. GMAC does not seem to dispute Dr. Cherwony's qualifications as an expert in the area of human resources, but contends that her opinion must be excluded because it is not based on any standard practices or readily-adhered to employment procedures and argues that a lay juror is capable of assessing the reasons underlying Pickles' decision not to interview Ofsharick without the expert's assistance. In response, Ofsharick merely recites the applicable law governing the admissibility of expert testimony and asserts that Dr. Cherwony is sufficiently qualified to give an expert opinion on human source matters. Although Dr. Cherwony may be qualified to opine on matters relating to the field of human resources, we find that her testimony and report must be excluded under the clear language of Federal Rule of Evidence 702 and the United States Supreme Court's analysis of that [*11] rule in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 589, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993).

Federal Rule of Evidence 702 provides that:

> [HN4]If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. [HN5]In Daubert, the Supreme Court further clarified Rule 702 and held that a court acts as a gatekeeper in assessing whether expert testimony will assist the trier of fact, and must make an initial determination that the expert testimony offered is fundamentally relevant and reliable. 509 U.S. at 589. "Reliability focuses on trustworthiness: the proffered evidence must be based on valid techniques ... By contrast, relevance requires a valid connection between [*12] the proffered evidence and a fact in issue." Dunn v. Hercules, Inc., No. Civ. A. 93-4175, 1995 U.S. Dist. LEXIS 1891, at *4 (E.D. Pa. Feb. 14, 1995). To assess the reliability and relevance of expert testimony, Daubert sets forth a non-exhaustive list of factors including whether: "1) a theory or technique is scientific knowledge that will assist the trier of fact; 2) the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation; and 4) the general acceptance of the theory or technique." Daubert, 509 U.S. at 592-93; Montgomery County v. Microvote Corp., 320 F.3d 440, 447 (3d Cir. 2002). The Supreme Court extended the Daubert analysis, which involved experts testifying to practices in the context of science and technology, to non-scientific fields in Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999). In the non-scientific context, the Supreme Court noted that "the factors identified in Daubert may or may not be pertinent in assessing [*13] reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Id. at 150.

In this case, we find that Dr. Cherwony's testimony and accompanying report do not meet [HN6]the threshold requirement under Rule 702 that the expert opinion must "assist the trier of fact" in understanding the evidence or facts in issue. See Fed. R. Evid. 702. This Court fails to see how Dr. Cherwony's report, which does not assess whether GMAC's actions could be construed as discriminatory in comparison to its usual employment practices and provides mere conjecture that Pickles should have interviewed Ofsharick, is relevant to a juror's understanding of the case. Further, whether Pickles should have laid off n3 or interviewed Ofsharick for a position in GMAC's Human Resources Department is not relevant to determine whether GMAC acted with discriminatory intent, and clearly not an inquiry that requires expert testimony. This Court finds that a lay juror would be capable of evaluating the facts at issue in this case to reach a determination of whether GMAC intentionally discriminated against Ofsharick without the presentation of Dr. Cherwony's [*14] testimony. Since Dr. Cherwony's expert opinion, which merely voices

disagreement with Pickles decision not to interview Ofsharick, would not assist a juror in understanding the evidence or facts at issue, it must be excluded at trial.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 Dr. Cherwony also comments on GMAC's decision to terminate Ofsharick from his position as the Director of Training for GMAC in July 1999. Since neither party contends that this termination resulted from discrimination, Dr. Cherwony's expert conclusion as to this employment decision is not relevant to the instant action.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Even if Ofsharick could demonstrate that Dr. Cherwony's testimony would assist a juror in assessing whether GMAC acted with discriminatory intent, her report must nevertheless be precluded because it fails to set forth the methodology Dr. Cherwony utilized in forming her conclusions such that the reliability of her testimony could be established. Daubert, 509 U.S. at 591-93; Walker v. Gordon, 46 Fed. Appx. 691, 695 (3d Cir. 2002). [*15] Although [HN7]"the relevant reliability concerns may focus upon personal knowledge or experience" of the expert, in this case, it is unclear what previous knowledge or specialized experience in the human resources field Dr. Cherwony relies upon in support of her opinion. See Kumho Tire, 526 U.S. at 150. Since the methodology underlying Dr. Cherwony's conclusions is unclear and her opinion does not assist the juror in assessing Ofsharick's discrimination claim, we must preclude Ofsharick from introducing expert testimony or evidence from Dr. Cherwony.

### D. Dr. Zimmerman's Testimony

GMAC also contends that any testimony presented by Ofsharick's damages expert, Dr. Zimmerman, must be excluded because it will not assist the jury and is unfairly prejudicial in light of the minimal probative value it provides. Specifically, GMAC argues that Dr. Zimmerman analyzed incorrect figures in calculating the damages Ofsharick incurred by GMAC's alleged discriminatory practices, which resulted in a wholly inaccurate damages report. Ofsharick concedes that Dr. Zimmerman relied on incorrect figures in formulating his damages report and agrees to withdraw Dr. Zimmerman as a witness. [*16] Accordingly, we accept Ofsharick's withdrawal of this damages expert witness and grant GMAC's motion in limine to exclude

any testimony or reports offered by Dr. Zimmerman at trial.

### E. EEOC Letter of Determination

GMAC challenges the admissibility of the EEOC Letter of Determination ("EEOC Letter"), which found that GMAC discriminated against Ofsharick on the basis of his sex and age. First, GMAC argues that the EEOC Letter is unfairly prejudicial because it would cause undue delay and jury confusion, which, balanced against its minimal probative value, weighs in favor of exclusion under Federal Rule of Evidence 403. Second, GMAC contends that the EEOC factual findings are untrustworthy and amount to legal conclusions, thus constituting inadmissible hearsay under Federal Rule of Evidence 803(8)(C). Ofsharick concedes that the EEOC Letter is not per se admissible, but argues that GMAC fails to provide a persuasive reason to preclude this evidence and is merely attempting to attack the EEOC's factual findings and conclusions. We find that, by admitting the EEOC Letter, its minimum probative value is substantially outweighed by the danger of unfair prejudice, undue delay [*17] and presenting needlessly cumulative evidence.

[HN8]While other United States Circuit Courts of Appeal view EEOC Letters of Determination as per se more probative than prejudicial under Rule 403, the Third Circuit recently adopted the position that the trial court must weigh whether the EEOC Letter is more probative than prejudicial under Rule 403 when considering its admissibility. Coleman v. Home Depot, Inc., 306 F.3d 1333, 1344-45 (3d Cir. 2002). Rule 403 provides:

[HN9]Although relevant, evidence may be excluded if its

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. The purpose of weighing the evidence under Rule 403 is to ensure that "juries are not presented with evidence that is far less probative than it is prejudicial." Coleman, 306 F.3d at 1344. In interpreting Rule 403, the Third Circuit recognized that:

Evidence should be excluded under Rule 403 only sparingly since the evidence

2003 U.S. Dist. LEXIS 15646

excluded is concededly probative. The balance [*18] under the rule should be struck in favor of admissibility. Finally, we note that in determining the probative value of evidence under Rule 403, "we must consider not only the extent to which it tends to demonstrate the proposition which it has been admitted to prove, but also the extent to which that proposition was directly at issue in the case."

Blancha, 972 F.2d at 516 (citations omitted). [HN10]In the context of the admissibility of EEOC Letters, Coleman instructs that "relevance alone does not ensure its admissibility" and "evidence may be excluded if its probative value is not worth the problems that its admission may cause." Coleman, 306 F.3d at 1343. Factors that could substantially outweigh the relevance of the evidence include unfair prejudice, misleading the jury, undue delay and presentation of cumulative evidence. Fed. R. Evid. 403.

