# EXHIBIT 1

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DIANE POLAND,                )
                             )
          Plaintiff,         )
                             )  Civil Action
v.                           )  No. 04-217 (GMS)
                             )
COMPUTER SCIENCES CORP.,     )
                             )
          Defendant.         )

     Deposition of DIANE POLAND taken pursuant to notice at the law offices of Potter, Anderson & Corroon, 1313 North Market Street, The Hercules Plaza, Sixth Floor, Wilmington, Delaware, beginning at 9:10 a.m. on Wednesday, March 30, 2005, before Kathleen White Palmer, Registered Merit Reporter and Notary Public.

APPEARANCES:

    JEFFREY K. MARTIN, ESQUIRE
    KERI L. WILLIAMS, ESQUIRE
    MARGOLIS EDELSTEIN
      1509 Gilpin Avenue
      Wilmington, Delaware  19806
      for the Plaintiff

    LARRY R. SEEGULL, ESQUIRE
    AMY BETH LEASURE, ESQUIRE
    DLA PIPER RUDNICK GRAY CARY LLP
      6225 Smith Avenue
      Baltimore, Maryland  21209-3600
      for the Defendant

-----------------------------------------------------

WILCOX & FETZER
1330 King Street - Wilmington, Delaware 19801
(302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters
ORIGINAL

```
 1   Print team?
 2       A.   I don't know because I didn't know the other
 3   people that well.
 4       Q.   So just the people that were treated better than
 5   you were the people on the Managed Print team?
 6       A.   I guess so.  I don't know the people -- the
 7   other people that were part of Dawn's team.
 8       Q.   Who is Jesse Cason?
 9       A.   He was someone that worked in HR.
10       Q.   Does he have any knowledge about this case?
11       A.   No, not knowledge of the case, no.
12       Q.   Did he provide any information to you about
13   salaries?
14       A.   No, he did not.
15       Q.   Did he provide any human resources information
16   or personnel information to you?
17       A.   No.
18       Q.   Did you talk to him about any of your concerns?
19       A.   Yes.
20       Q.   What did you tell him?
21       A.   I told him that I was -- when I would come in
22   there he was there.  When I had my meetings with Sonia or
23   Maureen he was there and I told him I had a meeting.
24       Q.   Is that it?
```



```
 1    A.    Yes.
 2    Q.    What did he say?
 3    A.    "Just go ahead. Stay strong." That's about it.
 4    Q.    "Stay strong"?
 5    A.    Mm-hmm.
 6    Q.    Yes?
 7    A.    Yes.
 8    Q.    What did he mean, "Stay strong"?
 9    A.    I don't know what he meant.
10    Q.    Did you tell him what your meeting was about?
11    A.    No.
12    Q.    You never discussed with Mr. Cason anything
13  about your claims or concerns?
14    A.    No, but actually Sonia did.
15    Q.    How do you know Sonia did?
16    A.    He told me.
17    Q.    What did he tell you?
18    A.    He told me that Sonia came over to him and
19  advised him not to speak with me anymore because I was
20  having problems with my management.
21    Q.    What did you say?
22    A.    I said, "Really?"
23    Q.    Did you discuss that with anybody else?
24    A.    No.
```



```
 1      Q.   Why not?
 2      A.   I didn't feel the need to.
 3      Q.   Was that a problem?  Did you have the need to
 4 discuss with Mr. Cason your claims?
 5      A.   No.
 6      Q.   So it wasn't a problem that he was not to talk
 7 to you anymore about it?
 8      A.   It wasn't a problem, but he considered it a
 9 problem.
10      Q.   What race is Mr. Cason?
11      A.   He's African-American.
12      Q.   Do you still keep in touch with Mr. Cason?
13      A.   No.
14      Q.   When was the last time you spoke with him?
15      A.   I don't recall.  It's been a very long time.
16      Q.   Were you still an employee when you spoke to
17 him?
18      A.   Was I still an employee?  I don't recall.  I
19 don't know.
20      Q.   Can you think of any witness that will support
21 your claims of discrimination?
22      A.   I can't think of them, but I know there are some
23 people within CSC probably could support it, but --
24      Q.   Who is going to be a witness on your behalf to
```



```
 1  support your claims of discrimination?
 2       A.    I don't know.  I provided a list, but I don't
 3  remember the names right now.
 4       Q.    Who is Selma York?
 5       A.    Selma York, she's a friend of mine.
 6       Q.    What is her position?
 7       A.    I don't know now.  I don't know what her
 8  position is.
 9       Q.    Does she have any knowledge about this case?
10       A.    She knows that I had meetings with HR and she
11  knows I no longer work for CSC, but other than that,
12  that's it.
13       Q.    Who is Tia Jackson Alexander?
14       A.    She also works for CSC.
15       Q.    Does she have any knowledge about this case?
16       A.    No.
17       Q.    Who is Peter Lang?
18       A.    He works for CSC, as well.
19       Q.    Does he have any knowledge about this case?
20       A.    No.
21       Q.    Who is Joseph Hinton?
22       A.    He worked for CSC at some point.
23       Q.    Does he have any knowledge about this case?
24       A.    No.
```



