# SCHEDULE (I)(i)

# TRIAL BRIEF

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DIANE POLAND, | : | |
| | : | |
| Plaintiff, | : | C.A. NO. 04-0217-GMS |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| COMPUTER SCIENCES CORPORATION, a Delaware Corporation, | : | |
| | : | |
| Defendant. | : | |

---

**TRIAL BRIEF**

---

Jeffrey K. Martin, Esquire (DE #2407)
MARGOLIS EDELSTEIN
1509 Gilpin Avenue
Wilmington, DE  19806
(302) 777-4680 – telephone
(302) 777-4682 – facsimile
jmartin@margolisedelstein.com

DATED:  September 30, 2005

## **TABLE OF CONTENTS**

NATURE OF CASE ………………………………………………………    1

CONTESTED FACTS …………………………………………………    2

THEORY OF LIABILITY …………………………………………….    7

THEORY OF DAMAGES …………………………………………    11

THEORY OF ANY ANTCIPATED MOTION FOR DIRECTED
VERDICT ………………………………………………………………    13

## **NATURE OF THE CASE**

On April 8, 2004, Diane Poland (hereinafter "Plaintiff") filed a six count Complaint against Defendant Computer Sciences Corporation (hereinafter "Defendant" or "CSC"), a Delaware corporation. At this stage of the proceeding, Plaintiff's claims are limited to the following:

- A racial discrimination claim based upon Plaintiff's failure to receive a promotion based on the fact that co-worker Randall Miller was promoted and she was not;

- A retaliation claim based upon Plaintiff's termination of employment;

- An Equal Pay Act claim based upon the fact that males were allegedly paid more than females in the group she was working in; and

- A claim for a purported breach of the implied covenant of good faith and fair dealing based upon the discrimination and retaliation that Plaintiff claims she suffered.

On May 24, 2004, Defendant filed an Answer denying the substantive allegations of the Complaint. After extensive discovery on May 6, 2005, Defendant filed a Motion for Summary Judgment on all of Plaintiff's claims, which has been fully briefed. (D.I. 40, 42, 54, 56.) The Court has not yet ruled on Defendant's Motion. This matter is scheduled for trial beginning on November 7, 2005.

## CONTESTED FACTS

Plaintiff believes that the evidence will establish the following facts:

### Plaintiff's Employment with Defendant

Plaintiff was hired by Defendant as an at-will employee on November 5, 1997. Plaintiff was initially hired as a help desk technician, Member Technical Staff B ("MTSB"). She also served as a technical systems analyst. As a help desk technician, Plaintiff answered calls from clients regarding printer problems, problems involving connection to the server, telecommunication problems and phone issues. Furthermore, Plaintiff used UNIX while she was a help desk technician.

In or around May 2000, Plaintiff was promoted by Edwin Alston from a MTSB to a Member Technical Staff A ("MTSA") under the direction of Ms. Dawn Dworsky ("Dworsky"), a Caucasian. When Plaintiff was transferred to Dworsky's team, Plaintiff was informed that her work responsibilities would continue as normal, and her performance expectations would remain the same as they were under her former hiring manager, Edwin Derek Alston. Plaintiff had no problems with any of her supervisors prior to Dworsky.

### Dawn Dworsky's Racial Bias

During the time when Plaintiff was employed by Defendant, Dworksy made a racially derogatory comment to a group in which Plaintiff was present. Dworsky asked "why do Black people dress up for church and why is the music so loud?" Plaintiff found this comment to be derogatory because it was a generalization of all Black people. Although, Plaintiff did not inform Dworksy that she was offended by the comment, she [Plaintiff] did inform Human Resources. A second incident that took place involved

2

Dworsky and Randall Miller (hereinafter "Miller") when they were making gestures of putting their hands to their noses, to infer there was a smell and laughing. Plaintiff asked what was funny and no one would tell her. Therefore, she believed since she was the only person who was "not involved" and that she was the only African-American present that the group was referring to her.

### Plaintiff's Relevant Computer Experience

Prior to joining the employ of Defendant, Plaintiff had previously used certain software applications which included ORACLE, GMC, Card One, and UNIX for the database. Although Plaintiff did not program these applications, she was familiar with each software package. Plaintiff did not specifically list all of her previous computer experience including her UNIX experience on her original employment application because she did not believe that she was proficient in each of these areas.

