# SCHEDULE (I)(ii)

# TRIAL BRIEF OF DEFENDANT COMPUTER SCIENCES CORPORATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DIANE POLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-217 (GMS) |
| | ) | |
| COMPUTER SCIENCES CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## TRIAL BRIEF OF DEFENDANT
## COMPUTER SCIENCES CORPORATION

Sarah E. DiLuzio (#4085)
POTTER ANDERSON & CORROON LLP
1313 North Market Street
6th Floor, P.O. Box 951
Wilmington, Delaware 19801
(302) 984-6000 (general)
(302) 984-6279 (direct)
(302) 658-1192 (fax)
sdiluzio@potteranderson.com

Of counsel:
Larry R. Seegull
DLA PIPER RUDNICK GRAY CARY US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000 (general)
(410) 580-4253 (direct)
(410) 580-3253 (fax)
larry.seegull@dlapiper.com

Counsel for Defendant
*Computer Sciences Corporation*

Date: September 30, 2005

## I.   THE NATURE OF THE CASE

As alleged in Plaintiff's Complaint, and clarified and limited through her deposition testimony, Plaintiff's claims in the instant case are limited to the following:

1)   A race discrimination claim based upon Plaintiff's failure to receive a promotion, based on the fact that Randall Miller was promoted and she was not;

2)   A retaliation claim based upon her termination from employment more than one year after she filed a charge of discrimination;

3)   An Equal Pay Act claim based on the fact that men were allegedly paid more than women in the group she was working in; and

4)   A claim for purported breach of the implied covenant of good faith and fair dealing based upon the discrimination and retaliation that Plaintiff claims she suffered.

On May 6, 2005, Defendant filed a Motion for Summary Judgment on all of Plaintiff's claims, which has been fully briefed. (D.I. 40, 42, 54, 56.) The Court has not yet ruled on Defendant's Motion. This matter is scheduled for trial beginning on November 7, 2005.

## II.   CONTESTED FACTS THE EVIDENCE WILL ESTABLISH

Defendants believe that the evidence will establish the following facts:

CSC is one of the world's leading information technology (IT) service companies, and provides outsourcing of IT services. CSC hired Plaintiff as an at-will employee on November 5, 1997. Plaintiff was initially hired as a help desk technician, Member Technical Staff B ("MTSB"). CSC offered Plaintiff a starting annual salary of $41,000,

which was $6,000 to $8,000 more than Plaintiff's annual salary at her previous job. Plaintiff received an increase in salary during every year of her employment with CSC.

### A.  Plaintiff Was Transferred To The Managed Print And Dazel Group.

On October 2, 1999, Plaintiff transferred from her position at the help desk to a position as a technical service analyst in the Managed Print and Dazel ("MPD") group. Plaintiff worked in the Dazel subgroup. On May 13, 2000, Plaintiff was promoted from MTSB to Member Technical Staff A ("MTSA") by her supervisor at the time, Derek Alston. In May 2000, CSC implemented a business restructuring, and, as a direct result, Dawn Dworsky replaced Mr. Alston as manager of the MPD group, and became Plaintiff's new supervisor. Despite the change in supervision, Plaintiff's duties did not change in any way.

### B.  Plaintiff Was Dissatisfied With Her May 2001 Performance Evaluation And Merit Salary Increase.

In May 2001, Ms. Dworsky completed an annual performance evaluation of Plaintiff for the period of April 1, 2000 through March 31, 2001, in which she rated Plaintiff a "3" or "good", indicating that Plaintiff's performance "consistently meets expectations and job requirements." CSC considers its employees for merit salary increases at the time the annual performance evaluations are conducted. In 2001, CSC's Human Resources department issued annual Overall Merit Guidelines ("Guidelines"), which designated the recommended merit percent increase an employee should receive based on his or her evaluation rating. If a supervisor wanted to diverge from these Guidelines, approval had to be obtained from management and Human Resources. With respect to employees who were rated a "3" during the 2001 evaluation, the Guidelines recommended a salary increase of between 0-4%. Ms. Dworsky, however, desired to

2

reward what she perceived to be Plaintiff's good effort and performance for her first year as an MTSA by providing Plaintiff with a 5% salary increase. Because Ms. Dworsky wanted to provide Plaintiff with a salary increase above the recommended Guidelines, Ms. Dworsky obtained approval from management and Human Resources, and Plaintiff received a 5% salary increase.

