IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DIANE POLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-217 (GMS) |
| | ) | |
| COMPUTER SCIENCES CORP. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

## I.  INTRODUCTION

Plaintiff Diane Poland, a former employee of Defendant Computer Sciences Corp. ("CSC"), filed the above-captioned suit against CSC alleging five counts of discrimination in violation of federal law, and one state-law count for breach of an implied covenant of good faith and fair dealing. (D.I. 1.) Presently before the court are CSC's motion for summary judgment (D.I. 40), and eight motions *in limine* (D.I. 70, 71, 72, 73, 74, 75, 76, 77). For the following reasons, the court will grant the motion for summary judgment, and deny the motions *in limine* as moot.

## II.  JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367.

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there are no genuine issues of material fact. Fed. R. Civ. P 56(c). A fact is material if it might affect the outcome of the case, and an issue is genuine if the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmovant. *See In re Headquarters Dodge, Inc.*, 13 F.3d 674, 679 (3d Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When deciding a motion for summary judgment, the court

must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Pacitti v. Macy's*, 193 F.3d 766, 772 (3d Cir. 1999). The nonmoving party, however, must demonstrate the existence of a material fact supplying sufficient evidence – not mere allegations – for a reasonable jury to find for the nonmovant. *See Olson v. General Elec. Aerospace*, 101 F.3d 947, 951 (3d Cir. 1996) (citation omitted). To raise a genuine issue of material fact, the nonmovant "need not match, item for item, each piece of evidence proffered by the movant but simply must exceed the 'mere scintilla' [of evidence] standard." *Petruzzi's IGA Supermarkets, Inc. v Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993) (citations omitted). The nonmovant's evidence, however, must be sufficient for a reasonable jury to find in favor of the party, given the applicable burden of proof. *See Anderson*, 477 U.S. at 249-50.

## IV. BACKGROUND

Diane Poland, a black female, was hired by Computer Sciences Corp. ("CSC") in 1997 to work as a technical service analyst at CSC's help desk. (Poland Dep. at 10:13-14, 35:15, 109:8-11.) Upon her hiring, Poland was placed in the CSC hierarchy at a position known as Member of Technical Staff B ("MTSB"). (Id. at 72:19-21.) Poland's work in the MTSB position entailed answering client calls and troubleshooting. (Id. at 93:17-23.) In October 1999, Poland transferred into the "Managed Print and Dazel" group ("MPD") at CSC, which was under the supervision of Edwin Derek Alston. (Id. at 107:19-23; Alston Dep. ¶ 3.) Although Poland remained an MTSB at first, she was promoted to Member of Technical Staff A ("MTSA") in May 2000. (Poland Dep. at 83:22-24, 109:19-21; Alston Dep. ¶ 4.) Around that same time, CSC underwent a restructuring, which resulted in Dawn Dworsky, a white female, assuming the management responsibilities for MPD. (Alston Dep. ¶ 5.)

As do many large employers, CSC conducts employee performance reviews on an annual basis. CSC rates employees on a scale of 1 (best) to 5 (worst). According to CSC's merit guidelines, only 10% of employees can receive a rating of 1, 20% can receive a rating of 2, 60% can receive a rating of 3, and the remainder receive a rating of 4 or 5. (D.I. 52 at A185.) Each numerical rating is also associated with a recommended salary increase range. Thus, a 7-12% increase is recommended for employees receiving a rating of 1, a 4-7% increase is recommended for employees receiving a rating of 2, and a 0-4% increase is recommended for employees receiving a 3. (Id.) In each of Poland's first two years as an MTSB, she received a rating of 3. (Poland Dep. at 105:17-19, 107:10-13.) Although Poland's rating for her third year as an MTSB is not readily apparent from the summary judgment record, she stated at her deposition that she agreed with the ratings she received in all three years. (Id. at 105:2-4, 107:10-18, 141:1-2.)