GMAC argues that the EEOC Letter is of little probative value because it merely recites the allegations of the parties and the largely undisputed facts of the case that will be presented at trial. The remainder of the EEOC Letter, GMAC contends, includes inaccurate facts and incorrectly concludes that [*19] because Pickles did not believe Ofsharick would accept a lower paying position, GMAC discriminated against him. GMAC argues that the EEOC's conclusion would mislead the jury to believe that by speculating that Ofsharick would not accept a lower paying position, GMAC engaged in intentional discrimination under the law.

We agree that the roughly three-page EEOC Letter has little probative value and find several troubling aspects of the EEOC Letter that weigh in favor of exclusion under Rule 403. The EEOC Letter primarily contains facts agreed upon by the parties and allegations that will be submitted at the trial. By presenting the EEOC Letter to the jury, we find that Ofsharick will unnecessarily present cumulative evidence that the jury will hear at trial. Apart from a summary of the facts and issues of Ofsharick's claim, the EEOC Letter devotes only one paragraph setting forth its conclusion: Based on this analysis, I have determined that the evidence obtained during the investigation establishes a violation of the statutes in that the selecting official was speculative at best in presuming that the Charging Party would not accept the position of Training and Development [*20] Manager that ranged in salary from $ 50,000 to $ 75,000, and thus failed to grant him an interview and possible offer for the contested position. Further, the evidence reveals that at the time in question, no male managers directly reported to the

selecting official and of the females who directly reported to the official, all were in their twenties and thirties except one.
(EEOC Letter, GMAC's Mot. Ex. F.) Since the EEOC Letter fails to identify the "time in question" that is at issue in Ofsharick's case, and never interviewed Pickles, the selecting official, or assessed her credibility, we find that, weighed against its minimal probative value, admission of the EEOC Letter will unnecessarily waste time by forcing the parties to dispute the facts and presumptions underlying the EEOC's conclusions.

For these reasons, we are also concerned with the trustworthiness of the EEOC's findings considering its lack of investigation in issuing this report. [HN11]"Since trustworthiness can also become an issue at trial upon the time-related factors in Rule 403." Coleman, 306 F.3d at 1346. The EEOC did not interview Ofsharick or any witness from GMAC [*21] in gathering evidence, and consulted primarily, if not exclusively, with Ofsharick's attorney in compiling the facts underlying its conclusion. Moreover, the EEOC did not conduct a fact-finding conference before issuing its conclusions. We find that forcing GMAC, at trial, to rebut the EEOC's conclusions, which are largely based upon a cursory investigation, would result in both a waste of time and undue delay, and create essentially a "trial within a trial." Since the EEOC Letter contains little probative evidence and would serve only to prolong the trial unnecessarily and waste time, we find that exclusion of this evidence is warranted under Rule 403. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - - -

n4 While we exclude the EEOC Letter pursuant to Rule 403, we find that Federal Rule of Evidence 803(8)(C) also applies. Rule 803(8)(C) [HN12]establishes that a public report that is untrustworthy is inadmissible hearsay. Since we are concerned that the EEOC conducted an incomplete and cursory investigation of Ofsharick's discrimination charges, we find that the EEOC Letter is untrustworthy and should also be precluded under Rule 803(8)(C).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*22]

ORDER

AND NOW, this 17th day of July 2003, in consideration of the Motion in Limine filed by

2003 U.S. Dist. LEXIS 15646

Defendant GMAC Commercial Mortgage Corporation ("Defendant") (Doc. No. 16) and the Response of Plaintiff John M. Ofsharick ("Plaintiff") (Doc. No. 17), it is **ORDERED** that the Motion in Limine is **GRANTED IN PART** and **DENIED IN PART** to the extent that:

1. Plaintiff's request to withdrawal William Mawhinney from the list of potential witness is **GRANTED.**

    2. Defendant's request to preclude Plaintiff from introducing expert testimony of evidence from Dr. Karen Cherwony is **GRANTED.**

    3. Defendant's request to preclude Plaintiff from introducing the EEOC Letter of Determination is **GRANTED.**

    4. By the agreement of the parties, Defendant's request to preclude Plaintiff from introducing the expert testimony of Dr. Ward Brian Zimmerman is **GRANTED.**

BY THE COURT:

JAMES McGIRR KELLY, J.

# **EXHIBIT 2**

175 F.R.D. 194; 1997 U.S. Dist. LEXIS 13403; 39 Fed. R. Serv. 3d (Callaghan) 1002; 74 Fair Empl. Prac. Cas. (BNA) 1649

JOSEPH D. SPRUILL, SR., Plaintiff, v. WINNER FORD OF DOVER, LTD., a Delaware corporation, WINNER IMPORTS OF DOVER, INC., and WINNER HYUNDAI, INC., Defendants.

Civil Action No. 94-685 MMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

175 F.R.D. 194; 1997 U.S. Dist. LEXIS 13403; 39 Fed. R. Serv. 3d (Callaghan) 1002; 74 Fair Empl. Prac. Cas. (BNA) 1649

August 14, 1997, Decided

**DISPOSITION-1: [**1]** Pre-trial motions in limine filed by both parties denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee filed a complaint against defendant employer claiming race discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et. seq., and 42 U.S.C.S. § 1981. Each party filed pretrial motions in limine to exclude certain items of evidence.

**OVERVIEW:** The court considered the admissibility of several items of evidence. The factual findings of the state department of labor (DDOL) were not relevant because they were essentially admitted by the employer and the DDOL's legal conclusions were inadmissible because of their potential prejudicial effect. The DDOL found that there was reasonable cause to believe that the employer discriminated against the employee on the basis of race, that the employee was constructively discharged, and that the employer's actions violated Delaware law. Because the conclusion was extremely prejudicial and also was likely to lead to significant jury confusion, it was not admissible. The employer was not automatically liable for the actions of any managers other than its general managers and sales managers and the employee had to prove respondeat superior liability for all acts alleged by the other managers. The employee's letter rejecting the offer of reinstatement was inadmissible based on relevance and prejudice. The views of the employee's counsel were irrelevant to the employee's reasons for rejecting the offer and the employee could offer his own testimony as to his reasons for rejecting the offer.

**OUTCOME:** The court considered both parties' motions in limine and ruled that the findings of fact and legal conclusions of the state department of labor were not admissible in the employee's discrimination suit against the employer because the findings were cumulative where the employer admitted the facts and the legal conclusion were potentially prejudicial.

**CORE TERMS:** manager, harassment, admissibility, inadmissible, relevance, hostile work environment, general manager, unconditional, racially, echelon, upper, respondeat superior liability, trustworthiness, sexual harassment, management-level, automatically, reinstatement, admissible, admitting, pre-trial, hostile, urges, discriminatory, discovery, probative value, undue delay, white man, supervisor, restaurant, chocolate

**LexisNexis(TM) Headnotes**

*Evidence > Hearsay Rule & Exceptions > Public Records & Vital Statistics*

[HN1]Fed. R. Evid. 803(8) provides an exception to the hearsay rule for records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth in civil actions factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

*Evidence > Hearsay Rule & Exceptions > Public Records & Vital Statistics*

[HN2]Fed. R. Evid. 803(8)(C) authorizes the admission of opinions and conclusions as well as factual determinations, contingent upon trustworthiness as well as the general considerations for admissibility such as relevance and prejudice.

*Evidence > Relevance > Relevant Evidence*

[HN3]The Federal Rules of Evidence define "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401.

*Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions*

175 F.R.D. 194; 1997 U.S. Dist. LEXIS 13403; 39 Fed. R. Serv. 3d (Callaghan) 1002; 74 Fair Empl. Prac. Cas. (BNA) 1649

*Constitutional Law > Civil Rights Enforcement > Civil Rights Generally*

[HN4]The test for determining the existence of a hostile or abuse work environment is: (1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability.