WILCOX & FETZER LTD.
Registered Professional Reporters

```
 1    Q.   Who is Tony Snow?
 2    A.   He works for CSC.
 3    Q.   Does he have any knowledge about this case?
 4    A.   No.
 5    Q.   Who is Jerry Flowers?
 6    A.   He works for CSC, also.
 7    Q.   Does he have any information about this case?
 8    A.   He may because he worked in HR.  I don't know.
 9    Q.   Do you know if he has any information about this
10  case?
11    A.   No, I don't.
12    Q.   Where did he work in HR?
13    A.   Just in the HR department.
14    Q.   Who is Dr. Tanchanco?
15    A.   That's my primary care physician.
16    Q.   Does he have any personal knowledge about this
17  case?
18    A.   He may.
19    Q.   What knowledge would he have about this case?
20    A.   I don't know, but he may because I was seeing
21  him when I first started having stress and anxiety
22  attacks.
23    Q.   How about Dr. Berma and Dr. Houser and Dr. Cruz,
24  who are they?
```



```
 1      A.   They are also doctors.
 2      Q.   All doctors that you saw?
 3      A.   Yes.
 4      Q.   Would they have knowledge about this case?
 5      A.   They may, yes.
 6      Q.   Would the knowledge they have, all those
 7 doctors, would the knowledge that all those doctors have,
 8 would that be related to your medical condition?
 9      A.   Possibly.
10      Q.   But only your medical condition?  Nothing else?
11      A.   I don't know.  Possibly more.
12      Q.   What else could they know about the case other
13 than your medical condition?
14      A.   I don't know.  I don't know.
15      Q.   Do you have any knowledge that they have any
16 other knowledge besides your medical condition?
17      A.   I don't have any knowledge that they have any
18 other knowledge.
19      Q.   Does Ted Mitchell have any knowledge about this
20 case?
21      A.   Not to my knowledge.
22      Q.   Does Sandy Martin have any knowledge about this
23 case?
24      A.   Not to my knowledge.
```



```
 1      Q.   Besides those individuals we've already
 2  discussed, are there any other witnesses who can support
 3  your allegations who have knowledge about this case?
 4      A.   Not that I can recall.
 5      Q.   Have you ever seen anyone's personnel file at
 6  the company?
 7      A.   No.
 8      Q.   Have you ever seen anyone's performance
 9  evaluations?
10      A.   No.
11      Q.   Have you ever evaluated anyone's performance?
12      A.   No.
13      Q.   Do you know anything about the performance of
14  any other employees at the company?
15      A.   No.
16      Q.   Before you went out on medical leave, you
17  suffered emotional distress?
18      A.   Yes.
19      Q.   Tell me about the emotional distress you
20  suffered before you went out on medical leave.  When did
21  it start?
22      A.   I don't recall when it started, but I was at
23  work and I began having anxiety attacks and I went to the
24  doctor.
```



# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DIANE POLAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04-217 (GMS) |
| ) | |
| COMPUTER SCIENCES CORP., ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff, Diane Poland, by and through her undersigned counsel, hereby provides answers to the following Interrogatories to Defendant, Computer Sciences Corporation ("CSC") in accordance with the following Definitions and Instructions.