After Plaintiff began working for Defendant, she continued to build her technical skills by attending a Dazel Certification Course. Dazel is a software program that is an output server that generally manages output from any location, from almost any format. Plaintiff had specific experience with using Dazel in that she engineered the Dazel program for specific client needs. She also attended a Microsoft Certification Course and a Microsoft Engineering Certification Course. Further, she completed several computer based training courses on-line through her employment with Defendant. Plaintiff continued to build her skills regarding UNIX and Dazel when she was in the Managed Print Group. She also programmed and analyzed problems with the computer languages of Shell and UNIX and used PERL along with Dazel. Finally, she was also pursuing further UNIX training on her own time.

3

### Performance Evaluation

During the Plaintiff's 2001 performance evaluation meeting, Dworsky indicated that Plaintiff was doing a "good job," that she should continue on the path that she was on, that she was focused, that she was a good worker, and that Plaintiff had a good work ethic. At the conclusion of this conversation, Dworsky advised Plaintiff that she was only receiving a "3" rating on her review. It was at this point that Plaintiff advised Dworsky that she disagreed with her 2001 performance evaluation rating. As a result of her performance evaluation, Plaintiff made several complaints to Defendant's Human Resources Office that she felt that she was being subjected to disparate treatment based upon her race.

### Plaintiff's Similarly-Situated Caucasian Co-Workers

Miller became a member of the MPD team approximately 7 months before Plaintiff's 2001 appraisal. Miller had no experience with Dazel because he was still in training to become certified; he had just recently become a member of the MPD team; and was still in 'job training'. Dworsky informed Plaintiff that she would not receive a promotion because she did not have the skill-set. However, Plaintiff's skill level in Unix, Perl, Dazel, etc. was greater than Miller's skills at that time. Miller received the promotion to the SMTS position over Plaintiff even though she was better qualified for the position.

### Retaliation

Shortly after Plaintiff made the internal complaints of discrimination, Plaintiff met with Maureen Summers (hereinafter "Summers") and Dworsky to discuss her work assignments. Plaintiff was informed that she was being removed as lead Dazel engineer

from all of her engineering projects. Instead, Plaintiff was forced to write a technical manual, to which she objected. Subsequently, Plaintiff was told that all company projects had been completed, and that this assignment was the only one available to her. Even though Dworksy advised Plaintiff that the engineering projects were complete, Plaintiff was still receiving emails about the projects that indicated that they were not complete.

Dworsky treated Plaintiff differently than her similarly-situated co-workers, who were Caucasian, whereby Dworksy failed to recognize Plaintiff as a member of her group. When Plaintiff would request meetings with Dworsky, she failed to respond until Plaintiff made several repeated requests. Plaintiff was not aware of anyone else in her group that was having the same problems that she was experiencing with Dworsky. Plaintiff was the only African-American in the Managed Print Group.

On or about June 15, 2001, Plaintiff met with Summers and advised her that she believed she was being subjected to disparate treatment with regard to the terms and conditions of her employment compared to her similarly-situated Caucasian co-workers. Plaintiff also stated to Summers that she was the only African-American in the department and was being excluded from important communications, as well as subjected to offensive racially-based comments.

### Charge of Discrimination

With no other administrative remedy available to her, Plaintiff filed a Charge of Discrimination against Defendant with the Delaware Department of Labor on or about July 5, 2001 alleging race, sex and retaliation.

The Delaware Department of Labor investigated Plaintiff's Charge of Discrimination alleging race, sex and retaliation and found in favor of Plaintiff, citing

5

reasonable cause that violations of Title VII and 19 Del. C. § 711 had occurred. The Delaware Department of Labor issued its Investigative Memorandum on or about May 31, 2002. The Delaware Department of Labor then attempted informal methods of conciliation.[1] Plaintiff did not accept Defendant's offer to settle this matter at the administrative process stage. This occurred sometime between June 2002 and November 2002.

The United States Equal Employment Opportunity Commission also investigated Plaintiff's complaint of racial, sex, and retaliation discrimination and found in favor of Plaintiff, citing violations of Title VII. The United States Equal Employment Opportunity Commission issued its Determination on or about July 8, 2003.