Despite the fact that Plaintiff received a "good" evaluation and a merit salary increase above the recommended Guidelines, Plaintiff was displeased with both her evaluation and salary increase. Plaintiff also was upset that she was not promoted to SMTS in May 2001, despite the fact that she had only held the position of MTSA for one year at that time.

When Ms. Dworsky met with Plaintiff to discuss her appraisal, Ms. Dworsky told Plaintiff that she was on the right career path and should continue doing the type of work that she was doing. Ms. Dworsky advised Plaintiff that she did not promote Plaintiff at that time because Plaintiff did not yet have the requisite skill set or expertise to be an SMTS. For instance, she did not yet have the expertise to work with the UNIX operating system[1] at a senior level. She also told Plaintiff that she would have to demonstrate the ability to lead projects independently, work independently with the client, mentor and train others, improve her decision-making capabilities, and independently manage a "category one" problem before she could be promoted.[2]

---

[1] The UNIX platform is a complex computer program with numerous command codes.

[2] The only person Ms. Dworsky promoted to an SMTS at this time was MaryAnne Doll-Johnson, who, at the time of her promotion, had more years of relevant experience with the UNIX operating system and had been an MTSA for a longer period of time than Plaintiff. Plaintiff believed that Ms. Doll-Johnson deserved to be promoted at the time, and does not believe that the promotion of Ms. Doll-Johnson instead of her was in any way discriminatory.

Plaintiff remained dissatisfied, and, thus, arranged several meetings to discuss her performance appraisal with Ms. Dworsky, Maureen Summers (Human Resources Specialist) and Sonia Koplowicz (Senior Human Resources Manager).[3] Ms. Dworsky again explained why she rated Plaintiff as she did. Ms. Summers thoroughly explained the salary increase process to Plaintiff, and that Plaintiff's salary was consistent with her peers and that she received a higher salary increase than recommended under the Guidelines. Ms. Summers and Ms. Dworsky also explained that Plaintiff was not ready for a promotion to SMTS at that time because of her limited time in her current position (only one year) and because she did not have the necessary level of expertise and skill in UNIX, among other factors.

### C.    Following Her 2001 Performance Appraisal, Plaintiff Isolated Herself From Her Team Members.

After these meetings and after Plaintiff filed her charge of discrimination, Plaintiff began to isolate herself from the other members of the MPD group. For instance, Plaintiff began to refuse to speak to her team members and she refused all invitations to join them for lunch.

### D.    Plaintiff Went Out On Full-Time FMLA Leave.

On August 6, 2001, Plaintiff requested and was granted a full-time medical leave of absence due to stress. CSC maintains a Leave of Absence Without Pay Policy ("Leave Policy"). Plaintiff was aware that the Company maintained such a policy, and that it was her responsibility to comply with it. The Leave Policy, provides, in relevant part:

---

[3] These meetings took place shortly before and after Plaintiff filed her charge of discrimination in July 2001.

4

> A Medical Leave of Absence Without Pay may be granted for up to thirty calendar days and may be extended for successive periods of up to thirty calendar days for up to a total of twelve consecutive months upon presentation of a physician's statement, and CSC's verification as it deems appropriate.... *A certificate of disability from the attending physician is required every thirty days from the date the medical leave is commenced. Any failure on the part of the employee to provide a continuing certificate of disability may be considered a resignation....*

(emphasis added).

After her return from medical leave in September 2001, Plaintiff presented a medical certification allowing her to return to work, but restricting her to a 30-hour workweek. CSC accommodated Plaintiff's request by providing Plaintiff with a 30-hour reduced work schedule, and designated the remaining ten (10) hours as FMLA leave. Plaintiff continued to work a reduced schedule until she returned to a full-time medical leave of absence on February 21, 2002. Plaintiff remained on a full-time leave of absence until September 27, 2002.

### E. Plaintiff Failed To Submit Timely Medical Documentation And CSC, In Accordance With Its Leave Policy, Deemed Plaintiff To Have Voluntarily Resigned.