In May 2001, after Poland's first year as an MTSA, she received a rating of 3 from Dworsky. (Id. at 158:8-11.) Poland did not agree with Dworsky's appraisal of her performance – Poland thought she deserved a rating of 2. (Id. at 162:1-2.) Poland also believed that she should have been promoted to the next level in the CSC hierarchy, Senior Member of Technical Staff ("SMTS"). (Id. at 207:3-4.) Instead, Mary Anne Doll-Johnson, a white female, was promoted to the SMTS position.[1] (Dworsky Aff. ¶ 9.) When Poland expressed her dissatisfaction to Dworsky and two others from Human Resources, Dworsky explained that "she could only promote a certain number of people," and that "she didn't think that I [Poland] had the skill set to move on to SMTS." (Poland Dep. at 207:10-16.) Nevertheless, Poland did receive a 5% salary increase, which was above the

---

[1] Poland believes Doll-Johnson deserved to be promoted to an SMTS. (Poland Dep. at 241:6-8.) Thus, Doll-Johnson's promotion is not part of the factual basis for Poland's discrimination claims.

3

range recommended by CSC's merit guidelines. (Dworsky Aff. ¶ 6; Poland Dep. at 159:21-160:1.)

Around the same time in 2001, Poland recalls several comments by Dworsky and others in MPD that she believes reveal their racial bias. For example, Dworsky once asked Poland, "why do Black people dress up for church and why is the music so loud?" Poland replied, "I [cannot] speak for all Black people." (Poland Dep. at 300:16-20.) Dworsky's comment prompted Poland to lodge a complaint with Maureen Summers, a Human Resources Specialist at CSC. (Summers Aff. ¶ 3.) Poland also overheard Doll-Johnson say to Randall Miller, a white male, allegedly in reference to a class-action suit, "I can see anyone can do this, black dogs and all." (Poland Dep. at 309:17-20.) Although Poland had not yet filed suit against CSC, she thought Doll-Johnson was referring to the troubles she (Poland) was having with Dworsky. (Id. at 310:6-12.) Poland again complained to Human Resources, but she never asked Doll-Johnson what she meant by her reference to "black dogs." (Id. at 310:24-312:1.) Finally, Poland recalls another conversation she witnessed, but did not hear, between Dworsky and Miller, in which it appeared that they were joking about something smelling bad. However, at her deposition, Poland was asked, "So you don't know if it was racial or not?," and she replied, "I don't know." (Id. at 303:3-308:20.) Dworsky was asked about this incident during her deposition and explained that she was trying to find the source of a burning smell, which turned out to be a burning cord between cubicle walls. (Dworsky Dep. at 44:7-20.)

Poland was not satisfied with the response to her complaints by Human Resources, so she filed a complaint with the Delaware Department of Labor and the Equal Employment Opportunity Commission ("EEOC"). (D.I. 55 at B56-61.) Shortly thereafter, Poland began to feel isolated because she was no longer being informed of team meetings (Poland Dep. at 257:2-13), and as she explained at her deposition:

> Generally work was taken from me. I was banned from communication from [sic] the team. I was – I could not meet with anybody on the team. I couldn't talk to them. And people in HR were given instruction [sic] not to talk to me.

(Poland Dep. at 8:13-17.) In terms of her work load, Poland's engineering assignments were taken away, and she was assigned to write a software manual instead. (Id. at 213:8-14.) Poland believes that this was the beginning of a pattern of retaliation that ultimately resulted in her termination.

For reasons that are unimportant here, Poland began a full-time medical leave of absence on August 6, 2001, and she returned on August 22, 2001. (Poland Dep. 266:17-19, 273:24-274:2.) Poland took additional full-time medical leave around August 27, and returned around September 10. (Id. at 274:3-10.) CSC permits its employees to take medical leaves of absence, but it has the following policy:

> 5.1.3 A Medical Leave of Absence Without Pay may be granted for up to thirty calendar days and may be extended for successive periods of up to thirty calendar days for up to a total of twelve consecutive months upon presentation of a physician's statement . . . .
>
> 5.1.4 A certificate of disability from the attending physician is required every thirty days from the date the medical leave is commenced. Any failure on the part of the employee to provide a continuing certificate of disability may be considered a resignation, as determined by the employee's supervisor and the cognizant Director/Manager of Human Resources.