*Civil Procedure > Disclosure & Discovery > Work Product*

[HN5]Fed. R. Civ. P. 26(b)(3) permits discovery of documents prepared in anticipation of litigation or for trial by or for another party only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

COUNSEL: Richard R. Weir, Jr., Esq., Wilmington, Delaware, for plaintiff.

Donald E. Reid, Esq., Andrea L. Rocanelli, Esq., Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, for defendants.

JUDGES: Murray M. Schwartz, Senior District Judge.

OPINIONBY: Murray M. Schwartz

OPINION: [*195] OPINION

Submitted on Briefs
Dated: August 14, 1997
Wilmington, Delaware

**Murray M. Schwartz, Senior District Judge**

**I. Introduction**

Joseph D. Spruill, Sr. ("Spruill") filed a complaint against Winner Ford of Dover, Ltd., Winner Imports of Dover, Inc. and Winner Hyundai, Inc. (collectively "Winner" or "defendants"), claiming race discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., and 42 U.S.C. § 1981. n1 Jurisdiction is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343. Before the Court are pre-trial motions in limine filed by both parties.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n1 Spruill's lawsuit originally named The Winner Group and Winner Group Management, Inc., as defendants and did not name Winner Imports of Dover, Inc. and Winner Hyundai, Inc. The latter two defendants were added, and the former two dismissed, pursuant to a stipulation among the parties. See Docket Item ("D.I.") 47.

- - - - - - - - - - - - End Footnotes - - - - - - - -
- - - - - -

[**2]

**II. Facts**

Spruill began work for Winner Ford of Dover in January 1992 as a sales representative. D.I. 1 P 10. He alleges he was subject to a racially hostile work environment culminating in his constructive discharge in May 1993. Id. Spruill, who is African American, asserts Steven Snyder, Winner's Business Manager in the Finance and Insurance Department, repeatedly made racial slurs toward him, including calling him "chocolate" and "nigger." Id. P 16. Snyder further is claimed to have stated to Spruill, "kiss my hand and say white man is God," and "tell your big lipped sister to suck my d  ," among other things. Id. Snyder further made negative comments about Spruill's marriage to a woman who is white. Id. Other managers at Winner are alleged to have participated in the racial harassment of Spruill as well; these managers included Roger Wollaston, who was general manager at Winner until January 1993, and Frank Fitzwater, who took Wollaston's place. Id.

[*196]    Following his resignation, Spruill filed charges with the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC"). Spruill subsequently received a determination [**3] from the DDOL of reasonable cause to believe he was discriminated against on the basis of his race, and a Notice of Right to Sue from the EEOC. D.I. 1, Exh. A, B.

**III. Motions in Limine**

The Third Circuit Court of Appeals has approved of pre-trial motions in limine as a method of "narrowing the evidentiary issues for trial and . . . eliminating unnecessary trial interruptions." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990). In this case, the parties have raised a number of issues for pre-trial resolution: (1) the admissibility of the DDOL determination; (2) Winner's liability for the actions of its "middle managers;" (3) the admissibility of evidence of discrimination against other employees -- before, during and after Spruill's employment at

Page 2

175 F.R.D. 194; 1997 U.S. Dist. LEXIS 13403; 39 Fed. R. Serv. 3d (Callaghan) 1002; 74 Fair Empl. Prac. Cas. (BNA) 1649

Winner; (4) the admissibility of a letter written by Spruill's attorney in response to an offer of reinstatement by Winner; (5) the addition of certain witnesses to the pre-trial order and (6) the production of certain witness statements. These issues will be considered separately below.

## A. DDOL Determination

Spruill seeks to admit the DDOL determination in its entirety, including factual findings as [**4] well as conclusions and opinions. D.I. 75, at 12. Winner's opposition is two-fold. First, Winner asserts, the document is hearsay, and does not fall within the exception permitted by Federal Rule of Evidence 803(8)(C). Second, Winner urges the document is inadmissible under Federal Rule of Evidence 403; because it purported to analyze the issue under state law, the prejudicial effect of the findings outweighs the probative value.

As noted, Winner's first objection is governed by Rule 803(8)(C), which presents an exception to the hearsay rule. Unless the DDOL findings fall under such an exception, they are inadmissible, as they are out of court statements to be introduced for the truth of the matter asserted therein. See Fed. R. Evid. 801. [HN1]Rule 803(8) provides an exception to the hearsay rule, however, for:
Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (C) in civil actions . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

The Supreme Court has interpreted [HN2]Rule [**5] 803(8)(C) to authorize admission of opinions and conclusions as well as factual determinations, contingent upon trustworthiness as well as the general considerations for admissibility such as relevance and prejudice. Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 102 L. Ed. 2d 445, 109 S. Ct. 439 (1988). Beech is not directly applicable, however; it concerned a report which opined as to the cause of an airplane crash, and the Court specifically reserved the question whether *legal* conclusions would be admissible under Rule 803(8)(C). Id. at 170 n.13.

The federal circuit courts of appeals have not treated uniformly the issue of the admissibility of EEOC findings and their state counterparts, see Johnson v. Yellow Freight Sys., Inc., 734 F.2d 1304, 1309 (8th Cir. 1984) (citing cases). One view is such findings are *per se* admissible, while other courts reserve the decision on admissibility to the discretion of the trial

judge. Id. The Third Circuit Court of Appeals falls within the latter category. Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1099 n.12 (3d Cir. 1995); see also Walton v. Eaton Corp., 563 F.2d 66 (3d Cir. 1977).

While the opinions [**6] of the Third Circuit Court of Appeals have not been expansive as to the various grounds for admitting or excluding the reports, opinions from other circuits indicate -- as is suggested by the Supreme Court and the rule -- that indicia of trustworthiness should guide the determination. See e.g. Johnson, 734 F.2d at 1309; Abrams v. Lightolier, Inc., 702 F. Supp. 509, 512 (D. N. J. 1989). However, the Eighth Circuit Court of Appeals in Johnson also noted [*197] such reports could be ruled inadmissible for several other reasons:

> The trial judge correctly may perceive a danger of unfair prejudice to the defendant or properly may consider that time spent by the defendant in exposing the weaknesses of the EEOC report would add unduly to the length of the trial. Moreover, the trial judge properly may give weight to the hearsay nature of the EEOC report and to the inability of the defendant to cross-examine the report in the same way that a party can cross-examine an adverse witness.

> 734 F.2d at 1309.

Finally, several courts have distinguished between factual findings on the one hand, and opinions and conclusions contained in these reports on the other hand, and have admitted [**7] the former and excluded the latter. See Starceski, 54 F.3d at 1099 n.12 (holding not abuse of discretion for trial court to admit list of employees in plaintiff's department prepared at the request of the EEOC, but excluding the EEOC's determination that the claim lacked probable cause); Brom v. Bozell, Jacobs, Kenyon & Eckhardt, Inc., 867 F. Supp. 686, 692 (N.D.Ill. 1994) (excluding administrative findings but admitting remainder of report).

Winner urges the DDOL determination must be excluded based on insufficient evidence of trustworthiness. It cites Complaint of Nautilus Motor Tanker Co., 85 F.3d 105 (3d Cir. 1996), for the proposition that the Court must consider certain factors before admitting the DDOL findings, including:

> (1) the timeliness of the investigation; (2) the investigator's skill and experience; (3)

175 F.R.D. 194; 1997 U.S. Dist. LEXIS 13403; 39 Fed. R. Serv. 3d (Callaghan) 1002; 74 Fair Empl. Prac. Cas. (BNA) 1649

whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation.