## INSTRUCTIONS

For the purpose of these Interrogatories, and with respect to each Interrogatory:

A.   These Interrogatories are continuing in nature, and you shall promptly supplement your answers if you, or anyone acting on your behalf, obtains further or different information after the initial answers are served. Such additional or supplemental answers shall be made no later than fifteen (15) days following the discovery of such information and, in any event, within a reasonable time prior to the commencement of trial.

B.   You are to furnish all information available to you, including information known to your attorneys, agents, investigators, employees, representatives, or other persons acting on your behalf.

document, and the type of document (e.g., letter, memorandum, telegram or chart) or to attach an accurate copy of the document to your answer, appropriately labeled to correspond to the interrogatory.

L.   Unless otherwise indicated, these Interrogatories refer to the time, place and circumstances of the occurrences mentioned in the pleadings.

## INTERROGATORIES

1.   Please identify all persons who have personal knowledge of any matter concerning, relating or referring to the allegations in or the subject matter of your Complaint and/or any related administrative actions, including any charge of discrimination which you filed in connection with this case. State specifically the paragraph(s) of your Complaint for which each person has personal knowledge, and identify and describe specifically the nature and detail of such knowledge.

### ANSWER:

A. **Jesse Cason** may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

B. **Selma York** may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

C. Dr. Tanchanco may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

D. Dr. Berman may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

E. Dr. Houser may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

F. Tia Jackson-Alexander may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

G. Peter Lang may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

H. Joseph Hinton may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

I. Edwin Alston may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

J. Tony Snow may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

K. Jerry Flowers may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

L. Beth Musmeci may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the

conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

M. Maryanne Doll-Johnson may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

N. Simmie Osburn may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

O. Leanne Thomas may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

P. Mike Suman may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

Q. Maureen Summers may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between

Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant;

R. Sonia Koplowicz may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant; and

S. Dawn Dworsky may have knowledge or information which relates to administrative actions, including any charge of discrimination as it relates to the Defendant; Defendant's conduct; the relationship and interaction between Plaintiff, Defendant and other co-workers; the conduct of members of the Human Resources Department; Plaintiff's job performance and job duties, the conduct of members of the Management Print and Dazel Group; compensation during Plaintiff's employment with Defendant; Plaintiff's leave of absence; and Plaintiff's separation from employment with Defendant.

2. Please identify each and every person, not previously identified, who has knowledge of the alleged wrongs, injuries or damages allegedly suffered by you because of the alleged action of CSC. Your response should include, but not be limited to, a description of the source of such knowledge.

**ANSWER:**

Other current and former employees of Defendant may have knowledge of the facts in this matter, and if any such individuals are identified, they will be provided as a supplement to these Answers to Interrogatories;

Plaintiff's family and personal friends and/or acquaintances may have knowledge of the facts in this matter, and if any such individuals are identified, they will be provided as a supplement to these Answers to Interrogatories;

Plaintiff's medical care providers, physicians, etc. also have knowledge pertaining to Plaintiff's conduct and the nature of the relationship and interaction between Plaintiff and Defendant, Plaintiff's job performance and job duties, Plaintiff's conduct, Plaintiff's compensation, the conduct of members of the Managed Print and Dazel Group, Plaintiff's leave of absence, potential transfer and/or opportunities for promotion that were available to Plaintiff, and Plaintiff's separation from employment. Plaintiff's medical care providers have all been provided to Defendant in previous correspondence to Defendant's attorney.

- Dr. Tanchanco, Plaintiff's Primary Care Physician. He may have documents and other information with regard to this litigation.

- Dr. Berman, Psychiatric counselor, has knowledge, facts and/or opinions with regard to this litigation. He may have documents and other information with regard to this litigation.

- Dr. Houser, Psychiatrist, has knowledge, facts and/or opinions with regard to this litigation. He may have documents and other information with regard to this litigation.

- Dr. Cruz, NCC Psychiatric Counseling Center has knowledge, facts and/or opinions with regard to this litigation. He may have documents and other information with regard to this litigation.