### **Termination**

Plaintiff was terminated on or about September 27, 2002 for alleged failure to provide medical certification. Although Plaintiff acknowledges that her failure to provide medical certification in a timely manner could result in a voluntary resignation, Plaintiff could not force her doctor to provide the certification at a certain time. However, it was not until September, after Plaintiff did not accept Defendant's offer to settle her discrimination matter with the Department of Labor when Defendant finally decided that it was going to accept Plaintiff's voluntary resignation, even though it failed to follow its own policies on several prior occasions.

---

[1] The Delaware Discrimination in Employment Act required the Department of Labor to attempt conciliation after a reasonable cause finding was issued. 19 Del. C. §712(c).

6

## THEORY OF LIABILITY

## RACE DISCRIMINATION

In her Complaint, Plaintiff alleges that Defendant discriminated against her on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)(1) and 42 U.S.C. §1981. Specifically, Plaintiff alleges the discrimination occurred when Defendant promoted Miller, a less qualified Caucasian male to the position of SMTS.

Title VII provides that:

> It shall be unlawful employment practice for an employer --
> (1) to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

In order to establish a *prima facie* case based on discrimination, Plaintiff must prove that: (1) she is a member of a protected class; (2) she suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly-situated person not of the protected class is treated differently. See Boykins v. Lucent Techs. Inc., 78 F. Supp. 402, 409 (E.D. Pa 2000) (citing Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999)). However, the Third Circuit recognizes that the elements of a discrimination case may vary depending on the facts and context of the particular situation. Pivirotto v. Innovative Sys. Inc., 191 F.3d 344, 352 (3d Cir. 1999).

7

There is no factual dispute that Plaintiff is a member of a protected class. Bradley v. United States, 299 F.3d 197, 206 (3d Cir., 2002). Furthermore, Plaintiff's denial of a promotion constitutes an adverse employment action. See Kidd v. MBNA America Bank, N.A., 224 F. Supp. 2d 807, 811 (D.Del. 2002).

Finally, Plaintiff will establish that similarly-situated persons not in a protected class were treated more favorably. Kidd, 224 F.Supp. 2d at 812. Here Miller, a Caucasian, who had no experience with Dazel; no experience on the MPD team; and was in still in 'job training' was promoted over Plaintiff.

## **RETALIATION**

A Plaintiff claiming retaliation under Title VII must establish that: (1) she engaged in a protected activity; (2) the Defendant took an adverse employment action against her; and (3) a causal link exists between the protected activity and the adverse employment action. See Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1999).

According to Title VII, a "protected activity" is any instance when an employee has:

> opposed any practice made an unlawful employment practice by this subchapter, or ... has made a charge, testified, or participated in any matter in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Here, Plaintiff complained to Defendant's internal Human Resources Department and also filed a Charge of Employment Discrimination with the Delaware Department of Labor.

Under Title VII, an adverse employment action is an action that alters the employee's compensation, terms, conditions or privileges of employment, deprives him

8

of employment opportunities or adversely affects his status as an employee. See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997). "The United States Supreme Court has defined an adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 761 (1998).

Here, Plaintiff was subject to adverse employment actions when she was terminated from her employment with Defendant.

Plaintiff will establish a causal connection between her protected activities and the adverse employment action. Determining whether there is a causal link between the protected act and the adverse employment action is highly fact sensitive and timing is not the only factor to be considered. "Although timing and ongoing antagonism have often been the basis for the causal link, our case law clearly allowed a plaintiff to substantiate a causal connection for purposes of the *prima facie* case through other types of circumstantial evidence that support the inference." Farrell v. Planters Lifesavers Co., 206 F. 3d 271, 280-81 (3d Cir. 2000). In EEOC v. L.B. Foster Co., 123 F.3d 746 (3d Cir. 1997), cert. denied, 522 U.S. 1147 (1998), the court found that plaintiff established a *prima facie* case of retaliation "based on temporal proximity of events plus inconsistencies in the defendant's testimony, certain conduct towards others, and refusals to provide a reference for the plaintiff." Farrell, F.3d at 281 (citing L.B. Foster Co., 123 F.3d at 753-55).