In direct violation of her obligations under CSC's Leave Policy, Plaintiff repeatedly failed to submit timely medical certifications to CSC every thirty (30) days while she was on leave. Although, under the terms of its Policy, CSC could have designated Plaintiff's first such omission to constitute a voluntary separation from employment, CSC did not do so. Rather, CSC gave Plaintiff numerous chances to comply with its Leave Policy.

Though not required under CSC's Leave Policy, Simmie Osborn, CSC Service Center Representative, called, e-mailed and sent letters to Plaintiff on numerous occasions to remind her that her medical certification was either coming due or was

delinquent. Maureen Summers also reminded Plaintiff several times in writing of her obligations under the Leave Policy, and the potential consequences for her failure to submit certifications. Plaintiff specifically was warned in writing several times that a failure to provide a timely medical certification could be considered a voluntary resignation under the Leave Policy.

On June 21, 2002, CSC received a certification from Plaintiff's medical provider dated June 14, 2002, which stated that Plaintiff may "be able to return to work within the next two to three months." Thus, at the very latest, Plaintiff was required under CSC's Leave Policy to provide an updated medical certification to CSC by September 14, 2002. Despite the numerous written and oral warnings Plaintiff received regarding her obligation to provide timely medical certifications and specifying the consequences for a failure to do so, Plaintiff did not provide an updated medical certification by that date. Therefore, in accordance with its Leave Policy, CSC determined that Plaintiff's failure to submit a timely medical certification constituted a voluntary resignation on Plaintiff's part, and terminated her employment effective September 27, 2002. This decision was made by Sonia Koplowicz and Maureen Summers.

F.  **Randall Miller Was Promoted To SMTS In July 2002.**

In July 2002, while Plaintiff remained on her full-time medical leave, Ms. Dworsky promoted Randall Miller (Caucasian) from MTSA to SMTS. Significantly, Mr. Miller had been in the MTSA position for nearly five (5) years prior to his promotion. At the time of his promotion, Mr. Miller had over ten (10) years of practical, tenured experience working with the UNIX operating system as an employee for both CSC and for past employers, including DuPont.

Ms. Dworsky considered a number of factors in determining that Mr. Miller was qualified for promotion to SMTS. Ms. Dworsky believed that Mr. Miller demonstrated the ability to work independently on important technical projects without direct supervision; provide technical direction and guidance to others; handle various tasks involving a variety of computer programs; deal with issues related to outages on the network, independently manage a "category one" problem, was skilled in advanced troubleshooting, and that he possessed strong decision-making capabilities. Ms. Dworsky did not believe that Plaintiff possessed these same skills.

Because Plaintiff had been out on medical leave since February 2002, Ms. Dworsky did not consider Plaintiff for a promotion at that time. It is standard CSC practice and policy not to consider an employee for promotion while they remain out on medical leave.

### III.  DEFENDANT'S THEORIES OF DEFENSE

#### A.  Race Discrimination.

Plaintiff will be unable to meet her burden of proof on her claim that CSC failed to promote her on the basis of her race. Because Plaintiff has no direct evidence of discriminatory motive, she must prove intentional discrimination by inference, according to the standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

In order to establish a *prima facie* case of race discrimination based upon a failure to promote, Plaintiff must prove, in part, that she was qualified for the SMTS position. Because Plaintiff cannot show that she was qualified for the SMTS position, or demonstrate that others with similar qualifications were promoted ahead of her, Plaintiff

7

cannot establish her *prima facie* case as necessary to prevail on her claim. *See Berry v. Jacobs IMC, LLC*, 2004 WL 1179270, *409 (3d Cir. 2004) (summary judgment granted to employer on plaintiff's discriminatory failure to promote claim, in part, because plaintiff failed to establish his *prima facie* case by showing that he was qualified for the position) (attached as Exhibit A).