("Leaves of Absence Without Pay" Section of CSC's Human Resources Management Policy, D.I. 52 at A195.) Poland admitted at her deposition that she knew about this policy. (Poland Dep. at 264:23-265:3.) She further admitted receiving a document dated August 8, 2001, that informed her of her obligation to furnish a medical certification every 30 days. (Id. at 273:9-12; D.I. 49 at A206.) On August 14, 2001, Poland signed a "Request for Leave" form containing the statement, "I understand that if I am on a medical leave of absence, my employment with CSC will be subject to

termination if I fail to provide Human Resources with a doctor's certificate on a monthly basis or if I am unable to return to work after 12 months on a medical leave of absence." (D.I. 49 at A202.) Poland also received another document around that time that read, "you must submit a certificate of disability from your attending physician *every 30 days*." (D.I. 49 at A203 (emphasis in original); Poland Dep. at 268:20-269:13.)

Pursuant to CSC's medical leave policy, Poland presented a disability certificate upon her return from full-time leave in September 2001, in which her doctor explained that she was to work no more than thirty hours per week. (Poland Dep. at 274:11-18.) Poland continued on a reduced schedule until February 21, 2002, at which time she went out on a full-time basis. (Id. at 278:23-279:4.) Between September 2001 and February 2002, Poland presented three more disability certificates, at least two of which were submitted late. (D.I. 50 at A258-61; D.I. 49 at A208, A210.) Shortly after she went out full time in February 2002, Poland received a letter reminding her of CSC's medical leave policy and instructing her to submit a certificate of disability by March 4. Poland received similar reminders on March 18 and May 21. (Poland Dep. at 279:12-280:12, 281:3-11, 281:15-282:6; D.I. 49 at A211-12, A214.) The latter reminder also informed Poland that her previous certificate was nine days overdue, and that her failure to comply with CSC's policy would be considered a voluntary resignation. (Poland Dep. at 283:1-19; D.I. 49 at A212.) The following day – May 22 – Poland submitted a certificate with an estimated return-to-work date of July 2002. (Poland Dep. at 284:21-24; D.I. 49 at A215.)

On June 14, Dr. Scott Houser wrote a letter to CSC explaining that he was hopeful that Poland would be able to return to work "within the next two to three months." (Poland Dep. at 285:21-286:13; D.I. 49 at A218.) Around June 20, Poland received a reminder that her next

6

certificate would be due on July 28. (Poland Dep. at 284:9-285:17.) But, by September 26, more than three months after Houser's June 14 letter, CSC had not received an updated medical certificate. Thus, Poland was terminated, pursuant to CSC's medical leave policy, effective September 27. (Poland Dep. at 288:9-290:12; D.I. 49 at A221.) Two days later, Houser faxed another certification to CSC (D.I. 49 at A219-20), but CSC declined to revoke Poland's termination.

In July 2002, about five months after Poland began full-time leave, Dworsky promoted Miller to an SMTS position. However, Poland believes she should have been promoted because she had been in MPD for longer than Miller. (See Miller Aff. ¶ 5.) Poland contends that Miller was promoted in lieu of her because of her race.

After Poland was issued a right-to-sue letter, she filed the present action. In Counts I and II of the complaint, Poland alleges racial discrimination by CSC in violation of 42 U.S.C. § 2000e-2(a) (2003), and 42 U.S.C. § 1981 (2003), respectively. (D.I. 1 ¶ 71.) Count III of the complaint alleges that CSC unlawfully discriminated against her on the basis of gender, in violation of § 2000e-2(a). (Id. ¶ 79.) She further alleges, in Count IV, that CSC retaliated against her, in violation of 42 U.S.C. § 2000e-3(a) (2003). (Id. ¶ 82.) Count V of the complaint alleges that CSC violated the Equal Pay Act, 29 U.S.C. § 206(d) (1998). (Id. ¶ 86.) Finally, in Count VI, Poland alleges that CSC breached an implied covenant of good faith and fair dealing under Delaware state law. (Id. ¶ 88.)