85 F.3d at 112 (citing Beech Aircraft Corp., 488 U.S. 153, 168 n.11). Winner's position is Spruill has not presented evidence to satisfy these requirements, and therefore has not met his burden of proving the DDOL determination [**8] is admissible.

With the record silent as to trustworthiness, the Court is loathe to hold the findings of the DDOL are inadmissible based on lack of trustworthiness, despite general recognition that the quality of these findings may vary. See Johnson, 734 F.2d at 1308-09. The Court also does not believe Nautilus Motor Tanker necessarily controls, as it did not concern admissibility of EEOC or state department of labor findings. It is not necessary to resolve that issue, however, because the DDOL determination is inadmissible based on relevance and prejudice.

As reiterated by the Supreme Court in Beech Aircraft Corp., one prerequisite for admissibility is relevance. 488 U.S. at 167. [HN3]The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The Court finds that the factual findings of the DDOL are not relevant because they are essentially admitted by Winner.

The fact findings of the DDOL echo the statements as detailed above, that Snyder referred to Spruill as [**9] "chocolate" and "nigger," made statements that "white man is God," and commented negatively on Spruill's marriage to a white woman. See D.I. 76, A8-A10. n2 After reviewing the deposition testimony -- particularly Snyder's -- the Court does not believe these issues are disputed. For example, Snyder testified he used the word chocolate to refer to African Americans and Spruill in particular, A130, A137; that he used the word nigger, although not in conversations with African Americans, A136; that he told Spruill to say "white man is God," A-138; and that he commented negatively on white women who dated African Americans. A-138. Snyder's testimony on these issues evinces his belief these statements were made in jest. A-139. Because the fact findings set forth in the DDOL's report are essentially admitted by Winner, they are cumulative and have limited relevance. n3 [*198] Cf. Abrams v. Lightolier, Inc., 50 F.3d 1204, 1218 (3d Cir. 1995).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 The cites beginning with the prefix A refer to the appendix in support of the plaintiff's motion in limine.

n3 This discussion of the facts is not exhaustive with respect to every fact detailed by the DDOL or every fact admitted by defendants. For purposes of deciding the motion in limine, the Court has focused on some of the more egregious statements.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[**10]

On the other hand, the Court finds the DDOL's legal conclusions are inadmissible because of their potential prejudicial effect. Federal Rule of Evidence 403 permits the Court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As pointed out, several courts have excluded the opinions or conclusions found in EEOC or state department of labor determinations based on prejudice to the parties. For example, in Brom, the court found admission of administrative conclusions were "tantamount to saying 'this has already been decided and here is the decision[.]'" 867 F. Supp. at 692 (quotation omitted).

In this case, DDOL found there is reasonable cause to believe Winner discriminated against Spruill on the basis of race, that Spruill was constructively discharged, and that Winner's actions violated Delaware law. See A7-A11. In doing so, the conclusion incorporates several statements of law. Id. For example, the conclusion states in order for Spruill to prove a hostile [**11] work environment, he must "demonstrate that the workplace is permeated with discriminatory behavior such that a reasonable person would find it intolerable." A10. Also, the conclusion states, "Since management is accused of the discriminatory actions, [Spruill] had no obligation to complain to management." A11. Instructing the jury on the law is the province of the Court; admitting such statements would only lead to jury confusion. Accordingly, because the conclusion is extremely prejudicial and also is likely to lead to significant jury confusion, it will not be admitted. n4

175 F.R.D. 194; 1997 U.S. Dist. LEXIS 13403; 39 Fed. R. Serv. 3d (Callaghan) 1002; 74 Fair Empl. Prac. Cas. (BNA) 1649

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n4 In so deciding, the Court does not decide whether the conclusion should be excluded merely on the basis it was made under state law, as is argued by Winner.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

## B. Winner's Liability for Acts of Middle Managers

Spruill next asks the Court to "enter an order that the Winner managers are agents of Winner and that Winner is directly liable for the conduct of those managers." D.I. 75, at 26. By this, the Court assumes Spruill wishes [**12] to bypass the need to present evidence of respondeat superior liability.

The Supreme Court in Meritor Savings Bank v. Vinson, 477 U.S. 57, 72, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986), rejected the notion that "employers are always automatically liable for sexual harassment by their supervisors[,]" and instead directed courts to look to agency principles for guidance in determining employer liability. Id. n5 The Third Circuit Court of Appeals expanded upon this principle in Knabe v. Boury Corp., 114 F.3d 407, 411 (3d Cir. 1997), where it set forth three avenues for liability under agency principles. First, the court held, an employer could be held liable for the torts of its employees committed within the scope of employment. Id. The court quickly disposed of that possibility, holding sexual harassment rarely would fall within the scope of employment. Id. Similarly, this Court finds claims of racial harassment would not be within the scope of Winner management's employment. Second, the court held an employer could be held liable for negligent or reckless failure to take action to correct such harassment. Id. Finally, the court found employers could be liable [**13] if the offending supervisory employee relied on the agency relationship in perpetrating the harassment. Id. The court specifically rejected the argument that "respondeat superior liability automatically attaches to the employer when a supervisor, who has the authority to hire, fire, and discipline the victim of the harassment, creates the hostile work environment." Id. n.7.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n5 Although Meritor, as well as several other cases discussed herein, concerned sexual harassment under Title VII, the

principles are equally applicable to a Title VII case alleging racial harassment.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*199] The plaintiff in Knabe proceeded under the second theory, above, alleging her employer responded negligently or recklessly to her claims of harassment. The court explained: "an employer is liable for an employee's behavior under a negligence theory of agency 'if a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a . . . hostile work environment and failed to take prompt [**14] and adequate remedial action." 114 F.3d at 411.

Most relevant for purposes of Spruill's motion is the Knabe court's unstated assumption that the perpetrator of the harassment -- the shift manager of the restaurant where the plaintiff worked -- was not a "management-level employee," the named defendant being a corporation which owned at least four restaurants. Thus, it did not consider whether the restaurant manager himself had notice of the alleged harassment. Instead, the court focused on the plaintiff's contact with an individual higher up in the chain of command. There was no discussion in Knabe of the possibility that an individual might be harassed by a "management-level employee" such that the employer automatically is deemed to have constructive notice. Other circuit courts of appeals have recently begun to grapple with this issue. See Torres v. Pisano, 116 F.3d 625 (2d Cir. 1997); Harrison v. Eddy Potash, Inc., 112 F.3d 1437, 1446-47 (10th Cir. 1997); Faragher v. City of Boca Raton, 111 F.3d 1530, 1535 (11th Cir. 1997).

The Court finds helpful the opinion of the Second Circuit Court of Appeals in Torres, 116 F.3d 625. In that case, the court distinguished [**15] between "low-level supervisors" who would generally be considered "indistinguishable from . . . . coworkers" in terms of imputing their conduct to the employer, and those employees occupying a position in the company management's "upper echelons." Id. at 633-35. Such a distinction seems called for by the Third Circuit Court of Appeals' opinion in Knabe.

Winner states in its answering brief that its general manager and sales manager were "management-level employees" based on their authority over Spruill, but that its business manager/"F&I manager" and its used car manager were not, based on the fact they had no supervisory authority over Spruill. D.I. 79, at 5-6. Snyder, the alleged primary perpetrator of the racist comments, was in the latter category. Id. at 6.