Furthermore, the specific facts known to each may vary depending upon, among other things, the extent to which each individual worked with Plaintiff, the extent to which Plaintiff may have interacted or communicated with each individual, the extent to which each individual had the opportunity to observe Plaintiff, and the supervisory relationship between each individual and Plaintiff, if any. In addition, any or all of the above-named individuals may have knowledge related to Plaintiff's specific allegations in this litigation or evidence in support of Plaintiff's claims.

3. Please identify and describe in detail any suits, complaints, charges, and/or claims, including insurance claims and worker's compensation claims, to which you have been a party or witness, <u>other than the instant case</u>, and state the nature of the claims, the parties involved, the forum, and the outcome of the claim, including any settlements.

# EXHIBIT 3

Westlaw.

34 Fed.Appx. 854                                                                                                          Page 1

34 Fed.Appx. 854

**(Cite as: 34 Fed.Appx. 854)**

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

NOT PRECEDENTIAL

Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP APP I 5.3.)

United States Court of Appeals,
Third Circuit.
Lydell V. MULDROW, Appellant
v.
Peter J. BROOKS; Charles Kellar; Janet Stiteler;
City of Harrisburg
No. 00-3730.

Submitted Under Third Circuit LAR 34.1(a) Jan. 15, 2002.
Filed April 29, 2002.

Appeal from the United States District Court for the Middle District of Pennsylvania (D.C. Civil Action No. 99-cv-00721). *855 District Judge: Honorable Sylvia H. Rambo.

Before ALITO and ROTH, Circuit Judges SCHWARZER [FN*], District Judge.

> FN* Honorable William W. Schwarzer, Senior District Judge for the Northern District of California, sitting by designation.

OPINION

ROTH, Circuit Judge.

Appellant Lydell V. Muldrow, formerly a corporal in the Harrisburg Bureau of Police, appeals from a judgment entered against him in the United States District Court for the Middle District of Pennsylvania. Muldrow filed a complaint against Peter J. Brooks, Charles Kellar, Janet Stitelar, and the City of Harrisburg pursuant to 42 U.S.C.1983, claiming racial mistreatment and retaliatory discharge. On October 2, 2000, just prior to the commencement of the trial in this case, the District Court granted defendants' motion in limine, seeking to **exclude** testimony by Charles Painter, a fellow officer, on the basis of Muldrow's failure to **identify** Painter as a potential **witness** before the close of **discovery** pursuant to Fed.R.Civ.P. 26.

At trial, the jury found in favor of defendants and judgment was entered on October 5, 2000. Muldrow appeals both the order granting the motion in limine, and the judgment against him.

Muldrow argues on appeal that the District Court abused its discretion in excluding Painter's testimony. Muldrow claims that, by mentioning Painter several times during Muldrow's own deposition, he put the defendants on notice that Painter was a potential witness. Defendants respond that it was not until after discovery had closed that Muldrow ever mentioned Painter as having direct knowledge of any of the alleged discriminatory incidents.

During discovery a party is required to disclose the names of witnesses that may be called to testify at trial. See Fed.R.Civ.P. 26. Failure to do so will preclude the party use of those witnesses, unless such failure is harmless. See Fed.R.Civ.P. 37(c)(1). Defendants claim that they were harmed by the failure to disclose Painter because his alleged knowledge of an incident was not revealed until after defendants had filed for summary judgment, because defendants did not have the opportunity prior to trial to depose Painter or the other officers

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

34 Fed.Appx. 854                                                                                             Page 2

34 Fed.Appx. 854

**(Cite as: 34 Fed.Appx. 854)**

who he claimed were with him, and because defendants would not have had an opportunity to locate rebuttal witnesses. From our review of the record, we conclude that the District Court did not abuse its discretion in its decision to exclude Painter's testimony.

For the foregoing reasons, we will affirm the judgment of the District Court.

TO THE CLERK:

Please file the foregoing Opinion.

34 Fed.Appx. 854

**Briefs and Other Related Documents (Back to top)**

• 2001 WL 34108282 (Appellate Brief) Brief of Appellees Harrisburg, City of; Peter Brooks; Charles Kellar; and Janet Stiteler (Aug. 02, 2001)Original Image of this Document (PDF)

• 2001 WL 34108283 (Appellate Brief) Brief of Appellant (Jul. 03, 2001)Original Image of this Document (PDF)

• 00-3730 (Docket) (Nov. 08, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.