Although, it is undisputed that one year had elapsed from the time Plaintiff filed her Charge of Discrimination with the Department of Labor, she was terminated shortly after she rejected Defendant's offer to settle her matter at the administrative level.

**BREACH OF THE COVENANT OF GOOD FAITH & FAIR DEALING**

Plaintiff's Complaint alleges a breach of the implied covenant of good faith and fair dealing under Delaware law. One category in which the implied covenant is implicated is when the termination violates public policy. See Conneen v. MBNA America Bank, N.A., 334 F. 3d 318, 334 (3rd Circuit 2003) applying Delaware law.

Plaintiff's Complaint alleges that Defendant breached the implied covenant of good faith and fair dealing based upon the same facts as her claims of unlawful discrimination and retaliation. For all the reasons detailed above, Plaintiff will satisfy her burden under Title VII to support an inference of unlawful employment discrimination. Therefore, Plaintiff will also be able to prove her claim for the breach of implied covenant of good faith and fair dealing.

**EQUAL PAY ACT**

The Equal Pay Act prohibits employers from discriminating between employees in their wages "on the basis of sex" for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to "(i) a seniority system; (ii) a merit system; (iii) a system that measures earnings by quantity or quality of production; or (iv) a differential based on any other factor than sex." 29 U.S.C. §206(d)(1). The Equal Pay Act only prohibits discriminatory salary disparity on the basis of sex. Id. Although Plaintiff acknowledges that MaryAnne Doll-Johnson was the

highest paid member of the Dazel group, Doll-Johnson's position was that of SMTS. At the time prior to Mr. Miller's promotion to an SMTS, both Plaintiff and Miller were both SMTB's and were working under similar working conditions and a significant salary disparity existed.

## THEORY OF DAMAGES

Title VII of the Civil Rights Act & 42 U.S.C. §1981

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. *42 U.S.C. §2000e-5(g)(1).*

If Ms. Poland meets her burden of prove for her race discrimination claim, but CSC demonstrates that it would have taken the same action in the absence of the impermissible motivating factor, Ms. Poland's damages may be limited to attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim.

Plaintiff is entitled to recover compensatory and punitive damages, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from CSC. *42*

11

*U.S.C. §1981a(a)(1)*. Plaintiff is also entitled to recover punitive damages under Section 1981 if she demonstrates that CSC engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual. *42 U.S.C. §1981a(b)(1)*. However, any compensatory damages awarded under section 1981 shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964. *42 U.S.C. §1981a(b)(2)*. The amount of compensatory damages awarded for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages, shall not exceed $300,000. *42 U.S.C. §1981a(b)(3)(D)*.

Equal Pay Act

Any employer who violates the provisions of the Equal Pay Act shall be liable to the employee affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

Breach of the Covenant of Good Faith and Fair Dealing

With regard to Plaintiff's claim for the breach of the implied covenant of good faith and fair dealing, if she proves her claim by a preponderance of the evidence, she will be entitled to contract damages which put her in the position she would have been had the breach not occurred. *True North Composites, LLC v. Trinity Indus., Inc.*, 191 F. Supp. 2d 484, 527-28 (D. Del. 2002) (noting that the Delaware Supreme Court found in *Pressman* "that a breach of the duty of good faith and fair dealing gave rise to neither punitive damages nor damages for emotional distress" and thus holding that "only

contractual damages can be awarded for [the defendant's] bad faith [in breaching the implied covenant of good faith and fair dealing]"); *E.I. Dupont De Nemours and Co. v. Pressman*, 679 A.2d 436, 445, 448 (Del. 1996) (holding that emotional distress damages and punitive damages are unavailable in a claim for the breach of the implied covenant of good faith and fair dealing.)

## THEORY OF ANY ANTCIPATED MOTION FOR DIRECTED VERDICT

Plaintiff does not anticipate moving for a directed verdict at the conclusion of her case in chief.

Respectfully submitted,

MARGOLIS EDELSTEIN

By: /s/ Jeffrey K. Martin
    Jeffrey K. Martin (# 2407)
    1509 Gilpin Avenue
    Wilmington, DE 19806
    (302) 777-4680

*Attorney for Plaintiff*

13