Further, even if Plaintiff could somehow establish a *prima facie* case, Plaintiff will still be unable to establish a claim for race discrimination. CSC did not promote Plaintiff in July 2002 because Plaintiff had been on a full-time medical leave of absence since February 2002, and it was CSC's standard practice and policy not to promote an employee out on extended medical leave, not knowing if or when she was going to return to work. Further, Dawn Dworsky did not believe that Plaintiff had the requisite skills, UNIX experience or time in the MTSA position to warrant promotion to SMTS at that time. Ms. Dworsky promoted Mr. Miller in July 2002 because, based on Ms. Dworsky's business judgment, Mr. Miller deserved promotion due to his level of experience, his overall performance and competency, his technical skills with the UNIX operating system, and his time within the MTSA position. The promotion of a better qualified candidate is a legitimate and non-discriminatory reason for preferring the successful applicant over the rejected employee. *See Berry*, 2004 WL 1179270 at *409 (employer provided non-discriminatory reasons for promotion, including the other candidate's "excellent credentials and experience" and the employer's business judgment that plaintiff was not qualified for the position); *Lewis v. State of Del. Dept. of Public Instruction*, 948 F. Supp. 352, 361 (D. Del. 1996) (non-discriminatory reason includes

conclusion that the other candidate "was more qualified than plaintiff and plaintiff was not a 'team player'").

Further, Plaintiff can present no evidence to establish that CSC's articulated reason for not promoting her was a pretext for discrimination. An employer's decisions regarding employee status, such as promotion decisions, are entirely within the employer's prerogative, particularly when, as in the instant case, the decision-making process includes an analysis of skills essential to certain functions. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509 (3d Cir. 1992) (cautioning against "'unwarranted invasion or intrusion' into matters involving professional judgments about an employee's qualifications for promotion"); *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) ("Barring discrimination, a company has the right to make business judgments on employee status, particularly when the decision involves subjective factors deemed essential to certain positions."), *overruled on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

Plaintiff's mere speculation that the reason she was not promoted to SMTS was because of her race is insufficient as a matter of law to establish her claim. *See Berry*, 2004 WL 1179270 at *409 (plaintiff did "not offer[] any evidence beyond his own conclusory allegation that [defendant] discrimination against him on the basis of race…[t]hus, there was insufficient evidence to support the claim of pretext."); *McLaughlin v. Diamond State Port Corp.*, 2004 WL 3059543, *9 (D. Del. 2004) ("Since [Plaintiff] has not presented evidence that she was more qualified than the people who ultimately prevailed [in receiving a promotion], her argument that the subjective promotion process gives rise to an inference of discrimination must fail.") (Exhibit B).

Plaintiff's reliance on a stray remark, completely unrelated to the decision-making process, is also insufficient evidence of pretext to satisfy Plaintiff's burden under the law. *Johnson v. Gober*, 2003 WL 22967266, *459-60 (3d Cir. 2003) (isolated inappropriate remark made by decision maker, unrelated to decision-making process, was not sufficient evidence to establish that employer's proffered reason for failing to promote plaintiff was a mere pretext for discrimination) (Exhibit C); *Fuentes v. Perskie*, 32 F.3d 759, 766 (3d Cir. 1994) (holding alleged stray remark, standing alone, did not present sufficient evidence to establish pretext).

**B.    Retaliation.**

Plaintiff is unable to meet her burden of proof to satisfy her claim that she was terminated in retaliation for engaging in protected activity. In order to establish a *prima facie* case for retaliation, Plaintiff must show: "(i) that she engaged in a protected activity; (ii) that she suffered an adverse employment decision; and (iii) that there was a causal connection between the protected activity and the adverse employment decision." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir. 1997). Plaintiff cannot establish a *prima facie* case for retaliation because she cannot show that a causal connection existed between CSC's decision to terminate her employment and her protected activities. Plaintiff filed her charge of discrimination on July 5, 2001. Plaintiff, however, was not terminated from CSC until September 27, 2002. A temporal distance of nearly 15 months is, as a matter of law, simply too great to support an inference of causation. *See, e.g., Wagner v. Berwick Industries*, 2004 WL 2931049 (3d Cir. 2004) (4-month lag is too long to establish a causal connection) (Exhibit D); *Goosby v. Johnson & Johnson Med. Inc.*, 288 F.3d 313, 323 (3d Cir. 2000) (finding that plaintiff's complaint of

discrimination a year before his discharge was not temporally proximate to establish causal connection). Accordingly, Plaintiff cannot establish a *prima facie* case of retaliation on the basis of her termination.