## V. DISCUSSION

### A. Racial and Gender Discrimination (Counts I, II, and III)

The familiar analytical framework for claims of discrimination, set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), is the same for alleged violations of both § 2000e-2(a) and § 1981. *Hampton v. Borough of Tinton Falls Police Dep't*, 98 F.3d 107, 112 (3d Cir. 1996).

7

Consequently, for each of Counts I, II, and III, Poland must first establish a prima facie case of discrimination. *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). If she succeeds, "the burden of production shifts to [CSC] to 'articulate some legitimate, nondiscriminatory reason for [its actions].'" *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). CSC "satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Id.* "Once [CSC] answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to [Poland], who must now show by a preponderance of the evidence that [CSC's] explanation is pretextual." *Id.* Thus, Poland can defeat CSC's motion for summary judgment "by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.* At 764.

In the present case, Poland alleges the following discriminatory acts:

> Plaintiff alleges the discrimination occurred when Defendant promoted Randall Miller, a Caucasian male, and as a result of the salary disparity between Plaintiff and her similarly-situated Caucasian co-workers.

(D.I. 54 at 12.) CSC vigorously denies that Poland has established a prima facie case of discrimination. But even assuming *arguendo* that Poland can surpass her initial hurdle, CSC argues that she did not get the SMTS position given to Miller because (1) she was not as qualified as Miller, and (2) "it was inconsistent with standard CSC practice and policy to promote an employee out on extended medical leave." (D.I. 42 at 21-22; D.I. 56 at 7.) As to Poland's further accusation that CSC maintained a discriminatory pay structure, CSC points out that Doll-Johnson and Miller had worked for CSC and DuPont (CSC's predecessor) thirteen years longer than Poland. (D.I. 42 at 32;

8

D.I. 56 at 5-6.) These explanations are clearly sufficient to satisfy CSC burden. Thus, the burden is shifted to Poland to rebut CSC's explanations with actual evidence.

After a comprehensive review of the record, the court concludes that Poland has presented insufficient evidence to carry her burden. There appears to be no evidence that Miller was unqualified for the promotion he received, that CSC has ever promoted an employee out on extended medical leave, or that Doll-Johnson and Miller did not have significantly more seniority than Poland. (Poland Dep. at 228:7-9, 244:3-245:4; Dworsky Aff. ¶¶ 12-14; Summers Aff. ¶¶ 8-9.) Indeed, Poland's brief merely offers the following:

> Based upon the discrepancies in the record, Plaintiff has cast sufficient doubt upon Defendant's reasons for its failure to promote her and regarding her salary disparity to create a genuine issue of material fact which precludes the granting of summary judgment in Defendant's favor.

(D.I. 54 at 14.) This conclusory, single-sentence rebuttal – unsupported by any evidentiary citations – only serves to reinforce the court's conclusion. Perhaps even more surprising is the fact that it fails to cite the only arguable evidence of discriminatory intent in the record: Dworsky's inquiry about the church-going habits of black people, which she uttered more than a year before Miller's promotion. Nevertheless, that single comment, without more, is an insufficient basis upon which a jury could conclude that discriminatory animus played a determinative role in CSC's decision-making process. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision."). Thus, because the record evidence is insufficient as a matter of law to support an inference of racial or gender discrimination, CSC's motion must be granted as to Counts I, II, and

III.

### B. Retaliation (Count IV)

"In order to establish a prima facie case of discriminatory retaliation under Title VII, [Poland] must show 1) that she engaged in protected activity, 2) that [CSC] took adverse action against her, and 3) that a causal link exists between the protected activity and [CSC's] adverse action." *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 177 (3d Cir. 1997). However, "not everything that makes an employee unhappy qualifies as retaliation, for otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) (quotations omitted). For example, in *Robinson*, the Third Circuit held that "'unsubstantiated oral reprimands' and 'unnecessary derogatory comments' . . . do not rise to the level of the 'adverse employment action' required for a retaliation claim." 120 F.3d at 1301. "Retaliatory conduct other than discharge or refusal to rehire is thus proscribed by Title VII only if it alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his [or her] status as an employee." *Id.* at 1300. As to the third element of the prima facie case, causation may be inferred where there is "unusually suggestive" temporal proximity between the protected activity and the adverse action, *id.* at 1302, or, "where there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to [an] inference [causation]," *Kachmar*, 109 F.3d at 177.