175 F.R.D. 194; 1997 U.S. Dist. LEXIS 13403; 39 Fed. R. Serv. 3d (Callaghan) 1002; 74 Fair Empl. Prac. Cas. (BNA) 1649

The Court does not rely on the amount of control these managers had over Spruill, because of the explicit statement of the Third Circuit Court of Appeals rejecting the premise that supervisory authority is a necessary and sufficient condition for respondeat superior liability. Knabe, 114 F.3d at 411 n. 7. Instead, the Court focuses on the distinction set forth in Torres: only the actions of those in the [**16] "upper echelons" of Winner Ford management will be imputed by law to Winner Ford.

Without the need to specifically define the "upper echelons," the Court finds neither the positions of business manager/ "F&I manager," nor used car manager qualifies as the "upper echelon," of Winner management. On the other hand, Winner Ford has conceded and the Court holds the sales manager and general manager are "upper echelon" Winner management. Accordingly, Winner Ford is not automatically liable for the actions of any managers other than its general managers and sales managers and Spruill must therefore prove respondeat superior liability for all acts alleged by the other managers. That burden will be satisfied if Spruill is able to establish at trial by a preponderance of the evidence that either or both Winner Ford's general manager or sales manager had actual or constructive knowledge of a hostile work environment and failed to take prompt and adequate remedial action.

## C.  Evidence Concerning Harassment of Other Employees

Under Supreme Court and Third Circuit Court of Appeals precedent, Spruill can establish a Title VII violation based on a racially hostile working environment if he [**17] can demonstrate "by the totality of the circumstances, the existence of a hostile or abusive environment which is severe enough to affect the psychological stability of a minority employee." [*200] Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996); accord Knabe, 114 F.3d at 410 (sexual harassment case). [HN4]The test utilized by the Third Circuit is:

(1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability.

Aman, 85 F.3d at 1081.

As part of his claim, Spruill wishes to introduce evidence of harassment of other employees that occurred before, during and after his employment at Winner. Such information will be used to establish "knowledge and intent of Winner, the animus of the management, the pervasiveness of the harassment, the credibility of Mr. Spruill and other witnesses to the harassment and discrimination, and the objective and subjective elements of a hostile [**18] racial environment claim[.]" D.I. 75, at 27. Winner opposes the introduction of such evidence on the basis it would lengthen the trial and result in "various and sundry mini-trials on facts and issues which are collateral at best." D.I. 79, at 7. Winner urges such evidence is excludable under Federal Rule of Evidence 403, n6 on the basis of undue delay.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n6 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

As the fact-finder must consider the totality of the circumstances in evaluating Spruill's claim of a hostile work environment, it would be unduly restrictive to prohibit Spruill from adducing evidence of discrimination against other employees while Spruill was employed by Winner; such evidence is relevant to his claim. Stair v. Lehigh Valley Carpenters Local Union, 813 F. Supp. 1112, 1116 [**19] (E.D.Pa. 1993). On the other hand, evidence of discrimination that occurred before or after his employ quickly loses its relevance. Without knowing the details of the evidence Spruill wishes to present, and the defenses which may be adduced a trial, the Court is unable to rule at this time on the admissibility of discrimination at times when Spruill was not an employee.

## D.  Spruill's Response to Winner's Offer of Reinstatement

Plaintiff next asks the Court to hold admissible a letter authored by plaintiff's counsel which was submitted to Winner in response to Winner's letter offering Spruill reinstatement. The letter sets forth plaintiff's counsel's belief that Spruill would not be protected from further racial harassment if he returned to work at Winner; it further communicates Spruill's rejection of the offer.

175 F.R.D. 194; 1997 U.S. Dist. LEXIS 13403; 39 Fed. R. Serv. 3d (Callaghan) 1002; 74 Fair Empl. Prac. Cas. (BNA) 1649

See A173. n7 Winner opposes admission of the letter on the basis of prejudice and relevance.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - -

n7 The letter states, in pertinent part:

> My client contends that he suffered racial discrimination at his employment at Winner Ford. As you also know, Winner Ford has denied that that conduct has taken place and has the same individuals still in management positions.
>
> I, therefore, believe that the offer does not protect Mr. Spruill from a continuing hostile environment and racially discriminatory actions, conduct, comments, and treatment at Winner Ford and I do not believe that he has an obligation to return so as to cut off Winner Ford's liability for accrual of back pay and front pay, e.g., Naylor v. Georgia-Pacific, 875 F. Supp. 564 (N. D. Iowa, Jan. 31, 1995).
>
> I have communicated your offer to him and he does not want to return to that working environment that was racially pervasive and discriminatory. He is still undergoing treatment and counseling for the effects visited upon him by the pervasive and racially discriminatory conduct, words and actions at Winner Ford.

- - - - - - - - - - - - End Footnotes- - - - - - - - -

[**20]

Winner likely submitted its offer of reinstatement to reap the benefits of the Supreme Court's holding in Ford Motor Co. v. EEOC, 458 U.S. 219, 73 L. Ed. 2d 721, 102 S. Ct. 3057 (1982), that an unconditional offer of reinstatement tolls the accrual of back pay from the date of the offer. The Court so held despite the fact that the offer in Ford Motor Co. did not include retroactive seniority, on the basis that the unconditional offer sufficiently served the goals of

Title [*201] VII. The Court hinted that some offers would not satisfy the "unconditional" requirement -- it stated, "An applicant or discharged employee is not required to accept a job offered by the employer on the condition that his claims against the employer be compromised." Id. at 232 n.18. Finally, it concluded, "absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability." 458 U.S. at 241.

Some courts have interpreted this last statement by the Court to indicate even an unconditional offer may be rejected without any consequence to backpay liability if sufficient special circumstances exist. See Giandonato v. Sybron Corp., 804 F.2d 120 [**21] (10th Cir. 1986) (citing Taylor v. Teletype Corp., 648 F.2d 1129 (8th Cir. 1981)). One circumstance that has been recognized is the anticipation of continuing harassment. Wilcox v. Stratton Lumber, Inc., 921 F. Supp. 837 (D. Me. 1996); Naylor v. Georgia-Pacific Corp., 875 F. Supp. 564 (N.D.Iowa 1995).

Without commenting on the validity of that legal theory, the Court holds the letter is inadmissible based on relevance and prejudice. First, insofar as the views of *plaintiff's counsel* are set forth in the letter, such views are irrelevant to Spruill's reasons for rejecting the offer. It is clear the letter is just so much legal posturing, and need not be accepted as anything more. Second, the plaintiff can offer his own testimony as to his reasons for rejecting the offer, rendering the remainder of the letter cumulative. Accordingly, the letter will not be admitted.

### E. Addition of Witness to Pretrial Statement

The parties disagree as to whether John Hynansky, the owner but not general manager of Winner Ford, may be listed as a witness at trial. Spruill urges Hynansky -- who manages Winner Incorporated and Winner Group Management, neither of whom are defendants [**22] -- has been identified as a person with knowledge of the events at issue, and has been deposed. Winner, on the other hand, states Hynansky has no personal knowledge of the alleged harassment of Spruill, and therefore, Spruill should not be permitted to call him as a witness at trial. Neither party provides more information than this. After reviewing the file, the Court concludes Hynansky was never identified in the joint pretrial order as a potential witness. See D.I. 58. Accordingly, he may not be added at this late date. Spruill's motion will be denied.

### F. Winner's Motion to Compel Production of Witness Statements

Winner asks the Court to order production of two witness statements, or in the alternative, preclude the

175 F.R.D. 194; 1997 U.S. Dist. LEXIS 13403; 39 Fed. R. Serv. 3d (Callaghan) 1002; 74 Fair Empl. Prac. Cas. (BNA) 1649

two witnesses from testifying. One witness is Roger Wollaston, general manager at Winner during Spruill's employment; the other is Anthony Zaccardelli, a sales person at Winner also during Spruill's employment there.