Moreover, Plaintiff cannot establish that CSC's legitimate, non-retaliatory reason for terminating Plaintiff – her failure to provide medical documentation – was pretextual. *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003) (once employer provides a legitimate, non-retaliatory explanation, plaintiff bears ultimate burden of proving that proffered reason is pretextual). Plaintiff admittedly was well aware of her obligation under CSC's Leave of Absence Policy to provide medical certification every thirty days during her leave of absence, that her failure to comply with this obligation would give Defendant the right to terminate her employment, and that Defendant could have terminated her employment the first time she failed to provide timely certification, in accordance with its policy. Accordingly, CSC complied with its policy, and there is no evidence of retaliatory motive on the part of Sonia Koplowicz or Maureen Summers in making the termination decision. To contest these facts, Plaintiff can offer nothing more than her own subjective belief that she was subject to retaliation, which simply is insufficient under the law. *See Baker v. Wilmington Trust Co.*, 320 F. Supp.2d 196, 202 (D. Del. 2004) (plaintiff's conclusory allegations were insufficient to support a claim for retaliation); *Johnson v. E.I. DuPont de Nemours & Co.*, 60 F. Supp.2d 289, 297 (D. Del. 1999) (same).

In addition, any argument that Plaintiff's termination for failure to submit a medical certification was a pretext for retaliation is undermined by the fact that similarly-situated employees who had not previously filed charges of discrimination were also

11

terminated for the same reason as Plaintiff. For instance, CSC terminated both Aliza Panitz (Caucasian female) and Monte Moser (Caucasian male) due to their failure to provide requisite medical certifications related to their medical leaves of absence in accordance with CSC's Leave of Absence policy.

C.  **Equal Pay Act.**

Plaintiff will not be able to satisfy her burden of proof for her claim brought under the Equal Pay Act ("EPA"). The EPA only prohibits discriminatory compensation on the basis of sex. *See* 29 U.S.C. § 206(d)(1). Importantly, during the time that Plaintiff was employed in CSC's Dazel subgroup, a woman (MaryAnne Doll-Johnson) was the highest paid member of that group. The fact that a woman was the highest paid member of the Dazel subgroup clearly undermines any contention that CSC discriminated on the basis of sex.

In addition, the EPA does not prohibit differentials in wages between men and women if the "differential [is] based on any other factor other than sex." 29 U.S.C. § 206(d)(1). Plaintiff cannot establish a violation of the EPA because the differential in Randall Miller's and Plaintiff's salaries was based upon factors other than sex. One of the main reasons that Mr. Miller received a higher salary than Plaintiff was because of his experience and his longevity with the company, based on his CSC service date. *See Shanley v. Salesianum Sch.*, 1995 WL 628401, *10 (D. Del. 1995) (considering experience an appropriate factor upon which to base compensation) (Exhibit E); *Strag v. Bd. of Tr.*, 55 F.3d 943, 950 (4th Cir. 1995) (judgment for defendant where comparator had twenty-four years of teaching experience while plaintiff only had nine).

12

Further, Mr. Miller had been employed with CSC and its predecessor, DuPont, for 18 years, much longer than Plaintiff, who had only been employed by CSC for five years. Consequently, Mr. Miller had gradually earned a higher salary over that time period, whereas Plaintiff started only a few years ago. Seniority with a company is a legitimate reason to pay a male employee more than a female employee. Thus, Plaintiff cannot establish her claim for a violation of the EPA.

**D.    Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Plaintiff also will be unable to meet her burden of proof on her claim for breach of the implied covenant of good faith and fair dealing under Delaware law. The Delaware Supreme Court "has strictly limited the application of the implied covenant in the employment context, holding that a Plaintiff must establish that he or she fails into one of four exclusive categories." *Cimino v. Del. Dep't of Labor*, 2002 U.S. Dist. LEXIS 2979, *10-11 (D. Del. 2002) (attached as Exhibit F). One of these categories is implicated "where the termination violated public policy."[4] *Conneen v. MBNA America Bank, N.A.*, 334 F.3d 318, 334 (3d Cir. 2003). A claim for breach of the implied covenant "requires employer conduct amounting to fraud, deceit, or misrepresentation." *Cimino*, 2002 U.S. Dist. LEXIS 2979 at *11. Further, the existence of this cause of action does not "limit[] an employer's freedom to terminate an at-will employment contract for its own legitimate business, or even highly subjective, reasons." *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 103 (Del. 1992).