In this case, the allegedly adverse actions consist of Poland (1) having work taken away from her, (2) receiving criticism and scrutiny from Dworsky, and (3) being terminated. (D.I. 54 at 16.) In her brief, Poland argues that a reduction of duties can constitute an adverse action. (Id. at 15.)

10

Even so, the evidence in the record belies Poland's assertion that an actionable reduction occurred in this case. At her deposition, Poland answered a series of questions about the software manual she was assigned to write:

> Q   [The software manual] was a real project[,] correct?
>
> A   Yes.
>
> Q   It was important work?
>
> A   Yes.
> . . .
> Q   How long did it take you to write the [software] manual?
>
> A   I don't remember, but it took me more than a month.
> . . .
> Q   You weren't offended that you were asked to work on this important manual, were you?
>
> A   I wasn't offended, no.

(Poland Dep. at 213:2-5, 214:3-6, 217:3-5.) The most that can be inferred from this evidence is that Poland's reassignment was a *change* of duties, but not that it was a reduction. As to Dworsky's criticism and scrutiny of Poland's work, those are not adverse actions. *See Robinson*, 120 F.3d at 1300 ("'unsubstantiated oral reprimands' and 'unnecessary derogatory comments' . . . do not rise to the level of the 'adverse employment action' required for a retaliation claim"). Therefore, the only adverse action in the record is Poland's termination. Nevertheless, Poland cannot establish causation because, as chronicled above, the timing is anything but "unusually suggestive," and there is no "pattern of antagonism" from February 2002 to September 2002. Thus, CSC's motion as to Count IV must be granted.

### C. Equal Pay Act (Count V)

Section 206(d)(1) of Title 29 provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex[.]

29 U.S.C. § 206(d)(1) (1998). Poland argues that CSC violated this provision by paying Miller more than her prior to his promotion. (D.I. 54 at 18.)

Poland's argument is unconvincing because she has no evidence to rebut Summers' sworn affidavit, in which she explains that "[o]ne of the main reasons that Mr. Miller received a higher salary than Ms. Poland was because of his experience and his longevity with the company, based upon his CSC service date." (Summers Dep. ¶ 9.) Thus, CSC's motion as to Count V must be granted as well.

### D. Implied Covenant of Good Faith and Fair Dealing (Count VI)

Finally, Poland cites *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318 (3d Cir. 2003), for the proposition that CSC's discriminatory and retaliatory acts breached an implied covenant of good faith and fair dealing, under Delaware state law, because they were contrary to public policy. (D.I. 54 at 18.) The viability of this claim depends directly upon the viability of the discrimination and retaliation claims. Therefore, because summary judgment in CSC's favor is appropriate as to those claims, summary judgment in CSC's favor is appropriate as to Count VI as well.

### E. The Conclusions of the Department of Labor and the EEOC

The court is cognizant of the fact that its holding is at odds with the findings of both the Department of Labor and the EEOC. Nevertheless, an Article III court owes no deference to those agencies in this context, particularly where the factual support for their conclusions are not included in, or supported by, the summary judgment record. For example, the Department of Labor made the following finding:

> Respondent provided documents, which show that Mr. Randall Miller had less computer skills as compared to Charging Party, and no UNIX certification was provided. However, he was promoted into the position, while Charging Party was not upgraded. Overall, the documents submitted during this investigation show that Charging Party was held to higher [sic] standard regarding requirements/qualifications for advancement.