According to Winner, Spruill noticed the deposition of Wollaston, and subsequently asked if Winner would produce him without a subpoena. Winner declined, and there were no further communications between the parties on the issue. Winner assumed [**23] the deposition would not go ahead; it did not, but plaintiff took a statement (presumably sworn) with a court reporter present. Winner now wishes to have a copy of the transcript. Plaintiff similarly interviewed Zaccardelli in the presence of a court reporter, and Winner seeks a copy of that transcript as well. Spruill defends on the basis of work product, and, it adds, Winner's request is tardy, coming as it did after the close of discovery.

Putting aside the alleged tardiness of Winner's motion, the Court looks to guidance from Federal Rule of Civil Procedure 26(b)(3), which would govern Winner's motion if made in the discovery context. [HN5]That rule permits discovery of "documents . . . prepared in anticipation of litigation or for trial by or for another party . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

[*202] It is undisputed the witness statements at issue were taken in preparation for litigation. Accordingly, at issue is whether Winner has made a sufficient showing of substantial [**24] need and undue hardship. The Court finds Winner has not; Winner interviewed Wollaston, see D.I. 80, Exh. A, and is not precluded from taking its own *ex parte* statement of either witness with a court reporter present. The only reason Winner advanced for needing these statements is effective impeachment. See D.I. 78. That argument is meritless; the possibility of impeachment does not satisfy the showing required by Rule 26. Carson v. Mar-Tee Inc., 165 F.R.D. 48 (E.D. Pa. 1996); Dingler v. Halcyon Lijn N.V., 50 F.R.D. 211 (E.D.Pa. 1970). Winner's motion will be denied. n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - -

n8 The Court is not persuaded otherwise by Dobbs v. Lamonts Apparel, Inc., 155 F.R.D. 650 (D. Alaska 1994), cited by Winner, which held verbatim witness statements were not covered by the work

product doctrine. That holding appears contrary to the language of Rule 26(b)(3), which covers "documents . . . prepared in anticipation of litigation . . . ." See 8 Charles A. Wright et al. Federal Practice and Procedure § 2024 (2d ed. 1994) (discussing application of work product doctrine to witness statements).

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - -

[**25]

# EXHIBIT 3

2005 U.S. Dist. LEXIS 241; 176 L.R.R.M. 2527; 66 Fed. R. Evid. Serv. (Callaghan) 212

NORTH AMERICAN ROOFING & SHEET METAL CO., INC. ET AL. v. BUILDING AND CONSTRUCTION TRADES COUNCIL OF PHILADELPHIA AND VICINITY, AFL-CIO, ET AL.

CIVIL ACTION NO. 99-CV-2050

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2005 U.S. Dist. LEXIS 241; 176 L.R.R.M. 2527; 66 Fed. R. Evid. Serv. (Callaghan) 212

January 10, 2005, Decided

**PRIOR HISTORY:** North Am. Roofing & Sheet Metal Co. v. Building & Constr. Trades Council, 2000 U.S. Dist. LEXIS 2040 (E.D. Pa., Feb. 29, 2000)

**DISPOSITION-1:** Plaintiffs' motion in limine, seeking to exclude NLRB determinations, granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff non-union construction companies and individuals sued defendant unions and trade council alleging unfair labor practices under § 303 of the Labor Management Relations Act, 29 U.S.C.S. § 187, and racial discrimination under 42 U.S.C.S. §§ 1981, 1985(3), and 1986. Plaintiffs moved in limine to exclude from evidence National Labor Relations Board (NLRB) determination letters.

**OVERVIEW:** Plaintiffs filed a charge with the NLRB alleging that defendants had engaged in an illegal secondary boycott under § 8(b)(4) of the National Labor Relations Act, 29 U.S.C.S. § 158(b)(4). The NLRB issued two letters of determination finding that no violation of § 8(b)(4) had occurred. The second letter, which was issued in response to plaintiffs' request for reconsideration, relied primarily on the prior decision. The probative value of the NLRB determination letters was substantially outweighed by the danger of unfair prejudice and confusion that would have resulted from their admission. The first letter did not describe how the NLRB conducted its careful investigation, nor did it relate any facts that the investigation may have revealed. Second, the NLRB decision did not benefit from any evidence that plaintiffs may have uncovered during discovery. Additionally, it was apparent that there was a significant likelihood that plaintiffs would have suffered unfair prejudice if the NLRB determination letters were admitted. There was a strong possibility that the jury would have deferred improperly to the NLRB's conclusion.

**OUTCOME:** The plaintiffs' motion was granted. The NLRB determination letters were excluded from evidence at trial.

**CORE TERMS:** probative value, picketing, unfair, walkout, substantially outweighed, secondary boycott, non-union, confuse, insufficient evidence, determination letter, construction site, work stoppage, investigated, balancing, probable, reserved, mislead, lawful, assign, admit, gate, defer

### LexisNexis(TM) Headnotes

*Evidence > Relevance > Relevant Evidence*

[HN1]In determining whether to admit evidence, a court must make the threshold determination that the proffered evidence is relevant. Relevant evidence is defined as evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401.

*Evidence > Relevance > Relevant Evidence*

[HN2]Evidence that is not relevant is not admissible. Fed. R. Evid. 402.

*Evidence > Relevance > Confusion, Prejudice & Waste of Time*

[HN3]Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403. In making a Rule 403 determination, a court must balance the genuine need for the challenged evidence against the risk that the information will confuse the jury and delay trial.

*Evidence > Relevance > Confusion, Prejudice & Waste of Time*

[HN4]There is a strong presumption that relevant evidence should be admitted, and thus for exclusion under Fed. R. Evid. 403 to be justified, the probative value must be substantially outweighed by the problems in admitting it.

2005 U.S. Dist. LEXIS 241; 176 L.R.R.M. 2527; 66 Fed. R. Evid. Serv. (Callaghan) 212

*Evidence > Relevance > Confusion, Prejudice & Waste of Time*

[HN5]It is within discretion of the court to admit or deny evidence of an administrative agency's findings of fact and determinations on the merits. The United States Court of Appeals for the Third Circuit refuses to adopt a per se rule for admission of administrative agency determinations, holding instead that evidentiary decisions must be made on a case-by-case basis, balancing the maximum probative force for the offered evidence with the likely prejudicial impact of the negative factors listed in Fed. R. Evid. 403.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Strikes & Work Stoppages*

*Labor & Employment Law > Collective Bargaining & Labor Relations > Unfair Labor Practices*

[HN6]In the context of a claim of an illegal secondary boycott under 29 U.S.C.S. § 158(b)(4), it is well established that it is the object of the picketing, not its effect, which is the controlling factor in determining if secondary or primary activity has occurred. Picketing in compliance with the National Labor Relations Board's Moore Dry Dock standard is presumed to be lawful, and any incidental impact of such picketing upon the employees of neutral employers at a common situs will not render the picketing unlawful.

**COUNSEL:** [*1] NORTH AMERICAN ROOFING & SHEET METAL CO., INC., TIMOTHY MANCINI, INDIVIDUALLY AND AS PRESIDENT, NORTH AMERICAN ROOFING & SHEET METAL CO., INC., ANVI & ASSOCIATES, INC., MS. KAITLIN A. DO, INDIVIDUALLY AND AS PRESIDENT AND CHIEF EXECUTIVE OFFICER, ANVI & ASSOCIATES, INC., JOSE MORA, FRANCISCO LOPEZ, TRAVIS T.V. NGUYEN, VINH NGUYEN, Plaintiffs: CHRISTOPHER J. MURPHY, MARIA L. PETRILLO, SAUL, EWING LLP, PHILADELPHIA, PA.