---

[4] Plaintiff does not contend that any of the other three exclusive categories are implicated in this case. *See Conneen*, 334 F.3d at 334.

13

Plaintiff's claim under the implied covenant is based upon the same set of facts as her claims for discrimination and retaliation. Because Plaintiff cannot establish that CSC discriminated against her on the basis of her race or sex, or establish that CSC retaliated against her for engaging in protected activity, Plaintiff also cannot establish that CSC breached the covenant of good faith and fair dealing.

## VI.  DEFENDANT'S THEORY OF DAMAGES

Defendant contends that Plaintiff is not entitled to recover any damages because she will not prove her claims against Defendant. If, however, Plaintiff does meet her burden of proving by a preponderance of the evidence that Defendant is liable on any of her theories of liability, Defendant contends that Plaintiff is barred or limited in recovering certain damages. Plaintiff is barred from recovering emotional distress damages because Plaintiff recovered workers' compensation for her alleged emotional injuries to the exclusion of all other rights and remedies. 19 *Del. C.* § 2304. Defendant also contends that Plaintiff is barred from recovering punitive damages because CSC never engaged in a discriminatory practice with malice or with reckless indifference to Ms. Poland's federally protected rights.. Similarly, Defendant contends that Ms. Poland is barred from recovering liquidated or punitive damages under the Equal Pay Act because CSC acted in good faith at all times, never knew or had reason to believe that its conduct was prohibited by federal law, and never showed reckless disregard for the law.

Defendant also contends that any damages Plaintiff receives as back pay or lost wages under any theory of liability should be reduced such that Plaintiff is only compensated for periods during which she was able and available to work. Thus, Plaintiff should not receive back pay or lost wages for any period during which she was

on medical leave from her CSC position or, after her discharge from CSC, for any periods during which she was incapable of working due to her alleged medical problems. Similarly, Plaintiff should be precluded from seeking damages for a purported failure to promote because Plaintiff was on unpaid medical leave when Randall Miller was promoted to the Senior Member of Technical Staff Position, and was unavailable to be considered for promotion. Finally, if the jury determines that Plaintiff did not prove her retaliation claim by a preponderance of the evidence, Plaintiff is barred from recovering back pay or lost wages after the date of her lawful termination.

## V.     **DEFENDANT'S ANTICIPATED MOTION FOR DIRECTED VERDICT**

Defendant anticipates that it will move for judgment as a matter of law at the close of Plaintiff's case, and further expects that it will renew its motion at the close of Defendant's case, should the case reach that point. Defendant anticipates that its motion for judgment will be based upon, but not necessarily be limited to, the same arguments it made in the motion for summary judgment it filed with the Court on May 6, 2005. (D.I. 40.) Defendant also intends to move for judgment on Plaintiff's claim for punitive damages because there is no evidence that Defendant acted with malice or reckless indifference. Defendant does not believe that Plaintiff will be able to present sufficient evidence from which a reasonable jury could find in favor of Plaintiff on any of her claims. *See* Fed. R. Civ. P. 50(a)(1) (stating that, if at the close of a party's case, there is no legally sufficient basis upon which a reasonable jury could find in favor of that party, the court may grant judgment as a matter of law against that party).

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: /s/ Sarah E. DiLuzio
Sarah E. DiLuzio (#4085)
1313 North Market Street
6th Floor, P.O. Box 951
Wilmington, Delaware 19801
(302) 984-6000 (general)
(302) 984-6279 (direct)
(302) 658-1192 (fax)
sdiluzio@potteranderson.com

Of counsel:
Larry R. Seegull
DLA PIPER RUDNICK
  GRAY CARY US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000 (general)
(410) 580-4253 (direct)
(410) 580-3253 (fax)
larry.seegull@dlapiper.com

*Counsel for Defendant
Computer Sciences Corporation*

Dated: September 30, 2005

699777