(D.I. 55 at B58.) And yet, the supporting documents are nowhere to be found in the appendix Poland submitted with her answering brief. On the other hand, CSC submitted Miller's affidavit in which he details his eleven years of UNIX experience. (Miller Aff. ¶¶ 3-8.) In response, Poland merely points to the unsupported conclusions of the Department of Labor. (D.I. 54 at 5.) Moreover, at her deposition, Poland was questioned about Miller:

> Q   Do you know anything about [Miller's] technical experience prior to coming on the group?
>
> A   No.
> . . .
> Q   Do you know what factors they considered in deciding whether or not to promote him?
>
> A   No.
>
> Q   Are you saying that you should have been promoted in lieu of Mr. Miller, or just that he shouldn't have been promoted at all?
>
> A   I can't say that. I don't know.

> Q   If you had been promoted, would there have been anything wrong with promoting him, as well?
>
> A   I don't know.
>
> Q   Are you saying you don't know whether or not he deserved to be promoted, but you know that you did deserve to be promoted?
>
> A   Yes.
>
> Q   In fact, you would agree that he did deserve to be promoted?
>
> A   No, I would not.
>
> Q   You just don't know one way or the other?
>
> A   Exactly.
>
> Q   I'm sorry. You don't know one way or other whether or not he deserved to be promoted?
>
> A   I don't know.

(Poland Dep. at 228:7-9, 244:3-245:4.) Thus, given these facts, the court is unable to agree with the Department of Labor's conclusion that Poland was held to a higher standard than Miller, or that Miller was not qualified to be an SMTS. The remainder of the Department of Labor's findings suffer similar shortcomings, but the court deems it unnecessary to belabor the point any further.

As to the EEOC, it also made findings unsupported by the record. For example:

> The investigation revealed that Charging Party was discharged while she was on a medical leave of absence. Respondent claims that Charging Party failed to provide required medical certification and thus voluntarily resigned. However, the evidence shows that this medical certification was supplied. Charging Party had previously, during her leave of absence, received correspondence from Respondent in which she was given additional time to submit certifications. However, in this instance, she was not given such time or an opportunity to respond. Also, Charging Party was not afforded the benefit of having up to twelve months of unpaid leave, as set forth in Respondent's leave policy.

(D.I. 55 at B61.) As the court's above factual recitation reveals, Poland failed to timely submit her medical certifications on numerous occasions. Moreover, the court is not inclined to permit the fact that CSC had previously given Poland extra time to submit her certifications to be used against it in this context, particularly where there is no evidence that CSC applied the leave policy more strictly to Poland than it did to other employees. Finally, Poland's entitlement to twelve months of unpaid leave was predicated on the assumption that she was timely submitting her certifications. Indeed, Poland signed the following: "I understand that if I am on a medical leave of absence, my employment with CSC will be subject to termination if I fail to provide Human Resources with a doctor's certificate on a monthly basis *or* if I am unable to return to work after 12 months on a medical leave of absence." (D.I. 49 at A202 (emphasis added).) That statement does *not* entitle Poland to twelve months of unpaid leave in the event that she fails to submit her certifications. Thus, because the evidence is insufficient to support this and other findings of the EEOC, the court is content to disagree.

## VI.   CONCLUSION

For the foregoing reasons, the court will grant CSC's motion for summary judgment (D.I. 40), as well as the eight outstanding motions *in limine* (D.I. 70, 71, 72, 73, 74, 75, 76, 77).

Dated: October 5, 2005



UNITED STATES DISTRICT JUDGE



FILED
OCT 5 2005
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DIANE POLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  C.A. No. 04-217 (GMS) |
| | ) |
| COMPUTER SCIENCES CORP. | ) |
| | ) |
| Defendant. | ) |

**ORDER**

IT IS HEREBY ORDERED THAT:

1. The Defendant's motion for summary judgment (D.I. 40) be GRANTED;

2. All other outstanding motions (D.I. 70, 71, 72, 73, 74, 75, 76, 77) be DENIED as moot; and

3. The complaint (D.I. 1) be DISMISSED on all counts.

Dated: October 5, 2005

_____
UNITED STATES DISTRICT JUDGE



FILED
OCT 5 2005
U.S. DISTRICT COURT
DISTRICT OF DELAWARE