BUILDING AND CONSTRUCTION TRADES COUNCIL OF PHILADELPHIA AND VICINITY, AFL-CIO, PATRICK GILLESPIE, INDIVIDUALLY AND AS BUSINESS MANAGER, BUILDING AND CONSTRUCTION TRADES COUNCIL OF PHILADELPHIA AND VICINITY, AFL-CIO, Defendants: BERNARD N. KATZ, CLAIBORNE S. NEWLIN, STEVEN DAVID MASTERS, MERANZE & KATZ, PC, PHILADELPHIA, PA; RICHARD C. MC NEILL, SAGOT, JENNINGS AND SIGMOND, PHILA, PA.

ROOFER'S LOCAL UNION 30, THOMAS PEDRICK, INDIVIDUALLY AND AS PRESIDENT, ROOFERS' LOCAL UNION 30, LOCAL UNION 98, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, JOHN DOUGHERTY, INDIVIDUALLY AND AS PRESIDENT, LOCAL UNION 98, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, METROPOLITAN DISTRICT COUNCIL OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, EDWARD CORYELL, [*2] INDIVIDUALLY AND AS EXECUTIVE SECRETARY AND BUSINESS MANAGER, METROPOLITAN DISTRICT COUNCIL OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, STEAMFITTERS LOCAL UNION NO. 420, Defendants: CHRISTI C. KRAUTZEL, RICHARD C. MC NEILL, SAGOT, JENNINGS AND SIGMOND, PHILA, PA; STEPHEN J. HOLROYD, JENNINGS SIGMOND, PHILA, PA.

SHEET METAL WORKERS' INTERNATIONAL UNION LOCAL UNION 19, THOMAS KELLEY, INDIVIDUALLY AND AS PRESIDENT, SHEET METAL WORKERS' INTERNATIONAL UNION LOCAL UNION 19, Defendants: RICHARD C. MC NEILL, SAGOT, JENNINGS AND SIGMOND, PHILA, PA; ROBERT F. HENNINGER, SPEAR WILDERMAN BORISH ET AL, PHILA, PA.

PHILADELPHIA HOUSING AUTHORITY, Defendant: A. MICHAEL PRATT, PEPPER, HAMILTON & SCHEETZ, PHILA, PA; NATASHA CAMPBELL, SAUL, EWING, REMICK & SAUL LLP, PHILADELPHIA, PA; RICHARD C. MC NEILL, SAGOT, JENNINGS AND SIGMOND, PHILA, PA.

NATIONAL EQUITY FUND, INC., MILTON PRATT, JR., INDIVIDUALLY AND AS EXECUTIVE DIRECTOR OF NATIONAL EQUITY FUND, INC., SOUTHWARK PLAZA LIMITED PARTNERSHIP, Defendants: JEFFREY A. LUTSKY, STADLEY RONON STEVENS & YOUNG LLP, PHILADELPHIA, PA; RICHARD C. MC NEILL, SAGOT, JENNINGS AND SIGMOND, PHILA, PA.

SOUTHWARK COMMUNITY DEVELOPMENT [*3] CORP., Defendant: RICHARD C. MC NEILL, SAGOT, JENNINGS AND SIGMOND, PHILA, PA.

DALE CORPORATION, R.M. SHOEMAKER CO., SHOEMAKER/DALE JOINT VENTURE, Defendants: JAMES D. HOLLYDAY, JOSHUA P. BROUDY, PEPPER & HAMILTON, LLP., PHILA, PA; RICHARD C. MC NEILL, SAGOT, JENNINGS AND SIGMOND, PHILA, PA.

2005 U.S. Dist. LEXIS 241; 176 L.R.R.M. 2527; 66 Fed. R. Evid. Serv. (Callaghan) 212

DANIEL E. DANIEL E. HILL JR., INDIVIDUALLY AND AS BUSINESS AGENT, STEAMFITTERS LOCAL UNION 420, JR., Defendant: CHRISTI C. KRAUTZEL, RICHARD C. MC NEILL, SAGOT, JENNINGS AND SIGMOND, PHILA, PA.

JUDGES: R. Barclay Surrick, Judge.

OPINIONBY: R. Barclay Surrick

OPINION: MEMORANDUM & ORDER

SURRICK, J.

Presently before the Court is Plaintiffs' Motion in Limine Seeking to Exclude the NLRB Determinations (Doc. No. 128). For the following reasons, Plaintiffs' Motion will be granted.

I. BACKGROUND

This action involves allegations of unfair labor practices under Section 303 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 187, and racial discrimination under 42 U.S.C. §§ 1981, 1985(3), and 1986 by Defendants Roofers Local 30 ("Local 30"), Sheet Metal Workers' International Association Local 19, Local Union 98, International [*4] Brotherhood of Electrical Workers, Metropolitan Regional Council of United Brotherhood of Carpenters and Joiners of America, Steamfitters Local Union 420, the Building and Construction Trades Council of Philadelphia and Vicinity, AFL-CIO ("BCTC"), and various officers of these unions, against Plaintiffs North American Roofing & Sheet Metal Co., Inc. ("North American"), ANVI & Associates, Inc. ("ANVI"), and its owners and employees. In 1998, North American, a non-union roofer, was awarded a contract in the amount of $ 885,000 to perform roofing work in the rebuilding of Southwark Plaza, a public housing project situated in South Philadelphia. (Am. Compl. PP 43, 47.) On February 17, 1999, several months after North American and a non-union subcontractor, ANVI, had begun work at Southwark Plaza, members of Local 30 began picketing the "reserved gate" that had been set up for the employees of North American and ANVI. (Id. P 87.) Later that morning, all of the union members at the construction site staged a work stoppage and walkout. (Id. PP 90-92.) Plaintiffs contend that the work stoppage and walkout was intended to force the general contractor, Shoemaker/Dale J.V., to cease doing [*5] business with North American and ANVI. (Id. PP 119-39.) On March 5, 1999, Shoemaker/Dale J.V. suspended North American's contract and directed the non-union employees to vacate the premises. (Id. P 105.) Upon

the departure of North American and ANVI from the work site, all union members returned to the job and resumed work. (Id. P 107.)

In response, Plaintiffs filed a charge with the National Labor and Relations Board ("NLRB") alleging that Defendants had engaged in an illegal "secondary boycott" under section 8(b)(4) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b)(4). (Doc. No. 128 at 1; Doc. No. 101 Ex. 13.) The NLRB issued two letters of determination on March 30, 1999, and June 16, 1999, stating that an investigation had been conducted and the NLRB had determined that no violation of section 8(b)(4) had occurred. (Doc. No. 103 Ex. 14 at 1; id. Ex. 16 at 1.) Plaintiffs seek to exclude evidence of the NLRB's determination letters under Federal Rule of Evidence 403 on the ground that they would confuse or mislead the jury. (Doc. No. 103.)

II. DISCUSSION [*6]

[HN1]In determining whether to admit evidence, a court must make the threshold determination that the proffered evidence is relevant. Relevant evidence is defined as evidence that has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.[HN2] Evidence that is not relevant is not admissible. Fed. R. Evid. 402. [HN3]Relevant evidence may also be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. In making a Rule 403 determination, we must "balance the genuine need for the challenged evidence against the risk that the information will confuse the jury and delay trial." In re Paoli R.R. Yard PCB Litigation, 113 F.3d 444, 453 (3d Cir. 1997); see also Fed. R. Evid. 403 advisory committee's note (noting [*7] that Rule 403 objections "call for balancing the probative value of and need for the evidence against the harm likely to result from its admission). "However,[HN4] there is a strong presumption that relevant evidence should be admitted, and thus for exclusion under Rule 403 to be justified, the probative value must be 'substantially outweighed' by the problems in admitting it." Coleman v. Home Depot, Inc., 306 F.3d 1333, 1343-44 (3d Cir. 2002).

[HN5]It is within discretion of the court to admit or deny evidence of an administrative agency's findings of fact and determinations on the merits. See, e.g., Walton v. Eaton Corp., 563 F.2d 66 (3d Cir. 1977) (upholding a district court's refusal to admit an EEOC

determination. The Third Circuit has refused to adopt a *per se* rule for admission of administrative agency determinations, holding instead that evidentiary decisions must be made on a case-by-case basis, balancing "the maximum probative force for the offered evidence" with the "likely prejudicial impact" of the negative factors listed in Rule 403. *Coleman, 306 F.3d at 1344.*

Here, we conclude that the probative value of the NLRB determination [*8] letters is substantially outweighed by the danger of unfair prejudice and confusion that would result from their admission. The first determination letter, the body of which contains a mere four paragraphs of text, states that NLRB has "carefully investigated and considered" Plaintiffs' charges and determined that they "lack[] merit." (Doc. No. 101 Ex. 14 at 1.) In its brief analysis, the letter states that:

> There was insufficient evidence to establish that picketing engaged in by Roofers Local 30 at the Southwark housing project in Philadelphia, Pennsylvania, violated Section 8(b)(4)(B) of the Act. The investigation disclosed that Local 30 engaged in lawful primary picketing against North American Roofing and Sheet Metal Co., Inc. exclusively at the gate reserved for North American, its suppliers and employees. There was no evidence that Local 30 otherwise unlawfully induced employees of neutral employers at the job site. [HN6]It is well established that it is the object of the picketing, not its effect[,] which is the controlling factor in determining if secondary or primary activity has occurred. The Board has held that picketing in compliance with its *Moore Dry* [*9]    *Dock* standard is presumed to be lawful, and that any incidental impact of such picketing upon the employees of neutral employers at a common situs will not render the picketing unlawful. Finally, there was no evidence that the Building and Construction Trades Council of Philadelphia and Vicinity, violated the Act in any manner alleged in the charge.

(*Id.* (citations omitted).)

The second determination letter was issued on June 16, 1999, in response to Plaintiffs' request for reconsideration. (*Id.* Ex. 16.) In that letter, the NLRB rejected Plaintiffs' argument that an inference of illegal coordination by Local 30 and the BCTC should be drawn from the fact that all union employees walked off the Southwark Plaza construction site on February 17, 1999. The second letter, however, relies primarily on the prior decision to support its claim that there was no evidence of an illegal secondary boycott. n1 (*Id.* at 1-2.)

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - -

n1 The only supplemental evidence that was considered by the NLRB, a clause in the BCTC's Constitution/By-Laws that allegedly demonstrated that the union employees' walkout was required by the BCTC's member unions, was determined to provide no support for Plaintiffs' claims. (*Id.* at 1.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - -

**[*10]**

For several reasons, we conclude that the determination letters have little probative value. First, the NLRB's letter does not describe how it conducted its "careful[] investigation," nor does it relate any facts that the investigation may have revealed. (Doc. No. 101 Ex. 14.) Rather, it points solely to the *absence* of facts regarding Local 30 and the BCTC's activities in concluding that the picketing was not unlawful. Absent any discussion of the method, scope, or thoroughness of the investigation conducted by the NLRB, however, the Board's determination that there were no facts to support North American's claims has little probative value. *See Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 587 (6th Cir. 1994)* (excluding an NLRB decision letter because it failed to provide the factual basis for the NLRB's conclusion that insufficient evidence existed to support plaintiff's claims). Second, we note that these determination letters occurred on March 19, 1999, and June 16, 1999, the latter of which occurred only shortly after Plaintiffs' Complaint was filed in this Court. Obviously, the NLRB's decision does not have the benefit of any evidence that [*11] Plaintiffs may have uncovered during discovery regarding Local 30 and/or the BCTC's alleged involvement in the walkout or the alleged illegal object of the picketing. Under the circumstances, we conclude that the NLRB determination letters have little if any probative value for the factfinder. *See Black, 15 F.3d at 587* (concluding that the NLRB's decision letter was "probative of almost nothing").

On the other side of the scale, it is apparent that there is a significant likelihood that Plaintiffs would suffer unfair prejudice if the NLRB determination letters were admitted. There is a strong possibility that the

2005 U.S. Dist. LEXIS 241; 176 L.R.R.M. 2527; 66 Fed. R. Evid. Serv. (Callaghan) 212

jury would improperly defer to the NLRB's conclusion that Defendants Local 30 and BCTC did not engage in an unfair labor practice, substituting the agency's judgment for its own. As the Eleventh Circuit has noted,

> The admission of an [administrative agency's] report, in certain circumstances, may be much more likely to present the danger of creating unfair prejudice in the minds of the jury than in the mind of the trial judge, who is well aware of the limits and vagaries of administrative determinations and better able to assign the report appropriate [*12] weight and no more.

_Barfield v. Orange County_, 911 F.2d 644, 651 (11th Cir. 1990); _see also Beachy v. Boise Cascade Corp._, 191 F.3d 1010, 1015 (9th Cir. 1999) (noting that "a jury might find it difficult to evaluate independently evidence of discrimination after being informed of the investigating agency's final results"); _cf._ Thomas P. Murphy, _Disabilities Discrimination Under the Americans With Disabilities Act_, 36 Cath. Law. 13, 32 (1995) ("If an employee is successful in obtaining a 'probable cause' determination [from the EEOC], this evidence can be very compelling to a jury, despite the fact that the employee must still prove a valid case."). In a similar situation, the Sixth Circuit upheld the trial court's exclusion of an NLRB decision letter on these grounds. _Black_, 15 F.3d at 573. The Sixth Circuit explained that if the decision letter was admitted, "the jury would be quite likely to assign greater value to the [NLRB's] decision than it is worth, given that is only the product of an administrative investigation, and not of an adjudicatory procedure." _Id._ at 587.

The Sixth Circuit's decision [*13] is persuasive. There is a significant likelihood that, in considering the NLRB determination letters, the jury would defer to the NLRB's findings and legal conclusions. n2 The NLRB stated that it "carefully investigated and considered" Plaintiffs' claims of an illegal secondary boycott, and found that they lacked evidentiary support. (Doc. No. 101 at 1.) A jury may well give improper weight to these findings. In addition, given the NLRB's position in the field of labor law, an area of significant complexity, the admission of its report may improperly encourage the jury to simply adopt the NLRB's determination as its own. We are satisfied that the jury is perfectly capable of weighing the evidence and reaching a fair decision on the issues raised by the Section 303 claim without the benefit of the NLRB's conclusions. n3

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - - -

n2 In fact, in their proposed jury instructions, Defendants seek to inform the jury that the NLRB's decision should be given "great weight" in their deliberations. (Doc. No. 119, Defendants' Proposed Charge No. 14.).

n3 One must also be concerned that the NLRB's conclusions in the determination letters might also impact the jury's consideration of the non-section 303 claims.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - - - -

[*14]

## III. CONCLUSION

In light of the very limited probative value of the NLRB determination letters and the significant likelihood that the letters would unfairly prejudice Plaintiffs and confuse and mislead the jury, we conclude that the NLRB determination letters must be excluded.

An appropriate Order follows.

## ORDER

AND NOW, this 10th day of January, 2005, upon consideration of Plaintiffs' Motion in Limine Seeking to Exclude the NLRB Determinations (Doc. No. 128), and the response thereto, it is ORDERED that the Plaintiff's Motion is GRANTED. The NLRB determination letters are excluded from evidence at trial.

IT IS SO ORDERED.

BY THE COURT:

R. Barclay Surrick, Judge